CHERYL L. SCHRECK, SBN 130083
cschreck@fisherphillips.com
ANET DRAPALSKI, SBN 282086
adrapalski@fisherphillips.com
FISHER & PHILLIPS LLP
444 South Flower Street, Suite 1500
Los Angeles, California 90071
Telephone: (213) 330-4500
Facsimile: (213) 330-4501

Attorneys for Defendants
R&L CARRIERS SHARED SERVICES, L.L.C. and R&L CARRIERS, INC.

Anthony C. White (SBN 0062146)
*Admitted Pro Hac Vice*
Tony.White@ThompsonHine.com
J. Timothy McDonald (SBN 489420)
*Admitted Pro Hac Vice*
Tim.McDonald@ThompsonHine.com
**THOMPSON HINE, LLP**
41 South High Street, Suite 1700
Columbus, Ohio 43215
Telephone: (614) 469-3200
Facsimile: (614) 469-3361

Attorneys for Defendants
R&L CARRIERS SHARED SERVICES, L.L.C. and R&L CARRIERS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ALBERT JOHNSON, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

R&L CARRIERS SHARED SERVICES, LLC, a limited liability company; R&L CARRIERS, INC., an Ohio corporation; and DOES 1 through 10, inclusive,

Defendants.

Case No: 2:22-cv-01619-MCS-JPR

**DEFENDANTS R&L CARRIERS SHARED SERVICES, LLC'S AND R&L CARRIERS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

*[Filed Concurrently with Notice of Motion to Dismiss; Request for Judicial Notice; Declaration of Cheryl L. Schreck; and Proposed Order]*

**DATE: AUGUST 1, 2022**
**TIME: 9:00 A.M.**
**COURTROOM: 7C**

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................1
II. PROCEDURAL HISTORY ..................................................2
III. ALLEGATIONS IN THE FIRST AMENDED COMPLAINT ..................................................3
IV. LEGAL ARGUMENT ..................................................4
A. Applicable Legal Standard: Federal Rule of Civil Procedure 12(b)(6) and the *Twombly* and *Iqbal* Pleading Standards. ..................................................4
B. Plaintiff's Meal and Rest Break Claims, and Claims Predicated Thereon, Are Preempted By The FMCSA and Corresponding Regulations. ..................................................4
**1.** Plaintiff's Meal and Rest Break Claims (Third and Fourth Causes of Action) Should be Dismissed. ..................................................4
2. Plaintiff is Subject to the FMCSA's HOS Regulations Because Plaintiff was a Driver of a Property-Carrying Motor Vehicle in Interstate Commerce "to Whom FMCSA Regulations Apply." .......7
3. All Claims Derivative of Plaintiff's Meal and Rest Break Claims Also Should be Dismissed. .................................................. 13
C. Plaintiff's PAGA Claim Should be Dismissed .................................................. 13
D. Plaintiffs' Class Allegations Should Be Dismissed and/or Stricken ......... 16
VI. CONCLUSION .................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Almy v. Kickert Sch. Bus Line, Inc.*,
722 F.3d 1069 (7th Cir. 2013) ... 9

*Alvarado v. Wal-Mart Assocs.*,
No. CV 20-1926 DSF, 2020 U.S. Dist. LEXIS 212159 (C.D. Cal. Aug. 7, 2020) ... 22

*Alvarez v. Xpo Logistics Cartage*,
18-cv-03736-RGK (E), 2021 U.S. Dist. LEXIS 172182 (C.D. Cal. Mar. 30, 2021) ... 6

*Antemate v Estenson Logistics, LLC*,
No. CV 14-5255 DSF, 2017 U.S. Dist. LEXIS 184502 (C.D. Cal Nov. 7, 2017) ... 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... *passim*

*Bell Atlantic v. Twombly*,
550 U.S. 544 (2007) ... 1, 2, 4, 22

*Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*,
136 F.3d 1360 (9th Cir. 1998) ... 20

*Bush v. Vaco Tech. Servs.*,
LLC, No. 17-cv-05605-BLF, 2018 U.S. Dist. LEXIS 74613 (N.D. Cal. May 2, 2018) ... 15

*Byrd v. Masonite Corp.*,
2016 U.S. Dist. LEXIS 23435 (C.D. Cal. Feb. 25, 2016) ... 22, 23

*Carlos v. Wal-Mart Assocs.*,
No. ED CV 21-00294-AB, 2021 U.S. Dist. LEXIS 205534 (C.D. Cal. Aug. 13, 2021) ... 16

*Class Plaintiffs v. City of Seattle*,
955 F. 2d 1268 (9th Cir. 1992) ... 20

*Collins v. Heritage Wine Cellars, Ltd.*,
589 F.3d 895 (7th Cir. 2009) ... 9

*Commodity Carriers, Inc. v. Fed. Motor Carrier Safety Admin.*,
434 F.3d 604 (D.C. Cir. 2006) ........ 8

*Connell v. Heartland Express*,
2:19-CV-09584-RGK-JC, 2020 U.S. Dist. LEXIS 29235. (C.D. Cal. Feb. 6, 2020) ........ 12

*Dimon v. Cnty. of L.A.*,
166 Cal. App. 4th 1276, 83 Cal. Rptr. 3d 576 (2008) ........ 15

*Duley v. Centerra Grp., LLC*,
No. 2:19-cv-08754-AB, 2020 U.S. Dist. LEXIS 209866 (C.D. Cal. Mar. 18, 2020) ........ 16

*Duran v. Maxim Healthcare Servs.*,
No. CV 17-01072-AB (Ex), 2018 U.S. Dist. LEXIS 225777 (C.D. Cal. Mar. 9, 2018) ........ 22

*Edwards v. Oportun, Inc.*,
193 F. Supp. 3d 1096 (N.D. Cal. 2016) ........ 23

*Estrada v. Kaiser Foundation Hosps.*,
678 Fed. Appx. 494 (9th Cir. 2017) ........ 13

*Fortuna Enters. L.P. v. City of L.A.*,
673 F.Supp.2d 1000 (C.D. Cal. 2008) ........ 6

*Freitas v. Heartland Express, Inc.*,
No. 2:19-CV-00383-SAB, 2022 U.S. Dist. LEXIS 5552 (E.D. Wash., Jan. 11, 2022) ........ 13

*Goro v. Flowers Foods*,
No. 17-CV-2580 JLS (JLB), 2019 U.S. Dist. LEXIS 231914 (S.D. Cal. Jan. 8, 2019) ........ 14

*Hill v. R+L Carriers, Inc.*,
No. C 09-01907-CW, 2009 U.S. Dist. LEXIS 120564 (N.D. Cal. Dec. 7, 2009) ........ 3, 8

*Holder v. Holder*,
305 F.3d 854 (9th Cir. 2002) ........ 20

*Howard v. America Online, Inc.*,
208 F.3d 741 (9th Cir. 2000) ........ 19

*Int'l Board of Teamsters v. Fed. Motor Carrier Safety Admin.*,
986 F.3d 841 (9th Cir. 2021)........................................................................ 1, 5, 6, 7

*Jimenez v. Domino's Pizza, Inc.*,
238 F.R.D. 241 (C.D. Cal. 2006) ........................................................................... 24

*Jimenez v. Young's Mkt. Co., LLC*,
No. 21-cv-02410-EMC, 2021 U.S. Dist. LEXIS 242424 (N.D. Cal. Dec. 20, 2021) ........................................................................................................ 13

*Jones v. Tirehub, LLC*,
No. 2:21-cv-00564-JAM-DB, 2021 U.S. Dist. LEXIS 141137 (E.D. Cal. July 27, 2021) ("Plaintiff attempts to demonstrate compliance through an unauthorized introduction of extrinsic evidence beyond the allegations in the [complaint].... [T]he Court may not consider Plaintiff's Exhibit A—which is not appended to the complaint but rather to the opposition brief—in its analysis.") .......................................................................................... 15

*Kamm v. California City Dev. Co.*,
509 F.2d 205 (9th Cir. 1975)........................................................................................ 19

*Kemp v. Int'l Bus. Machines Corp.*,
No. C-09-4638 MHP, 2010 U.S. Dist. LEXIS 118801, 2010 WL 4698490 (N.D. Cal. Nov. 8, 2010)............................................................................................ 15

*Kim v. Reins Int'l California, Inc.*,
9 Cal. 5th 73 (2020) ...................................................................................................... 14

*Klitzke v. Steiner*,
110 F.3d 1465 (9th Cir. 1997)....................................................................................... 11

*Krauss v. Wal-Mart, Inc.*,
No. 2:19-cv-00838-JAM-DB, 2020 U.S. Dist. LEXIS 66535 (E.D. Cal. Apr. 14, 2020) ......................................................................................... 14, 15

*Lu v. AT&T Servs.*,
No. C 10-05954.............................................................................................................. 19

*Lucas v. Noypi, Inc.*,
No. H-11-1940, 2012 U.S. Dist. LEXIS 143889 (S.D. Tex. 2012)................................ 9

*Miranda v. R&L Carriers Shared Services*,
Case No. 2:18-cv-10063-SVW-(JCx) (C.D. Cal) ............................................ 17, 18, 20

*Morris v. McComb*,
332 U.S. 422 (1947)........................................................................................................ 12

*Nash v. Horizon Freight Sys.*,
No. 19-cv-01883-VC, 2020 U.S. Dist. LEXIS 132718 (N.D. Cal. July 27, 2020) (49 U.S.C. § 31141 "strips states of the power to 'enforce' state laws that the Secretary determines are preempted, regardless of when the underlying conduct occurred") ........ 6, 10, 11, 12

*Ovieda v. Sodexo Operations*,
LLC, No. CV 12-1750-GHK, 2013 U.S. Dist. LEXIS 99293 (C.D. Cal. July 3, 2013) ........ 14, 22

*Patton v. Midwest Constr. Servs.*,
No. CV 19-8580-JFW(MAAx), 2021 U.S. Dist. LEXIS 134307 (C.D. Cal. June 11, 2021) ........ 6

*Pavloff v. Cardinal Logistics Mgmt. Corp.*,
No. CV 20-00363 PA, 2020 U.S. Dist. LEXIS 222893 (C.D. Cal. Oct. 2, 2020) ........ 13

*Reed v. Autonation, Inc.*,
No. CV 16-08916-BRO, 2017 U.S. Dist. LEXIS 218134 (C.D. Cal. Apr. 20, 2017) ........ 16

*Reich v. Am. Driver Serv., Inc.*,
33 F.3d 1153 (9th Cir. 1994) ........ 11, 12

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006) ........ 19

*Reyna v. WestRock Co.*,
No. 20-cv-01666-BLF, 2020 U.S. Dist. LEXIS 153575 (N.D. Cal. Aug. 24, 2020) ........ 16

*Rodriguez v. QG Printing Corp.*,
No. CV 16-1792-R, 2017 U.S. Dist. LEXIS 232799 (C.D. Cal. Feb. 16, 2017) ........ 23

*Sanders v. Apple Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) ........ 19, 23

*Sanders v. Old Dominion Freight Line, Inc.*,
No. EDCV 18-688 ........ 16

*TBK Partners, Ltd., v. Western Union Corp.*,
675 F.2d 456 (2d Cir. 1982) ........ 20

*Valiente v. Swift Transp. Co. of Arizona, LLC*, No. 2:19-cv-04217-VAP-KKx, 2021 U.S. Dist. LEXIS 67271 (C.D. Cal. Apr. 5, 2021) (MRB Rules claims were preempted based on the 2018 FMCSA Order) ........ 6

*Walling v. Jacksonville Paper Co.*, 317 U.S. 564 (1943) ........ 24

*Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010) ........ 19

**Statutes**

49 U.S.C. § ........ 5

49 U.S.C. § 113(b) ........ 5

49 U.S.C. § 13501(1)(B) ........ 24

49 U.S.C. §§ 13501, 31132, 31136, 31502 ........ 5

49 U.S.C. § 31136(a) ........ 5

49 U.S.C. § 31136 and § 31502 ........ 5

49 U.S.C. § 31141 ........ 5, 6

49 U.S.C. § 31502(b) ........ 5

Business and Professions Code § 17200, *et. seq.*, and a ........ 17

Cal. Code Regs. title 8, § 11090(11) and (12) ........ 10

Cal. Lab. Code § 203 ........ 13

Cal. Lab. Code §§ 226.7, 512, and 516 ........ 10

Cal Lab Code § 2699.3(a)(1)(A) ........ 14

Federal Motor Carrier Safety Act of 1984 ........ 5

**Other Authorities**

49 C.F.R. 390.3T(a)(1) ........ 9

49 C.F.R. 390.5T ........ 9

49 C.F.R. 395.1(a)(1) ........ 7

49 C.F.R. § 1.87(f) ........................................................ 5

49 C.F.R. § 171-180 ........................................................ 9, 11

49 C.F.R. § 390.3T(a)(1) ........................................................ 10

(49 C.F.R. § 390.5T) ........................................................ 7, 8, 11

49 C.F.R. § 395.1, *et seq.* ........................................................ 5

49 C.F.R. § 395.3 (2020) ........................................................ 5

49 C.F.R. § 397.5(c) ........................................................ 9, 11

83 Fed. Reg. 67470 ........................................................ 5

83 Fed. Reg. 67470, 67471 ........................................................ 5, 6

Fed. R. Civ. P. 23(b)(3) ........................................................ 23

Federal Rule of Civil Procedure 12(b)(6) ........................................................ 4

Federal Rule of Civil Procedure 12(f) ........................................................ 1, 19

Federal Rule of Civil Procedure 23 ........................................................ 23

FMCSA Order, at 67,470, 67,470-71, 64,471 n.2 ........................................................ 10

FMCSA Order ("California may no longer enforce the MRB Rules ***with respect to drivers of property-carrying CMVs*** subject to FMCSA's HOS rules") ........................................................ 8

FMCSA, Legal Opinion on Applicability of Preemption Determinations to Pending Lawsuits, p. 4 (Mar. 22, 2019) (RJN, Exhibit "2") ........................................................ 5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff's second attempt to satisfy his pleading obligation, the First Amended Complaint ("FAC"), suffers from many of the same infirmities that plagued Plaintiff's original, dismissed complaint. Many of these deficiencies cannot be cured.

Plaintiff alleges that he is a former employee of Defendants and the FAC again purports to allege various putative wage and hour class action claims, rooted in assertions of minimum/overtime wage and meal and rest break violations and other claims, including wholly derivative statutory claims. Plaintiff continues to ignore that the Hours-of-Service regulations ("HOS Regulations") of the Federal Motor Carrier Safety Administration ("FMCSA") preempts his multiple claims asserting or based on California's Meal and Rest Break Rules ("MRB Rules"). *See Int'l Board of Teamsters v. Fed. Motor Carrier Safety Admin.,* 986 F.3d 841 (9th Cir. 2021). As a result, the third and fourth causes of action of Plaintiff's Complaint, which expressly assert a violation of the MRB Rules, must be dismissed, along with the derivative claims in the sixth, seventh, eighth, and ninth causes of action (and any other claims in whole or in part premised on the MRB Rules).

The few additional allegations now made in the First Amended Complaint serve to confirm that Plaintiff has no basis for the putative class action claims he purports to assert, and thus the class claims must be dismissed and/or stricken entirely under *Twombly* and *Iqbal*. Finally, even if the class allegations were not infirm for other reasons, Plaintiff includes in his putative class scores of potential class members who already have had some or all of their claims extinguished as a result of a proper class-action settlement approved by this Court, and the class claims should be striken on this basis pursuant to Federal Rule of Civil Procedure 12(f).

Defendant respectfully asserts that Plaintiff has now been given enough chances to plead his alleged claims in sufficient detail. His failure to do so in the FAC should lead to the dismissal with prejudice of his improperly plead claims.

## II. PROCEDURAL HISTORY

In his original complaint (Dkt. 1), Plaintiff asserted eight claims against R&L for a wide range of alleged wage and hour violations under California law, suing on behalf of himself and proposed California class of "[a]ll persons who worked for any Defendant in California as an hourly, non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the Class is sent." (Original Compl. ¶ 24). Plaintiff's original complaint lacked any specific factual allegations, including even the most basic facts about his employment, job duties, shift schedule, workload, much less any facts showing that he was similarly situated to the class of R&L employees he sought to represent.

After R&L moved to dismiss Plaintiff's original complaint pursuant to *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (Dkt. 11, 11-1), this Court granted R&L's dismissal motion (with leave to amend), "for [Plaintiff's] failure to allege sufficient factual content to support Plaintiff's legal theories." (Dkt. 37, p. 9). In its Order, the Court concluded that the "Complaint is replete with legal conclusions masquerading as facts" and that, other than the few "salient, nonconclusory facts pleaded," the Complaint "consists of boilerplate allegations closely tracking the elements of the claims without any factual content pertaining specifically to Plaintiff or the class." (*Id.*, pp. 7, 8).

As to Defendants' arguments pursuant to preemption under the FMSCA HOS Regulations seeking dismissal of Plaintiff's MRB Rules claims, the Court concluded that the issue was not ripe for determination because whether Plaintiff was a driver of a property-carrying motor vehicle in interstate commerce "to whom FMCSA regulations apply" rested "outside the four corners of the Complaint, which identifie[d] Plaintiff only as a 'driver' of a truck'." (*Id.*, p. 6) (citing original Complaint, ¶¶ 7, 14 16). In so concluding, the Court cautioned Plaintiff:

> [T]he Court acknowledges that Plaintiff might have avoided the preemptive effect of FMCSA regulations here simply because his Complaint is severely

> underpleaded, for reasons discussed below. Plaintiff risks sanctions if he lacks a good faith basis upon which to prosecute his meal and rest break claims under California law. *See* Fed. R. Civ. P. 11(b).

(*Id.*, p. 7). Plaintiff has not heeded the Court's admonition.

## III. ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

On June 2, 2022, Plaintiff filed his FAC (Dkt. 38). In the FAC, Plaintiff alleges some minor details about his own employment history (i.e., plaintiff worked for 43 weeks from July 2020 to May 2021 for R&L Shared Services; he commenced daily shifts in certain locations in California; his shifts took from eight to twelve hours; and he regularly worked over 40 hours per week (providing six examples)) (FAC, ¶ 17). Plaintiff also asserts allegations about his experience working as a driver (i.e., his clocking in after pre-trip inspections and other tasks; his frequent transport of hazardous materials and the need to monitor his truck for this purpose while the vehicle was "powered down"; his signing of meal period waivers; calls by Plaintiff's supervisors to Plaintiff's personal cellphone; and that Plaintiff was not always provided gloves related to his transportation of hazardous materials) (*Id.*, ¶ 17). Plaintiff also asserts that he resigned on May 6, 2021 (and not May 15, 2021 as set forth in the Declaration of Daniel J. Brake, Dkt. 1-3 at ¶ 7). (*Id.*, ¶ 17).

Plaintiff's FAC leaves most of his claims virtually untouched from his original complaint. Plaintiff's FAC alleges no facts as to any of Defendants' written policies or practices, or that Defendants uniformly violated such policies on a class-wide basis. Instead, Plaintiff simply asserts that certain of his managers or supervisors at times (but not always) violated his rights related to his meal breaks, cell phone, provision of gloves, and sundry other claims.

Plaintiff alleges that R&L Carriers is a holding company (FAC ¶ 19). Although again omitted from the allegations, R&L Shared Services provides driver staffing to property carrying motor carriers. *See Hill v. R+L Carriers, Inc.,* No. C 09-01907-CW, 2009 U.S. Dist. LEXIS 120564, at *2 (N.D. Cal. Dec. 7, 2009).

Plaintiff's FAC purports to pursue claims on behalf of himself and other putative class members, alleging that the Class consists of "[a]ll persons who worked for any Defendant in California as an hourly, non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the Class is sent." (FAC, ¶ 24).[1] In this lawsuit, Plaintiff alleges the following claims: (1) failure to pay minimum wages for all hours worked; (2) failure to pay overtime wages; (3) failure to provide meal periods; (4) failure to authorize and permit rest breaks; (5) failure to indemnify necessary business expenses; (6) failure to timely pay final wages at termination; (7) failure to provide and maintain accurate and compliant wage records; (8) unfair business practices; and (9) Private Attorney General Action ("PAGA").

## IV. LEGAL ARGUMENT

### A. Applicable Legal Standard: Federal Rule of Civil Procedure 12(b)(6) and the *Twombly* and *Iqbal* Pleading Standards.

The Court is well-familiar with the standards regarding a motion pursuant to Rule 12(b)(6) as noted in its earlier decision, so Defendants will not belabor that here. (*See* Dkt. 37). Beyond that, as relevant to this Motion, Plaintiff's class allegations must also meet this pleading test. Simply wanting to represent a class without alleging the facts to show that a class of people were harmed, as Plaintiff alleges he was, is not enough.

### B. Plaintiff's Meal and Rest Break Claims, and Claims Predicated Thereon, Are Preempted By The FMCSA and Corresponding Regulations.

#### 1. Plaintiff's Meal and Rest Break Claims (Third and Fourth Causes of Action) Should be Dismissed.

Plaintiff's claims that he was not afforded meal and rest breaks as required by the California MRB Rules are preempted and should be dismissed. As Defendants argued in their prior Motion to Dismiss, the FMCSA issued an Order in December 2018, determining that

[1] As noted previously, Plaintiff has filed two other class action complaints against two former employers. (*See* Dkt. 11-1, p. 2, fn. 1).

the FMCSA's hours-of-service regulations ("HOS Regulations") preempt California's MRB Rules ("FMCSA Order") (Request for Judicial Notice ("RJN"), Ex. "1"). *See* 83 Fed. Reg. 67470. The Federal Motor Carrier Safety Act of 1984 (the "MCS Act") gives the Secretary of Transportation authority—which has been delegated to the Administrator for the FMCSA—to assess and determine whether its regulations, including its HOS Regulations, preempt state laws and regulations on commercial motor vehicle ("CMV") safety. *See* 49 C.F.R. § 1.87(f); 49 U.S.C. § 31141. Once the FMCSA has concluded that a state law is preempted by a Department of Transportation ("DOT") regulation, states are prohibited from enforcing that law. 49 U.S.C. § 31141; 83 Fed. Reg. 67470, 67471.

FMCSA's HOS Regulations impose certain limits for truck drivers operating CMVs in interstate commerce. *See* 49 C.F.R. § 395.3 (2020); 49 U.S.C. §§ 13501, 31132, 31136, 31502.[2] The FMCSA Order makes clear that the MRB Rules are unenforceable as to property carrying CMV drivers who are subject to the FMCSA's HOS Regulations. *Id.*[3]

On January 15, 2021, the Ninth Circuit upheld the preemptive effect of the FMCSA Order determining that the MCS Act preempted California's MRB Rules. *Teamsters,* 986 F.3d at 845-46. The *Teamsters* court held that the FMCSA "did not act arbitrarily or capriciously in finding that enforcement of" California's meal and rest break "rules 'would cause an unreasonable burden on interstate commerce.'" *Teamsters,* 986 F.3d at 856. The

[2] The FMCSA, an agency with the DOT, is granted authority to further the "highest degree of safety" in motor carrier transportation. 49 U.S.C. § 113(b). The HOS Regulations, at 49 C.F.R. § 395.1, *et seq.,* were adopted pursuant to 49 U.S.C. § 31136 and § 31502. 49 U.S.C. § 31136(a); 49 U.S.C. § 31502(b). The HOS Regulations impose daily limits on truck drivers' driving time, 49 C.F.R. § 395.3, set forth driving time and rest break rules, *id.* § 395.3(a)(3)(ii), and require drivers to keep a record of their duties and driving time, *id.* § 395.8.

[3] The FMCSA also issued an opinion on March 22, 2019, concluding that "an FMCSA preemption decision under [49 U.S.C. §] 31141 precludes courts from granting relief pursuant to the preempted State law or regulation at any time following issuance of the decision, regardless of whether the conduct underlying the lawsuit occurred before or after the decision was issued, and regardless of whether the lawsuit was filed before or after the decision as issued." FMCSA, Legal Opinion on Applicability of Preemption Determinations to Pending Lawsuits, p. 4 (Mar. 22, 2019) (RJN, Exhibit "2").

Ninth Circuit's opinion in *Teamsters* is binding precedent. *Alvarez v. Xpo Logistics Cartage,* 18-cv-03736-RGK (E), 2021 U.S. Dist. LEXIS 172182, at *6 (C.D. Cal. Mar. 30, 2021) (citing *Hart v. Massanari,* 266 F.3d 1155, 1170 (9th Cir. 2001)).

The FMCSA Order and the Ninth Circuit's ruling in *Teamsters* make clear that all of Plaintiff's claims (and the alleged claims asserted on behalf of CMV drivers who are subject to the HOS regulations) for violations of California's MRB Rules are preempted by federal HOS Regulations.[4] Because states are prohibited from enforcing a state law that is preempted,[5] Plaintiff's claims arising from the MRB Rules must be dismissed, along with those claims purportedly asserted on behalf of CMV drivers.[6] Accordingly, the FMCSA Order forecloses any enforcement of the California MRB Rules, and Defendants respectfully assert that Plaintiff's claims for alleged violation of MRB Rules should be dismissed as preempted.

---

[4] Where a party presents a facial challenge to a statute on preemption grounds, "there is no need for further development of the facts," and the matter can appropriately be resolved at the motion to dismiss stage. *Fortuna Enters. L.P. v. City of L.A.,* 673 F.Supp.2d 1000, 1003-04 (C.D. Cal. 2008) (citations omitted).

[5] *See* 49 U.S.C. § 31141; 83 Fed. Reg. 67470, 67471 ("Section 31141 of Title 49, United States code … prohibits States from enforcing a law or regulation on CMV safety that the Secretary of Transportation … has determined to be preempted.").

[6] Based on preemption, multiple district courts have concluded that there is no authority to hear these MRB Rules claims, regardless of when the allegedly violative conduct occurred. *See, e.g., Patton v. Midwest Constr. Servs.,* No. CV 19-8580-JFW(MAAx), 2021 U.S. Dist. LEXIS 134307, at *6-7 (C.D. Cal. June 11, 2021) (claims asserting violation of MRB Rules preempted and court has no authority to enforce MRB Rules regardless of when the underlying conduct occurred); *Valiente v. Swift Transp. Co. of Arizona, LLC*, No. 2:19-cv-04217-VAP-KKx, 2021 U.S. Dist. LEXIS 67271, at *4-5 (C.D. Cal. Apr. 5, 2021) (MRB Rules claims were preempted based on the 2018 FMCSA Order); *Alvarez,* 2021 U.S. Dist. LEXIS 172182, at *8-9 (MRB Rules claims preempted and concluding that 2018 FMCSA Order applies retroactively); *Nash v. Horizon Freight Sys.,* No. 19-cv-01883-VC, 2020 U.S. Dist. LEXIS 132718, at *6-7 (N.D. Cal. July 27, 2020) (49 U.S.C. § 31141 "strips states of the power to 'enforce' state laws that the Secretary determines are preempted, regardless of when the underlying conduct occurred").

**2. Plaintiff is Subject to the FMCSA's HOS Regulations Because Plaintiff was a Driver of a Property-Carrying Motor Vehicle in Interstate Commerce "to Whom FMCSA Regulations Apply."**

There is no question that Plaintiff is subject to the FMCSA's HOS Regulations, as a driver of a property-carrying CMV in interstate commerce. Based on the Parties' meet and confer and prior submissions to the Court, Defendants anticipate that Plaintiff will assert two arguments seeking to avoid application of the HOS Regulations to Plaintiff. Both arguments are misplaced and do nothing to avoid dismissal of these claims.

i. <u>Plaintiff is Subject to the FMCSA's HOS Regulations, Irrespective of Whether Plaintiff's Employer is a Registered Motor Carrier</u>.

First, Plaintiff's FAC alleges that R&L Shared Services, Plaintiff's former employer, does not "possess federal motor carrier authority issued under the" FMCSA. (FAC, ¶ 20). Defendants anticipate that Plaintiff will assert that, unless R&L Shared Services is a registered motor carrier with a United States Department of Transportation ("USDOT") registration number, neither R&L Shared Services, nor any of its employees (like Plaintiff) are subject to the FMCSA and the HOS Regulations. This is incorrect and contrary to applicable law; whether Plaintiff is employed by a registered motor carrier is irrelevant for the purposes of HOS regulations and the preemption analysis.

The FMCSA's HOS Regulations unequivocally apply "to all motor carriers ***and drivers***" (with limited exceptions not applicable here). 49 C.F.R. 395.1(a)(1) (emphasis supplied). Under the FMCSA's HOS Regulations (and the entire MCS Act regulations), "driver" means "***any person*** who operates any commercial motor vehicle" (49 C.F.R. § 390.5T) (emphasis supplied); driver is notably *not defined* as a person employed by a registered motor carrier and the FMCSA's definition of driver is not contingent on whether the driver works for or is employed by a motor carrier. *See Teamsters,* 986 F.3d at 848-49 (explaining that HOS regulations apply to "commercial motor vehicle drivers").

The FMCSA Order preempting California's MRB Rules clearly reflects this broad

scope of the HOS regulations. *See* FMCSA Order ("California may no longer enforce the MRB Rules ***with respect to drivers of property-carrying CMVs*** subject to FMCSA's HOS rules") (emphasis supplied). Thus, the FMCSA's HOS Regulations apply to any person who operates a commercial motor vehicle in interstate commerce, regardless of whether that driver's employer is a registered motor carrier; accordingly, the MCS Act indisputably governs Plaintiff's activities.

Moreover, here, Plaintiff's employer, R&L Shared Services, provides its employed drivers to certain motor carrier entities for the purpose of hauling property loads. *See, e.g., Hill,* 2009 U.S. Dist. LEXIS 120564, at *2. When an R&L Shared Services driver—such as Plaintiff here—is performing interstate trucking activities for another entity who uses R&L Shared Services' drivers, that driver (i.e., Plaintiff) is subject to the FMCSA HOS Regulations. This is because the FMCSA regulations define an "employee" broadly to even include independent contractors. 49 C.F.R. § 390.5T; *see also Commodity Carriers, Inc. v. Fed. Motor Carrier Safety Admin*., 434 F.3d 604, 608 (D.C. Cir. 2006) (finding that the HOS regulations apply to owner-operators contracted with motor carriers because they are the employees of the motor carrier within the meaning of FMCSA regulations). Plaintiff thus would be considered an employee of whatever motor carrier for which he is driving within the meaning of the FMCSA regulations, while he operates a CMV in interstate commerce.[7] For this additional reason, Plaintiff, while driving a CMV in interstate commerce, is subject to FMCSA's HOS Regulations.[8]

---

[7] Notably, although Defendants' Motion to Dismiss is not reliant on this fact, Plaintiff, as an employee of R&L Shared Services, performed trucking services for Greenwood Motor Lines, Inc., which is registered with the FMCSA. (*See* RJN, Exhibit "3") (Federal Motor Carrier Safety Administration, printout of Carrier Licensing Information for Greenwood Motor Lines, Inc., https://ai.fmcsa.dog.gove/SMS/Carrier/63391/Overview.aspx?FirstView=True.). Greenwood has a registered trade name of R+L Carriers with the Ohio Secretary of State. (*See* RJN, Exhibit "4") (Ohio Secretary of State Certificate of Greenwood Motor Lines, Inc.'s Registration of Trade Name R+L Carriers).

[8] Additionally, the allegations in Plaintiff's FAC establish that Plaintiff was driving a CMV. Under 49 C.F.R. § 390.5T ("Definitions"), a CMV includes vehicles that transport hazardous

Finally, and contrary to Plaintiff's argument, the HOS Regulations apply to motor carriers regardless of whether they have a USDOT number registration, and thus, registration of the motor carrier employer is not relevant to the determination as to whether the HOS Regulations apply to that carrier. A motor carrier is a person who provides transportation of property or passengers by commercial motor vehicle. 49 C.F.R. 390.5T. Motor carrier is *not* defined as an entity that has registered for a USDOT number. Further, the MCS Act regulations apply to "all employers, employees, and commercial motor vehicles that transport property or passengers in interstate commerce." 49 C.F.R. 390.3T(a)(1). All of these statements of applicability are not conditioned upon whether a motor carrier has a USDOT registration.

Accordingly, a driver operating a CMV in interstate commerce for an unregistered motor carrier employer is still subject to the HOS Regulations. *See e.g.*, *Collins v. Heritage Wine Cellars, Ltd.*, 589 F.3d 895, 897-901 (7th Cir. 2009) (finding that a wine distributor that is not registered with the Secretary of Transportation is subject to the HOS regulations); *see also Almy v. Kickert Sch. Bus Line, Inc.*, 722 F.3d 1069, 1074 (7th Cir. 2013); *Lucas v. Noypi, Inc.*, No. H-11-1940, 2012 U.S. Dist. LEXIS 143889, at *15 (S.D. Tex. 2012) ("Plaintiffs offer no authority to support the contention that [DOT] registration is required to bring a motor

---

materials in quantities requiring placarding under the Hazardous Materials Regulations at 49 C.F.R. § 171-180. Drivers of these vehicles must attend to these vehicles when on roads or lots with public access. *See* 49 C.F.R. § 397.5(c). Here, Plaintiff alleges he ***often*** drove hazardous materials and many times was required to watch over his vehicle when transporting hazardous materials. *See* FAC, ¶ 17(e)(4) ("Because Plaintiff often transported hazardous materials, Plaintiff asked … for gloves … to protect Plaintiff's hands from coming into contact with chemicals…."); *see also* FAC, ¶ 17(d)(2) ("Defendants required Plaintiff to maintain control or watch over his vehicle when Plaintiff was transporting hazardous materials, ***which Plaintiff estimates he transported during most of his trips***, when Plaintiff was unable to park his truck in a secure location (such as within the confines of Defendants' terminal areas") (emphasis supplied)).

carrier within the Secretary's jurisdiction.").[9]

ii. Plaintiff is an Interstate Driver, Subject to the FMCSA's HOS Regulations.

As a second attempt to dodge preemption of the MRB Rules under the FMCSA, and to escape his status as an "interstate" driver, Plaintiff's FAC alleges that Plaintiff "estimates that he drove for Defendants wholly intrastate roughly 90% of the times he drove for Defendants … and that driving across state lines was the exception to Plaintiff's and other drivers' regular intrastate work." (FAC, ¶ 17). This does not save Plaintiff from federal preemption of his California MRB Rules claims.

Again, the FMCSA Order expressly preempts California MRB Rules[10] as applied to property carrying CMV drivers who are subject to the FMCSA HOS Regulations. As stated, to be subject to the HOS Regulations (and preemption), Plaintiff must have been engaged in interstate commerce. *See* 49 C.F.R. § 390.3T(a)(1); § 395.1(a); *Nash v. Horizon Freight Sys.*, No. 19-cv-01883-VC, 2020 U.S. Dist. LEXIS 132718, at *2 (N.D. Cal. July 27, 2020) (HOS Regulations "apply only to drivers operating in interstate commerce"). Here, because Plaintiff admits in his Complaint that at least 10% of his time was devoted to transporting goods across state lines, this resolves the issue of whether he was engaged in interstate commerce; he absolutely was for multiple reasons.

First, interstate commerce, as it relates to the federal HOS Regulations, means "trade, traffic, or transportation in the United States ... (1) [b]etween a place in a State and a place outside of such State (including a place outside of the United States); (2) [b]etween two places in a State through another State or a place outside of the United States; or [3] [b]etween two places in a State as part of trade, traffic, or transportation originating or terminating outside the

[9] Indeed, the interpretation of FMCSA regulations put forth by Plaintiff would lead to absurd results because it would mean that the MCS Act HOS Regulations (and other regulations) would apply only to those motor carriers that voluntarily register for a USDOT number.

[10] These rules include Cal. Lab. Code §§ 226.7, 512, and 516; Cal. Code Regs. title 8, § 11090(11) and (12); and California Industrial Welfare Commission Order No. 9-2001 §§ 11 and 12. (*See* FMCSA Order, at 67,470, 67,470-71, 64,471 n.2).

State or the United States." 49 C.F.R. § 390.5T; *Klitzke v. Steiner*, 110 F.3d 1465, 1469 (9th Cir. 1997). Even if a driver does not actually drive interstate (which is not the case here based on Plaintiff's own allegations), the driver still operates in interstate commerce if the driver drove for a motor carrier that engaged in interstate commerce and the driver could reasonably have been expected to conduct one of the carrier's interstate movements. *See Reich v. Am. Driver Serv., Inc.*, 33 F.3d 1153, 1157 (9th Cir. 1994) (applying the Secretary of Transportation's interpretation that drivers would be subject to the Secretary's jurisdiction if they could reasonably have been expected to make one of a carrier's interstate runs).

Plaintiff's FAC acknowledges by his admission that, as an employee for R&L Shared Services, he drove for a motor carrier in interstate commerce at least 10% of the time. It thus cannot be disputed, based on Plaintiff's own allegations, that Plaintiff could expect that, through his relationship with R&L Shared Services, he could have been assigned to interstate movements at any time. By driving across state lines for a motor carrier through his work for R&L Shared Services, and being subject to assignments involving these activities, Plaintiff was thus operating in interstate commerce for a motor carrier. *See Antemate v Estenson Logistics, LLC*, No. CV 14-5255 DSF (RAOx), 2017 U.S. Dist. LEXIS 184502, at *16 (C.D. Cal Nov. 7, 2017) ("[I]f there is no evidence that individual employees actually engaged in interstate commerce, the DOT still would have jurisdiction" if the carrier has engaged in interstate commerce and the individual employee "could reasonably have been expected to make one of the carrier's interstate runs" in the "regular course of [his or her] employment.").

Second, and separately, the holding in *Nash* confirms that Plaintiff can appropriately be characterized as an "interstate" driver subject to the HOS Regulations. *Nash,* 2020 U.S. Dist. LEXIS 132718, at *3. Again, Plaintiff's FAC alleges that he drove interstate at least 10% of the time.[11] As explained in *Nash*, "even a minor involvement in interstate" activities

---

[11] As stated, Plaintiff alleges that "***most of his trips***" involved his transporting of "hazardous materials," which makes "most of his trips" "interstate." *See* FAC, ¶ 17(d)(2) (emphasis supplied); *see also* 49 C.F.R. § 171-180; 49 C.F.R. § 397.5(c). Thus, Plaintiff's

is enough to qualify as an interstate driver. *Id.* at *5 (citing *Reich*, 33 F.3d at 1155).[12] Plaintiff admits in the FAC those predicate facts here.

Because Plaintiff specifically alleges that he drove in interstate commerce (crossing state lines) for a minimum of 10% of his trips, his own pleading establishes that he is an interstate driver under the HOS Regulations. *Nash,* 2020 U.S. Dist. LEXIS 132718, at *5. *See Connell v. Heartland Express,* 2:19-CV-09584-RGK-JC, 2020 U.S. Dist. LEXIS 29235. at *6-7 (C.D. Cal. Feb. 6, 2020) ("Supreme Court precedent establishes that the Secretary of Transportation retains regulatory power over drivers like Plaintiff even where 'a sporadic and minute portion' of a driver's activities 'affects the safety of operation of trucks in interstate commerce.'"); *Morris v. McComb,* 332 U.S. 422, 423, 438 (1947) (the Interstate Commerce Commission, which has since dissolved but whose regulatory power is still retained by the Secretary of Transportation, had jurisdiction over truck drivers who drove 3%-4% of their routes interstate"); *Reich v. Am. Driver Serv., Inc.*, 33 F.3d 1153, 1155 (9th Cir. 1994) (citing *Morris* to clarify that "even a minor involvement in interstate commerce as a regular part of an employee's duties can subject that employee to the Secretary of Transportation's jurisdiction" unless fairly classified as *de minimis*).[13]

---

characterization of himself as an "intrastate" driver as to "90%" of his trips is obviously wrong as it is inconsistent with the nature of his trips involving hazmat.

[12] The Court noted that "Nash himself describes the test "as whether his activities had a connection with interstate commerce that is more than *de minimis.*" *Nash,* 2020 U.S. Dist. LEXIS 132718, at *5.

[13] Moreover, although inconsistent with Plaintiff's allegations, even if this Court were to assume that Plaintiff individually devoted 100% of his time driving within the boundaries of California (a fact belied by the plain allegations of Plaintiff's FAC), this itself would not answer the question as to whether Plaintiff's work would be considered "intrastate" as Plaintiff alleges. To establish himself as an "intrastate" driver in that scenario, the pivotal issue relates not to *where* Plaintiff drove, but rather, to the character of his trips. As explained in *Nash,* even if a driver drove entirely within California, "those trips were part of interstate commerce so long as there was a 'practical continuity of movement' ***between his intrastate transportation of goods and the prior or subsequent travel of those goods across state lines***.'" *Nash,* 2020 U.S. Dist. LEXIS 132718, at *3 (emphasis supplied) (citation omitted). Plaintiff asks the Court to imply the impossible—that even though he admits he drove

### 3. All Claims Derivative of Plaintiff's Meal and Rest Break Claims Also Should be Dismissed.

When a claim derives from a preempted claim, the derivative claim also fails. *Estrada v. Kaiser Foundation Hosps.*, 678 Fed. Appx. 494, 497 (9th Cir. 2017); *see also Jimenez v. Young's Mkt. Co., LLC*, No. 21-cv-02410-EMC, 2021 U.S. Dist. LEXIS 242424, at *34 (N.D. Cal. Dec. 20, 2021) ("Because overtime pay and meal periods claims are preempted, the derivative claims of failure to pay final wages and provide accurate itemized wage statements are also preempted."). Therefore, all of Plaintiff's claims derivative of his meal and rest break claims are preempted and should be dismissed. This includes Plaintiff's sixth and seventh causes of action alleging failure to timely pay final wages at termination (Cal. Lab. Code § 203) and failure to provide accurate itemized wage statements (*id.* § 226), in which Plaintiff has expressly asserted that they are premised in part on missed meal and rest break claims. *See* FAC pp. 31-34. The same is true as to Plaintiff's eighth cause of action alleging UCL claims, which Plaintiff alleges are based in part, on "failure to provide meal periods" (FAC ¶ 94), and "failure to authorize and permit rest periods" (*id.* ¶ 95). To the extent this UCL claim is based on any alleged violations of MRB Rules, it is preempted. *See Pavloff v. Cardinal Logistics Mgmt. Corp*., No. CV 20-00363 PA (KKx), 2020 U.S. Dist. LEXIS 222893, at *16-17 (C.D. Cal. Oct. 2, 2020) (court dismissed UCL claim to the extent it was based on preempted MRB Rules violations); *Freitas v. Heartland Express, Inc.*, No. 2:19-CV-00383-SAB, 2022 U.S. Dist. LEXIS 5552, at *10-12 (E.D. Wash., Jan. 11, 2022) (dismissing claims alleging MRB Rules violations, as well as derivative claims, including those under UCL).[14]

## C. <u>Plaintiff's PAGA Claim Should be Dismissed</u>

Plaintiff's PAGA claim should be dismissed both because Plaintiff has failed to show

---

interstate 10% of the time, none of the other property he carried ever began or ended its journey out-of-state. Plaintiff's 10% interstate driving allegation necessarily entails the carrying of more "interstate" property than that in trips crossing state lines.

[14] To the extent any of Plaintiff's other claims (i.e., minimum wage and overtime wage claims) are premised on the MRB Rules, such claims likewise are preempted.

exhaustion of administrative remedies, and because dismissal of the underlying claims compels dismissal of the derivative PAGA claim.

1. Plaintiff Failed to Attach an LWDA Complaint and Therefore Has Failed to Show Exhaustion of Administrative Remedies

A PAGA claim is an enforcement action between the Labor and Workforce Development Agency ("LWDA") and the employer, with the PAGA plaintiff acting on behalf of the government. *Kim v. Reins Int'l California, Inc.,* 9 Cal. 5th 73, 86 (2020). "PAGA sets forth an administrative exhaustion requirement to give the [LWDA] 'the initial opportunity to investigate and cite employers for Labor Code violations.'" *Ovieda v. Sodexo Operations*, LLC, No. CV 12-1750-GHK (SSx), 2013 U.S. Dist. LEXIS 99293, at *6 (C.D. Cal. July 3, 2013). Before a PAGA claim can be filed in Court, an aggrieved employee must "give written notice by online filing with the Labor and Workforce Development Agency and by certified mail to the employer of the specific provisions of this code alleged to have been violated, including the facts and theories to support the alleged violation." Cal Lab Code § 2699.3(a)(1)(A). If the LWDA declines to investigate the claim within 65 days, *then* the aggrieved employee may file suit. *Id.* § 2699.3(a)(2)(B). A plaintiff must exhaust this administrative remedy before filing suit; failure to do so is an adequate ground to dismiss a PAGA claim. *See, e.g. Ovieda*, 2013 U.S. Dist. LEXIS 99293, at *15; *Goro v. Flowers Foods*, No. 17-CV-2580 JLS (JLB), 2019 U.S. Dist. LEXIS 231914, at *7 (S.D. Cal. Jan. 8, 2019).

To demonstrate exhaustion, the Plaintiff must include a copy an LWDA complaint. "Without including the facts and theories Plaintiff provided to LWDA in her complaint, the Court cannot 'independently conclude that [she] has satisfied the requirements of the statute as a matter of law.'" *Krauss v. Wal-Mart, Inc.*, No. 2:19-cv-00838-JAM-DB, 2020 U.S. Dist. LEXIS 66535, at *25 (E.D. Cal. Apr. 14, 2020) (quoting *Kemp v. Int'l Bus. Machines Corp.*, No. C-09-4638 MHP, 2010 U.S. Dist. LEXIS 118801, 2010 WL 4698490, at *3 (N.D. Cal. Nov. 8, 2010)). This failure cannot be cured by a later submission of an LWDA complaint.

*See Jones v. Tirehub, LLC,* No. 2:21-cv-00564-JAM-DB, 2021 U.S. Dist. LEXIS 141137, at *5-6 (E.D. Cal. July 27, 2021) ("Plaintiff attempts to demonstrate compliance through an unauthorized introduction of extrinsic evidence beyond the allegations in the [complaint].... [T]he Court may not consider Plaintiff's Exhibit A—which is not appended to the complaint but rather to the opposition brief—in its analysis.").

Plaintiff has failed to attach an LWDA complaint or any supporting documentation to the Complaint. Thus, the Court should dismiss the PAGA claim. *See Jones*, 2021 U.S. Dist. LEXIS 141137, at *5-6 (dismissing PAGA claim based on failure to attach LWDA complaint); *Krauss*, 2020 U.S. Dist. LEXIS 66535, at *25 (same); *Kemp*, 2010 U.S. Dist. LEXIS 118801, at *8–9 (same).[15]

2. Plaintiff's Derivative PAGA Claim Fails Because the Underlying Claims Fail

"PAGA 'was adopted to empower aggrieved employees, acting as private attorneys general, to seek civil penalties for Labor Code violations." *Dimon v. Cnty. of L.A.*, 166 Cal. App. 4th 1276, 1280 n.5, 83 Cal. Rptr. 3d 576, 579 (2008) (quoting *Dunlap v. Superior Court*, 142 Cal.App.4th 330, 336 (2006)). PAGA claims are thus derivative of underlying violations of the Labor Code. *See id*.

In a civil complaint, a PAGA claim is derivative of a pleaded claim where it "does not add any factual allegations" beyond those pleaded in the claims alleging underlying violations of the Labor Code. *Bush v. Vaco Tech. Servs.*, LLC, No. 17-cv-05605-BLF, 2018 U.S. Dist.

[15] Even if the Court considers the LWDA case number stated in the Complaint as sufficient to demonstrate exhaustion, a review of the case number, LWDA-CM-862197-22 (FAC ¶ 108) via a search of the California Department of Industrial Relations website indicates the employer for the PAGA complaint was "R&L Carriers Shared Services, LLC." It is not clear whether any LWDA complaint ever was stated against R&L Carriers, Inc. Thus, while the failure to attach an LWDA complaint means Defendants and the Court cannot know what claims, if any, were presented to the LWDA, the limited information available based on the case number stated by Plaintiff appears to show that no LWDA complaint was filed against any Defendants other than R&L Shared Services. If not, Plaintiff has not exhausted administrative remedies against R&L Carriers, Inc. or the Unnamed Defendants, and thus the PAGA claim must be dismissed as to those Defendants.

LEXIS 74613, at *35 (N.D. Cal. May 2, 2018); *see also Reyna v. WestRock Co.*, No. 20-cv-01666-BLF, 2020 U.S. Dist. LEXIS 153575, at *32 (N.D. Cal. Aug. 24, 2020) ("Plaintiff's PAGA claim does not add any factual allegations and is derivative of her Labor Code claims."). A derivative PAGA claim can proceed only to the extent the underlying claims it is based on are adequately pleaded. *See Reed v. Autonation, Inc.*, No. CV 16-08916-BRO (AGRx), 2017 U.S. Dist. LEXIS 218134, at *20 (C.D. Cal. Apr. 20, 2017).

Thus, where a court dismisses the underlying substantive claims, it also must dismiss the derivative PAGA claim. *See, e.g.*, *Carlos v. Wal-Mart Assocs.*, No. ED CV 21-00294-AB (KKx), 2021 U.S. Dist. LEXIS 205534, at *14 (C.D. Cal. Aug. 13, 2021); *Duley v. Centerra Grp., LLC*, No. 2:19-cv-08754-AB (JCx), 2020 U.S. Dist. LEXIS 209866, at *14–15 (C.D. Cal. Mar. 18, 2020); *Sanders v. Old Dominion Freight Line, Inc.*, No. EDCV 18-688 DSF (SHKx), 2018 U.S. Dist. LEXIS 226355, at *10-11 (C.D. Cal. June 25, 2018).

Here, Plaintiff's PAGA claim contains no independent factual allegations. Plaintiff's PAGA claim begins by expressly incorporating by reference all the allegations previously pleaded. (FAC ¶ 105). Plaintiff does not even specify *which* underlying labor code violations support his PAGA claim.[16] (FAC ¶¶ 106–09). There thus are no independent bases for any portion of the PAGA claim, and the PAGA claim must rise and fall together with the underlying claims. Because, as discussed above, the MRB Rules claims fail (and any derivative claims on which they are based), Plaintiff's PAGA claim fails to the same extent.

### D. Plaintiffs' Class Allegations Should Be Dismissed and/or Stricken

#### 1. Plaintiff's Class Claims Are Barred Because the Putative Class Improperly Includes Members Who Already Have Released Any and All Claims.

Plaintiff's class definition is defective. Plaintiff purports to bring a class action on behalf of "[a]ll persons who worked for any Defendant in California as an hourly, non-exempt

[16] This further illustrates how Plaintiff's failure to attach an LWDA complaint deprives Defendants and the Court of an opportunity to assess the bases for Plaintiff's PAGA claim.

employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the Class is sent." (FAC ¶ 34). Plaintiff's initial complaint was filed on January 18, 2022, and thus, four years prior to the filing of the complaint is January 18, 2018.

As Plaintiff is fully aware, a wage and hour class action suit was brought against R&L Shared Services—one of the defendants in this case—on August 14, 2018. *See Miranda v. R&L Carriers Shared Services,* Case No. 2:18-cv-10063-SVW-(JCx) (C.D. Cal) ("*Miranda*").[17] An Order Granting Final Approval of Class Action Settlement was entered in *Miranda* on February 21, 2020 ("*Miranda* Class Action Order"). (*See* RJN Exhibit "5"). The *Miranda* class was defined to include "all individuals who were employed by Shared Services as non-exempt employees referred to as drivers or combo workers within the state of California at any time during the period from August 14, 2014 through October 15, 2019." (*Id.* at ¶ 2).

The *Miranda* Class Action Order provides that, "[b]y operation of this Order and upon the effective date of the Judgment, Plaintiff shall release, relinquish, and discharge all claims against the Releasees released under the terms of Section 5.8 of the Settlement." (*Miranda* Class Action Order, ¶ 11). It further provides, "[b]y operation of this Order and upon the effective date of the Judgment, all Class Members who have not opted out of the Settlement shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever relinquished and discharged all Released Claims against the Releasees as set forth in Section 5.8.2 of the Settlement." (*Id.*, ¶ 12).

The *Miranda* Joint Stipulation of Class Action Settlement ("Class Settlement") (RJN Exhibit "6") defines "Class Member Released Claims" as to each participating Claimant, as "any and all known and unknown claims, rights, demands, liabilities, and causes of action

[17] The *Miranda* Lawsuit alleged failure to provide overtime wages, meal periods, rest periods, to pay due wages at termination, failure to provide accurate wage statements, violations of Business and Professions Code § 17200, *et. seq.*, and a PAGA claim.

arising from and/or related to, the same set of operative facts as alleged or could have been alleged against Releasees in the First Amended Complaint…." (Class Settlement, § 2.5). "Releasees" in the Class Settlement is defined as "R&L Carriers Shared Services, LLC … and each of its past, present and/or future officers, directors, owners, managers, employees, agents, representatives, attorneys, insurers, investors, shareholders, administrators, parent companies, subsidiaries, related or affiliated entities, divisions, predecessors, successors, and/or assigns, in their personal, individual, official, and/or corporate capacities." (*Id.*, § 2.28). Section 5.8 of the Class Settlement pertains to Releases and provides, in pertinent part, that, "[u]pon the Effective Date, the Class Representative and each Participating Claimant shall be deemed to have fully, finally, and forever released the Releasees from all Class Member Released Claims through the Preliminary Approval Date, including, as to Participating Claimants who endorse and cash their Settlement Checks claims under FLSA" (*Id.*, § 5.8.1), and that, the "Class Representatives shall be deemed to have fully, finally, and forever released Releasees from all Class Representatives Released Claims through the Final Approval Date." (*Id.,* §5.8.2) (collectively, "Release").

The Release in *Miranda* thus bars all wage and hour-type claims, as a matter of law, against R&L Shared Services and its "affiliated entities"—which includes R&L Carriers, Inc.[18]—brought by *Miranda* class members or representatives, defined as California "drivers or combo workers" of R&L Shared Services, from August 14, 2014 through October 15, 2019. Despite the *Miranda* Release, Plaintiff purports to represent a class for the period beginning January 8, 2018, of "[a]ll persons who worked for any Defendant in California as an hourly, non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice the Class is sent." Based on the filing date of the initial complaint here, members of Plaintiff's purported class were parties to the *Miranda* matter by virtue of their membership in the *Miranda* Settlement Class. Plaintiff thus improperly attempts to include in the class here R&L Shared Services'

[18] *See* Court's Order Re: Motion to Dismiss, Motion to Remand (Dkt. 37), p. 10.

"drivers or combo workers" employed through and including October 15, 2019, who already have released their claims.

Ninth Circuit cases are clear that a release from the settlement of a prior class action bars future claims, even if asserted by new plaintiffs:

> The weight of authority holds that a federal court may release not only those claims alleged in the complaint, but also a claim "based on the identical factual predicate as that underlying the claims in the settled class action...." A class settlement may also release factually related claims against parties not named as defendants…. Thus, [a prior] release encompasses Plaintiffs' claims if they arise from an identical factual predicate as the claims asserted by the [prior] class.

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (citation and quotation marks omitted) (holding "Plaintiffs' claims were extinguished by the [prior] settlement"); *see also Howard v. America Online, Inc.*, 208 F.3d 741, 746-47 (9th Cir. 2000) (settlement of class action raising state-law claims for unfair billing practices released RICO claims based on the same practices). And, this Court may decide this issue at the motion-to-dismiss stage. *See, e.g.*, *Reyn's Pasta Bella*, 442 F.3d at 745; *Howard*, 208 F.3d at 746; *Lu v. AT&T Servs*., No. C 10-05954 SBA, 2011 U.S. Dist. LEXIS 65617, at *13-14 (N.D. Cal. June 21, 2011) (dismissing wage/hour claim based on release from settlement of prior class action).

Additionally, a court may strike from a pleading "an insufficient defense" or "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of Rule 12(f) is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.,* 618 F.3d 970, 973 (9th Cir. 2010). Class definitions that are deficient may be stricken on the pleadings. *See Kamm v. California City Dev. Co.,* 509 F.2d 205, 207 (9th Cir. 1975) (striking class allegations because state action with respect to the same controversy had already commenced); *Sanders v. Apple Inc.,* 672 F. Supp. 2d 978, 990-91 (N.D. Cal. 2009)

(striking class allegations where the class definition necessarily included individuals who lacked standing and where reliance was an element of the claim, which would force the court to conduct individual inquiries for each class member if the class were certified).

Because Plaintiff is prohibited from bringing wage and hour class claims on behalf of members of the *Miranda* settlement class (R&L's drivers or combo workers for the period January 18, 2018 through October 15, 2019) who have indisputably released their claims against Defendants, Plaintiff's class claims should be stricken.[19] *See Class Plaintiffs v. City of Seattle,* 955 F. 2d 1268, 1287 (9th Cir. 1992) ("The weight of authority holds that a federal court may release not only those claims alleged in the complaint, but also a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action." (quotation marks omitted)); *TBK Partners, Ltd., v. Western Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982) ("[W]e see no reason why the judgment upon settlement cannot bar a claim that would have to be based on the identical factual predicate as that underlying the claims in the settled class action.").

**2. Plaintiff's Class Claims Fail Under *Twombly/Iqbal.***

Plaintiff's effort to state any cause of action on behalf of the purported class utterly fails, as Plaintiff's class allegations are conclusory, devoid of facts, and "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal,* 556 U.S at 678. Plaintiff has pleaded no facts to plausibly suggest Defendants' liability to the class he proposes.[20]

---

[19] This Court may take judicial notice of the pleadings and orders in the *Miranda* litigation to determine what issues were litigated in that matter. *See Holder v. Holder,* 305 F.3d 854, 866 (9th Cir. 2002); *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank,* 136 F.3d 1360, 1364 (9th Cir. 1998).

[20] Also glaring is Plaintiff's failure to plead how he can represent the class he proposes, where (1) Plaintiff alleges he was a "driver" for R&L Shared Services, but the proposed class expansively consists of *any* employee of R&L (obviously, beyond drivers), and (2) Plaintiff seeks to represent a class for the period beginning in January 2018, but he did not begin his employment with R&L Shared Services until May 2020.

Plaintiff alleges no facts to demonstrate or even suggest that any member of the putative class had similar work experiences. The Complaint does not allege any facts showing that Defendants had statewide policies or practices giving rise to Plaintiff's causes of action such that common questions of fact and/or law could provide class-wide answers and would be susceptible to class-wide proof. *See Oveida,* 2012 U.S. Dist. LEXIS 173844, at *11 (C.D. Cal. May 7, 2012) ("Plaintiff alleges no facts to demonstrate or even suggest that any member of the putative class had similar work experiences," meaning Plaintiff's "conclusory allegation does not meet the minimum pleading requirements"). Instead, just as he did in his original complaint, Plaintiff contends *ipse dixit* that "putative class members" also suffered the exact same violations about which he complains.

Indeed, Plaintiff's Complaint asserts the *exact same* legal conclusions and/or allegations devoid of any factual detail regarding the class claims as he did in his original complaint, such as: (1) Defendants maintained a policy and practice of not paying Plaintiff and the Class for all hours worked…." (FAC ¶ 26); (2) "Plaintiff and the Class were required to arrive at work early … to perform pre-trip inspections of the truck, including safety checks, off the clock and uncompensated" (*id.*; *see also* ¶ 17(c) ("thirty minutes prior to start time"); "Plaintiff and the Class were required to use their own personal cellular telephones for work-related purposes while off the clock and uncompensated" (*id.*); "Defendants failed to maintain accurate records of the hours Plaintiff and the Class worked" (*id.*); "Defendants have wrongfully failed to provide Plaintiff and the Class with legally compliant meal periods" (FAC, ¶ 27); "Defendants have wrongfully failed to authorize and permit Plaintiff and the Class to take timely and duty-free rest periods" (FAC, ¶ 28). *In dismissing Plaintiff's original complaint, this Court already has decided that these types of allegations are insufficient*. (Dkt. 37, pp. 8-9).

Moreover, a simple comparison of Plaintiff's original complaint and the FAC easily reveals that the only sparse and insufficient "facts" that have been added in the FAC relate to the limited category of "drivers," and nothing with respect to people holding other positions

but swept up within the class definition. Plaintiff's FAC now includes the following three conclusory allegations: that "driving across state lines was the exception to Plaintiff's and other drivers' regular intrastate work" (FAC, ¶ 17(a)(2)); that "Plaintiff … believes Defendants required Plaintiff and other drivers to sign meal period waivers" (FAC, ¶ 17(d)(4)), and that Plaintiff was told that "Defendants' company-issued cellphones were only for 'pick up and delivery' or 'P-D' drivers and not for other drivers like Plaintiff" (FAC, ¶ 17(e)(2)). These new words in Plaintiff's FAC are still legal conclusions, just longer winded.

Where a plaintiff fails to allege facts tying a class of employees together, a motion to dismiss should be granted. *See Ovieda,* 2012 U.S. Dist. LEXIS 173844, at *10-12; *see also Byrd v. Masonite Corp.,* 2016 U.S. Dist. LEXIS 23435, at *13 (C.D. Cal. Feb. 25, 2016). *Twombly* and *Iqbal* instruct that raising a conceivable or a conceptual possibility of a violation without some factual predicate is insufficient to survive a motion to dismiss. *See Twombly,* 550 U.S. at 570, *Iqbal,* 556 U.S. at 678. Plaintiff fails, per his obligation under governing law and by this Court's express Order, to allege specific, substantive facts to support an inference of a plausible claim to relief; that is, his FAC asserts sweeping allegations that fail to establish that the wage and hour violations he says he experienced also were experienced by others at R&L Shared Services.

Allowing Plaintiff to assert boilerplate claims on behalf of a virtually unlimited proposed class invites discovery abuse. It is in cases like this one—putative class actions that promise costly, time-consuming class discovery that may require significant judicial supervision—that the Supreme Court's concern in *Twombly* about discovery abuse has the most force. *See Alvarado v. Wal-Mart Assocs.*, No. CV 20-1926 DSF, 2020 U.S. Dist. LEXIS 212159, at *7 (C.D. Cal. Aug. 7, 2020) ("Before a plaintiff can obtain class discovery and put a defendant through the expense of opposing class certification, she must at least plausibly allege that the asserted claims might apply to others in the putative class."). For this reason, numerous district courts in the Ninth Circuit and elsewhere have dismissed class claims at the pleadings stage. *See, e.g., Duran v. Maxim Healthcare Servs.,* No. CV 17-01072-AB (Ex),

2018 U.S. Dist. LEXIS 225777, at *21 (C.D. Cal. Mar. 9, 2018) ("Similar to Plaintiffs' allegations defining the aggrieved group for Plaintiffs' PAGA claim, the Court dismisses Plaintiffs' class allegations on the grounds that they are not plausibly alleged, as they are imprecise, overbroad, and unascertainable."); *Rodriguez v. QG Printing Corp.*, No. CV 16-1792-R, 2017 U.S. Dist. LEXIS 232799, at *5 (C.D. Cal. Feb. 16, 2017)) (class allegations dismissed as insufficient); *Byrd*, 2016 U.S. Dist. LEXIS 23435, at *13–14 ("With regard to Plaintiff's class allegations ... the Court GRANTS Defendant's Motion to Dismiss ... because the Complaint fails to allege 'non-conclusory factual content' from which reasonable inferences could plausibly suggest a claim entitling Plaintiff to relief.").

Thus, Plaintiff's vague and plainly implausible class allegations cannot stand and should be dismissed. In the alternative, the Court should strike Plaintiff's class allegations. If class allegations are not "at least plausible," they properly are subject to a motion to strike. *See Edwards v. Oportun, Inc.,* 193 F. Supp. 3d 1096, 1100 (N.D. Cal. 2016); *Sanders,* 672 F. Supp. 2d at 990 ("Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery.").

**3. Plaintiff's Proposed Class Fails Under Fed. R. Civ. P. 23(b)(3)**

Although Defendants do not at this time address all of the bases upon which Plaintiff's proposed class fails under Federal Rule of Civil Procedure 23, one such failure is case dispositive at this stage because the FAC runs afoul of Federal Rule of Civil Procedure 23(b)(3). One of the key questions underlying a plaintiff's theory of recovery in a class action is the nature of the legal and factual disputes to be presented and whether individual or common issues predominate. Specifically, a party seeking class certification must satisfy Rule 23(b)(3), and to do so, must demonstrate that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "To determine whether common issues predominate, this Court must first examine the substantive issues raised by Plaintiffs and second inquire into

the proof relevant to each issue." *Jimenez v. Domino's Pizza, Inc.,* 238 F.R.D. 241, 251 (C.D. Cal. 2006) (citation omitted).

If this Court were to conclude that facts are required to determine the federal preemption question under the FMCSA related to intrastate or interstate activity (which Defendants assert would be unnecessary given Plaintiff's allegations in the FAC cementing that Plaintiff is an interstate driver for purposes of the HOS Regulations), this would become an intensive individualized inquiry. Again, the Secretary of Transportation has jurisdiction "over transportation by motor carrier … to the extent that passengers, property, or both, are transported by motor carrier—(1) between a place in " a State and another place in the same State through another State…." 49 U.S.C. § 13501(1)(B). The Secretary of Transportation's jurisdiction covers motor carrier transport solely within a single state where the intrastate movement is part of a "practical continuity of movement" across state lines. *Walling v. Jacksonville Paper Co.,* 317 U.S. 564, 568 (1943).

Thus, in this scenario, an analysis of federal preemption related to Plaintiff's California MRB claims (and Plaintiff's allegations that he and the proposed class are not subject to the FMCSA and corresponding HOS regulations) would necessarily involve an analysis of each driver's trips, including their daily activities, the product being delivered for each trip, where the product originated, where the product is ultimately to be delivered, whether the driver drove within California, whether the driver drove outside of California, and other issues involving each driver's movements. As a proposed class encompassing four years, the determination of whether any driver is subject to the FMCSA—an issue central to the preemption question—will thus require individualized analysis which, from the get-go, will predominate and overwhelm common issues. Such an inquiry would mandate mini-trials involving fact-intensive, detailed inquiries over a four-year period, to determine whether each member of the proposed class was involved in interstate commerce. Based on this alone, if the Court were to determine that such a factual inquiry would be required on the preemption question, Plaintiff cannot meet his burden of demonstrating that common issues will

predominate in the litigation of his putative class action.[21] Accordingly, on this basis, the class action claims fail and should be dismissed.

## VI. CONCLUSION

For the foregoing reasons, Defendants respectfully assert that Plaintiff's class action allegations of the FAC should be dismissed or stricken in their entirety. Additionally, based on preemption, Plaintiff's Third and Fourth Causes of Action should be dismissed with prejudice, as well as all other Causes of Action that are derivative therefrom.

Dated: June 16, 2022

Respectfully submitted,

FISHER & PHILLIPS LLP

/s/ *Cheryl L. Schreck*
Cheryl L. Schreck
Anet Drapalski

THOMPSON HINE LLP

/s/ *Anthony C. White*
Anthony C. White, *Admitted Pro Hac Vice*
J. Timothy McDonald, *Admitted Pro Hac Vice*

Attorneys for Defendants
R&L CARRIERS SHARED SERVICES, L.L.C. and R&L CARRIERS, INC.

---

[21] There are multiple other reasons why Plaintiff's putative class action claims fail, not addressed here.

# CERTIFICATE OF SERVICE

I, the undersigned, am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; am employed with the law offices of Fisher & Phillips LLP and my business address is 444 South Flower Street, Suite 1500, Los Angeles, California 90071.

On June 16, 2022 I served the foregoing document entitled **DEFENDANTS R&L CARRIERS SHARED SERVICES, LLC'S AND R&L CARRIERS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT** on all the appearing and/or interested parties in this action by placing ☐ *the original* ☒ *a true copy* thereof enclosed in sealed envelope(s) addressed as follows:

**SEE ATTACHED SERVICE LIST**

☐ **[by MAIL]** - I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing this affidavit.

☒ **[by ELECTRONIC SUBMISSION]** - I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

☐ **[by FEDERAL EXPRESS]** - I am readily familiar with the firm's practice for collection and processing of correspondence for overnight delivery by Federal Express. Under that practice such correspondence will be deposited at a facility or pick-up box regularly maintained by Federal Express for receipt on the same day in the ordinary course of business with delivery fees paid or provided for in accordance with ordinary business practices.

☐ **[by PERSONAL SERVICE]** - I caused to be delivered by messenger such envelope(s) by hand to the office of the addressee(s). Such messenger is over the age of eighteen years and not a party to the within action and employed with Attorney Service Name and Address .

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed June 16, 2022at Los Angeles, California.

| | |
|---|---|
| Mayra Hernandez | By: /s/ Mayra Hernandez |
| Print Name | Signature |

**SERVICE LIST**

*Albert Johnson v. R&L Carriers Shared Service, LLC*
Case Number: 2:22-cv-01619-MCS-JPR

| | |
|---|---|
| Kane Moon<br>Roy K. Suh<br>Moon & Yang, APC<br>1055 W. Seventh Street, Suite 1880<br>Los Angeles, CA 90017 | Attorney for Plaintiff<br>ALBERT JOHNSON<br><br>Tel: (213) 232-3128<br>Email: kane.moon@moonyanglaw.com;<br>roy.suh@moonyanglaw.com |
| Anthony C. White<br>Application for Pro Hac Vice<br>J. Timothy McDonald<br>THOMPSON HINE, LLP<br>41 South High Street, Suite 1700<br>Columbus, Ohio 43215 | Attorneys for Defendants<br>R&L CARRIERS SHARED SERVICES, L.L.C. and R&L CARRIERS, INC.<br><br>Telephone: (614) 469-3200<br>Facsimile: (614) 469-3361<br>E-mail:<br>Tony.White@ThompsonHine.com |