1  CHERYL L. SCHRECK, SBN 130083
   cschreck@fisherphillips.com
2  ANET DRAPALSKI, SBN 282086
   adrapalski@fisherphillips.com
3  FISHER & PHILLIPS LLP
   444 South Flower Street, Suite 1500
4  Los Angeles, California 90071
   Telephone: (213) 330-4500
5  Facsimile: (213) 330-4501

6  Attorneys for Defendants
   R&L CARRIERS SHARED SERVICES, L.L.C. and R&L CARRIERS, INC.

7  Anthony C. White (SBN 0062146)
   *Admitted Pro Hac Vice*
8  Tony.White@ThompsonHine.com
   J. Timothy McDonald (SBN 489420)
9  *Admitted Pro Hac Vice*
   Tim.McDonald@ThompsonHine.com
10 **THOMPSON HINE, LLP**
   41 South High Street, Suite 1700
11 Columbus, Ohio 43215
   Telephone: (614) 469-3200
12 Facsimile: (614) 469-3361

13 Attorneys for Defendants
14 R&L CARRIERS SHARED SERVICES, L.L.C. and R&L CARRIERS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 17 ALBERT JOHNSON, Individually, and on behalf of all others similarly situated; | Case No.: 2:22-cv-01619-MCS-JPR District Judge: Hon. Mark C. Scarsi |
| 19 Plaintiff, | **DEFENDANTS R&L CARRIERS SHARED SERVICES, LLC'S AND** |
| 20 v. | **R&L CARRIERS, INC.'S NOTICE OF MOTION AND PARTIAL** |
| 21 R&L CARRIERS SHARED SERVICES, | **MOTION TO DISMISS AND TO** |
| 22 LLC, a limited liability company; R&L CARRIERS, INC., an Ohio corporation; | **STRIKE SECOND AMENDED COMPLAINT** |
| 23 and DOES 1 through 10, inclusive, | |
| 24 | *[Filed Concurrently with Proposed Order]* |
| 25 Defendants. | |
| 26 | DATE: November 21, 2022 |
| 27 | TIME: 9:00 a.m. DEPT: 7C |

28

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on November 21, 2022, at 9:00 a.m. or as soon thereafter as the matter may be heard, in Courtroom 7C of the above-captioned Court, located at 350 W. 1st Street, Suite 4311, Los Angeles, California 90012, Defendants R&L Carriers Shared Services, L.L.C. ("R&L Shared Services") and R&L Carriers, Inc. (together, "R&L") will and hereby do move the Court for an order dismissing with prejudice certain of Plaintiff's claims in his Second Amended Class and Representative Complaint ("Complaint") in their entirety, pursuant to Federal Rule of Civil Procedure Rules 8 and 12(b)(6), and under *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). Specifically, R&L moves the Court to dismiss with prejudice the Third and Fourth Causes of Action alleged in the Complaint asserting violations of the Fair Labor Standards Act, the Ninth Cause of Action alleging failure to timely pay wages as a temporary services employer, and all Causes of Action (in whole or in part) that are derivative of the Third, Fourth, and Ninth Causes of Action, including the claims for Unfair Business Practices (Eighth Cause of Action) and Private Attorney General Act ("PAGA") (Tenth Cause of Action). R&L further moves to dismiss and/or strike any reference to any claim relating to meal or lunch breaks, direct or derivative, on the grounds that this Court already has ruled that Plaintiff's meal and rest break claims are preempted by the Federal Motor Carrier Safety Regulations, and therefore, that such references are immaterial and irrelevant. *See Int'l Bhd. of Teamsters v. Fed. Motor Carrier Safety Admin.,* 986 F.3d 841 (9th Cir. 2021), *reh'g en banc denied by*, 2021 U.S. App. LEXIS 8756 (9th Cir. Mar. 25, 2021), *cert. denied*, 142 S. Ct. 93 (2021). To the extent the references purport to support a common-law claim, they fail to allege facts sufficient to do so.

R&L's Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Court's file and record in this action, all matters which may be judicially noticed pursuant to Rule 201 of the Federal Rules of

i

Evidence, and such other and further oral or documentary evidence and arguments as may be presented to the Court at or before the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place from August 10, 2022, through August 18, 2022. Despite a good faith effort, the parties were unable to resolve the substantive issues. (*See* Plaintiff's Motion to File Second Amended Complaint (Dkt. 57-1, p. 2) and Declaration of Roy K. Suh in Support of Plaintiff Albert Johnson's Fed. R. Civ. P. 15(A)(2) Motion for Leave to File a Second Amended Complaint ¶ 6 (Dkt. 57-4, #1352-1354)).

Dated: September 20, 2022                Respectfully submitted,

                                         FISHER & PHILLIPS LLP

                                         By:  */s/Cheryl L. Schreck*
                                              Cheryl L. Schreck
                                              Anet Drapalski

                                              THOMPSON HINE LLP
                                              /s/*Anthony C. White*
                                              Anthony C. White
                                              J. Timothy McDonald
                                              Attorneys for R&L CARRIERS SHARED
                                              SERVICES, L.L.C. and R&L
                                              CARRIERS, INC.

DEFENDANTS' NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS AND TO STRIKE PAINTIFF'S SECOND AMENDED COMPLAINT

FP 45247468.1

# **TABLE OF CONENTS**

**Page**

I.     INTRODUCTION ........................................................................................1

III.   ALLEGATIONS IN THE SECOND AMENDED COMPLAINT ....................4

IV.    LEGAL ARGUMENT .................................................................................6

    A.   Applicable Legal Standard:  Federal Rule of Civil Procedure 12(b)(6) and the *Twombly* and *Iqbal* Pleading Standards. ...........................................6

    B.   Plaintiff's FLSA Minimum Wage Claim Fails As Plaintiff Has Pled That He Was Paid More Than The Minimum Wage. ..................................6

    C.   Plaintiff's FLSA Overtime Claim Is Barred and Should be Dismissed.......8

    D.   Plaintiff's Temporary Services Employer Claim Is An Epic Failure Of the *Twombly/Iqbal* Requirement to Plead Facts ........................................ 14

    E.   Plaintiff Improperly Continues to Allege Claims Predicated on his Preempted and Dismissed Meal and Rest Break Claims. .......................... 16

    F.   Plaintiff's Derivative Unfair Business Practices and PAGA Claims Should be Dismissed To The Extent the Underlying Claims Fail............. 18

VI.    CONCLUSION ........................................................................................ 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alle v. Gales (In re Alle)*,
    No. 2:20-cv-11116-MCS, 2021 U.S. Dist. LEXIS 134109 (C.D. Cal.
    July 19, 2021) ...................................................................................................... 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................... 3, 6, 14, 16

*Barlow v. Logos Logistics, Inc.*,
    34 F. Supp. 3d 686 (E.D. Mich. 2014) .................................. 8, 9, 10, 11

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007) ...................................................................... 2, 6, 14, 16

*Boutell v. Walling*,
    327 U.S. 463 (1946) ................................................................................. 12, 13

*Bush v. Vaco Tech. Servs.*,
    LLC, No. 17-cv-05605-BLF, 2018 U.S. Dist. LEXIS 74613 (N.D.
    Cal. May 2, 2018) ............................................................................................. 19

*Carlos v. Wal-Mart Assocs.*,
    No. ED CV 21-00294-AB, 2021 U.S. Dist. LEXIS 205534 (C.D.
    Cal. Aug. 13, 2021) ......................................................................................... 19

*Davis v. Louis Broadwell, LLC*,
    No. 2:10-2947-RMG, 2011 U.S. Dist. LEXIS 164928 (D. S.C. Oct.
    12, 2011) ............................................................................................................... 12

*Douglas v. Xerox Bus. Servs., LLC*,
    875 F.3d 884 (9th Cir. 2017) ........................................................................ 6

*Duley v. Centerra Grp., LLC*,
    No. 2:19-cv-08754-AB, 2020 U.S. Dist. LEXIS 209866 (C.D. Cal.
    Mar. 18, 2020) ................................................................................................... 19

*Encino Motorcars, LLC v. Navarro*,
    138 S. Ct. 1134 (2018).................................................................................... 9

*Fiveash v. S.E. Pers. Leasing*,
    No. A-20-CV-00866-RP, 2022 U.S. Dist. LEXIS 68046 (W.D. Tex.
    Apr. 13, 2022)................................................................................................... 11

*Hill v. R+L Carriers, Inc.*,
    No. C 09-01907-CW, 2009 U.S. Dist. LEXIS 120564 (N.D. Cal.
    Dec. 7, 2009) ....................................................................................................... 4

*Hodgson v. Ellis Transportation Co.*,
    456 F.2d 937 (9th Cir. 1972) ................................................................... 13

i

*Jones v. Giles,*
    741 F.2d 245 (9th Cir. 1984) ............................................................ 12

*Levinson v. Spector Motor Serv.,*
    330 U.S. 649 (1947) .................................................................. 8, 12

*Lopez v. Stages of Beauty, LLC,*
    307 F. Supp. 3d 1058 (S.D. Cal. 2018) ............................................ 7

*Lundy v. Cath. Health Sys. Of Long Island, Inc.,*
    711 F.3d 106 (2d Cir. 2013) .............................................................. 6

*Milgard Tempering, Inc. v. Selas Corp., of Am.,*
    902 F.2d 703 (9th Cir. 1990) ............................................................ 9

*Moore v. Universal Coordinators,*
    423 F.2d 96 (3d Cir. 1970) .............................................. 10, 11, 12

*Morris v. McComb,*
    332 U.S. 422 (1947) .................................................................. 8, 12

*Overnight Motor Transp. Co. v. Misell,*
    316 U.S. 572 (1942) .......................................................................... 6

*Puentes v. Wells Fargo Home Mortg., Inc.,*
    160 Cal. App. 4th 638 (Cal. Ct. App. 2008) .................................. 19

*Reed v. Autonation, Inc.,*
    No. CV 16-08916-BRO, 2017 U.S. Dist. LEXIS 218134 (C.D. Cal.
    Apr. 20, 2017) .................................................................................. 19

*Reilly v. Recreational Equip., Inc.,*
    No. 18-cv-07385-LB, 2019 U.S. Dist. LEXIS 34244 (N.D. Cal.
    Mar. 4, 2019) .................................................................................... 19

*Reyna v. WestRock Co.,*
    No. 20-cv-01666-BLF, 2020 U.S. Dist. LEXIS 153575 (N.D. Cal.
    Aug. 24, 2020) .................................................................................. 19

*Singh v. Inter-Con Sec. Sys.,*
    No. H047337, 2022 Cal. App. .......................................................... 16

*Songer v. Dillon Res., Inc.,*
    618 F.3d 467 (5th Cir. 2010) ............................................................ 11

*Tidd v. Adecco USA, Inc.,*
    No. 07-11214-GAO, 2010 U.S. Dist. LEXIS 24785 (D. Mass. Mar.
    16, 2010) ............................................................................................ 11

*United States v. Rosenwasser,*
    323 U.S. 360 (1945) .......................................................................... 6

*Walters v. Am. Coach Lines of Mia., Inc.,*
    575 F.3d 1221 (11th Cir. 2009) ........................................................ 9

*Williams v. Cent. Transp. Int'l, Inc.,*
    830 F.3d 773 (8th Cir. 2016) ............................................................ 12

FP 45247468.1

**Statutes**

29 U.S.C. § 206(a)(1) ....................................................................................... 7
29 U.S.C. § 206(a)(1)(C) ............................................................................... 5, 6
29 U.S.C. § 207(a)(1) ....................................................................................... 8
29 U.S.C. § 213(b)(1) .................................................................................... 1, 8
29 U.S.C. § 216(b) ............................................................................................ 1
49 U.S.C. § 31502 ....................................................................................*passim*
49 U.S.C. § 31502(a), (b) .................................................................................. 8
Cal. Bus & Prof. Code § 17200 ....................................................................... 18
Cal. Lab. Code § 203 ....................................................................................... 17
Cal. Labor Code § 201.3(b)(2)(B) ................................................................... 16
Fair Labor Standards Act .................................................................................. 1
FLSA ..........................................................................................................*passim*
FLSA's Motor Carrier Act ................................................................................ 1
FLSA § 207 ....................................................................................................... 8
Labor Code § 201.3 .......................................................................................... 16
MCA ..........................................................................................................*passim*
MCSA ................................................................................................................ 3
Motor Carrier Act ............................................................................................. 8
Motor Carrier Act of 1935 Section 204 (now codified at 49 U.S.C. §
    31502(b)) .......................................................................................... 1, 12, 13
Motor Carrier Safety Act of 1984 Section 206(a) (codified at 49 U.S.C.
    § 31136(a)) ................................................................................................. 1
PAGA ..................................................................................... 6, 18, 19, 20
Private Attorney General Act ........................................................................... 3

**Other Authorities**

29 C.F.R. § 782.1 ............................................................................................. 12
29 C.F.R. § 782.1(a) ......................................................................................... 12
29 C.F.R. § 782.2(a) ......................................................................................... 12
 (49 C.F.R. Parts 350-399) ............................................................................. 10
49 C.F.R. § 390.3T(a)(1) .................................................................................. 3
49 C.F.R. § 390.5 ............................................................................................. 10
49 C.F.R. § 390.5T ............................................................................................ 3
 (49 C.F.R. § 391.51(a)) ................................................................................. 10
 (49 C.F.R. § 395.1) ........................................................................................ 10
49 C.F.R. § 395.1(a)(1) ..................................................................................... 3
Federal Rule of Civil Procedure 12(b)(6) ........................................................ 6
Rule 12(f) .......................................................................................................... 18
Rule 15(a)(2) ...................................................................................................... 4

FP 45247468.1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff's Second Amended Complaint ("SAC"), which is his third attempt to allege various putative wage and hour class action claims, fails in large part again.  Despite the fact that Plaintiff's causes of action asserting violation of California's Meal and Rest Break Rules ("MRB Rules") have been dismissed by order of this Court based on preemption under the Hours-of-Service regulations ("HOS Regulations") of the Federal Motor Carrier Safety Administration ("FMCSA"), Plaintiff improperly seeks to, in effect, revive those claims.[1] (*See* Order (Dkt. 52)).  Specifically, Plaintiff seeks to replace the failed MRB Rules claims with new, equally infirm individual and collective action claims pursuant to the Fair Labor Standards Act ("FLSA").[2]  These new claims should be dismissed.

First, Plaintiff cannot assert an FLSA overtime wage claim because, as an admitted commercial motor vehicle driver engaged in the business of carrying property interstate, Plaintiff is subject to the Secretary of Transportation's authority to set maximum hours of service and qualifications pursuant to 49 U.S.C. § 31502.  Plaintiff (and all who he purports are similarly situated) thus are exempt from the FLSA's overtime wage requirements under the FLSA's Motor Carrier Act Exception.  *See* 29 U.S.C. § 213(b)(1).

Second, Plaintiff cannot assert an FLSA minimum wage claim.  Plaintiff has alleged that he was paid triple, and at times almost quadruple, the minimum wage for each hour he admits he was paid.  Plaintiff alleges that he was paid between $22.18 and $26.43 per hour over his R&L tenure, while the federal minimum wage is only $7.25 per hour.  Plaintiff also alleges that for every week in which he pled any facts, he was paid for between 40.7 and

---

[1] The FMCSA is an operating agency of the Department of Transportation ("DOT").  The FMCSA has issued the HOS Regulations pursuant to the Secretary of Transportation's concurrent authority to regulate hours-of-service under (1) Section 204 of the Motor Carrier Act of 1935 ("MCA") (now codified at 49 U.S.C. § 31502(b)), which allows the Secretary to prescribe requirements for "qualifications and maximum hours of service of employees of … a motor carrier" or private motor carrier, and (2) various provisions of Section 206(a) of the Motor Carrier Safety Act of 1984 ("MCSA") (codified at 49 U.S.C. § 31136(a)), which directs the Secretary to "prescribe regulations on commercial motor vehicle safety" that contain "minimum safety standards for commercial motor vehicles…" and ensure, among other things" that "the responsibilities imposed upon operators of commercial motor vehicles do not impair their ability to operate the vehicles safely."

[2] Plaintiff filed these FLSA claims as a collective action on behalf of himself and other "similarly situated" employees.  *See* 29 U.S.C. § 216(b).  However, other than Plaintiff, no other employee has opted into this action.

61.3 hours.  At the same time, he pleads that R&L failed to pay him for one and a half to two hours per week.  Even taking those allegations at face value, the wage Plaintiff was paid, averaged over all hours worked (even those allegedly unpaid), is still more than double the federal minimum wage.  Thus, based on Plaintiff's own allegations, the FLSA minimum wage claim should be dismissed.

Third, Plaintiff's Temporary Services Employer claim wholly fails to set forth anything other than quotations from statutes and then rote statements that the elements have been met.  Plaintiff alleges nothing indicating his employment was "temporary."  He also does not allege any separation from his employer's worksite and the alleged "clients'" worksite which the statute requires.

Fourth, and despite Plaintiff's assurances that "notwithstanding any references to meal periods or rest periods …, Plaintiff does not seek any remedies of any kind for meal periods or rest periods … required under California law" (SAC (Dkt. 60), ¶ 4), Plaintiff continues to raise allegations related to meal and rest breaks (including arguing that "representations" were made that such breaks would be provided), all of which should be stricken as immaterial and irrelevant based on the Court's dismissal Order entered on August 7, 2022. (*See* Dkt. 52).  To the extent Plaintiff asserts that he has pled some other new cause of action related to the alleged "representations," Plaintiff has pled no facts rising to the level of any sufficient claim.  So whatever purported claim Plaintiff now may seek to pursue as to meal and rest breaks, it should be dismissed with prejudice under *Twombly*/*Iqbal* and the law of the case doctrine.

## II.   <u>PROCEDURAL HISTORY</u>

In his original complaint against R&L (Dkt. 1), Plaintiff asserted numerous claims for California wage and hour violations, suing on behalf of himself and a proposed California class of "[a]ll persons who worked for any Defendant in California as an hourly, non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the Class is sent." (Original Compl. ¶ 24).  This Court dismissed that complaint pursuant to *Bell Atlantic v. Twombly*,

2

550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (Dkt. 11, 11-1), "for [Plaintiff's] failure to allege sufficient factual content to support Plaintiff's legal theories." (Dkt. 37, p. 9).

Plaintiff thereafter filed his First Amended Complaint ("FAC") (Dkt. 38), which did not differ markedly from the original pleading, and again purported to pursue the same claims on behalf of himself and the same putative class members, along with a newly-added Private Attorney General Act ("PAGA") claim.  The Court entered an Order on August 7, 2022, on Defendants' Motion to Dismiss (Dkt. 39-1, 41, 49), after hearing oral argument on August 1, 2022.  (Order, 8/7/22 (Dkt. 52)).  The Court in its August 7, 2022 Order dismissed Plaintiff's California MRB Rules claims, along with any derivative claims, as they were preempted by the HOS Regulations issued under the MCSA governing the hours of service of drivers of commercial motor vehicles.  The Court concluded that "Plaintiff's operative pleading and concessions at oral argument"—specifically, that "Plaintiff carried property interstate as a commercial motor vehicle operator"—"make clear that [Plaintiff] … was subject to FMCSA regulations and that his claims are preempted."  (Order (Dkt. 52), p. 4).

In so holding, the Court rejected Plaintiff's argument that applicability of the HOS Regulations to Plaintiff depended on whether R&L Shared Services was a registered motor carrier with the DOT, and instead correctly concluded that the HOS Regulations apply to Plaintiff "irrespective of the registration status of his employer." (Order (Dkt. 52), p. 5).  The Court cited to (1) 49 C.F.R. § 390.3T(a)(1) ("The rules in this subchapter are applicable to all employers, employees, and commercial motor vehicles that transport property or passengers in interstate commerce."); (2) 49 C.F.R. § 390.5T (defining "employee" to "include[] a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle)"; and 49 C.F.R. § 395.1(a)(1) ("The rules in this part apply to all motor carriers and drivers…."). (Order (Dkt. 52), p. 5).  *See Int'l Bhd. of Teamsters,* 986 F.3d at 848-49 (explaining that HOS regulations apply to "commercial motor vehicle drivers"); 49 C.F.R. § 390.5T (defining "driver" as "any person who operates any commercial motor vehicle").

Plaintiff was given the choice of standing on the First Amended Complaint with certain allegations stripped out, or seeking leave to file a Second Amended Complaint. (Order (Dkt. 52), p. 8). He chose the latter route.

After receiving a copy of the proposed Second Amended Complaint, as Plaintiff acknowledges, Defendants and Plaintiff met and conferred over Defendants' arguments that they intended to raise in a Motion to Dismiss. (*See* Plaintiff's Motion to File Second Amended Complaint (Dkt. 57-1), p. 2 and supporting Declaration of Roy K. Suh (Dkt. 57-4), ¶ 6).[3] Ultimately, as a result of that meet and confer, the parties agreed to Plaintiff's filing of a Second Amended Complaint, subject to Court approval, with Defendants reserving their arguments for this Motion to Dismiss. *Id.*

## III.   ALLEGATIONS IN THE SECOND AMENDED COMPLAINT

On September 6, 2022, Plaintiff filed his Second Amended Complaint (Dkt. 60). Plaintiff alleges he worked for 43 weeks from July 2020 to May 2021 (SAC (Dkt. 60), ¶ 28) for R&L Shared Services, which he alleges is a "driver staffing employer who staffed Plaintiff as a driver for an unnamed party." (SAC (Dkt. 60), ¶ 127).[4] Plaintiff cites nothing in the SAC establishing that either his relationship with R&L Shared Services, or the relationship between R&L Shared Services and the "unnamed party," was "temporary." (*Id.*). Plaintiff alleges that he commenced daily shifts in certain locations in California; his shifts took from eight to twelve hours; and he regularly worked over 40 hours per week, typically working five days per seven-day workweek (providing six attached wage statements) and being paid three to almost four times the federal minimum wage. (SAC (Dkt. 60), ¶ 28 & Page ID #1417-1422).

---

[3] Plaintiff alleged in his Motion that "[t]he Parties' 08/10/22 to 08/18/22 meet and confer emails included the Parties' disputed statements of law and fact regarding Plaintiff's anticipated second amended complaint, the Parties' reservations of rights to argue law and fact after a second amended complaint is filed and culminated in the Parties' agreement to file notice of Defendant's Rule 15(a)(2) written consent and the Parties' further stipulations." (Plaintiff's Motion to File Second Amended Complaint (Dkt. 57-1, p. 2)). Plaintiff's counsel also submitted the Declaration of Roy K. Suh in Support of Plaintiff Albert Johnson's Fed. R. Civ. P. 15(A)(2) Motion for Leave to File a Second Amended Complaint, in which he affirmed the Parties' meet and confer communications from 8/10/22 to 8/18/22. (*See* Declaration, ¶ 6 (Dkt. 57-4, Page ID #1352-1354)).

[4] *See Hill v. R+L Carriers, Inc.,* No. C 09-01907-CW, 2009 U.S. Dist. LEXIS 120564, at *2 (N.D. Cal. Dec. 7, 2009) (R&L Shared Services provides employees to Greenwood Motor Lines, Inc.).

4

For example, Exhibit B to the SAC admits just this.  That Exhibit attaches wage statements for 6 workweeks:

(1)    8/16/2020—8/22/2020, showing "Total Hours Worked" of 56.87 hours at a pay rate of $22.18 per hour;

(2)    8/23/2020—8/29/2020, showing "Total Hours Worked" of 61.30 hours at a pay rate of $22.18 per hour;

(3)    11/1/2020—11/7/2020, showing "Total Hours Worked" of 40.77 hours at a pay rate of $25.18 per hour;

(4)    11/29/2020—12/5/2020, showing "Total Hours Worked of 50 hours at a pay rate of $26.43 per hour;

(5)    1/3/2021—1/9/2021, showing "Total Hours Worked" of 43.96 hours at a pay rate of $26.43 per hour; and

(6)    2/14/2021—2/20/2021, showing "Total Hours Worked" of 43.64 hours at a pay rate of $26.43 per hour.

(SAC (Dkt. 60), Exh. B, Page ID #1447-1452).

The federal minimum wage, by contrast for this period was $7.25 per hour.  29 U.S.C. § 206(a)(1)(C).  Plaintiff alleges no other facts relating to his pay rate or the weeks worked in a given work week.  (SAC (Dkt. 60), ¶ 28 & Page ID #1417-1422).

Plaintiff's SAC acknowledges that he drove interstate at least 10% of the time, which based on Plaintiff's allegations of a five-day workweek, means that Plaintiff drove on an interstate trip at least once every other week.  (SAC (Dkt. 60), ¶ 28(a)(2)).  Plaintiff also asserts allegations about his experience working as a driver (i.e., his clocking in after pre-trip inspections and other tasks; his frequent transport of hazardous materials and the need to monitor his truck for this purpose while the vehicle was "power[ed] down.") (*Id.*, ¶ 28).

The SAC alleges the following claims:  (1) failure to pay minimum wage; (2) failure to pay overtime compensation; (3) failure to pay FLSA minimum wage; (4) failure to pay FLSA overtime wages; (5) failure to indemnify necessary business expenses; (6) failure to timely pay final wages at termination; (7) failure to provide accurate itemized wage

statements; (8) engagement in unfair business practices; (9) failure to timely pay wages as a temporary services employer, and (10) civil penalties under PAGA.

## IV.   LEGAL ARGUMENT

### A.   Applicable Legal Standard:  Federal Rule of Civil Procedure 12(b)(6) and the *Twombly* and *Iqbal* Pleading Standards.

The Court has previously applied the legal standards regarding a motion pursuant to Rule 12(b)(6), as set forth in the Court's May 18, 2022, and August 7, 2022 Orders.  (*See* Order (Dkt. 37), p. 6); Order (Dkt. 52), p. 2).  Accordingly, Defendants will not restate those standards here.

### B.   Plaintiff's FLSA Minimum Wage Claim Fails As Plaintiff Has Pled That He Was Paid More Than The Minimum Wage.

Plaintiff's allegations and attachments to his SAC plead himself out of court on his FLSA minimum wage claim (Count Three) because they establish that R&L actually paid Plaintiff in excess of the federal minimum wage for every hour worked.  The FLSA prescribes a federal minimum wage that for the relevant period is $7.25/hour.  29 U.S.C. § 206(a)(1)(C).  This is met if the average earnings over a standard workweek exceed the minimum wage per hour.  *United States v. Rosenwasser*, 323 U.S. 360, 363-64 (1945); *Overnight Motor Transp. Co. v. Misell*, 316 U.S. 572, 577-78 (1942); *Douglas v. Xerox Bus. Servs., LLC,* 875 F.3d 884, 890 (9th Cir. 2017) (compensating employees in excess of the minimum wage measuring total compensation divided by the hours worked complied with FLSA's minimum wage provision); *Lundy v. Cath. Health Sys. Of Long Island, Inc.*, 711 F.3d 106, 115-16 (2d Cir. 2013).

The wage statements that Plaintiff has attached and incorporated into his SAC show that the rate he was paid per pay period (i.e., weekly) was so far in excess of the minimum wage, that even if he was not paid for a couple of hours a week as he claims, Plaintiff's claim for a minimum wage violation under the FLSA would still be implausible, thus failing the test of *Iqbal*, 556 U.S. at 678 and *Twombly*, 550 U.S. at 570.  (*See* Order (Dkt. 52), pp. 2-3).

Plaintiff alleges that he spent time prior to and after each route that he drove that was not captured by the company's time system. (SAC (Dkt. 60), ¶ 28(c)). He asserts that this totaled approximately two hours a week. (*Id.* ¶ 28(c)(3)). Plaintiff further alleges that he worked for Defendants for only forty-three weeks. (*Id.* ¶ 28(a)). He attaches to his SAC the wage statements for six of those weeks (amounting to almost 15% of his entire employment). (*Id.* ¶ 28(b) & Exh. B (Page ID #1447-1452)). These attachments are incorporated into Plaintiff's SAC and the facts set forth in them become part of the SAC. *Lopez v. Stages of Beauty, LLC*, 307 F. Supp. 3d 1058, 1064 (S.D. Cal. 2018).

In those six weeks, Plaintiff's rate of pay was between $22.18 and $26.43, all more than three times the federal minimum wage. *See, supra*, pp. 5-6; 29 U.S.C. § 206(a)(1). And during those six weeks, Plaintiff was paid for between 40.77 and 60.13 hours. Plaintiff alleges no facts regarding the hours or wages for the other thirty-seven weeks that he worked. (SAC (Dkt. 60), ¶ 28).

Because even the lowest hourly rate he was paid was $22.18 and the minimum wage was $7.25, he was paid at least $14.93 per hour more than the minimum wage for every hour he was paid. Crediting his two hours unpaid for each week, he would be owed $14.50 at the federal minimum wage for each week. But since even the first hour each week he was paid more than covers that difference, he still was paid more than the minimum wage for all hours worked even if his allegations of uncompensated hours are accepted as true.

Taking his first wage statement as an example (*id.* ¶ 28(b) & Exh. B (Page ID #1447)), Plaintiff admits he was paid for 56.67 hours at an hourly rate of $22.18 for a total of $1,261.38. Even crediting Plaintiff an additional two hours allegedly worked that week, his total hours worked would be 58.67. That equals an hourly rate of $21.50 paid to Plaintiff for all hours he alleges he worked that week, which is still almost triple the minimum wage of $7.25 ($1,261.38 / 58.67 hours = $21.50 per hour).

Plaintiff was paid well more than the minimum wage even for the additional hours he claims he was not compensated (even assuming they are not already included in the

hours for which he was paid).  For these reasons, Plaintiff's FLSA minimum wage claims alleging that he was not paid the minimum wage for certain hours are fatally defective and should be dismissed with prejudice.

**C.**     **Plaintiff's FLSA Overtime Claim Is Barred and Should be Dismissed**

Plaintiff asserts in Count Four an FLSA claim that he was not paid an overtime rate for all hours worked in excess of 40 hours per week.  The FLSA generally entitles non-exempt employees to overtime pay for hours worked in excess of 40 per week.  29 U.S.C. § 207(a)(1).

However, the FLSA overtime requirements do not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section [31502 of Title 49]."  29 U.S.C. § 213(b)(1).  *Morris v. McComb*, 332 U.S. 422, 424 (1947) (overtime requirements of § 207 of the FLSA do not apply to employees who are exempt under the Motor Carrier Act).  According to 49 U.S.C. § 31502, the Secretary of Transportation may prescribe, for interstate transportation, requirements for the qualifications and maximum hours of service of employees of "motor carriers" or "private motor carriers."  49 U.S.C. § 31502(a), (b).

For the MCA exemption to apply, it is not necessary that the Secretary of Transportation actually exercise its power under 49 U.S.C. § 31502 to regulate the qualifications and maximum hours of service of the employees at issue; rather the Secretary only needs to possess the power to establish such regulation under 49 U.S.C. § 31502. *Levinson v. Spector Motor Serv.,* 330 U.S. 649, 678 (1947).  Thus, if the Secretary of Transportation possesses this regulatory power over a particular employee, the Secretary of Labor lacks jurisdiction and the FLSA's overtime provisions do not apply.  *See Barlow v. Logos Logistics, Inc.*, 34 F. Supp. 3d 686, 590 (E.D. Mich. 2014) ("The FLSA language setting forth the motor carrier exemption is … an acknowledgment that the Department of Labor's jurisdiction yields to that of the DOT.").  "Congress created this exemption to eliminate any conflict between the jurisdiction exercised by the Department of Labor [] over the FLSA and the mutually exclusive jurisdiction exercised by the DOT over the MCA."

*Walters v. Am. Coach Lines of Mia., Inc.,* 575 F.3d 1221, 1226 (11th Cir. 2009) (The exemption applies if the DOT has the power to regulate the work of "a particular group of employees").[5]

This Court already has held, based on Plaintiff's own allegations and admissions, that Plaintiff was under the "power" of the Secretary of Transportation to regulate hours of service in Plaintiff's role as an employee for R&L Shared Services: "Plaintiff's operative pleading and concessions at oral argument"—specifically, that "Plaintiff carried property interstate as a commercial motor vehicle operator"—"make clear that [Plaintiff] … was subject to FMCSA regulations [regarding hours of service]…." (Order (Dkt. 52), p. 4). Thus, this Court's holding that Plaintiff is subject to the HOS Regulations, which now is the law of the case,[6] together with the express language of the MCA exemption—applying to "***any employee with respect to whom the [Secretary] has power*** to establish qualifications and maximum hours of service"—establishes unequivocally that the MCA exemption bars Plaintiff's FLSA overtime claims.

This exact analysis—focusing on whether the Secretary of Transportation has power over the employee under the MCA—was applied in *Barlow v. Logos Logistics.* *Barlow* involved the same situation presented here, in which the employee of a staff leasing company drove commercial motor vehicles in interstate commerce for a motor carrier, and held that the Secretary of Transportation's jurisdiction over employees included leased drivers. The *Barlow* court concluded that the Secretary of Transportation's jurisdiction over "leased drivers" should be determined based on the DOT's regulations promulgated under

---

[5] Plaintiff incorrectly alleges that FLSA "exemptions are to be narrowly construed." (SAC (Dkt. 60), at ¶ 18). Instead, courts must give the MCA exemption under the FLSA a "fair reading." *Encino Motorcars, LLC v. Navarro,* 138 S. Ct. 1134, 1142 (2018) (rejecting the principle that "exemptions to the FLSA should be construed narrowly" because the principle "relies on the flawed premise that the FLSA pursues its remedial purpose at all costs") (internal quotation marks omitted).

[6] The law of the case doctrine aims to promote the efficient operation of the courts. *Milgard Tempering, Inc. v. Selas Corp., of Am.,* 902 F.2d 703, 715 (9th Cir. 1990). The doctrine generally precludes a court from reconsidering an issue decided previously by the same court or by a higher court in the identical case. *Alle v. Gales (In re Alle),* No. 2:20-cv-11116-MCS, 2021 U.S. Dist. LEXIS 134109, at *21 (C.D. Cal. July 19, 2021) (citing *Lower Elwha Band of S'Kallams v. Lummi Indian Tribe,* 235 F.3d 443, 452 (9th Cir. 2000)). The issue in question must have been decided explicitly or by necessary implication in the previous disposition. *Id.* "The doctrine serves to advance the 'principle that in order to maintain consistency during the course of a single lawsuit, reconsideration of legal questions previously decided should be avoided.'" *In re Alle,* 2021 U.S. Dist. LEXIS 134109, at *21 (quoting *United States v. Houser,* 804 F.2d 565, 567 (9th Cir. 1986)).

49 U.S.C. § 31502, which empowers the Secretary of Transportation to prescribe the "qualifications and maximum hours of service of employees of … a motor carrier."  34 F. Supp. 3d at 693.  The *Barlow* court noted that: (1) DOT regulations enacted under 49 U.S.C. § 31502 (that limit hours of service) apply to "all motor carriers and drivers" (49 C.F.R. § 395.1); and (2) regulations prescribing driver qualifications apply to "persons who drive commercial vehicles as, for, or on behalf of motor carriers" (49 C.F.R. § 391.51(a)).  The *Barlow* court held that, "[b]y its terms, the motor carrier exemption follows the employee…. The [leasing company employer's] status as a non-motor carrier is thus irrelevant to whether it has an obligation to pay overtime wages to workers independently subject to the Secretary's jurisdiction.  Therefore, the Court concludes that the FLSA's overtime wage requirements did not apply to the Drivers during their tenure at … [the staffing agency]." *Barlow,* 34 F. Supp. 3d at 694.[7]

*Barlow* makes two points clear: (1) the DOT's jurisdiction over drivers of motor vehicles "reflect[s] the law's primary design:  to promote safety of transportation in interstate commerce," *id.* at 693 (citing *Levinson,* 330 U.S. at 661-62), and (2) "interpreting 'employees' to encompass all drivers, including leased drivers, is consistent with that aim." *Id.*  As the *Barlow* court stated, "[a] definition that excludes leased drivers might permit motor carriers to evade DOT safety regulations prescribing minimum qualifications and limiting drivers' hours through clever contracting.  That result would be contrary to the law's overriding concern with safety."  *Id.* at 693.

The court in *Moore v. Universal Coordinators,* 423 F.2d 96, 99 (3d Cir. 1970), likewise agreed that the MCA exemption applied to truck drivers leased to a private motor

---

[7] The FMCSA has issued Federal Motor Carrier Safety Regulations (49 C.F.R. Parts 350-399) ("FMCSRs") that generally govern motor carrier safety, and contain the following definition of the term "employee":

> *Employee* means any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety.  Such term includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle….)."

49 C.F.R. § 390.5 (emphasis added).  As the definition of employee includes independent contractors, when used in this context, the term employee is not limited to those traditional ones who have wages reported on a Form W-2.  Rather, here "employee" means anyone performing any work for a motor carrier regardless of the specific classification of the relationship, where the work directly affects commercial motor vehicle safety.  *Id.*

carrier, concluding that the Secretary of Transportation had the power to establish their qualifications and maximum hours under the MCA. In so holding, the court rejected the plaintiff's theory that the MCA permitted the Secretary of Transportation to regulate the hours and qualifications of "employees of carriers only." *Id.* Like *Barlow,* the *Moore* court explained that the word "employees" in the MCA had to be construed in light of the MCA's dominant purpose—to promote safety of operations—and concluded that the truckers were "employees" for purposes of regulation by the Secretary of Transportation. *Id.* at 98. The *Moore* court concluded that the MCA regulations clearly were intended to apply to "leased" drivers who drove trucks for motor carriers:

> Were we to adopt plaintiffs' suggested construction of "employees" as used in the Motor Carrier Act and hold that the Secretary has no regulatory power over drivers leased to carriers, we would defeat the intent of that statute. The Secretary's power to promote safety of operation would be rendered useless if he were powerless to prevent a carrier from using unqualified and overtired drivers simply because the drivers are technically the employees of a manpower-supply agency. Since plaintiffs are subject to the Secretary's qualifications and hours regulations, it is clear that they may not take advantage of the FLSA overtime provisions.

*Id.* at 99-100 (citing *Morris,* 332 U.S. 422, and *Levinson ,* 330 U.S. 649).

The importance of safety as a purpose of the MCA also has informed several other decisions addressing the question of whether leased drivers are employees of a motor carrier for purposes of the DOT's authority to regulate drivers' maximum hours of service; those cases have concluded that FLSA overtime claims are barred under the MCA exemption. *See, e.g., Songer v. Dillon Res., Inc.,* 618 F.3d 467, 474 (5th Cir. 2010) (reasoning that, due to Congressional safety concerns underlying the MCA, the MCA exemption should be interpreted broadly so as to enable DOT to regulate the qualification and maximum hours of truck drivers engaged in interstate commerce, and to avoid circumvention of the Secretary of Transportation's regulatory authority); *Tidd v. Adecco USA, Inc.,* No. 07-11214-GAO, 2010 U.S. Dist. LEXIS 24785, at *2 (D. Mass. Mar. 16, 2010) (FLSA overtime claims by employees of staffing agency who drove for FedEx were foreclosed by the MCA exemption); *see also Fiveash v. S.E. Pers. Leasing,* No. A-20-CV-00866-RP, 2022 U.S.

Dist. LEXIS 68046, at *10-11 (W.D. Tex. Apr. 13, 2022) (court held that MCA exemption barred claims against staff leasing company by a leased employee who operated a commercial motor vehicle transporting prisoners across the county, citing *Songer*); *Davis v. Louis Broadwell, LLC,* No. 2:10-2947-RMG, 2011 U.S. Dist. LEXIS 164928, at *22-23 (D. S.C. Oct. 12, 2011) (court, relying on *Moore,* concluded that MCA exemption barred employee's claims against a staff leasing company).[8]

In seeking to avoid the MCA exemption, Plaintiff's SAC points to *Boutell v. Walling,* 327 U.S. 463 (1946)—which is the same inapposite case the *Moore* court rejected. This Court should do the same. *Boutell* involved the overtime pay provisions of the FLSA, with the MCA exemption asserted as a defense. In *Boutell,* there were two companies—a commercial garage that maintained transportation equipment and a motor carrier—and the employees in *Boutell* were mechanics employed by the garage. *Id.* at 465. The Supreme Court in *Boutell* held that the MCA exemption did not bar the garage company's employees'

---

[8] Some, but not all, of the cases concluding that a staff-leasing-company employee is subject to the MCA exemption are guided by the Department of Labor's ("DOL") *interpretation* of when the DOT has jurisdiction over an employee (*i.e.,* power to establish qualifications and maximum hours of service under 49 U.S.C. § 31502), as set forth in a DOL regulation. That regulation provides that the Secretary of Transportation's authority applies to employees who are "(1) [] employed by carriers whose transportation of … property by motor vehicle is subject to the Secretary [of Transportation]'s jurisdiction under [the MCA]; (2) engages in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highway of passengers or property in interstate … commerce within the meaning of the [MCA]." 29 C.F.R. § 782.2(a). However, for purposes of analyzing applicability of the MCA exemption, it would be incorrect to decide the DOT's jurisdiction or to interpret "employees" subject to DOT power based on the DOL regulation. As recognized by the Supreme Court, the DOT has jurisdiction over this issue, including how to define "employee" for purposes of applying the MCA and the MCA exemption, not the DOL:

> it is important to recognize that, by virtue of the unique provisions of § 13(b)(1) of the [FLSA] …, we are not dealing with an exception to that Act which is to be measured by regulations which Congress has authorized to be made by the Administrator of the Wage and Hour Division [of the DOL]… Instead, we are dealing here with the interpretation of the scope of the safety program of the [ICC]…, under § 204 of the Motor Carrier Act, which in turn is to be interpreted in the light of the regulations made by the [ICC] pursuant to that Act.

*Levinson,* 330 U.S. at 676-77 (emphasis omitted); *see also Williams v. Cent. Transp. Int'l, Inc.,* 830 F.3d 773, 778 (8th Cir. 2016) ("As the Supreme Court held in *Levinson*…, the DOL has no authority to define what employees are subject to the Secretary of Transportation's jurisdiction and therefore fall within the MCA Exemption, a ruling acknowledged in the DOL's regulations. *See* 29 C.F.R. § 782.1(a). Accordingly, we give no weight or deference to the DOL's regulation purporting to define who is an exempt loader."); *Jones v. Giles,* 741 F.2d 245, 249 (9th Cir. 1984) (the DOT, not the DOL, is responsible for interpreting exemptions from the MCA); *Morris,* 322 U.S. at 436 (primary purpose of MCA exemption is to ensure that operators of vehicles affecting highway safety were regulated by an entity with a greater understanding of the particular safety concerns). The DOL's own regulations acknowledge the limits of its ability to interfere with the Secretary of Transportation's power: "The [FLSA] … confers no authority on the Secretary of Labor or the Administrator to extend or restrict the scope of this [MCA] exemption. It is settled by decisions of the U.S. Supreme Court that the applicability of the exemption to an employee otherwise entitled to the benefits of the [FLSA] is determined exclusively by the existence of the power conferred under section 204 of the … [MCA] to establish qualifications and maximum hours of service with respect to him." 29 C.F.R. § 782.1."

FLSA overtime claims because the Interstate Commerce Commission ("ICC") (which previously had jurisdiction, whereas now it is the Secretary of Transportation) did not have power to establish HOS Regulations as to the garage's employees.  As the Supreme Court explained, the MCA did not provide the ICC any authority to regulate commercial garage employees, noting that the ICC stated: *"We have, of course, no jurisdiction over employees working in commercial garages."*  *Id.* at 470 (quoting *Maximum Hours of Serv. of Motor Carrier Emps.,* 28 M.C.C. 125, 132 (I.C.C. 1941) (internal quotations omitted) (italics in original).

Even assuming that the 1946 regulatory scheme under 49 U.S.C. § 31502 analyzed by the Supreme Court in *Boutell* seventy-six years ago is identical to the currently-applicable regulatory scheme—an issue that Plaintiff fails even to mention let alone address—*Boutell* is inapposite.  Under the facts of that case, *Boutell* dealt only with and applied solely to mechanics of commercial garages, whereas, here, Plaintiff is a driver of a commercial motor vehicle in interstate commerce, not a mechanic working in a commercial garage.  Moreover, while the Supreme Court concluded that the mechanics in *Boutell* were not subject to the ICC's power under 49 U.S.C. § 31502(b) to regulate qualifications and maximum hours of service, Plaintiff here is indisputably subject to this power, as this Court already has held that he is governed by the HOS Regulations.  This ends the analysis.

The same exact distinction makes Plaintiff's reliance on *Hodgson v. Ellis Transportation Co.,* 456 F.2d 937 (9th Cir. 1972), similarly misplaced.  In that case, the decision only identifies the role of one employee as a mechanic and does not make clear the role of the other employees of the equipment leasing company.  The court held that employees of a vehicle leasing company were not within the Secretary of Transportation's regulatory power.  *Id.* at 938-39.  Here, Plaintiff is not employed as a mechanic by an equipment leasing company; he is a driver of a commercial motor vehicle in interstate commerce and thus subject to the HOS Regulations.[9]

---

[9] Mechanics may be within the scope of the MCA exemption, depending on the facts alleged or ultimately proven, but as Plaintiff is not a mechanic, that issue is not relevant at this time.

1    Plaintiff is wrong in arguing that a CMV driver is only exempt from the FLSA's

2  overtime laws when driving for a motor carrier employer as opposed to a staff-leasing

3  company.  As a result, his FLSA overtime claim fails as a matter of law as the MCA

4  exemption applies to the facts alleged.  Thus, the Court should dismiss Plaintiff's FLSA

5  overtime claim with prejudice as well.

6  **D.**    **Plaintiff's Temporary Services Employer Claim Is An Epic Failure Of the**

7         _**Twombly/Iqbal**_ **Requirement to Plead Facts**

8    Plaintiff alleges not a single _fact_ that Defendants are Temporary Service Employers,

9  much less that the statute regarding them has been violated.  Instead, his claim is equally

10 five parts extended quotations of provisions of California law (SAC (Dkt. 60), ¶¶ 122-126),

11 and five parts legal conclusions devoid of factual allegations (_id._ ¶¶ 127-131).  It is what

12 _Iqbal_ and _Twombly_ prohibit: "A pleading that offers 'labels and conclusions' or a 'formulaic

13 recitation of the elements of a cause of action will not do.'  [_Twombly_], 550 U.S. at 555 …

14 Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

15 enhancement.'" _Iqbal_, 556 U.S. at 678 (quoting _Twombly_, 556 U.S. at 557).

16   More specifically, Plaintiff has alleged no facts showing that Defendants were

17 temporary employers under the statute.  Plaintiff asserts he was employed for 43 weeks

18 doing the same thing: driving a CMV for the same driver staffing company, serving the

19 same motor carrier.  (SAC (Dkt. 60), ¶ 28(a)-(b)).  There is no fact alleged anywhere that

20 there was anything temporary expected about Plaintiff's service.  It was Plaintiff who

21 resigned after 43 consecutive weeks doing the same thing.  Unless Plaintiff is asking the

22 Court to hold that being an at-will employee makes the employer a Temporary Services

23 Employer under the statute, an unsupportable argument, he advances no argument at all that

24 either Defendant is a Temporary Services Employer.

25   Even Plaintiff might concede in opposition that his five paragraphs of legal quotes

26 are a "formulaic recitation of the elements of a cause of action." _Iqbal_, 556 U.S. at 678.  But

27 then his next five paragraphs are just the same thing styled as Plaintiff's "conten[tions]"

28 about what Defendants did or are doing, just repeating that same language from the five

14

prior paragraphs.

For example, paragraph 122 of the SAC alleges that there are six elements of a Temporary Services Employer:

> California Labor Code § 201.3(a) provides: "(1) 'Temporary services employer' means an employing unit that contracts with clients or customers to supply workers to perform services for the clients or customers and that performs all of the following functions: [¶] (A) Negotiates with clients and customers for matters such as the time and place where the services are to be provided, the type of work, the working conditions, and the quality and price of the services. [¶] (B) Determines assignments or reassignments of workers, even if workers retain the right to refuse specific assignments. [¶] (C) Retains the authority to assign or reassign a worker to another client or customer when the worker is determined unacceptable by a specific client or customer. [¶] (D) Assigns or reassigns workers to perform services for clients or customers. [¶] (E) Sets the rate of pay of workers, whether or not through negotiation. (F) Pays workers from its own account or accounts. [¶] (G) Retains the right to hire and terminate workers."

(SAC (Dkt. 60), ¶ 122).

And Paragraph 127 just baldly "contends" that Defendants are each of those things:

> Plaintiff, Class Members and Aggrieved Employees are current and former non-exempt employees and are entitled to the protections of Labor Code § 201.3. During litigation, Defendants, or at least one of them has represented it is a so-called 'driver staffing' employer who staffed Plaintiff as a driver for an unnamed party. As a result, Plaintiff contends Defendants were an employing unit that contracted with clients or customers to supply Plaintiff, Class Members and Aggrieved Employees other aggrieved employees as workers to perform services for Defendants' clients or customers and that Defendants performed all of the following functions: (A) negotiated with clients and customers for matters such as the time and place where the services are to be provided, the type of work, the working conditions, and the quality and price of the services; (B) determined assignments or reassignments of Plaintiff, Class Members and Aggrieved Employees, even if Plaintiff, Class Members and Aggrieved Employees retained the right to refuse specific assignments; (C) retained the authority to assign or reassign Plaintiff, Class Members and Aggrieved Employees to another client or customer when the Plaintiff, Class Members and Aggrieved Employees was determined unacceptable by a specific client or customer; (D) assigned or reassigned Plaintiff, Class

15

Members and Aggrieved Employees to perform services for clients or customers; (E) set the rate of pay of Plaintiff, Class Members and Aggrieved Employees, whether or not through negotiation; (F) paid Plaintiff, Class Members and Aggrieved Employees from their own account or accounts; and (G) retained the right to hire and terminate Plaintiff, Class Members and Aggrieved Employees. As such, Plaintiff contends Defendants or at least one of them is a 'temporary services employer' within the meaning of Labor Code § 201.3(a).

(SAC (Dkt. 60), ¶ 127).  This is not even close to being actual allegations of fact to support those elements that could survive *Twombly* and *Iqbal*.

To take another failing, for Plaintiff to be due wages daily from a Temporary Services Employer as he might be claiming in Paragraph 128, that requirement only applies if he starts work at the Temporary Services Employer's site, goes to the "client's worksite" and returns to the Temporary Services Employer's site each day.  Cal. Labor Code § 201.3(b)(2)(B).  But Plaintiff alleges he worked at "Defendants' Fontana location" (SAC (Dkt. 60), ¶ 28(c)) and "Defendants' Irwindale, California location." (*Id.* ¶ 28(f)).  Thus, when Plaintiff **does** make allegations of fact, they contradict the conclusory statements he makes nearly 100 paragraphs later in the SAC[10].

In this third version of his complaint, Plaintiff is still spit-balling claims.  This claim should be dismissed because it alleges no operative facts, and indeed its legal conclusions are actually contrary to those he does allege.

**E.**  **Plaintiff Improperly Continues to Allege Claims Predicated on his Preempted and Dismissed Meal and Rest Break Claims**.

Plaintiff alleges that "notwithstanding any references to meal periods or rest periods in this amended complaint, Plaintiff does not seek any remedies of any kind for meal periods or rest periods, or any meal period or rest period premium payments required under California law." (SAC (Dkt. 60), ¶ 4).  However, in his SAC, Plaintiff improperly continues

---

[10] In addition, although the Court need not even reach this ground, because Plaintiff worked for the same entity for more than 90 consecutive days, Labor Code section 201.3 does not apply.  *Singh v. Inter-Con Sec. Sys.*, No. H047337, 2022 Cal. App. Unpub. LEXIS 4708, at *17 (Cal. Ct. App. July 29, 2022).

to assert the same allegations, along with new ones, in support of his now-dismissed MRB Rules claims although they are entirely irrelevant and immaterial to the claims he asserts in his SAC.  (*See id.*, ¶¶ 28, 36, 38, 41, 42).

This Court, by its Order dated August 7, 2022 (Dkt. 52), dismissed, based on preemption, Plaintiff's claims that he was not afforded meal and rest breaks as required by the California MRB Rules.[11]  In its Order, this Court also dismissed based on preemption by federal law any of Plaintiff's derivative claims premised on his MRB Rules claims.  (*See* Order (Dkt. 52), pp. 5-6 (citing *Estrada v. Kaiser Found. Hosps.*, 678 F. App'x 494, 497 (9th Cir. 2017); *Jimenez v. Young's Mkt. Co., LLC*, No. 21-cv-02410-EMC, 2021 U.S. Dist. LEXIS 242424, at *34 (N.D. Cal. Dec. 20, 2021)).[12]  In short, if Plaintiff follows this Court's Order, there should be no reason to even mention meal or rest breaks.

Despite the Court's ruling, Plaintiff's SAC repeatedly references the alleged MRB Rules violations.  For example, Plaintiff alleges that "Plaintiff conservatively estimates that his entitlements to meal periods and rest periods (which, even if not required under the law, were entitlements Plaintiff believed were due based on Defendants' representations) were violated about twice a week…."  (SAC (Dkt. 60), ¶ 28(d)(5)).  Plaintiff further states, in "Allegations Common to All Causes of Action," that "Defendants failed to pay Plaintiff for all hours worked (including minimum wages and overtime wages) under California and federal law, failed to provide Plaintiff with uninterrupted meal periods (which, although meal periods were not required under California law, Defendants, nevertheless told Plaintiff Defendants would authorize and permit including as evidenced in Plaintiff's January 15,

---

[11] In so concluding, the Court noted the Ninth Circuit's recognition that the HOS Regulations issued by the FMCSA preempt California's MRB Rules "as applied to operators of property-carrying motor vehicles subject to the federal hours of service regulations." (*See* Order (Dkt. 52), p. 4 (quoting *Teamsters*, 986 F.3d at 848). Based on *Teamsters* and this Court's conclusion that Plaintiff is subject to the MCA's HOS Regulations as a driver of a property-carrying CMV in interstate commerce, this Court determined that Plaintiff's claims for violations of California's MRB Rules were preempted by federal HOS Regulations. (Order (Dkt. 52), p. 5).

[12] Specifically, the Court stated that "[t]his includes the sixth claim for failure to pay final wages at termination [(Cal. Lab. Code § 203)], the seventh claim for failure to maintain wage records [(*id.* § 226)], and the eighth claim for violation of the UCL, each of which rests at least in part upon violations of state meal and rest break rules." (Order (Dkt. 52), p. 5). This Court further concluded that, as to the first and second claims for minimum and overtime wages, they "should be restated if they rest on meal and rest break violations." (*Id.* at 5-6).

2021 wage statement which includes a "MISSED LUNCH PREMIUM" payment…." (*Id.* ¶ 36). Plaintiff continues these types of allegations throughout the SAC.[13]

Notwithstanding Plaintiff's assurance that he seeks no remedies of any kind related to meal or rest periods (SAC (Dkt. 60), ¶ 4), Plaintiff's attempt to circumvent the Court's preemption ruling by continuing to include meal and rest break allegations upon which other causes of action are predicated should not be permitted. Accordingly, allegations in Plaintiff's SAC that reference the preempted meal and rest break claims should be stricken[14] and removed as directed by the Court in its Order related to the FAC, because all such claims have been dismissed, including derivative claims.[15]

## F. **Plaintiff's Derivative Unfair Business Practices and PAGA Claims Should be Dismissed To The Extent the Underlying Claims Fail**

Plaintiff's Unfair Business Practices claim under § 17200, *et seq*. ("UCL") in Count 8, and his PAGA claim in Count 10 are both derivative of the underlying claims alleged and must be dismissed to the extent the underlying claims fail. As to the UCL claim, it prohibits an "unlawful, unfair or fraudulent business act or practice…." *See* Cal. Bus & Prof. Code § 17200. The UCL "does not proscribe specific activities," but rather, "borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently

---

[13] As other examples (without repeating each and every allegation reflecting this issue), Defendants point to the following: ¶ 38 ("although meal periods were not required under California law, Defendants nevertheless … told Plaintiff and the Class that for every work period of more than five (5) hours and unpaid meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours would complete the day's work, the meal period could be waived by mutual consent…."; and "Plaintiff contends that it was still Defendants' policy and practice to not pay Plaintiff and Class for all hours worked during their so-called 30 minute meal periods because Plaintiff and Class were not relieved of all duties during those unpaid periods, which resulted in the failure to pay all minimum wages and all overtime wages due."); ¶ 41 ("Defendants willfully failed and refused to timely pay Plaintiff and the Class at the conclusion of their employment all wages for all minimum wages, overtime wages, including as a result of its policy and practice of not crediting Plaintiff and the Class for so-called unpaid meal periods (which, although meal periods were not required under California law, Defendants … told Plaintiff and the Class Defendants would authorize and permit."); ¶ 42 ("Defendants failed to furnish Plaintiff and the Class with accurate, itemized wage statements … including … for so-called unpaid meal periods that, even if they were not required under California law should have been paid as time worked…."). *See also* ¶¶ 42(a), 42(b), 42(c), and 42(d).

[14] Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

[15] To the extent Plaintiff asserts that he has pled some other unidentified cause of action, Plaintiff has pled no facts sufficient to allege any other type of viable claim. Thus, any purported nameless new claim based on Plaintiff's core contention that it was Defendants' practice to force employees to work during meal and rest periods without pay is simply a preempted derivative claim that Plaintiff improperly seeks to repackage as something else.

1    actionable." *Puentes v. Wells Fargo Home Mortg., Inc.,* 160 Cal. App. 4th 638, 643-44 (Cal.

2    Ct. App. 2008) (internal quotation marks and citations omitted).  Thus, liability for Plaintiff's

3    claim under the UCL depends upon and is only triggered by Plaintiff proving liability on

4    these underlying claims.  *See Reyna v. WestRock Co.*, No. 20-cv-01666-BLF, 2020 U.S.

5    Dist. LEXIS 153575, at *31 (N.D. Cal. Aug. 24, 2020) (unfair competition dismissed

6    because it relied on and was derivative of plaintiff's insufficient minimum wage, overtime,

7    meal/rest period, and unreimbursed business expenses claims); *Reilly v. Recreational*

8    *Equip., Inc.,* No. 18-cv-07385-LB, 2019 U.S. Dist. LEXIS 34244, at *15 (N.D. Cal. Mar. 4,

9    2019) (dismissing derivative unfair competition claim because the underlying claims for

10   alleged minimum wage, overtime, meal-break, and rest-period claims were insufficiently

11   pled).

12        Here, Plaintiff's UCL claim is in part derivative of Plaintiff's inadequately pled claim

13   for "failure to timely pay all wages due as a Temporary Services Employer" (Count 9).

14   Dismissal of Plaintiff's UCL claim is thus required to the extent it is derivative of this failed

15   claim (as well as any claims premised on the preempted and previously dismissed MRB

16   Rules claims and derivative claims based thereon).

17        The same is true as to Plaintiff's PAGA claim.  In a civil complaint, a PAGA claim

18   is derivative of a pleaded claim where it "does not add any factual allegations" beyond those

19   pleaded in the claims alleging underlying violations of the Labor Code.  *Bush v. Vaco Tech.*

20   *Servs.*, LLC, No. 17-cv-05605-BLF, 2018 U.S. Dist. LEXIS 74613, at *35 (N.D. Cal. May

21   2, 2018); *see also Reyna*, 2020 U.S. Dist. LEXIS 153575, at *32 ("Plaintiff's PAGA claim

22   does not add any factual allegations and is derivative of her Labor Code claims.").  A

23   derivative PAGA claim can proceed only to the extent the underlying claims it is based on

24   are adequately pleaded.  *See Reed v. Autonation, Inc.*, No. CV 16-08916-BRO (AGRx),

25   2017 U.S. Dist. LEXIS 218134, at *8, 20 (C.D. Cal. Apr. 20, 2017).  Thus, where a court

26   dismisses the underlying substantive claims, it also must dismiss the derivative PAGA

27   claim.  *See, e.g.*, *Carlos v. Wal-Mart Assocs.*, No. ED CV 21-00294-AB (KKx), 2021 U.S.

28   Dist. LEXIS 205534, at *14 (C.D. Cal. Aug. 13, 2021); *Duley v. Centerra Grp., LLC*, No.

2:19-cv-08754-AB (JCx), 2020 U.S. Dist. LEXIS 209866, at *14–15 (C.D. Cal. Mar. 18, 2020).

Here, Plaintiff's PAGA claim contains no independent factual allegations. Plaintiff's PAGA claim begins by expressly incorporating by reference all the allegations previously pleaded. (SAC (Dkt. 60), ¶ 132). Thus, the PAGA claim must rise and fall together with the underlying claims. Because, as discussed above, the FLSA claims fail, as do the California temporary services employer claims (as well as any claims premised on the preempted and previously dismissed MRB Rules claims and derivative claims based thereon), Plaintiff's PAGA claim fails to the same extent.

## VI.   **CONCLUSION**

For the foregoing reasons, Defendants respectfully assert that the above-discussed FLSA, and temporary services employer claims should be dismissed in their entirety. Additionally, in accordance with this Court's previous dismissal of all MRB Rules claims based on preemption, all allegations related to meal and rest breaks, including claims that are derivative of the alleged meal and rest break violations, should be stricken from the SAC. Finally, the PAGA claim and the Unfair Business Practices claims fail to the extent they are derivative of dismissed claims.

Dated: September 20, 2022                          Respectfully submitted,

FISHER & PHILLIPS LLP
By: */s/ Cheryl L. Schreck*
Cheryl L. Schreck

THOMPSON HINE LLP
*/s/ Anthony C. White*
Anthony C. White
J. Timothy McDonald
Attorneys for R&L CARRIERS SHARED SERVICES, L.L.C. and R&L CARRIERS, INC.

**CERTIFICATE OF SERVICE**

I, the undersigned, am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; am employed with the law offices of Fisher & Phillips LLP and my business address is 444 South Flower Street, Suite 1500, Los Angeles, California 90071.

On September 20, 2022 I served the foregoing document entitled **DEFENDANTS R&L CARRIERS SHARED SERVICES, LLC'S AND R&L CARRIERS, INC.'S NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS AND TO STRIKE SECOND AMENDED COMPLAINT**; **[PROPOSED] ORDER** on all the appearing and/or interested parties in this action by placing ☐ *the original* ☒ *a true copy* thereof enclosed in sealed envelope(s) addressed as follows:

Kane Moon
Roy K. Suh
Moon & Yang, APC
1055 W. Seventh Street, Suite 1880
Los Angeles, CA 90017

Attorney for Plaintiff
ALBERT JOHNSON

Tel: (213) 232-3128
Email: kane.moon@moonyanglaw.com;
roy.suh@moonyanglaw.com

Anthony C. White
Application for Pro Hac Vice
J. Timothy McDonald
THOMPSON HINE, LLP
41 South High Street, Suite 1700
Columbus, Ohio 43215

Attorneys for Defendants
R&L CARRIERS SHARED SERVICES,
L.L.C. and R&L CARRIERS, INC.

Telephone: (614) 469-3200
Facsimile: (614) 469-3361
E-mail:
Tony.White@ThompsonHine.com

☒ **[by ELECTRONIC SUBMISSION]** - I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed September 20, 2022 at Los Angeles, California.

Amy Stark
<span style="font-size:smaller">Print Name</span>

By: _/s/ Amy Stark_
<span style="font-size:smaller">Signature</span>

1

486DEFENDANTS R&L CARRIERS SHARED SERVICES, L.L.C. AND, R&L CARRIERS, INC. MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PARTIAL MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S SECOND AMENDED COMPLAINT

FP 45247468.1