1  Kane Moon (Cal. SBN 249834)
   kane.moon@moonyanglaw.com
2  Roy K. Suh (Cal. SBN 283988)
   roy.suh@moonyanglaw.com
3  **MOON & YANG, APC**
   1055 West Seventh Street, Suite 1880
4  Los Angeles, California 90017
   Telephone: (213) 232-3128
5  Facsimile: (213) 232-3125

6  Attorneys for Plaintiff ALBERT JOHNSON

7

8  **UNITED STATES DISTRICT COURT**
   **CENTRAL DISTRICT CALIFORNIA**

9

| | |
|---|---|
| 10 ALBERT JOHNSON, individually, and on behalf of all others similarly situated, | Case No.: 2:22-cv-01619-MCS-JPR<br>*Assigned to the Honorable Mark C. Scarsi* |
| 11        Plaintiff, | **THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT** |
| 12      v. | |
| 13 R&L CARRIERS SHARED SERVICES, LLC, a limited liability company; R&L | 1. Failure to Pay Minimum Wages (Cal. Lab. Code §§ 204, 1194, 1194.2, 1197); |
| 14 CARRIERS, INC., an Ohio corporation; and DOES 1 through 10, inclusive, | 2. Failure to Pay Overtime Compensation (Cal. Lab. Code §§ 1194 and 1198); |
| 15 | 3. Failure to Pay FLSA Minimum Wages (29 U.S.C. § 206); |
| 16     Defendants. | 4. Failure to Pay FLSA Overtime Wages (29 U.S.C. § 207); |
| 17 | 5. Failure to Indemnify Necessary Business Expenses (Cal. Lab. Code § 2802); |
| 18 | 6. Failure to Timely Pay Final Wages at Termination (Cal. Lab. Code §§ 201-203); |
| 19 | 7. Failure to Provide Accurate Itemized Wage Statements (Cal. Lab. Code § 226); |
| 20 | |
| 21 | 8. Unfair Business Practices (Cal. Bus. & Prof. Code §§ 17200, *et seq.*); |
| 22 | 9. Failure to Timely Pay Wages as a Temporary Services Employer (Cal. Lab. Code § 201.3); and |
| 23 | |
| 24 | 10.   Civil Penalties Under PAGA (Cal. Lab. Code §§ 2698, *et seq.*) |
| 25 | PAGA Case No. |
| 26 | LWDA-CM-862197-22:    01/11/2022<br>State Action Filed:      01/18/2022 |
| 27 | Removed:               03/10/2022<br>FAC Filed:             06/02/2022 |
| 28 | SAC Filed:             09/06/2022<br>Trial Date:             Not Set |

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

## **TABLE OF CONTENTS**

INTRODUCTION & PRELIMINARY STATEMENT ................................................. 1

THE PARTIES ............................................................................................................. 10

    A.   Plaintiff ............................................................................................... 10

    B.   Defendants ......................................................................................... 21

ALLEGATIONS COMMON TO ALL CAUSES OF ACTION ........................... 28

CLASS AND COLLECTIVE ACTION ALLEGATIONS ................................... 33

FIRST CAUSE OF ACTION ................................................................................... 38

SECOND CAUSE OF ACTION .............................................................................. 40

FOURTH CAUSE OF ACTION .............................................................................. 43

FIFTH CAUSE OF ACTION ................................................................................... 45

SIXTH CAUSE OF ACTION ................................................................................... 46

SEVENTH CAUSE OF ACTION ............................................................................ 47

EIGHTH CAUSE OF ACTION ............................................................................... 49

NINTH CAUSE OF ACTION .................................................................................. 52

TENTH CAUSE OF ACTION .................................................................................. 56

PRAYER FOR RELIEF ............................................................................................ 59

DEMAND FOR JURY TRIAL ................................................................................ 65

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

i

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

## THIRD AMENDED COMPLAINT

Plaintiff Albert Johnson ("Plaintiff"), based upon facts that either have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery, alleges as follows:

## INTRODUCTION & PRELIMINARY STATEMENT

1.    Plaintiff brings this action against Defendants R&L Carriers Shared Services, LLC, R&L Carriers, Inc., and Does 1 through 10 (Defendants are collectively referred to as "Defendants") for California Labor Code and Fair Labor Standards Act violations for Defendants' (1) failure to pay minimum wages under California law, (2) failure to pay overtime wages under California law, (3) failure to pay minimum wages under federal law, (4) failure to pay overtime wages under federal law, (5) failure to indemnify necessary business expenses under California law; (6) failure to timely pay all wages to terminated employees under California law; (7) failure to furnish accurate wage statements under California law, (8) engagement in unfair business practices under California law; (9) failure to pay timely pay all wages as a temporary services employer under California law; and for (10) failure to comply with the California laws governing wages, hours and working conditions giving rise to civil penalties under California Private Attorneys General Act ("PAGA").

2.    Plaintiff brings the First, Second, and the Fifth to Ninth Causes of Action individually and as a class action on behalf of himself and certain current and former employees of Defendants (hereinafter sometimes collectively referred to as the "Class" or "Class Members" and defined more fully below). The Class consists of Plaintiff and all other persons who have been employed by any Defendants in California as an hourly-paid, non-exempt employee during the statute of limitations period applicable to the claims pleaded here.

3.    Plaintiff previously brought the Third and Fourth Causes of Action for claims arising under the Fair Labor Standards Act of 1938 (FLSA) as a party plaintiff in a collective action in behalf of himself and certain current and former employees of

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

Defendants employees similarly situated (hereinafter sometimes collectively referred to as the "Collective Class" or "Collective Action Members" and defined more fully below). While Plaintiff has always been specifically named as a party plaintiff or named plaintiff in this action, and has submitted declarations in this action in support of Plaintiff's allegations, Plaintiff, nevertheless, attaches hereto as **Exhibit A**, Plaintiff's August 18, 2022 filing in this action, entitled: Albert Johnson's 29 U.S.C. § 256 Written Consent to Become a Party Plaintiff Under the Fair Labor Standards Act (ECF No. 53) to further signify Plaintiff's written consent to serve as a party plaintiff and representative of the Collective Class.

4.     Furthermore, not withstanding any references to meal periods or rest periods in this amended complaint, Plaintiff does not seek any remedies of any kind for meal periods or rest periods or any meal period or rest period premium payments required under California law.

5.     Plaintiff brings the Tenth Cause of Action as a representative action under PAGA to recover civil penalties that are owed to Plaintiff, the State of California, and past and present non-exempt, hourly-paid employees of Defendants who worked in California during the applicable statute of limitations period (hereinafter referred to sometimes as the "Aggrieved Employees").

6.     Defendants own/owned and operate/operated an industry, business, and establishment within the State of California, including Los Angeles County. As such, and based upon all the facts and circumstances incident to Defendants' business in California, Defendants are subject to the California Labor Code, Wage Orders issued by the Industrial Welfare Commission ("IWC"), the California Business & Professions Code and the FLSA.

7.     Despite these requirements, throughout the statutory period Defendants maintained a systematic, company-wide policy and practice of:

(a)     Willfully failing to pay employees for all hours worked, including all minimum wages, and overtime wages in compliance with the California Labor Code and IWC Wage Orders;

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

(b)     Willfully failing pay employees for all hours worked, including all minimum wages and overtime wages in compliance with the FLSA;

(c)     Willfully failing to indemnify employees for necessary business expenses incurred;

(d)     Willfully failing to pay employees all minimum wages, overtime wages, and other remunerations due within the time period specified by California law when employment terminates;

(e)     Willfully failing to maintain accurate records of the hours that employees worked;

(f)     Willfully failing to pay employees all minimum wages, overtime wages, and other remunerations due as temporary service employers within the time periods specified by California law; and

(g)     Failing to provide employees with accurate, itemized wage statements containing all the information required by the California Labor Code and IWC Wage Orders.

8.     In 1935, Congress enacted the Motor Carrier Act ("MCA") "to promote efficiency and safety in interstate motor transportation." *Bilyou v. Dutchess Beer Distributors, Inc*., 300 F.3d 217, 222 n. 2 (2nd Cir. 2002); *see* William E. Kenworthy, Transportation Safety and Insurance Law § 4.01 (3rd ed. 2005). The MCA endowed the Interstate Commerce Commission ("ICC") "with the power to impose economic regulations such as licensing, certificate, and permit requirements on common and contract carriers, but not on private carriers." *Bilyou*, 300 F.3d at 227.

9.     "In 1966, Congress enacted the 'Department of Transportation Act,' which transferred the authority to regulate safety operations for motor vehicles under the MCA from the ICC to the Department of Transportation." *Bilyou*, 300 F.3d at 222 n. 2. "Congress abolished the ICC on January 1, 1996 and transferred many of its functions to the newly created Surface Transportation Board, an agency within the Department of Transportation." *Ibid*.

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

10. Presently, the Secretary of the Department of Transportation has jurisdiction over transportation by motor carriers in interstate commerce pursuant to the MCA. *See* 49 U.S.C. § 13501. The MCA defines a "motor carrier" as "a person providing commercial motor vehicle . . . transportation for compensation." 49 U.S.C. § 13102(14). The MCA defines a "motor private carrier" as "a person, other than a motor carrier, transporting property by commercial motor vehicle . . . when—(A) the transportation is as provided in section 13501 of this title [49 U.S.C. § 13501]; (B) the person is the owner, lessee, or bailee of the property being transported; and (C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise." 49 U.S.C. § 13102(15).

11. The Federal Motor Carrier Safety Administration ("FMCSA") reports directly to the Secretary of the Department of Transportation (*see* 49 C.F.R. § 1.2(a)(3)) and "[i]s responsible for" among other things "(a) Managing program and regulatory activities, including administering laws and promulgating and enforcing regulations on safety matters relating to motor carrier safety[.]" 49 C.F.R. § 1.86(a).

12. The United States Department of Transportation ("USDOT") and FMCSA require motor vehicle operation with "operating authority" possessed by an employer, who is registered with the FMCSA including as described in 49 U.S.C. § 13901 "Requirements for registration", subds. (a) & (b)(1)-(2), which provide, in part:

(a) **In General.**—A person may provide transportation as a motor carrier . . . only if the person is registered under this chapter to provide such transportation or service. [¶] (b) **Registration Numbers.**— (1) **In General.**— If the Secretary registers . . . a motor carrier, . . . the Secretary shall issue a distinctive registration number to the person for each such authority to provide transportation or service for which the person is registered. [¶] (2) **Transportation or** Service **Type Indicator.**—A number issued under paragraph (1) shall include an indicator of the type of transportation or service for which the registration number is issued . . . .

13. For motor carriers engaging in interstate transportation, 49 U.S.C. § 13902 "Registration of motor carriers", subd. (a) and its subdivisions, provide, in part:

(a) **Motor Carrier Generally.**—(1) **In General.**—. . . the Secretary of Transportation shall register a person to provide transportation . . . as a motor carrier using self-propelled vehicles the motor carrier owns, rents, or leases only if the Secretary determines that the person— (A) is willing and able to comply with— (i) this part and the applicable regulations . . . ; (ii) any safety

4

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

regulations imposed . . .; (iii) the duties of employers and employees established . . . ; (iv) the safety fitness requirements established . . . ; (v) the accessibility requirements established . . . ; and (vi) the minimum financial responsibility requirements established . . . ; (B) has been issued a USDOT number under section 31134; (C) has disclosed any relationship involving common ownership, common management, common control, or common familial relationship . . . and (D) . . . has passed the written proficiency examination.

14.    The Federal Motor Carrier Safety Regulations, 49 C.F.R. §§ 350-399, *et seq*. (sometimes "FMCSR(s)"), § 390.3 "General applicability", subd. (e) provides:

(e)    ***Knowledge of and compliance with the regulations***. [¶] (1) Every employer shall be knowledgeable of and comply with all regulations contained in this subchapter that are applicable to that motor carrier's operations. [¶] (2) Every driver and employee involved in motor carrier operations shall be instructed regarding, and shall comply with, all applicable regulations contained in this subchapter. [¶] (3) All motor vehicle equipment and accessories required by this chapter shall be maintained in compliance with all applicable performance and design criteria set forth in this subchapter.

15.    Finally, under FMCSR Part 392 "Driving of Commercial Vehicles", 49 C.F.R. § 392.1(a) and § 392.9a, provide:

**§ 392.1 Scope of the rules in this part.** [¶] (a) Every motor carrier, its officers, agents, representatives, and employees responsible for the management, maintenance, operation, or driving of commercial motor vehicles, or the hiring, supervising, training, assigning, or dispatching of drivers, shall be instructed in and comply with the rules in this part.

**§ 392.9a Operating authority.** [¶] (a) ***Operating authority required***. A motor vehicle providing transportation requiring operating authority must not be operated – [¶] (1) Without the required operating authority or [¶] (2) Beyond the scope of the operating authority granted. [¶] (b) ***Penalties***. Every motor carrier providing transportation requiring operating authority shall be ordered out of service if it is determined that the motor carrier is operating a vehicle in violation of paragraph (a) of this section. In addition, the motor carrier may be subject to penalties in accordance with 49 U.S.C. 14901. (c) ***Administrative review***. Upon issuance of the out-of-service order under paragraph (b) of this section, the driver shall comply immediately with such order. Opportunity for review shall be provided in accordance with 5 U.S.C. 554 not later than 10 days after issuance of such order.

16.    The FLSA, enacted three years after the MCA, provides, among other things, that no employer shall employ an employee who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, less than minimum wages for all

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

5

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

hours worked. 29 U.S.C. § 206. "Employer" is defined under the Act to be "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). An "employee" is any individual employed by an employer. 29 U.S.C. § 203(e)(1). The term "employ" means "to suffer or permit to work." 29 U.S.C. § 203(g).

17.    The FSLA authorizes private rights of action to recover damages for violation of the FLSA's wage and hour provisions including in a suit by "one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Pursuant to 29 U.S.C. § 255, a three-year statute of limitations applies to willful violations of the FLSA. In *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 131-33 (1988), the Supreme Court discussed the distinction between ordinary and "willful" violations of the FLSA and adopted a standard for showing willful violations that requires a plaintiff to show "that the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id*. at 133.

18.    The FLSA exempts categories of employees from its overtime requirements and those exemptions are to be narrowly construed. *Martin v. Malcolm Pirnie, Inc.,* 949 F.2d 611, 614 (2d Cir.1991) (citations omitted). The burden of proving that an employee falls within a particular FLSA exemption lies with the employer. *Ibid.* Section 213(b)(1) of the FLSA provides that the overtime pay provisions of section 207 do not apply with respect to employees falling under the MCA.

19.    In *Boutell v. Walling*, the United States Supreme Court affirmed denials of employer-petitioners' FLSA exemption claim because "the record here shows that the men in question are employees of the Service Company, which is not a carrier, rather than of the Drive-Away Company, which is a carrier. This is true although the work these employees do is all supplied to the Drive-Away Company through the Service Company." *Boutell v. Walling* 327 U.S. 463, 467–68 (1946).

20.    In *Boutell,* the Supreme Court concluded as fact and law that the defendant's employees' involvement in interstate commerce was established by noting: "[n]o claim is made that these employees are not engaged in interstate commerce within the meaning

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

of s 7 of the Fair Labor Standards Act." (*Boutell* 327 U.S. at 466) and went on to analyze relevant and completely distinct question about the employer's obligations as follows:

> In this view of this case, it is not necessary to determine what kind of a carrier the Drive-Away Company is or even whether it is a carrier within the meaning of the Motor Carrier Act because the employees involved in this case are not its employees. Similarly, it is not necessary to determine which of the employees of the Service Company do work which affects the safety of the operation of motor vehicles because that classification applies to employees whose hours are regulated by the Interstate Commerce Commission, and not to those whose hours are regulated by the Fair Labor Standards Act.

*Id.* at 471-72. *See e.g., Wirtz v. Dependable Trucking Co.*, 260 F. Supp. 240, 242 (D.N.J. 1966) (denying FLSA exemption, analyzing and following *Boutell* twenty-years post); *McLaughlin v. Brennan*, 700 F. Supp. 272, 274 (W.D. Penn. 1988) (defendants failed to establish that they qualified as either a "motor contract carrier" or "motor common carrier," so as to be exempt from overtime provisions of [the FLSA].")

21.     The Supreme Court's decision in *Boutell* makes clear that whether a defendant's employees are involved in interstate commerce is irrelevant in determining whether the defendant-employer qualifies for federal exemption where the defendant-employer does not qualify as a motor carrier under the MCA.

22.     In *Hodgson v. Ellis Transp. Co*., the Ninth Circuit found '[n]o meaningful difference" to distinguish *Boutell* and affirmed a denial of an employer's FLSA exemption claim where the employer similarly (and unsuccessfully) relied on a separate entity's motor carrier authority. (*Hodgson v. Ellis Transp. Co*. (9th Cir. 1972) 456 F.2d 937, 939.) Describing Mr. Wade Ellis and his two businesses, the Ninth Circuit wrote:

> Ellis Transportation leases and maintains rolling stock, its principal customer being Ellis Interstate Corporation, which holds an I.C.C. license for interstate trucking. Ellis Transportation is a California corporation and Wade Ellis is its sole shareholder. Prior to 1962 Ellis Transportation held an I.C.C. interstate trucking license. In 1962 Mr. Ellis formed Ellis Interstate as a wholly owned corporate subsidiary of Ellis Transportation, and transferred the I.C.C. license to the new corporate entity. The parties to this suit have stipulated that Ellis divided his business in this manner to simplify his compliance with the record keeping and reporting requirements of the Interstate Commerce Commission and the California Public Utilities Commission.
>
> The two companies share one physical facility in Indio, California.

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

7

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

They share one telephone number, and the trucking industry customarily refers to the whole operation as Ellis Transportation. In a real economic sense, these two companies are integrated into one business.

Appellants contend that the court, by looking to substance instead of corporate form, should hold that Mr. Ellis' entire trucking business falls within the Motor Carrier Act exemption.

The argument is plausible, but we cannot accept it. The Supreme Court decisively rejected this approach to the § 13(b) exemption in *Boutell v. Walling*, 327 U.S. 463, 66 S.Ct. 631, 90 L.Ed. 786 (1946). In *Boutell* a partnership, the F. J. Boutell Service Company, leased vehicles exclusively to a transportation company, F. J. Boutell Drive-Away Company, a corporation wholly owned by the partners in the Service Company. The Court held that the two companies were legally independent, so the partnership's employees did not come within the Motor Carrier Act exclusion. Three Justices dissented on the ground that, despite the legal forms chosen, the two companies in reality constituted a single business.

No meaningful difference distinguishes Ellis' situation from that presented in *Boutell*, as appellants' counsel virtually conceded at oral argument. We hold that the employees of Ellis Transportation Company are not employees of a common carrier by motor vehicle.

*Id.* at 938-39.

23.    In *Hodgson*, the Ninth Circuit found defendants' business entities were solely owned (legally and equitably), operated from a single location, and that Mr. Ellis's companies were economically "integrated into one business." Yet, the Ninth Circuit deemed the businesses "legally independent" and, following *Boutell*, held that Ellis Transportation Company, who admittedly employed the plaintiffs, did not qualify for MCA exemption from overtime wage payments under the FLSA because it lacked status as a common carrier by motor vehicle.

24.    California similarly exempts categories of employees from its overtime requirements as provided in IWC Wage Order 9-2001, § 3(L)(1) & (2), which states: "(L) The provisions of this section are not applicable to employees whose hours of service are regulated by: (1) The United States Department of Transportation Code of Federal Regulations, Title 49, Sections 395.1 to 395.13, Hours of Service of Drivers; or (2) Title 13 of the California Code of Regulations, subchapter 6.5, Section 1200 and the following sections, regulating hours of drivers."

25.    Activities of both the employer and the employee are necessarily considered

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

8

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

when determining the applicability of the MCA exemption. *See Dauphin v. Chestnut Ridge Transp., Inc.,* 544 F.Supp.2d 266, 273 (S.D.N.Y.2008) ("Whether the motor carrier exemption applies to an employee depends on the nature of both the employer's and employees' activities.") (citing 29 C.F.R. § 782.2(a)).

    (a)    According to the FMCSA's public website of the "[c]ompanies that operate commercial vehicles transporting passengers or hauling cargo in interstate commerce must be registered with the FMCSA and must have a USDOT Number. Also, commercial intrastate hazardous materials carriers who haul types and quantities requiring a safety permit must register for a USDOT Number." *What is a USDOT Number?,* FMCSA, U.S. DEP'T TRANSPORTATION, https://www.fmcsa.dot.gov/registration/do-i-need-usdot-number (last visited June 2, 2022). "The USDOT Number serves as a unique identifier when collecting and monitoring a company's safety information acquired during audits, compliance reviews, crash investigations, and inspections." *Ibid.* Additionally, California and other states, require "require their *intrastate* commercial motor vehicle registrants to obtain a USDOT Number." *Id.* (emphasis added). *See D'Arpa v. Runway Towing Corp.*, No. 12-CV-1120, 2013 WL 3010810, at *10-11 (E.D.N.Y. June 18, 2013) (denying a defendant's motion for summary judgment because a defendant represented it engaged in intrastate operations and "never obtained a Motor Carrier Number").

    (b)    In order for the MCA exemption to an employee, the employee must "engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." 29 C.F.R. § 782.2(a)(2). For drivers, "interstate transportation is a natural, integral, and inseparable

9

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

part of a worker's duties if the worker is likely to be called on to perform interstate travel, irrespective of how many hours the worker actually devotes to affecting the safety of vehicles engaged in interstate transportation." *Fox v. Commonwealth Worldwide Chauffeured Transp. of NY, LLC,* 865 F.Supp.2d 257, 266 (E.D.N.Y.2012) (quotation marks and citations omitted). An employee is not exempt under the MCA during any particular workweek where his or her activities of an interstate character "have no substantial direct effect on safety of operations" or where those "safety-affecting activities are so trivial, casual, and insignificant as to be *de minimis*." *Dauphin,* 544 F.Supp.2d at 274) (quoting 29 C.F.R. § 782.2(b)(3)).

26.    On information and belief, Defendants, and each of them were on actual and constructive notice of the improprieties alleged herein and intentionally refused to rectify their unlawful policies. Defendants' violations, as alleged above, during all relevant times herein were willful and deliberate.

27.    At all relevant times, Defendants were and are legally responsible for all of the unlawful conduct, policies, practices, acts and omissions as described in each and all of the foregoing paragraphs as the employer of Plaintiff and the Class. Further, Defendants are responsible for each of the unlawful acts or omissions complained of herein under the doctrine of "respondeat superior".

## THE PARTIES

### A.    Plaintiff

28.    Plaintiff is a California resident that worked for Defendants in the County of Los Angeles, State of California, as a driver from approximately July 2020 to May 2021.

(a)    Plaintiff's employment, which lasted roughly 43 weeks, commenced during the COVID-19 pandemic, which, in Los Angeles and surrounding California counties, led to "stay at home" orders starting around March 2020.

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

1)  After Plaintiff's initial training and orientation, Plaintiff
    regularly commenced his daily shifts in the late evening at
    Defendant's location in Fontana, California and later in
    Irwindale, California.

    a.  Because Plaintiff's foregoing allegations are consistent
        with the fact that Plaintiff alleges Defendant R&L Carriers
        Shared Services, LLC transferred Plaintiff from Fontana,
        California to another location in Irwindale, California,
        Plaintiff further alleges Defendant R&L Carriers Shared
        Services, LLC determined Plaintiff's assignments and
        reassignment as Defendant R&L Carriers Shared Services,
        LLC's worker (*see* Cal. Lab. Code § 201.3(a)(1)(B)).

    b.  Because Plaintiff's foregoing allegations are consistent
        with the fact that Plaintiff alleges Defendant R&L Carriers
        Shared Services, LLC hired Plaintiff, Plaintiff further
        alleges Defendant R&L Carriers Shared Services, LLC
        had the right and retained the right to hire Plaintiff, who
        was Defendant R&L Carriers Shared Services, LLC's
        worker (*see* Cal. Lab. Code § 201.3(a)(1)(G)).

2)  Plaintiff estimates that he drove for Defendants wholly intrastate
    roughly 90% of the times he drove for Defendants including
    between regular pick up and drop off locations in Fontana,
    California; Irwindale, California; Desert Center, California; Los
    Angeles, California; and San Diego, California, among other
    locations and that driving across state lines was the exception to
    Plaintiff's and other drivers' regular intrastate work. As a result,
    Plaintiff was not exempt under the MCA for most if not all
    workweeks because interstate transportation was not a natural,

11

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

integral, and inseparable part of a Plaintiff's duties.

    3)    Plaintiff believes Defendant's own logs of Plaintiff's driving will show Plaintiff drove for weeks and weeks at a time wholly intrastate and that his intrastate trips, during a shift, would take anywhere from around eight hours of driving and up to around 12 hours of driving, which did not include work Plaintiff performed before or after actually driving.

  (b)  Plaintiff regularly worked, but did not always work, over 40 hours per week, typically working five days per seven-day workweek for which Defendants issued Plaintiff wage statements, which covered seven-day pay periods with the name "R+L CARRIERS SHARED SERVICES, LLC" on them. For instance, Plaintiff attaches hereto as **Exhibit B**, Plaintiff's wage statements show during the workweeks and pay periods of:

    1)    08/16/2020 to 08/22/2020, Defendants credited Plaintiff with "Total Hours Worked" of 56.87 hours with a "Rate" of "22.18" and an overtime rate listed under the "Overtime Rate" heading showing "Driving = N/A" and Dock work = 33.27";

    2)    08/23/2020 to 08/29/2020, Defendants credited Plaintiff with "Total Hours Worked" of 61.30 hours with a "Rate" of "22.18" and an overtime rate listed under the "Overtime Rate" heading showing "Driving = N/A" and Dock work = 33.27";

    3)    11/01/2020 to 11/07/2020, Defendants credited Plaintiff with "Total Hours Worked" of 40.77 hours with a "Rate" of "25.18" and an overtime rate listed under the "Overtime Rate" heading showing "Driving = N/A" and Dock work = 33.27";

    4)    11/29/2020 to 12/05/2020, Defendants credited Plaintiff with "Total Hours Worked" of 50.00 hours with a "Rate" of "26.43"

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

and an overtime rate listed under the "Overtime Rate" heading showing "Driving = N/A" and Dock work = 39.65";

5) 01/03/2021 to 01/09/2021, Defendants credited Plaintiff with "Total Hours Worked" of 43.96 hours with a "Rate" of "26.43" and an overtime rate listed under the "Overtime Rate" heading showing "Driving = N/A" and Dock work = 39.65"; and

6) 02/14/2021 to 02/20/2021, Defendants credited Plaintiff with "Total Hours Worked" of 43.46 hours with a "Rate" of "26.43" and an overtime rate listed under the "Overtime Rate" heading showing "Driving = N/A" and Dock work = 39.65".

a. Because Plaintiff's foregoing allegations including the fact that Plaintiff previously attached various wage statements to this Complaint are consistent with the fact Defendant R&L Carriers Shared Services, LLC set and changed Plaintiff's rates of pay including overtime Dock work rates of pay, which Plaintiff alleges Defendant R&L Carriers Shared Services, LLC changed as Plaintiff's admitted employer, Plaintiff now further alleges Defendant R&L Carriers Shared Services, LLC set Plaintiff's rates of pay as worker (whether or not through negotiation) (*see* Cal. Lab. Code § 201.3(a)(1)(G)).

(c) Plaintiff worked regularly under the supervision of "Frank" and "Richard" who Plaintiff believes regularly maintained an office in Defendants' Fontana location and may have held the title "Dock Supervisor" during Plaintiff's employment.

1) Near the outset of Plaintiff's employment, Frank instructed Plaintiff and other truck drivers to arrive 30 minutes prior to the start time of their paid shifts to conduct pre-trip inspections and

13

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

other tasks while off the clock and unpaid.

2)     Specifically, Frank told Plaintiff that Plaintiff needed to clock-in using an electronic timekeeping system located in an office in Defendants' Fontana location when Plaintiff's scheduled shift was about to start – but not when Plaintiff arrived early to conduct pre-trip inspections and other tasks.

3)     In keeping with Frank's instructions, Plaintiff estimates for each of Plaintiff's shifts, Plaintiff arrived around 30 minutes prior to the time Frank scheduled Plaintiff to start driving and, in some cases, closer to 15 minutes prior. As a result, Plaintiff conservatively estimates that during the workweeks listed in paragraph 17(b) and subparagraphs 1)-6) above, Defendants did not credit or compensate Plaintiff for approximately one and a half to two and half hours of work on average during a workweek, which would result in unpaid minimum or overtime wages.

4)     During these instances of off-the-clock work, Plaintiff would perform tasks such as retrieving bills of lading and other work instructions from Frank or other supervisors, check his truck's fluid levels, tire pressure; and sanitize his vehicle as a COVID-19 safety measure. After these pre-trip tasks were performed, Plaintiff would power on his truck and create a separate time record on the truck's electronic timekeeping system before finally departing for a trip.

(d)    Plaintiff also worked regularly under the supervision of "Wally" who Plaintiff believes regularly maintained an office in Defendants' Fontana location and may have held the title "Terminal Manager" during Plaintiff's employment.

14

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

1)      During Plaintiff's employment Wally and Frank instructed to "power down" his truck within the first four and a half hours of the time Plaintiff started driving during a shift so that the truck's timekeeping system would suggest that Plaintiff took a meal period during the first five hours of Plaintiff's shift.

2)      However, Defendant did not relieve Plaintiff of all of Plaintiff's duties during the times Plaintiff powered down his truck including because Defendants required Plaintiff to maintain control or watch over his vehicle when Plaintiff was transporting hazardous materials, which Plaintiff estimates he transported during most of his trips, when Plaintiff was unable to park his truck in a secure location (such as within the confines of Defendants' terminal areas). During these times, Defendants knowingly failed to relieve Plaintiff of all of Plaintiff's duties even while Defendants knew that Plaintiff was off the clock for wage payment purposes. For the same reasons, Plaintiff was not relieved of all duties during his so-called ten-minute rest periods.

3)      Moreover, even when the records of Plaintiff's time worked showed Plaintiff powered down his vehicle at or near the fifth hour of work, when accounting for the off the clock work Plaintiff regularly worked, Plaintiff contends that his meal periods were actually late, even if Defendants' time records suggest that Plaintiff started and ended his meal periods on time.

4)      Plaintiff also believes Defendants required Plaintiff and other drivers to sign meal period waivers to avoid paying Plaintiff for missed, late or unrecorded meal periods. However, Plaintiff contends California law forbids prospective blanket waivers and instead requires waivers obtained on a shift-by-shift basis. *See,*

15

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

*e.g., Saechao v. Landry's Inc*., 2016 U.S. Dist. LEXIS 33409, at *8 (N.D. Cal. 2016); Division of Labor Standards Enforcement ("DLSE") Letter 08.13.03, pp. 8-9 (stating "As a statutorily protected right, the decision to forego a meal period must be made personally by each worker on a daily basis…Therefore, blanket waivers of meal periods…will not be considered valid.").

5)    For the foregoing reasons, Plaintiff conservatively estimates that his entitlements to meal periods and rest periods (which, even if not required under the law, were entitlements Plaintiff believed were due based on Defendants' representations) were violated about twice a week each during which times Defendants did not pay Plaintiff any premium payments including during the workweeks listed in paragraph 17(b) and subparagraphs 1)-6) above. However, Plaintiff notes that this a conservative estimate and that Defendants' time records and driver logs including those that Plaintiff created electronically in Defendants' office locations and separately when recording time on Defendants' trucks would allow Plaintiff to provide a more accurate estimation of meal and rest period violations suffered during Plaintiff's employment.

(e)    Throughout Plaintiff's employment, Defendants did not reimburse Plaintiff for necessary business expenditures that Defendants knew Plaintiff was expending to perform his duties to including personal cellphone use and the purchase of gloves.

1)    Plaintiff contends Defendants' supervisors including Frank and Richard called Plaintiff on Plaintiff's personal cellphone to provide Plaintiff work instructions and to make Plaintiff report about the status of his work. Plaintiff conservatively estimates

16

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

Defendants' supervisors contacted Plaintiff on Plaintiff's personal cellphone around twice a shift on average and, during some shifts, several more than that.

2)  Defendants' supervisors including Frank and Richard knew they were calling Plaintiff's personal cellphone each time they did so including because Plaintiff asked Richard if Defendants would allow Plaintiff to use a company-issued cellphone and Richard told Plaintiff that Defendants' company-issued cellphones were only for "pick up and delivery" or "P-D" drivers and not for other drivers like Plaintiff.

3)  Plaintiff does not believe that Defendants ever reimbursed Plaintiff for cellphone use because there is nothing on Plaintiff's wage statements that suggest Defendants ever reimbursed Plaintiff for any reason. As a result, Plaintiff conservatively estimates that during the workweeks listed in paragraph 17(b) and subparagraphs 1)-6) above, Defendants contacted Plaintiff on Plaintiff's cellphone for work-related purposes at least one time per workweek, but failed to reimburse him for the costs incurred.

4)  Plaintiff also contends that Frank knew that Plaintiff spent personal funds to purchase gloves to use as personal protective equipment several times during Plaintiff's employment. Because Plaintiff often transported hazardous materials, Plaintiff asked Frank for gloves to perform his work including to protect Plaintiff's hands from coming into contact with chemicals that could damage Plaintiff's skin.

5)  On various occasions, Frank provided Plaintiff gloves to use but on other occasions, Frank told Plaintiff that he had no gloves to

17

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

provide Plaintiff and that Plaintiff would have to purchase gloves on his own.

6)    As a result, Plaintiff contends he purchased several sets of gloves with his own personal funds during his employment and estimates spending approximately $100 or so dollars doing so, for which Defendants failed to reimburse him for the costs incurred.

(f)    Near the end of Plaintiff's employment, Defendants assigned Plaintiff to regularly start his shifts at Defendants' Irwindale, California location where Plaintiff worked regularly under the supervision of "Chris" who Plaintiff believes regularly maintained an office in Defendants' Irwindale location and may have held the title "Terminal Manager" during Plaintiff's employment.

1)    Because Plaintiff's foregoing allegations are consistent with the fact that Plaintiff alleges Defendant R&L Carriers Shared Services, LLC transferred Plaintiff from Fontana, California and assigned Plaintiff to a location in Irwindale, California, Plaintiff further alleges Defendant R&L Carriers Shared Services, LLC determined Plaintiff's assignments and reassignment as Defendant R&L Carriers Shared Services, LLC's worker (*see* Cal. Lab. Code § 201.3(a)(1)(B)).

2)    During the workweek and pay period 04/18/2021 to 04/24/2021, Defendants credited Plaintiff with "Total Hours Worked" of 31.17 hours, which, based on the best of Plaintiff's recollection was for work performed wholly intrastate.

3)    On or about May 6, 2021, Plaintiff tendered his immediate resignation orally to Chris while at Defendants' Irwindale location and during a meeting involving Chris and Defendants'

18

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

manager or supervisor whose name Plaintiff believes is "Debbie" or "Debra." When Plaintiff tendered his resignation during the meeting, Chris asked Plaintiff to do the same in writing, which Plaintiff did that same day. When Plaintiff asked Chris for a copy of Plaintiff's written notice, Chris consulted with Debbie and they denied Plaintiff's request.

4) Despite Plaintiff's tender of his written notice of immediate resignation, Plaintiff believes that Defendant failed to process Plaintiff's final wages within 72 hours and, based on the best of Plaintiff's recollection, Defendants required Plaintiff to wait until at least the next regular pay day to receive Plaintiff's final wages in violation of California law.

5) Defendants' declarant Mr. Daniel J. Brake declared "Johnson was employed by Shared Services as a full-time driver from July 13, 2020 to May 15, 2021." ECF No. 1-3 at ¶ 7. But Plaintiff disputes Mr. Brake's claim. Plaintiff further contends that Defendants willfully failed to process Plaintiff's final wages within 72 hours with all of Plaintiff's wages due.

6) When Defendants belatedly processed and provided Plaintiff with Plaintiff's final wages, Plaintiff believes Defendants failed to credit or compensate Plaintiff with all of his hours worked during the pay period including for the time spent during Plaintiff's meeting with Chris and Debbie and failed to pay any waiting time penalties.

   a. Because Plaintiff tendered his voluntary resignation, Plaintiff further alleges that Plaintiff's employment relationship with Defendant R&L Carriers Shared Services, LLC was an at-will employment relationship

19

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

under California law and that Plaintiff retained the right at all relevant times to refuse specific assignments from Defendant R&L Carriers Shared Services, LLC (*see* Cal. Lab. Code § 201.3(a)(1)(B).).

7)    On April 7, 2022, Plaintiff filed the Declaration of Plaintiff Albert Johnson's in Support of Plaintiff's Motion Remand (ECF No. 29-1) and attached as "Exhibit B" thereto, "a redacted but otherwise true and correct copy of a portion of my 2020 tax filing, which shows R+L Carriers Shared Services, L.L.C. provided me my IRS Form W-2 (2020 Tax Document)." Plaintiff now attaches a portion of Exhibit B to this Complaint previously filed as ECF No. 29-1, Page 10 of 12 (Page ID #:535) which shows the "Employer's name" as "RL CARRIERS SHARED SERVICES LLC" and indicates that its "Employer's state ID number" is "26961292" which Plaintiff contends is Defendant R&L Carriers Shared Services, LLC's Employer Identification Number (EIN) for tax accounting purposes including the EIN that Defendant R&L Carriers Shared Services, LLC used to report the wages it paid to Plaintiff from its own accounts.

a.    Because Plaintiff now offers this evidence, which Plaintiff previously placed in the record as ECF No. 29-1, Page 10 of 12 (Page ID #:535), as **Exhibit D** to this Complaint, Plaintiff further alleges Defendant R&L Carriers Shared Services, LLC paid Plaintiff, who was Defendant R&L Carriers Shared Services, LLC's worker, from Defendant R&L Carriers Shared Services, LLC's own account or accounts consistent with the fact Defendant R&L Carriers Shared Services, LLC reported those wage payments to

20

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

Plaintiff on tax forms showing the transfer and recording of the transfer of wage payments from Defendant R&L Carriers Shared Services, LLC's Employer Identification Number (EIN) to Plaintiff as supported and shown in Exhibit D (*see* Cal. Lab. Code § 201.3(a)(1)(F)).

29.    Plaintiff reserves the right to seek leave to amend this complaint to add new plaintiffs, if necessary, to establish suitable representative(s) pursuant to *La Sala v. American Savings and Loan Association* (1971) 5 Cal.3d 864, 872, or other applicable law.

## B.    <u>Defendants</u>

30.    Plaintiff is informed and believes, and based upon that information and belief alleges, that Defendant R&L Carriers, Inc. is:

(a)    An Ohio corporation, who Plaintiff believes, had its principal place of business in Los Angeles, California but who Defendants have admitted lacks authority to do business in California including by stating "It is a holding company only and is not registered to do business in California." Brake Decl., ECF No. 1-3 at ¶ 3.;

(b)    A business entity conducting business in numerous counties throughout the State of California, including in Los Angeles County;

(c)    A business entity, who at all relevant times, did not possess federal motor carrier authority issued under the Federal Motor Carrier Safety Act and who, despite being provided opportunities during the Parties' meet and confer communications memorialized in this Court's records (*see e.g.,* Declaration of Roy K. Suh, ECF No. 15 at ¶ 15) and during motion practice wherein in Plaintiff alleged Defendant R&L Carriers, Inc. failed to meet its burden to prove it possessed federal motor carrier authority (*see e.g.,* Memorandum in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss, ECF No. 25 at pp. 17:19-19:12), has offered no proof to the contrary (*see* Reply in Support of Defendants'

21

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

Motion to Dismiss, ECF No. 28 at pp. 8:11-9:22);

(d)    The former employer of Plaintiff, and the current and/or former employer of the putative Class. Defendants suffered and permitted Plaintiff and the Class to work, and/or controlled their wages, hours, or working conditions; and

(e)    At all times mentioned herein, Defendants, and each of them, are and were joint employers of Plaintiff and the Class.

31.    Plaintiff is informed and believes, and based upon that information and belief alleges, that Defendant R&L Carriers Shared Services, LLC is:

(a)    An Ohio limited liability company, who Plaintiff believes had its principal place of business in Los Angeles, California and who the State of California authorized to conduct, and who did conduct business in California under California Secretary of State file number: 201507110300 including while representing its "Type of Business" as a "Payroll" business;

(b)    A business entity conducting business in numerous counties throughout the State of California, including in Los Angeles County;

(c)    A business entity, who at all relevant times, did not possess federal motor carrier authority issued under the Federal Motor Carrier Safety Act and who, despite being provided opportunities during the Parties' meet and confer communications memorialized in this Court's records (*see e.g.,* Declaration of Roy K. Suh, ECF No. 15 at ¶ 15) and during motion practice wherein in Plaintiff alleged Defendant R&L Carriers, Inc. failed to meet its burden to prove it possessed federal motor carrier authority (*see e.g.,* Memorandum in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss, ECF No. 25 at pp. 17:19-19:12), has offered no proof to the contrary (*see* Reply in Support of Defendants' Motion to Dismiss, ECF No. 28 at pp. 8:11-9:22), and has described

22

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

itself as a "driver staffing" company (*see* Memorandum in Support of Defendants' Second Motion to Dismiss, ECF No. 39-1 at p. 3-25);

(d)    The former employer of Plaintiff, and the current and/or former employer of the putative Class. Defendants suffered and permitted Plaintiff and the Class to work, and/or controlled their wages, hours, or working conditions; and

(e)    Defendant R&L Carriers Shared Services, LLC has judicially admitted in Defendants' Answer to Plaintiff's Second Amended Complaint, ECF No. 68 at p. 7:13-15 (Page ID #:1565): "Plaintiff was an employee of R&L Carriers Shared Services, LLC as a driver from July 13, 2020 to May 15, 2021, who at times during his employment was in Los Angeles County, California along with other locations . . . ."

1)    Because Defendant R&L Carriers Shared Services, LLC has judicially admitted it was Plaintiff's employer, Plaintiff alleges Defendant R&L Carriers Shared Services, LLC had the right and retained the right to hire and terminate Plaintiff, who was Defendant R&L Carriers Shared Services, LLC's worker (*see* Cal. Lab. Code § 201.3(a)(1)(G)).

(f)    Defendant R&L Carriers Shared Services, LLC has judicially admitted in Defendants' Answer to Plaintiff's Second Amended Complaint, ECF No. 68 at p. 8:9-31 (Page ID #:1566): ". . . R&L Carriers Shared Services, LLC is an entity incorporated in the State of Ohio, has its principal place of business in Wilmington, Ohio, is registered to do and did conduct business in California, does not possess a USDOT number, was Plaintiff's former employer, and may be the current or former employer of the putative class."

1)    Because Defendant R&L Carriers Shared Services, LLC has judicially admitted it "does not possess a USDOT number,"

23

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

Plaintiff now further alleges that Defendant R&L Carriers Shared Services, LLC did not own any of the vehicles that Defendant R&L Carriers Shared Services, LLC required Plaintiff to use to perform work while Defendant R&L Carriers Shared Services, LLC employed Plaintiff.

(g)     Defendant R&L Carriers Shared Services, LLC has judicially admitted in Defendants R&L Carriers Shared Services, LLC's and R&L Carriers, Inc.'s Memorandum of Points and Authorities in Support of Motion to Dismiss First Amended Complaint, ECF No. 39-1 at p. 8:21-26 (Page ID #:808): "Notably, although Defendants' Motion to Dismiss is not reliant on this fact, Plaintiff, as an employee of R&L Shared Services, performed trucking services for Greenwood Motor Lines, Inc., which is registered with the FMCSA. (See RJN, Exhibit "3") (Federal Motor Carrier Safety Administration, printout of Carrier Licensing Information for Greenwood Motor Lines, Inc., https://ai.fmcsa.dog.gove/SMS/Carrier/63391/Overview.aspx?FirstView=True.). Greenwood has a registered trade name of R+L Carriers with the Ohio Secretary of State. (See RJN, Exhibit "4") (Ohio Secretary of State Certificate of Greenwood Motor Lines, Inc.'s Registration of Trade Name R+L Carriers)."

1)     Plaintiff now offers this evidence regarding Greenwood Motor Lines, Inc., which Defendants previously placed in the record as ECF No. 39-4 (PAGE ID#:902 to 903) as **Exhibit E** to this Complaint, which, among other things, states Greenwood Motor Lines, Inc., as of January 27, 2019 had "5,632" Vehicles and alleges that Defendant R&L Carriers Shared Services, LLC required Plaintiff to drive Greenwood Motor Lines, Inc.'s vehicles – because – Defendant R&L Carriers Shared Services,

24

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

LLC has judicially admitted that "Plaintiff, as an employee of R&L Shared Services, performed trucking services for Greenwood Motor Lines, Inc., which is registered with the FMCSA" and, as such, Plaintiff further alleges that Defendant R&L Carriers Shared Services, LLC required Plaintiff to report to Defendant R&L Carriers Shared Services, LLC's locations for work and that Defendant R&L Carriers Shared Services, LLC then required Plaintiff to go to Greenwood Motor Lines, Inc.'s worksites to conduct pre-trip inspections of Greenwood Motor Lines, Inc.'s vehicles, including safety checks, in order to "perform[] trucking services for Greenwood Motor Lines, Inc."

2) Plaintiff further alleges that at all times when Defendant R&L Carriers Shared Services, LLC caused Plaintiff to "perform[] trucking services for Greenwood Motor Lines, Inc." and specifically while Plaintiff was performing driving duties within Greenwood Motor Lines, Inc.'s vehicles and when Plaintiff was performing work using Greenwood Motor Lines, Inc.'s vehicles away from Defendant R&L Carriers Shared Services, LLC's locations, Plaintiff was, at such times, performing work at Greenwood Motor Lines, Inc.'s worksites until such time Plaintiff returned Greenwood Motor Lines, Inc.'s vehicle to Greenwood Motor Lines, Inc.'s worksite and ended Plaintiff's performance of "trucking services for Greenwood Motor Lines, Inc."

(h) Defendant R&L Carriers Shared Services, LLC has judicially admitted in Defendants R&L Carriers Shared Services, LLC's and R&L Carriers, Inc.'s Memorandum of Points and Authorities in Support of Motion to Dismiss First Amended Complaint, ECF No. 39-1 at p. 3:24-

25

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

27 (Page ID #:803): "Although again omitted from the allegations, R&L Shared Services provides driver staffing to property carrying motor carriers. *See Hill v. R+L Carriers, Inc*., No. C 09-01907-CW, 2009 U.S. Dist. LEXIS 120564, at *2 (N.D. Cal. Dec. 7, 2009)." Defendant R&L Carriers Shared Services, LLC did not state or admit it provided "driver staffing to" a single property carrying motor carrier instead, it judicially admitted it provides "driver staffing to" two or more "property carrying motor carriers" because it used the phrase "property carrying motor carriers" in plural form.

1)  Because Defendant R&L Carriers Shared Services, LLC has judicially admitted "R&L Shared Services provides driver staffing to property carrying motor carriers[,]" and because Defendant R&L Carriers Shared Services, LLC has judicially admitted "Plaintiff, as an employee of R&L Shared Services, performed trucking services for Greenwood Motor Lines, Inc.," Plaintiff further alleges Defendant R&L Carriers Shared Services, LLC negotiated with Greenwood Motor Lines, Inc., who was Defendant R&L Carriers Shared Services, LLC's client or customer, for matters such as the time and place where Plaintiff's services were to be provided, the type of work Plaintiff was to perform, the working conditions Plaintiff was to be subject to, and the quality and price of the services Plaintiff performed (*see* Cal. Lab. Code § 201.3(a)(4)).

2)  Because Defendant R&L Carriers Shared Services, LLC has judicially admitted "R&L Shared Services provides driver staffing to property carrying motor carriers[,]" because Defendant R&L Carriers Shared Services, LLC has judicially admitted "Plaintiff, as an employee of R&L Shared Services,

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

performed trucking services for Greenwood Motor Lines, Inc.," because and because Defendant R&L Carriers Shared Services, LLC has judicially admitted it provides "driver staffing to" two or more "property carrying motor carriers" and because Plaintiff has throughout this Complaint alleged Defendants including Defendants' managers or supervisors controlled Plaintiff's wages, hours and working conditions, Plaintiff further alleges Defendant R&L Carriers Shared Services, LLC retained the authority to assign or reassign Plaintiff to "property carrying motor carriers" other than another client or customer Greenwood Motor Lines, Inc. if Greenwood Motor Lines, Inc. determined Plaintiff was unacceptable as a worker (*see* Cal. Lab. Code § 201.3(a)(1)(C)).

3)     Because Plaintiff's allegations Defendant R&L Carriers Shared Services, LLC transferred Plaintiff from Fontana, California and later assigned Plaintiff to a location in Irwindale, California is alleged in light of Defendant R&L Carriers Shared Services, LLC's judicial admission that "Plaintiff, as an employee of R&L Shared Services, performed trucking services for Greenwood Motor Lines, Inc.," Plaintiff further alleges Defendant R&L Carriers Shared Services, LLC determined Plaintiff's assignments and reassignment as Defendant R&L Carriers Shared Services, LLC's worker to perform "trucking services for Greenwood Motor Lines, Inc." (*see* Cal. Lab. Code § 201.3(a)(1)(D)).

(i)     At all times mentioned herein, Defendants, and each of them, are and were joint employers of Plaintiff and the Class.

32.     Plaintiff does not currently know the true names or capacities of the persons

27

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

or entities sued herein as Does 1-10, inclusive, and therefore sues said Defendants by such fictitious names. Each of the Doe Defendants was in some manner legally responsible for the damages suffered by Plaintiff and the Class as alleged herein. Plaintiff will amend this complaint to set forth the true names and capacities of these Defendants when they have been ascertained, together with appropriate charging allegations, as may be necessary.

33.    At all times mentioned herein, the Defendants named as Does 1-10, inclusive, and each of them, were residents of, doing business in, availed themselves of the jurisdiction of, and/or injured a significant number of the Plaintiff and the Class in the State of California.

34.    Plaintiff is informed and believes and thereon alleges that at all relevant times each Defendant, directly or indirectly, or through agents or other persons, employed Plaintiff and the other employees described in the class definitions below, and exercised control over their wages, hours, and working conditions. Plaintiff is informed and believes and thereon alleges that, at all relevant times, each Defendant was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged below. Plaintiff is informed and believes and thereon alleges that each Defendant acted pursuant to and within the scope of the relationships alleged above, that each Defendant knew or should have known about, and authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all other Defendants.

## **ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

35.    Plaintiff is a California resident who worked for Defendants in the County of Los Angeles, State of California, as a driver from approximately July 2020 to May 2021. During the statutory period, Defendants classified Plaintiff as non-exempt from California's overtime requirements, and paid Plaintiff an hourly wage.

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

36.    Throughout the statutory period, Defendants failed to pay Plaintiff for all hours worked (including minimum wages and overtime wages) under California and federal law, failed to provide Plaintiff with uninterrupted meal periods (which, although meal periods were not required under California law, Defendants, nevertheless, told Plaintiff Defendants would authorize and permit including as evidenced in Plaintiff's January 15, 2021 wage statement which includes a "MISSED LUNCH PREMIUM" payment), failed to indemnify Plaintiff for necessary business expenses, failed to timely pay all final wages to Plaintiff when Defendants terminated Plaintiff's employment, failed to furnish accurate wage statements to Plaintiff including by failing to, as a temporary services employer, identify Defendants' clients and the rate of pay and the total hours worked for each temporary services assignment, and failed to pay Plaintiff in a timely manner, as a temporary services employer, under California law. As discussed below, Plaintiff's experience working for Defendants was typical and illustrative.

37.    Throughout the statutory period, Defendants maintained a policy and practice of not paying Plaintiff and the Class for all hours worked, including all overtime wages. Plaintiff and the Class were required to "work off the clock" and uncompensated. For example, Plaintiff and the Class were required to arrive at work early in order to perform pre-trip inspections of the truck, including safety checks, off the clock and uncompensated. Further, Plaintiff and the Class were required to use their own personal cellular telephones for work-related purposes while off the clock and uncompensated. In maintaining a practice of not paying all wages owed, Defendants failed to maintain accurate records of the hours Plaintiff and the Class worked.

38.    Throughout the statutory period, although meal periods were not required under California law, Defendants, nevertheless Defendants told Plaintiff and the Class that for every work period of more than five (5) hours an unpaid meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours would complete the day's work, the meal period could be waived by mutual consent of Defendants and Plaintiff and the Class, and for a work period of more than ten (10) hours per day, an unpaid

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

second meal period of not less than 30 minutes, except that if the total hours worked was no more than 12 hours, the second meal period could be waived by mutual consent of Defendants and Plaintiff and the Class only if the first meal period was not waived. Defendants sometimes, but not always, required Plaintiff and the Class to work in excess of five consecutive hours a day without providing 30-minute, continuous and uninterrupted, duty-free meal period for every five hours of work, or without compensating Plaintiff and the Class for meal periods that were not provided by the end of the fifth hour of work or tenth hour of work. Defendants also did not adequately inform Plaintiff and the Class of their right to take a meal period by the end of the fifth hour of work, or, for shifts greater than 10 hours, by the end of the tenth hour of work. Accordingly, Defendants' policy and practice was to not provide meal periods to Plaintiff and the Class as California may have required to typical non-exempt employees, but Plaintiff contends that it was still Defendants' policy and practice to not pay Plaintiff and Class for all hours worked during their so-called 30-minute meal periods because Plaintiff and Class were not relieved of all duties during those unpaid periods, which resulted in the failure to pay all minimum wages and all overtime wages due.

39.     Throughout the statutory period, Defendants did not possess a USDOT number and not were not properly registered as a "motor carrier" by the FMCSA such that they could operate as a motor carrier – *i.e.,* to possess "Motor Carrier authority." Defendants, hence, lacked status as a motor carrier such that Defendants could not and cannot avail themselves of any federal or state preemption or exemption defenses to their obligations to pay overtime wages to Plaintiff and the Class. Plaintiff contends that the wage statements that Defendants provided him show that the "Total Hours Worked" for all weekly pay periods were paid at base hourly rates and that even where Defendants credited Plaintiff with Total Hours Worked in excess of 40 hours per week, Defendants did not pay Plaintiff for any hours over 40 hours at an overtime rate of at least one-and-one-half times Plaintiff's regular rate of pay or hourly base rate of pay. Plaintiff submits it was Defendants' policy and practice to fail to pay overtime wages as required under California

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

and federal law in this manner that Defendants applied to Plaintiff and the Class. Plaintiff is informed and believes that *Boutell*, which is the Supreme Court's over 76-year-old articulation of law that analyzes the confluence of the MCA exemption to the FLSA's mandate for the payment of overtime wages, has not been disturbed by any subsequent law or decision, but, rather has been followed by the Ninth Circuit in *Hodgson*. As a result, Plaintiff submits Defendants failed to pay overtime wages with a reckless disregard of the FLSA and California law and that Defendants' acts and omissions evidence cannot be not be the result of mere negligence based on conflicting laws or unsettled interpretations of MCA exemptions defenses.

40.     Throughout the statutory period, Defendants wrongfully required Plaintiff and the Class to pay expenses that they incurred in direct discharge of their duties for Defendants without reimbursement, such as the purchase of safety protective equipment. Also, Plaintiff and the Class were required to use their own personal cellular telephones for work-related purposes, without reimbursement.

41.     Throughout the statutory period, Defendants willfully failed and refused to timely pay Plaintiff and the Class at the conclusion of their employment all wages for all minimum wages, overtime wages, including as a result of its policy and practice of not crediting Plaintiff and the Class for so-called unpaid meal periods (which, although meal periods were not required under California law, Defendants, nevertheless, told Plaintiff and the Class Defendants would authorize and permit). Defendants also did not pay the final wages timely after termination. Defendants also failed to pay Plaintiff and the Class their final paychecks in a timely manner promptly upon termination.

42.     Throughout the statutory period, Defendants failed to furnish Plaintiff and the Class with accurate, itemized wage statements showing all applicable hourly rates, and all gross and net wages earned (including correct hours worked, correct wages earned for hours worked, correct overtime hours worked, correct wages for so-called unpaid meal periods that, even if they were not required under California law should have been paid for as time worked, and failed to identify Defendants' clients and the rate of pay and the total

31

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

hours worked for each temporary services assignment, as wage statements furnished by a temporary services employer is required to include). Further, the wage statements do not show Defendant's address as required by California law. As a result of these violations of California Labor Code § 226(a), the Plaintiff and the Class suffered injury because, among other things:

(a)     the violations led them to believe that they were not entitled to be paid minimum wages, overtime wages, meal period premium wages, and rest period premium wages to which they were entitled, given Defendants' representations, even though they may not have been entitled to meal period wages and rest period premium wages under the law;

(b)     the violations led them to believe that they had been paid the minimum, overtime, meal period premium, and rest period premium wages, given Defendants' representations, even though they may not have been entitled to meal period wages and rest period premium wages under the law, even though they had not been;

(c)     the violations led them to believe they were not entitled to be paid minimum, overtime, meal period premium, and rest period premium wages at the correct California rate, given Defendants' representations, even though they may not have been entitled to meal period wages and rest period premium wages under the law;

(d)     the violations led them to believe they had been paid minimum, overtime, meal period premium, and rest period premium wages at the correct California rate, given Defendants' representations, even though they may not have been entitled to meal period wages and rest period premium wages under the law, even though they had not been;

(e)     the violations hindered them from determining the amounts of minimum and overtime wages owed to them;

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

(f)    in connection with their employment before and during this action, and in connection with prosecuting this action, the violations caused them to have to perform mathematical computations to determine the amounts of wages owed to them, computations they would not have to make if the wage statements contained the required accurate information;

(g)    by understating the wages truly due them, the violations caused them to lose entitlement and/or accrual of the full amount of Social Security, disability, unemployment, and other governmental benefits; and

(h)    the wage statements inaccurately understated the wages, hours, and wages rates to which Plaintiff and the Class were entitled, and Plaintiff and the Class were paid less than the wages and wage rates to which they were entitled.

Thus, Plaintiff, the Class and Aggrieved Employees are owed the amounts provided for in California Labor Code § 226(e), including actual damages.

## **CLASS AND COLLECTIVE ACTION ALLEGATIONS**

43.    Plaintiff brings certain claims individually, as well as on behalf of each and all other persons similarly situated, and thus, seeks class certification under Federal Rule of Civil Procedure 23(a) and one or more of the three conditions of Federal Rule of Civil Procedure 23(b). Plaintiff also brings certain claims as a party plaintiff in a collective action in behalf of himself and certain current and former employees of Defendants employees similarly situated.

44.    All claims alleged herein arise under California or federal law for which Plaintiff seeks relief authorized by California or federal law.

45.    The proposed Class consists of and is defined as:

All persons who worked for any Defendant in California as an hourly, non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the Class is sent.

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

33

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

46.     At all material times, Plaintiff was a member of the Class.

47.     Plaintiff undertakes this concerted activity to improve the wages and working conditions of all Class Members.

48.     This Court should permit this action to be maintained as a class action pursuant to Federal Rule of Civil Procedure 23 because the four Federal Rule of Civil Procedure 23(a) prerequisites of numerosity, commonality, typicality, and adequacy of representation are present.

(a)     <u>Fed. R. Civ. P. 23(a)(1) Numerosity</u>: The members of the Class (and each subclass, if any) are so numerous that joinder of all members would be unfeasible and impractical. The membership of the entire Class is unknown to Plaintiff at this time, however, the Class is estimated to be greater than 100 individuals and the identity of such membership is readily ascertainable by inspection of Defendants' records.

(b)     <u>Fed. R. Civ. P. 23(a)(2) Commonality</u>: The members of the Class (and each subclass, if any) have common claims such that determinations of their truths or falsities will resolve an issue that is central to the validity of each of common claim, including without limitation, whether, as alleged herein, Defendants have:

1)     Failed to pay Class Members for all hours worked, including minimum wages, and overtime wages;

2)     Failed to pay Class Members overtime wages under the false pretense of federal preemption or exemption qualification;

3)     Failed to promptly pay all wages due to Class Members upon their discharge or resignation;

4)     Failed to maintain accurate records of all hours Class Members worked, including by failing to compensate Class Members during unpaid periods of work during so-called meal periods;

34

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

5)     Failed to reimburse Class Members for all necessary business expenses;

6)     Failed to timely pay all wages due as a temporary services employer; and

7)     Violated California Business and Professions Code §§ 17200 *et. seq.* as a result of their illegal conduct as described herein.

(c)     <u>Fed. R. Civ. P. 23(a)(3) Typicality</u>: Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member with whom there is a shared, well-defined community of interest, and Plaintiff's claims (or defenses, if any) are typical of all Class Members' claims as demonstrated herein.

(d)     <u>Fed. R. Civ. P. 23(a)(4) Adequacy</u>: Plaintiff and Plaintiff's attorneys have and will continue to adequately protect the interests of the Class, including because:

1)     Plaintiff, by and through Plaintiff's counsel, is qualified to, and will, vigorously, fairly and adequately protect the interests of each Class Member with whom there is a shared, well-defined community of interest and typicality of claims, as demonstrated herein. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be necessarily expended for the prosecution of this action for the substantial benefit of each class member; and

2)     Plaintiff has no conflicts with or interests antagonistic to any Class Member.

49.     This Court should permit this action to be maintained as a class action

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

pursuant to Federal Rule of Civil Procedure 23 because one or more of the three Federal Rule of Civil Procedure 23(b) conditions of predominate common questions of law and fact, the lack of individualized defenses, and the superiority of a class action as a method for adjudicating this controversy exist.

(a)  <u>Fed. R. Civ. P. 23(b)(1) Common Questions Predominate</u>: A class action is superior to other available methods for the fair and efficient adjudication of the controversy because there are common questions of law and fact as to the Class (and each subclass, if any) that predominate over questions affecting only individual members and prosecuting separate actions by or against individual Class Members would create a risk of:

1)  Inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants; and/or

2)  Adjudications with respect to the individual members which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests, including but not limited to the potential for exhausting the funds available from those parties who are, or may be, responsible Defendants.

(b)  <u>Fed. R. Civ. P. 23(b)(2) Individualized Defenses Do Not Exist</u>: Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

(c)  <u>Fed. R. Civ. P. 23(b)(3) A Class Action is a Superior Method of Resolution</u>: The questions of law and fact common to the Class predominate over any question affecting only individual members and

36

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

a class action is superior to any other available method for the fair and efficient adjudication of the claims of the members of the Class including because:

1) The interests of the members of the Class in individually controlling the prosecution or defense of separate actions show a class action is superior because Plaintiff, and the other members of the Class, will not be able to obtain effective and economic legal redress unless the action is maintained as a class action;

2) The extent and nature of any litigation concerning the controversy already commenced by or against members of the Class shows a class action is superior because the public policy of the State of California is to resolve the California Labor Code claims of many employees through a class action. Indeed, current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are also fearful of bringing actions because they believe their former employers might damage their future endeavors through negative references and/or other means. Class actions provide the class members who are not named in the complaint with a type of anonymity that allows for the vindication of their rights at the same time as their privacy is protected;

3) The desirability or undesirability of concentrating the litigation of the claims in this particular forum shows a class action is superior because there is a community of interest in obtaining appropriate legal and equitable relief for the statutory violations, and in obtaining adequate compensation for the damages and injuries for which Defendants are responsible in an amount sufficient to adequately compensate the members of the Class for

37

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

the injuries sustained; and

4)    The difficulties likely to be encountered in the management of a class action show that a class action is superior including because the members of the Class are so numerous that it is impractical to bring all members of the class before the Court.

50.    Plaintiff contemplates the eventual issuance of notice to the proposed members of the Class that would set forth the subject and nature of the instant action. The Defendants' own business records may be utilized for assistance in the preparation and issuance of the contemplated notices. To the extent that any further notices may be required, Plaintiff would contemplate the use of additional techniques and forms commonly used in class actions, such as published notice, e-mail notice, website notice, first-class mail, or combinations thereof, or by other methods suitable to the Class and deemed necessary and/or appropriate by the Court.

51.    Plaintiff brings the claims arising under FLSA as a party plaintiff in a collective action on behalf of himself and certain current and former employees of Defendants employees similarly situated. However, Plaintiff recognizes the Court has dismissed this claim with prejudice and Plaintiff cannot seek the foregoing relief.

## FIRST CAUSE OF ACTION

**Against all Defendants for Failure to Pay Minimum Wages for All Hours Worked Under California Law**

**(Cal. Labor Code §§ 204, 1182.12, 1197, 1198 and IWC Wage Order No. 9-2001, § 4 or other applicable IWC Wage Orders)**

52.    Plaintiff incorporates by reference and re-alleges as if fully stated herein paragraphs 1 through 51 in this Complaint, which are consistent with this cause of action.

53.    Pursuant to California Labor Code §§ 1182.12, 1197, 1198 and IWC Wage Order No. 9-2001, § 4 or other applicable IWC Wage Orders, California has fixed minimum wage rates, has required employers in California to pay their employees no less than the minimum for all hours worked in the payroll period, has provided that minimum

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

wages for employees fixed by the IWC or by state law, is the minimum wage to be paid to employees, and that payment of a lower wage than the minimum so fixed is unlawful "Hours worked" is the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so.

54.   Plaintiff, Class Members and Aggrieved Employees are current and former non-exempt employees entitled to the protections of California Labor Code §§ 1182.12, 1197, 1198 and IWC Wage Order No. 2-9001, § 4 or other applicable IWC Wage Orders. At all relevant times herein mentioned, Defendants knowingly failed to pay to Plaintiff and the Class compensation for all hours they worked. By their failure to pay compensation for each hour worked as alleged above, Defendants willfully violated the provisions of Section 1194 of the California Labor Code, and any additional applicable Wage Orders, which require such compensation to non-exempt employees.

55.   Accordingly, Plaintiff and the Class are entitled to recover minimum wages for all non-overtime hours worked for Defendants.

56.   By and through the conduct described above, Plaintiff and the Class have been deprived of their rights to be paid wages earned by virtue of their employment with Defendants.

57.   By virtue of the Defendants' unlawful failure to pay additional compensation to Plaintiff and the Class for their non-overtime hours worked without pay, Plaintiff and the Class suffered, and will continue to suffer, damages in amounts which are presently unknown to Plaintiff and the Class, but which exceed the jurisdictional minimum of this Court, and which will be ascertained according to proof at trial.

58.   By failing to keep adequate time records required by California Labor Code § 1174(d), Defendants have made it difficult to calculate the full extent of minimum wage compensation due Plaintiff and the Class.

59.   Pursuant to California Labor Code section 1194.2, Plaintiff and the Class are entitled to recover liquidated damages (double damages) for Defendants' failure to pay

39

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

minimum wages.

60.    California Labor Code section 204 requires employers to provide employees with all wages due and payable twice a month. Throughout the statute of limitations period applicable to this cause of action, Plaintiff and the Class were entitled to be paid twice a month at rates required by law, including minimum wages. However, during all such times, Defendants systematically failed and refused to pay Plaintiff and the Class all such wages due, and failed to pay those wages twice a month.

61.    Plaintiff and the Class are also entitled to seek recovery of all unpaid minimum wages, interest, and reasonable attorneys' fees and costs pursuant to California Labor Code §§ 218.5, 218.6, and 1194(a).

## SECOND CAUSE OF ACTION

### Against all Defendants for Failure to Pay Overtime Wages

### (Cal. Labor Code §§ 510, 1198; IWC Wage Order No. 9-2001, § 3 or other applicable IWC Wage Orders)

62.    Plaintiff incorporates by reference and re-alleges as if fully stated herein paragraphs 1 through 51 and the other preceding paragraphs in this Complaint, which are consistent with this cause of action.

63.    Pursuant to California Labor Code §§ 510, 1198 and IWC Wage Order No. 9-2001, § 3 or other applicable IWC Wage Orders, California has required employers to pay their employees overtime wages. California Labor Code § 510 provides that employees in California shall not be employed more than eight (8) hours in any workday or forty (40) hours in a workweek unless they receive additional compensation beyond their regular wages in amounts specified by law.

64.    California Labor Code §§ 1194 and 1198 provide that employees in California shall not be employed more than eight hours in any workday unless they receive additional compensation beyond their regular wages in amounts specified by law. Additionally, California Labor Code § 1198 states that the employment of an employee for longer hours than those fixed by the Industrial Welfare Commission is unlawful.

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

40

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

65.    Plaintiff, Class Members and Aggrieved Employees are current and former non-exempt employees entitled to the protections of California Labor Code §§ 510, 1198 and IWC Wage Order No. 9-2001, § 3 or other applicable IWC Wage Orders. At all times relevant hereto, Plaintiff and the Class have worked more than eight hours in a workday, as employees of Defendants.

66.    At all times relevant hereto, Defendants failed to pay Plaintiff and the Class overtime compensation for the hours they have worked in excess of the maximum hours permissible by law as required by California Labor Code § 510 and 1198. Plaintiff and the Class are regularly required to work overtime hours.

67.    By virtue of Defendants' unlawful failure to pay additional premium rate compensation to the Plaintiff and the Class for their overtime hours worked, Plaintiff and the Class have suffered, and will continue to suffer, damages in amounts which are presently unknown to them but which exceed the jurisdictional minimum of this Court and which will be ascertained according to proof at trial.

68.    By failing to keep adequate time records required by Labor Code § 1174(d), Defendants have made it difficult to calculate the full extent of overtime compensation due to Plaintiff and the Class.

69.    Plaintiff and the Class also request recovery of overtime compensation according to proof, interest, attorneys' fees and costs pursuant to California Labor Code § 1194(a), as well as the assessment of any statutory penalties against Defendants, in a sum as provided by the California Labor Code and/or other statutes.

70.    California Labor Code § 204 requires employers to provide employees with all wages due and payable twice a month. The Wage Orders also provide that every employer shall pay to each employee, on the established payday for the period involved, overtime wages for all overtime hours worked in the payroll period. Defendants failed to provide Plaintiff and the Class with all compensation due, in violation of California Labor Code § 204.

/ / /

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

## THIRD CAUSE OF ACTION

### Against all Defendants for Failure to Pay Minimum Wages for All Hours Worked

### Under the Fair Labor Standards Act

### (29 U.S.C. § 216(b))

71.　Plaintiff incorporates by reference and re-alleges as if fully stated herein paragraphs 1 through 51 and the other preceding paragraphs in this Complaint, which are consistent with this cause of action.

72.　The FLSA provides, among other things, that no employer shall employ an employee who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, less than minimum wages for all hours worked. 29 U.S.C. § 206(a).

73.　At all times relevant herein, Defendants were and continues to be an "employer" within the meaning of the FLSA and subject to the requirements of the FLSA because, at all relevant times, they were employers and an employment enterprise engaged in interstate commerce. The FLSA requires employers, such as Defendants, to minimally compensate employees, such as Named Plaintiff and Collective Plaintiffs, at the federal minimum wage rate for each hour worked.

74.　At all times relevant herein, Plaintiff and Collective Action Members are or were "employees" within the meaning of the FLSA and entitled to the protections of the FLSA. Plaintiff and Collective Action Members are victims of Defendants' uniform wage payment policies and practices, which have been applied to all non-exempt employees who worked for Defendants in the State of California in violation of the FLSA. As a result of Defendants' uniform wage payment policies and practices of not paying their employees at least the federally mandated minimum wage for all hours worked, Plaintiff and Collective Action Members have been harmed.

75.　As a result of Defendants' failure to compensate Plaintiff and Collective Action Members at the federal minimum wage rate, Plaintiff and Collective Action Members are entitled to recover an award of an amount equal to the amount of their unpaid

overtime wages, an additional equal amount as liquidated damages, and/or prejudgment interest at the applicable rate, reasonable attorneys' fees, and the costs of this action. 29 U.S.C. §216(b).

76.    Furthermore, pursuant to 29 U.S.C. § 255, there is a three-year statute of limitations applies to willful violations of the FLSA. Defendants' unlawful conduct, as described herein, has been willful and intentional. Defendants were aware or should have been aware that its practices were unlawful but they engaged in the unlawful conduct, nevertheless, in a reckless disregard of federal law. Defendants have acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA. Accordingly, a three-year statute of limitations applies to Defendants' willful violations of the FLSA.

77.    However, Plaintiff recognizes the Court has dismissed this claim with prejudice and Plaintiff cannot seek the foregoing relief.

## FOURTH CAUSE OF ACTION

**For Failure to Pay All Wages and Overtime Compensation in Violation of the Fair Labor Standards Act**

**[29 U.S.C. §§ 201, *et seq.*]**

78.    Plaintiff incorporates by reference and re-alleges as if fully stated herein paragraphs 1 through 51 and the other preceding paragraphs in this Complaint, which are consistent with this cause of action.

79.    The FLSA provides, among other things, that no employer shall employ an employee who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed. 29 U.S.C. § 207(a)(1).

80.    At all times relevant herein, Defendants were and continues to be an

43

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

"employer" within the meaning of the FLSA and subject to the requirements of the FLSA because, at all relevant times, they were employers and an employment enterprise engaged in interstate commerce. The FLSA requires employers, such as Defendants, to minimally compensate employees, such as Named Plaintiff and Collective Plaintiffs, at the federal overtime wage rate for each hour worked during a workweek over forty hours.

81.    At all times relevant herein, Plaintiff and Collective Action Members are or were "employees" within the meaning of the FLSA and entitled to the protections of the FLSA. Plaintiff and Collective Action Members are victims of Defendants' uniform wage payment policies and practices, which have been applied to all non-exempt employees who worked for Defendants in the State of California in violation of the FLSA. As a result of Defendants' uniform wage payment policies and practices of not paying their employees at least the federally mandated overtime wage for all hours worked during a workweek over forty hours, Plaintiff and Collective Action Members have been harmed.

82.    As a result of Defendants' failure to compensate Plaintiff and Collective Action Members at the federal overtime wage rate, Plaintiff and Collective Action Members are entitled to recover an award of an amount equal to the amount of their unpaid overtime wages, an additional equal amount as liquidated damages, and/or prejudgment interest at the applicable rate, reasonable attorneys' fees, and the costs of this action. 29 U.S.C. §216(b).

83.    Furthermore, pursuant to 29 U.S.C. § 255, there is a three-year statute of limitations applies to willful violations of the FLSA. Defendants' unlawful conduct, as described herein, has been willful and intentional. Defendants were aware or should have been aware that its practices were unlawful and engaged in the unlawful conduct but they engaged in the unlawful conduct, nevertheless, in a reckless disregard of federal law. Defendants have acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA. Accordingly, a three-year statute of limitations applies to Defendants' willful violations of the FLSA.

84.    However, Plaintiff recognizes the Court has dismissed this claim with

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

44

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

prejudice and Plaintiff cannot seek the foregoing relief.

## FIFTH CAUSE OF ACTION

### Against All Defendants for Failure to Indemnify Necessary Business Expenses

### (Cal. Labor Code § 2802(a), 1198; IWC Wage Order No. 9-2001, § 9 or other applicable IWC Wage Orders)

85.     Plaintiff incorporates by reference and re-alleges as if fully stated herein paragraphs 1 through 51 and the other preceding paragraphs in this Complaint, which are consistent with this cause of action.

86.     Pursuant to California Labor Code §§ 2802(a), 1198, and IWC Wage Order No. 9-2001, § 9 or other applicable IWC Wage Orders, California requires has required that employers indemnify employees for all necessary expenditures or losses incurred by an employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

87.     Plaintiff, Class Members and Aggrieved Employees are current and former non-exempt employees entitled to the protections of California Labor Code §§ 2802(a), 1198, and IWC Wage Order No. 9-2001, § 9 or other applicable IWC Wage Orders. Defendants violated Labor Code section 2802 and the IWC Wage Orders, by failing to pay and indemnify the Plaintiff and the Class for their necessary expenditures and losses incurred in direct consequence of the discharge of their duties or of their obedience to directions of Defendants.

88.     As a result, Plaintiff and the Class were damaged at least in the amounts of the expenses they paid, or which were deducted by Defendants from their wages.

89.     Plaintiff and the class they represent are entitled to attorney's fees, expenses, and costs of suit pursuant to Labor Code section 2802(c) and interest pursuant to Labor Code section 2802(b).

/ / /

/ / /

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

## SIXTH CAUSE OF ACTION

**Against all Defendants for Failure to Pay Wages of Discharged Employees –**

**Waiting Time Penalties**

**(Cal. Labor Code §§ 201(a), 202, 203)**

90.    Plaintiff incorporates by reference and re-alleges as if fully stated herein paragraphs 1 through 51 and the other preceding paragraphs in this Complaint, which are consistent with this cause of action.

91.    Pursuant to California Labor Code §§ 201(a), 202, and 203, California has required that employers pay their employees all wages earned and unpaid at the time of discharge or promptly thereafter. At all times herein set forth, California Labor Code §§ 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

92.    Plaintiff, Class Members and Aggrieved Employees are current and former non-exempt employees entitled to the protections of California Labor Code §§ 201, 202 and 203. Within the applicable statute of limitations, the employment of Plaintiff and many other members of the Class ended, i.e. was terminated by quitting or discharge, and the employment of others will be. However, during the relevant time period, Defendants failed, and continue to fail to pay terminated Class Members, without abatement, all wages required to be paid by California Labor Code sections 201 and 202 either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ.

93.    Defendants' failure to pay Plaintiff and those Class members who are no longer employed by Defendants their wages earned and unpaid at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ, is in violation of California Labor Code §§ 201 and 202.

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

94.     California Labor Code § 203 provides that if an employer willfully fails to pay wages owed, in accordance with sections 201 and 202, then the wages of the employee shall continue as a penalty wage from the due date, and at the same rate until paid or until an action is commenced; but the wages shall not continue for more than thirty (30) days.

95.     Plaintiff and the Class are entitled to recover from Defendants their additionally accruing wages for each day they were not paid, at their regular hourly rate of pay, up to 30 days maximum pursuant to California Labor Code § 203.

96.     Pursuant to California Labor Code §§ 218.5, 218.6 and 1194, Plaintiff and the Class are also entitled to an award of reasonable attorneys' fees, interest, expenses, and costs incurred in this action.

## SEVENTH CAUSE OF ACTION

### Against all Defendants for Failure to Provide and Maintain Accurate and Compliant Wage Records

### (Cal. Labor Code §§ 226(a), 226(e)(2)(B), 1198; IWC Wage Order No. 9-2001, § 7 or other applicable IWC Wage Orders)

97.     Plaintiff incorporates by reference and re-alleges as if fully stated herein paragraphs 1 through 51 and the other preceding paragraphs in this Complaint, which are consistent with this cause of action.

98.     Pursuant to California Labor Code §§ 226(a), 226(e)(2)(B), 1198, and IWC Wage Order No. 9-2001, § 7 or other applicable IWC Wage Orders, California has required that employers semimonthly or at the time of each payment of wages furnish each of its employees an accurate itemized wage statement. At all material times set forth herein, California Labor Code § 226(a) provides that every employer shall furnish each of his or her employees an accurate itemized wage statement in writing showing nine pieces of information, including: (1) gross wages earned, (2) total hours worked by the employee, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned,

47

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

(6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee employee and, beginning July 1, 2013, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total hours worked for each temporary services assignment.

99.    Plaintiff, Class Members and Aggrieved Employees are current and former non-exempt employees entitled to the protections of California Labor Code §§ 226(a), 226(e)(2)(B), 1198, and IWC Wage Order No. 9-2001, § 7 or other applicable IWC Wage Orders. Defendants have intentionally and willfully failed to provide employees with complete and accurate wage statements. The deficiencies include, among other things, the failure to correctly identify the gross wages earned by Plaintiff and the Class, the failure to list the true "total hours worked by the employee," and the failure to list the true net wages earned.

100.    Defendants, or at least one of them has represented it is a so-called "driver staffing" employer during the relevant statutory period. However, as a temporary services employer as defined in Labor Code § 201.3, which Plaintiff describes further below, Defendants engaged in a policy and practice of failing to identify the Defendants' clients whatsoever on wage statements they furnished the Plaintiff, Class Members and Aggrieved Employees and also failed to identify the rate of pay and the total hours worked for each temporary services assignment, as evidenced in Plaintiff's wages statements, which are illustrative.

101.    As a result of Defendants' violation of California Labor Code § 226(a), Plaintiff and the Class have suffered injury and damage to their statutorily-protected rights.

102.    Specifically, Plaintiff and the members of the Class have been injured by Defendants' intentional violation of California Labor Code § 226(a) because they were

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

denied both their legal right to receive, and their protected interest in receiving, accurate, itemized wage statements under California Labor Code § 226(a).

103.   Calculation of the true wage entitlement for Plaintiff and the Class is difficult and time consuming. As a result of this unlawful burden, Plaintiff and the Class were also injured as a result of having to bring this action to attempt to obtain correct wage information following Defendants' refusal to comply with many of the mandates of California's Labor Code and related laws and regulations.

104.   Plaintiff and the Class are entitled to recover from Defendants their actual damages caused by Defendants' failure to comply with California Labor Code § 226(a).

105.   Plaintiff and the Class are also entitled to injunctive relief, as well as an award of attorney's fees and costs to ensure compliance with this section, pursuant to California Labor Code § 226(h).

## EIGHTH CAUSE OF ACTION

### Against all Defendants for Violation of California's Unfair Competition Law
### (Cal. Bus. & Prof. Code §§ 17200, *et seq*.)

106.   Plaintiff incorporates by reference and re-alleges as if fully stated herein paragraphs 1 through 51 and the other preceding paragraphs in this Complaint, which are consistent with this cause of action.

107.   Pursuant to California Business and Professions Code §§ 17200, *et seq*., sometimes called California's Unfair Competition Law ("UCL"), California has prohibited employers from engaging in unlawful, unfair or fraudulent business acts or practices, which may include an employer's violations of the California Labor Code sections which prohibit employers from unlawfully withholding wages from an employee. Pursuant to § 17203, any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction to prevent the use or employment by any person of any practice which constitutes unfair competition, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition. Furthermore, § 17203 provides that

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure.

108. Defendants, and each of them, are "persons" as defined under California Business and Professions Code § 17201. Defendants' conduct, as alleged herein, has been, and continues to be, unfair, unlawful, and harmful to Plaintiff, other Class members, and to the general public. Plaintiff seeks to enforce important rights affecting the public interest within the meaning of California Code of Civil Procedure § 1021.5.

109. A violation of California Business and Professions Code §§ 17200, *et seq.* may be predicated on the violation of any state or federal law. All of the acts described herein as violations of, among other things, the California Labor Code, are unlawful and in violation of public policy; and in addition are immoral, unethical, oppressive, fraudulent and unscrupulous, and thereby constitute unfair, unlawful and/or fraudulent business practices in violation of California Business &Professions Code §§ 17200, *et seq.*

<u>Failure to Pay Minimum Wages</u>

110. Defendants' failure to pay minimum wages, and other benefits in violation of the California Labor Code constitutes unlawful and/or unfair activity prohibited by California Business and Professions Code §§ 17200, *et seq.*

<u>Failure to Pay Overtime Wages</u>

111. Defendants' failure to pay overtime compensation and other benefits in violation of California Labor Code §§ 510, 1194, and 1198 constitutes unlawful and/or unfair activity prohibited by California Business and Professions Code §§ 17200, *et seq.*

<u>Failure to Maintain Accurate Records of All Hours Worked</u>

112. Defendants' failure to maintain accurate records of all hours worked in accordance with California Labor Code § 1174.5 and the IWC Wage Orders constitutes unlawful and/or unfair activity prohibited by California Business and Professions Code §§ 17200, *et seq.*

/ / /

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

Failure to Indemnify Necessary Business Expenses

113.    Defendants' failure to indemnify employees for necessary business expenses in accordance with California Labor Code § 2802 and the IWC Wage Orders, as alleged above, constitutes unlawful and/or unfair activity prohibited by California Business and Professions Code §§ 17200, *et seq*.

Failure to Provide Accurate Itemized Wage Statements

114.    Defendants' failure to provide accurate itemized wage statements in accordance with California Labor Code § 226, as alleged above, constitutes unlawful and/or unfair activity prohibited by California Business and Professions Code §§ 17200, *et seq*.

Failure to Timely Pay all Wages due as a Temporary Services Employer

115.    Defendants' failure to provide accurate itemized wage statements in accordance with California Labor Code § 201.3, as alleged below, constitutes unlawful and/or unfair activity prohibited by California Business and Professions Code §§ 17200, *et seq*.

116.    By and through their unfair, unlawful and/or fraudulent business practices described herein, the Defendants, have obtained valuable property, money and services from Plaintiff, and all persons similarly situated, and have deprived Plaintiff, and all persons similarly situated, of valuable rights and benefits guaranteed by law, all to their detriment.

117.    Plaintiff and the Class Members suffered monetary injury as a direct result of Defendants' wrongful conduct.

118.    Plaintiff, individually, and on behalf of members of the putative Class, is entitled to, and do, seek such relief as may be necessary to disgorge money and/or property which the Defendants have wrongfully acquired, or of which Plaintiff and the Class have been deprived, by means of the above-described unfair, unlawful and/or fraudulent business practices. Plaintiff and the Class are not obligated to establish individual knowledge of the wrongful practices of Defendants in order to recover restitution.

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

119.   Plaintiff, individually, and on behalf of members of the putative class, are further entitled to and do seek a declaration that the above described business practices are unfair, unlawful and/or fraudulent, and injunctive relief restraining the Defendants, and each of them, from engaging in any of the above-described unfair, unlawful and/or fraudulent business practices in the future.

120.   Plaintiff, individually, and on behalf of members of the putative class, have no plain, speedy, and/or adequate remedy at law to redress the injuries which the Class Members suffered as a consequence of the Defendants' unfair, unlawful and/or fraudulent business practices. As a result of the unfair, unlawful and/or fraudulent business practices described above, Plaintiff, individually, and on behalf of members of the putative Class, has suffered and will continue to suffer irreparable harm unless the Defendants, and each of them, are restrained from continuing to engage in said unfair, unlawful and/or fraudulent business practices.

121.   Plaintiff also alleges that if Defendants are not enjoined from the conduct set forth herein above, they will continue to avoid paying the appropriate taxes, insurance and other withholdings.

122.   Pursuant to California Business and Professions Code §§ 17200, *et seq.*, Plaintiff and putative Class Members are entitled to restitution of the wages withheld and retained by Defendants during a period that commences four years prior to the filing of this complaint; a permanent injunction requiring Defendants to pay all outstanding wages due to Plaintiff, Class Members and Aggrieved Employees; an award of attorneys' fees pursuant to California Code of Civil Procedure § 1021.5 and other applicable laws; and an award of costs.

## NINTH CAUSE OF ACTION

**Against all Defendants for Failure to Timely Pay all Wages due as a Temporary**

**Services Employer**

**(Cal. Lab. Code § 201.3.)**

123.   Plaintiff incorporates by reference and re-alleges as if fully stated herein

52

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

paragraphs 1 through 51 and the other preceding paragraphs in this Complaint, which are consistent with this cause of action.

124.   California Labor Code § 201.3(a) provides: "(1) "Temporary services employer" means an employing unit that contracts with clients or customers to supply workers to perform services for the clients or customers and that performs all of the following functions: [¶] (A) Negotiates with clients and customers for matters such as the time and place where the services are to be provided, the type of work, the working conditions, and the quality and price of the services. [¶] (B) Determines assignments or reassignments of workers, even if workers retain the right to refuse specific assignments. [¶] (C) Retains the authority to assign or reassign a worker to another client or customer when the worker is determined unacceptable by a specific client or customer. [¶] (D) Assigns or reassigns workers to perform services for clients or customers. [¶] (E) Sets the rate of pay of workers, whether or not through negotiation. (F) Pays workers from its own account or accounts. [¶] (G) Retains the right to hire and terminate workers."

125.   With certain exceptions, California Labor Code § 201.3(b)(1)(A) provides: "Except as provided in paragraphs (2) to (5), inclusive, if an employee of a temporary services employer is assigned to work for a client, that employee's wages are due and payable no less frequently than weekly, regardless of when the assignment ends, and wages for work performed during any calendar week shall be due and payable not later than the regular payday of the following calendar week. A temporary services employer shall be deemed to have timely paid wages upon completion of an assignment if wages are paid in compliance with this subdivision."

126.   California Labor Code § 201.3(b)(1)(B) provides: "Except as provided in paragraphs (2) to (5), inclusive, if an employee of a temporary services employer is assigned to work for a client, that employee's wages are due and payable no less frequently than weekly, regardless of when the assignment ends, and wages for work performed during any calendar week shall be due and payable not later than the regular payday of the following calendar week. A temporary services employer shall be deemed to have timely

paid wages upon completion of an assignment if wages are paid in compliance with this subdivision."

127.    California Labor Code § 201.3(b)(1)(B)(A)-(C) provides: "(2) If an employee of a temporary services employer is assigned to work for a client on a day-to-day basis, that employee's wages are due and payable at the end of each day, regardless of when the assignment ends, if each of the following occurs: [¶] (A) The employee reports to or assembles at the office of the temporary services employer or other location. [¶] (B) The employee is dispatched to a client's worksite each day and returns to or reports to the office of the temporary services employer or other location upon completion of the assignment. [¶] (C) The employee's work is not executive, administrative, or professional, as defined in the wage orders of the Industrial Welfare Commission, and is not clerical." However, as an exception to a temporary services employer's obligation to pay wages daily, Labor Code § 201.3(b)(6) provides: "(6) If an employee of a temporary services employer is assigned to work for a client for over 90 consecutive calendar days, this section does not apply unless the temporary services employer pays the employee weekly in compliance with paragraph (1) of subdivision (b)."

128.    California Labor Code § 201.3(b)(4) & (5) provide: "(b) If an employee of a temporary services employer is assigned to work for a client and is discharged by the temporary services employer or leasing employer, wages are due and payable as provided in Section 201. [¶] (5) If an employee of a temporary services employer is assigned to work for a client and quits his or her employment with the temporary services employer, wages are due and payable as provided in Section 202." Finally, California Labor Code § 201.3(c) and (d) provides: "(c) A temporary services employer who violates this section is subject to the civil penalties provided for in Section 203 and to any other penalties available at law. [¶] (d) This section shall not be interpreted to limit any rights or remedies otherwise available under state or federal law."

129.    Plaintiff, Class Members and Aggrieved Employees are current and former non-exempt employees and are entitled to the protections of Labor Code § 201.3. During

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

litigation, Defendants, or at least one of them has represented it is a so-called "driver staffing" employer who staffed Plaintiff as a driver for an unnamed party. As a result, Plaintiff contends Defendants were an employing unit that contracted with clients or customers to supply Plaintiff, Class Members and Aggrieved Employees other aggrieved employees as workers to perform services for Defendants' clients or customers and that Defendants performed all of the following functions: (A) negotiated with clients and customers for matters such as the time and place where the services are to be provided, the type of work, the working conditions, and the quality and price of the services; (B) determined assignments or reassignments of Plaintiff, Class Members and Aggrieved Employees, even if Plaintiff, Class Members and Aggrieved Employees retained the right to refuse specific assignments; (C) retained the authority to assign or reassign Plaintiff, Class Members and Aggrieved Employees to another client or customer when the Plaintiff, Class Members and Aggrieved Employees was determined unacceptable by a specific client or customer; (D) assigned or reassigned Plaintiff, Class Members and Aggrieved Employees to perform services for clients or customers; (E) set the rate of pay of Plaintiff, Class Members and Aggrieved Employees, whether or not through negotiation; (F) paid Plaintiff, Class Members and Aggrieved Employees from their own account or accounts; and (G) retained the right to hire and terminate Plaintiff, Class Members and Aggrieved Employees. As such, Plaintiff contends Defendants or at least one of them is a "temporary services employer" within the meaning of Labor Code § 201.3(a).

130. Plaintiff further contends Defendants required Plaintiff, Class Members and Aggrieved Employees to report to or assembled at the Defendants' offices or other locations and that Defendants dispatched to Plaintiff, Class Members and Aggrieved Employees to a client's worksite each day and that Plaintiff, Class Members and Aggrieved Employees returned to or reported to Defendants' offices or other locations upon completion of the assignment, but Defendants failed to pay Plaintiff, Class Members and Aggrieved Employees up to ninety (90) days before Defendants was or could be relieved of its obligation to pay wages daily. At minimum, Plaintiff contends that Defendants could

55

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

not have qualified for relief from its obligations to pay wages on a daily basis within the first ninety (90) days of any employee who performed work as for Defendants' clients or customers.

131.    Alternatively, even if Plaintiff, Class Members and Aggrieved Employees were assigned to work for Defendants' clients for over ninety (90) days, the California Labor Code § 201.3(b)(6) exception to daily wages provides: "(6) If an employee of a temporary services defendants is assigned to work for a client for over 90 consecutive calendar days, this section does not apply unless the temporary services defendants pays the employee weekly in compliance with paragraph (1) of subdivision (b)." Because Defendants failed to pay Plaintiff, Class Members and Aggrieved Employees "in compliance with paragraph (1) of subdivision (b)[,]" including by failing to pay all wages due, including minimum and overtime wages, the exception does not apply, and as a result Defendants were required to pay Plaintiff, Class Members and Aggrieved Employees wages on a daily basis.

132.    Furthermore, Defendants failed to timely pay Plaintiff, Class Members and Aggrieved Employees all wages, including unpaid minimum and overtime wages, due during their respective periods of employment and within the times all wages were due when they quit or when Defendants discharged them.

133.    Defendants' conduct violates California Labor Code § 201.3 because Employer has knowingly and willfully refused to perform its obligations to provide Plaintiff, Class Members and Aggrieved Employees with timely and full payment of all wages earned and unpaid during their respective periods of employment and all wages earned and unpaid at the time of quitting or at discharge, which entitle the State of California, Employee and other aggrieved employees to PAGA civil penalties.

## **TENTH CAUSE OF ACTION**

**Against all Defendants for Civil Penalties Under the Private Attorneys General Act (Cal. Lab. Code §§ 2699,** *et seq.***)**

134.    Plaintiff incorporates by reference and re-alleges as if fully stated herein

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

paragraphs 1 through 51 and the other preceding paragraphs in this Complaint, which are consistent with this cause of action.

135. Pursuant to California Labor Code §§ 2698 *et. seq.,* also known as PAGA, California has stated that notwithstanding any other provision of law, any provision of the California Labor Code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency ("LWDA") or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of the California Labor Code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in §§ 2699[1] and 2699.3.[2] At all times herein mentioned, Defendants were subject to the Labor Code of the State of California and the applicable Industrial Welfare Commission Orders.

136. California Labor Code § 2699(a) specifically provides for a private right of action to recover penalties for violations of the Labor Code: "Notwithstanding any other

---

[1] Pursuant to Labor Code § 2699 subdivision (a), California has stated: "Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3."

[2] Pursuant to Labor Code § 2699.5, California has stated: "The provisions of subdivision (a) of Section 2699.3 apply to any alleged violation of the following provisions: subdivision (k) of Section 96, Sections 98.6, 201, 201.3, 201.5, 201.7, 202, 203, 203.1, 203.5, 204, 204a, 204b, 204.1, 204.2, 205, 205.5, 206, 206.5, 208, 209, and 212, subdivision (d) of Section 213, Sections 221, 222, 222.5, 223, and 224, paragraphs (1) to (5), inclusive, (7), and (9) of subdivision (a) of Section 226, Sections 226.7, 227, 227.3, 230, 230.1, 230.2, 230.3, 230.4, 230.7, 230.8, and 231, subdivision (c) of Section 232, subdivision (c) of Section 232.5, Sections 233, 234, 351, 353, and 403, subdivision (b) of Section 404, Sections 432.2, 432.5, 432.7, 435, 450, 510, 511, 512, 513, 551, 552, 601, 602, 603, 604, 750, 751.8, 800, 850, 851, 851.5, 852, 921, 922, 923, 970, 973, 976, 1021, 1021.5, 1025, 1026, 1101, 1102, 1102.5, and 1153, subdivisions (c) and (d) of Section 1174, Sections 1194, 1197, 1197.1, 1197.5, and 1198, subdivision (b) of Section 1198.3, Sections 1199, 1199.5, 1290, 1292, 1293, 1293.1, 1294, 1294.1, 1294.5, 1296, 1297, 1298, 1301, 1308, 1308.1, 1308.7, 1309, 1309.5, 1391, 1391.1, 1391.2, 1392, 1683, and 1695, subdivision (a) of Section 1695.5, Sections 1695.55, 1695.6, 1695.7, 1695.8, 1695.9, 1696, 1696.5, 1696.6, 1697.1, 1700.25, 1700.26, 1700.31, 1700.32, 1700.40, and 1700.47, Sections 1735, 1771, 1774, 1776, 1777.5, 1811, 1815, 2651, and 2673, subdivision (a) of Section 2673.1, Sections 2695.2, 2800, 2801, 2802, 2806, and 2810, subdivision (b) of Section 2929, and Sections 3073.4, 6310, 6311, and 6399.7."

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3."

137. Plaintiff has exhausted his administrative remedies pursuant to California Labor Code § 2699.3. On January 11, 2022, Plaintiff gave written notice by online filing to the Labor and Workforce Development Agency and by certified mail to Defendants of the specific provisions of the Labor Code that Defendant have violated against Plaintiff and certain current and former aggrieved employees, including the facts and theories to support the violations. Plaintiff also paid the filing fee. Plaintiff's PAGA case number is LWDA-CM-862197-22. Plaintiff attaches his PAGA Notice including the amendment Plaintiff sent to the LWDA and Defendants on August 29, 2022 hereto as **Exhibit C**.

138. More than 65 days have elapsed since Plaintiff provided notice, but the Labor and Workforce Development Agency has not indicated that it intends to investigate Defendants' Labor Code violations discussed in the notice. Accordingly, Plaintiff may commence a civil action to recover penalties under Labor Code § 2699, pursuant to § 2699.3, for the violations of the Labor Code described in this Complaint. These penalties include, but are not limited to, penalties under California Labor Code §§ 210, 226.3, 1197.1, and 2699(f)(2).

139. In addition, Plaintiff seeks penalties for Defendants' violation of California Labor Code § 1174(d). Pursuant to California Labor Code § 1174.5, any person, including any entity, employing labor who willfully fails to maintain accurate and complete records required by California Labor Code § 1174 is subject to a penalty under § 1174.5. Pursuant to the applicable IWC Order § 7(A)(3), every employer shall keep time records showing when the employee begins and ends each work period. Additionally, pursuant to the applicable IWC Order § 7(A)(5), every employer shall keep total hours worked in the

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

payroll period and applicable rates of pay.

140.    During the time period of employment for Plaintiff and the Aggrieved Employees, Defendants failed to maintain records pursuant to the Labor Code and IWC Orders by failing to maintain accurate records. Defendants' failure to provide and maintain records required by the Labor Code IWC Wage Orders deprived Plaintiff and the Aggrieved Employees the ability to know, understand and question the accuracy and frequency of meal periods, which although not required under the law, were nevertheless counted as unpaid hours. Therefore, Plaintiff and the Aggrieved Employees had no way to dispute the resulting failure to pay wages, all of which resulted in an unjustified economic enrichment to Defendants. As a direct result, Plaintiff and the Aggrieved Employees have suffered and continue to suffer, substantial losses related to the use and enjoyment of such wages, lost interest on such wages and expenses and attorney's fees in seeking to compel Defendants to fully perform their obligations under state law, all to their respective damage in amounts according to proof at trial. Because of Defendants knowing failure to comply with the Labor Code and applicable IWC Wage Orders, Plaintiff and the Aggrieved Employees have also suffered an injury in that they were prevented from knowing, understanding, and disputing the wage payments paid to them.

141.    Based on the conduct described in this Complaint, Plaintiff is entitled to an award of civil penalties on behalf of himself, the State of California, and similarly Aggrieved Employees of Defendants. The exact amount of the applicable penalties, in all, is in an amount to be shown according to proof at trial. These penalties are in addition to all other remedies permitted by law.

142.    In addition, Plaintiff seeks an award of reasonable attorney's fees and costs pursuant to California Labor Code § 2699(g)(1), which states, "Any employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs."

## **PRAYER FOR RELIEF**

Plaintiff, individually, and on behalf of all others similarly situated only with respect to the class claims, prays for relief and judgment against Defendant, jointly and severally,

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

as follows:

Class Certification and Collective Action Status Determination

1.      That this action be certified as a class action with respect to the First, Second, Fifth, Sixth, Seventh, Eighth and Ninth Causes of Action and that the Third and Fourth Causes of Action be deemed appropriate as a collective action.

2.      That Plaintiff be appointed as the representative of the Class; and

3.      That counsel for Plaintiff be appointed as Class Counsel.

As to the First Cause of Action

4.      That the Court declare, adjudge and decree that Defendants violated California Labor Code §§ 204 and 1194 and applicable IWC Wage Orders by willfully failing to pay all minimum wages due;

5.      For general unpaid wages as may be appropriate;

6.      For pre-judgment interest on any unpaid compensation commencing from the date such amounts were due;

7.      For liquidated damages;

8.      For reasonable attorneys' fees and for costs of suit incurred herein pursuant to California Labor Code § 1194(a); and

9.      For such other and further relief as the Court may deem equitable and appropriate.

As to the Second Cause of Action

10.     That the Court declare, adjudge and decree that Defendants violated California Labor Code §§ 510 and 1198 and applicable IWC Wage Orders by willfully failing to pay all overtime wages due;

11.     For general unpaid wages at overtime wage rates as may be appropriate;

12.     For pre-judgment interest on any unpaid overtime compensation commencing from the date such amounts were due;

13.     For reasonable attorneys' fees and for costs of suit incurred herein pursuant to California Labor Code § 1194(a); and

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

14.    For such other and further relief as the Court may deem equitable and appropriate.

### As to the Third Cause of Action

15.    That the Court declare, adjudge and decree that Defendants violated the FLSA by failing to pay the federally mandated minimum wage;

16.    For recovery of an award of in amount equal to the amount of their unpaid minimum wages, an additional equal amount as liquidated damages, and/or prejudgment interest at the applicable rate, reasonable attorneys' fees, and the costs of this action.

17.    Furthermore, pursuant to 29 U.S.C. § 255, that the Court declare, adjudge and decree that Defendants violated the FLSA by failing to pay the federally mandated minimum wage willfully such that a three-year statute of limitations applies to Defendants' willful violations of the FLSA; and

18.    For such other and further relief as the Court may deem equitable and appropriate.

19.    However, Plaintiff recognizes the Court has dismissed this claim with prejudice and Plaintiff cannot seek the foregoing relief.

### As to the Fourth Cause of Action

20.    That the Court declare, adjudge and decree that Defendants violated the FLSA by failing to pay the federally mandated overtime wage;

21.    For recovery of an award of in amount equal to the amount of their unpaid overtime wages, an additional equal amount as liquidated damages, and/or prejudgment interest at the applicable rate, reasonable attorneys' fees, and the costs of this action.

22.    Furthermore, pursuant to 29 U.S.C. § 255, that the Court declare, adjudge and decree that Defendants violated the FLSA by failing to pay the federally mandated overtime wage willfully such that a three-year statute of limitations applies to Defendants' willful violations of the FLSA; and

23.    For such other and further relief as the Court may deem equitable and appropriate.

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

24.    However, Plaintiff recognizes the Court has dismissed this claim with prejudice and Plaintiff cannot seek the foregoing relief.

<u>As to the Fifth Cause of Action</u>

25.    That the Court declare, adjudge and decree that Defendants violated Labor Code § 2802 and the IWC Wage Orders;

26.    For general unpaid wages and reimbursement of business expenses as may be appropriate;

27.    For pre-judgment interest on any unpaid compensation commencing from the date such amounts were due;

28.    For reasonable attorneys' fees and for costs of suit incurred herein; and

29.    For such other and further relief as the Court may deem equitable and appropriate.

<u>As to the Sixth Cause of Action</u>

30.    That the Court declare, adjudge and decree that Defendants violated California Labor Code §§ 201, 202, and 203 by willfully failing to pay all compensation owed at the time of termination of the employment;

31.    For statutory wage penalties pursuant to California Labor Code § 203 for former employees who have left Defendants' employ;

32.    For pre-judgment interest on any unpaid wages from the date such amounts were due;

33.    For reasonable attorneys' fees and for costs of suit incurred herein; and

34.    For such other and further relief as the Court may deem equitable and appropriate.

<u>As to the Seventh Cause of Action</u>

35.    That the Court declare, adjudge and decree that Defendants violated the record keeping provisions of California Labor Code § 226(a) and applicable IWC Wage Orders, and willfully failed to provide accurate itemized wage statements thereto;

36.    For penalties and actual damages pursuant to California Labor Code § 226(e);

62

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

37.    For injunctive relief to ensure compliance with this section, pursuant to California Labor Code § 226(h);

38.    For reasonable attorneys' fees and for costs of suit incurred herein; and

39.    For such other and further relief as the Court may deem equitable and appropriate.

### As to the Eighth Cause of Action

40.    That the Court declare, adjudge and decree that Defendants violated California Business and Professions Code §§ 17200, *et seq.* by failing to pay wages for all hours worked (including minimum and overtime wages), failing to maintain accurate records of hours worked including by counting so-called meal periods (even if they were not required under the law) as unpaid time, failing to furnish accurate wage statements, and failing to indemnify necessary business expenses, and by failing to pay all wages due as a temporary services employer;

41.    For restitution of unpaid wages to Plaintiff and all Class Members and prejudgment interest from the day such amounts were due and payable;

42.    For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of violations of California Business and Professions Code §§ 17200 *et seq.*;

43.    For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Code of Civil Procedure § 1021.5;

44.    For injunctive relief to ensure compliance with this section, pursuant to California Business and Professions Code §§ 17200, *et seq.*; and

45.    For such other and further relief as the Court may deem equitable and appropriate.

### As to the Ninth Cause of Action

46.    That the Court declare, adjudge and decree that Defendants violated California Labor Code § 201.3 by willfully failing to pay all compensation owed at the

63

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

times they were due during employment and termination of the employment as temporary services employers;

47.    For statutory wage penalties pursuant to California Labor Code §§ 201-203 for former employees who have left Defendants' employ;

48.    For pre-judgment interest on any unpaid wages from the date such amounts were due;

49.    For reasonable attorneys' fees and for costs of suit incurred herein; and

50.    For such other and further relief as the Court may deem equitable and appropriate.

As to the Tenth Cause of Action

51.    That the Court declare, adjudge and decree that Defendants violated the California Labor Code and IWC Wage Orders by failing to pay all wages owed, including overtime wages, failing to maintain accurate records, failing to indemnify necessary business expenses, failing to timely pay final wages at termination, failing to provide accurate itemized wage statements; failing to pay all wages due as a temporary services employer and for all other violations of California Labor Code and IWC Wage Orders based on the facts alleged in this amended complaint;

52.    For all civil penalties pursuant to California Labor Code §§ 2699, *et seq*., and all other applicable California Labor Code and IWC Wage Order provisions;

53.    For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Labor Code § 2699; and

54.    For such other and further relief as the Court may deem equitable and appropriate.

As to all Causes of Action

55.    For any additional relief that the Court deems just and proper.

/ / /

/ / /

/ / /

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

64

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

Dated: December 12, 2022                    Respectfully submitted,
                                            **MOON & YANG, APC**

                                            By: */s/ Roy K. Suh*
                                            KANE MOON
                                            ROY K. SUH

                                            Attorneys for Plaintiff

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury as to all causes of action triable by jury.

Dated: December 12, 2022                    Respectfully submitted,
                                            **MOON & YANG, APC**

                                            By: */s/ Roy K. Suh*
                                            KANE MOON
                                            ROY K. SUH

                                            Attorneys for Plaintiff

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS, REPRESENTATIVE AND COLLECTIVE ACTION COMPLAINT

1  Kane Moon (Cal. SBN 249834)
    kane.moon@moonyanglaw.com
2  Roy K. Suh (Cal. SBN 283988)
    roy.suh@moonyanglaw.com
3  **MOON & YANG, APC**
    1055 West Seventh Street, Suite 1880
4  Los Angeles, California 90017
    Telephone:   (213) 232-3128
5  Facsimile:   (213) 232-3125

6  Attorneys for Plaintiff ALBERT JOHNSON

7

8                **UNITED STATES DISTRICT COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10 ALBERT JOHNSON, individually, and on    Case No.: 2:22-cv-01619-MCS-JPR
   behalf of all others similarly situated,   *Assigned to the Honorable Mark C. Scarsi*
11
                Plaintiff,                   **PLAINTIFF ALBERT JOHNSON'S 29**
12                                           **U.S.C. § 256 WRITTEN CONSENT TO**
        v.                                   **BECOME A PARTY PLAINTIFF**
13                                           **UNDER THE FAIR LABOR**
   R&L CARRIERS SHARED SERVICES,             **STANDARDS ACT**
14 LLC, a limited liability company; R&L
   CARRIERS, INC., an Ohio corporation;      PAGA Case No.
15 and DOES 1 through 10, inclusive,         LWDA-CM-862197-22:  January 11, 2022
                                             LASC Action Filed:   January 18, 2022
16              Defendants.                  Action Removed:     March 10, 2022
                                             FAC Filed:          June 2, 2022
17

18

19

20

21

22

23

24

25

26

27

28

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

1

PLAINTIFF'S 29 U.S.C. § 256 WRITTEN CONSENT TO BECOME A PARTY PLAINTIFF UNDER
THE FAIR LABOR STANDARDS ACT (CASE NO. 2:22-cv-01619-MCS-JPR)

## PLAINTIFF'S 29 U.S.C. § 256 WRITTEN CONSENT

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE, I, Plaintiff Albert Johnson ("Plaintiff"), by and through my attorneys of record, and pursuant to 29 U.S.C. § 256, file this written consent to become a party plaintiff in a collective action in a Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.*, action against Defendant R&L Carriers Shared Services, LLC and Defendant R&L Carriers, Inc. ("Defendants").

I have declared previously that I authorized my attorneys to file my January 18, 2022 class action complaint, for me individually and on behalf of Defendants' other employees, in the California Superior Court. *See e.g.,* March 31, 2022 Albert Johnson Declaration ¶ 6 (ECF No. 25-1). I have actively opposed Defendants' efforts to end this case by opposing their two motions to dismiss including by participating with my attorneys to add facts to the operative June 2, 2022 First Amended Complaint (FAC) in this action. ECF No. 38.

It is my understanding that, in part, because my employment with Defendants began around July 2020 (*see* FAC ¶ 17) and ended around May 6, 2021 (*id.* ¶ 17(f)(2)), I may bring FLSA claims in an action against Defendants for unpaid minimum wages and unpaid overtime wages, which must be "commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years" of accrual. 29 U.S.C. § 255(a). Defendants' failures were willful.

It is also my understanding this Court recently granted me leave to file a second amended complaint (ECF No. 52) and that adding an FLSA claim against Defendants may require a further motion. Accordingly, to the extent that the Court in this action may grant a further amendment to my FAC (or second amended complaint) to add FLSA or other claims against Defendants, and to the extent that my prior declarations in this matter do not signify my written consent to be a party plaintiff, I respectfully submit this written consent.

/ / /

/ / /

/ / /

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

DATED: 8/18/22

Plaintiff ALBERT JOHNSON

By: _Albert Johnson_

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

PLAINTIFF'S 29 U.S.C. § 256 WRITTEN CONSENT TO BECOME A PARTY PLAINTIFF UNDER THE FAIR LABOR STANDARDS ACT (CASE NO. 2:22-cv-01619-MCS-JPR)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

# EXHIBIT B

19
20
21
22
23
24
25
26
27
28

THIRD AMENDED CLASS, REPRESENTATIVE AND COLLECTIVE ACTION COMPLAINT

**R+L CARRIERS SHARED SERVICES, LLC**
600 GILLAM RD. WILMINGTON, OH 45177          (800) 543-5589

| Employee Name | | Social Security Number | | | Employee Number | | Organization |
|---|---|---|---|---|---|---|---|
| Albert Johnson II | | XXX-XX- | | | 72145 | | Fontana OTR Drivers |
| Period Start | Period End | Deposit Date | | Pay Rate | Overtime Rate | | |
| 08/16/20 | 08/22/20 | 08/28/20 | | 22.18/hr | Driving = N/A    Dock work = 33.27/hr | | |
| | | Total Hours Worked | | | Available CA Paid Sick Leave | | Used CA Paid Sick Leave |
| | | 56.87 | | | 0 Hours | | 0 Hours |
| | | Filing Status | | | Allowances | | Add. W/H |
| California | | Head of Household | | | | 0.00 | 7.00 |
| Federal | | Head of household | | | | 0.00 | 7.00 |

| Earnings | | | | | Deductions | | |
|---|---|---|---|---|---|---|---|
| Description | Hours | Rate | Current | YTD | Description | Current Amount | YTD |
| Regular Linehaul | 56.87 | 22.18 | 1261.38 | 4779.14 | Federal Tax | 87.20 | 3 |
| Regular Dock | 0.00 | | 0.00 | 576.68 | Social Security | 78.20 | 3 |
| | | | | | Medicare | 18.29 | |
| | | | | | CA State Tax | 25.10 | |
| | | | | | CA Disability | 12.62 | |
| | | | | | DC 401K Pct | 189.21 | 5 |

| Summaries | Current | Year To Date |
|---|---|---|
| GROSS EARNINGS | 1261.38 | 5355.82 |
| PRE-TAX DEDUCTIONS | 189.21 | 511.30 |
| TAX DEDUCTIONS | 221.41 | 946.26 |
| OTHER DEDUCTIONS | 0.00 | 0.00 |
| NET EARNINGS | 850.76 | 3898.26 |

**Your NET EARNINGS were deposited per your instructions in:**

| Deposit To | Type of Account | Account Number | Amount |
|---|---|---|---|
| | Checking Account | | $850.76 |
| Union Bank | | | |

Albert Johnson II

**THIS IS NOT A CHECK**
**NON-NEGOTIABLE**

**R+L CARRIERS SHARED SERVICES, LLC**
600 GILLAM RD. WILMINGTON, OH 45177     (800) 543-5589

| Employee Name | | Social Security Number | | | Employee Number | | Organization |
|---|---|---|---|---|---|---|---|
| Albert Johnson II | | XXX-XX- | | | 72145 | | Fontana OTR Drivers |
| **Period Start** | **Period End** | **Deposit Date** | | **Pay Rate** | **Overtime Rate** | | |
| 08/23/20 | 08/29/20 | 09/04/20 | | 22.18/hr | Driving = N/A    Dock work = 33.27/hr | | |
| | | Total Hours Worked | | | Available CA Paid Sick Leave | | Used CA Paid Sick Leave |
| | | 61.30 | | | 0 Hours | | 0 Hours |
| | | Filing Status | | | Allowances | | Add. W/H |
| California | | Head of Household | | | | 0.00 | |
| Federal | | Head of household | | | | 0.00 | 7.00 |
| | | | | | | | 7.00 |

| Earnings | | | | | Deductions | | |
|---|---|---|---|---|---|---|---|
| Description | Hours | Rate | Current | YTD | Description | Current Amount | YTD |
| Regular Linehaul | 61.30 | 22.18 | 1359.64 | 6138.78 | Federal Tax | 97.22 | 471.25 |
| Regular Dock | 0.00 | | 0.00 | 576.68 | Social Security | 84.30 | 416.36 |
| | | | | | Medicare | 19.71 | 97.37 |
| | | | | | CA State Tax | 28.77 | 137.72 |
| | | | | | CA Disability | 13.59 | 67.15 |
| | | | | | DC 401K Pct | 203.95 | 715.25 |

| Summaries | Current | Year To Date |
|---|---|---|
| GROSS EARNINGS | 1359.64 | 6715.46 |
| PRE-TAX DEDUCTIONS | 203.95 | 715.25 |
| TAX DEDUCTIONS | 243.59 | 1189.85 |
| OTHER DEDUCTIONS | 0.00 | 0.00 |
| NET EARNINGS | 912.10 | 4810.36 |

**Your NET EARNINGS were deposited per your instructions in:**

| Deposit To | Type of Account | Account Number | Amount |
|---|---|---|---|
| Union Bank | Checking Account | | $912.10 |

Albert Johnson II

**THIS IS NOT A CHECK
NON-NEGOTIABLE**

**R+L CARRIERS SHARED SERVICES, LLC**
**600 GILLAM RD. WILMINGTON, OH 45177**   (800) 543-5589

| Employee Name | | Social Security Number | | Employee Number | | Organization |
|---|---|---|---|---|---|---|
| Albert Johnson II | | XXX-XX | | 72145 | | Fontana OTR Drivers |
| Period Start | Period End | Deposit Date | Pay Rate | Overtime Rate | | |
| 11/01/20 | 11/07/20 | 11/13/20 | 25.18/hr | Driving = N/A    Dock work = 37.77/hr | | |
| COVID Hours | | Total Hours Worked | | Available CA Paid Sick Leave | | Used CA Paid Sick Leave |
| 80 | | 40.77 | | 25 Hours | | 0 Hours |
| | | Filing Status | | Allowances | | Add. W/H |
| California | | Head of Household | | | 0.00 | 7.00 |
| Federal | | Head of household | | | 0.00 | 7.00 |

| | Earnings | | | | Deductions | | |
|---|---|---|---|---|---|---|---|
| Description | Hours | Rate | Current | YTD | Description | Current Amount | YTD |
| Regular | 0.00 | | 0.00 | 333.64 | Federal Tax | 77.01 | 1308.16 |
| Regular Linehaul | 40.77 | 25.18 | 1026.59 | 18228.20 | Social Security | 72.87 | 1182.21 |
| Paid Time Off | 9.00 | 25.18 | 226.62 | 226.62 | Medicare | 17.04 | 276.48 |
| Regular City | 0.00 | | 0.00 | 170.73 | CA State Tax | 21.36 | 381.11 |
| Regular Dock | 0.00 | | 0.00 | 576.68 | CA Disability | 11.75 | 190.68 |
| | | | | | DENTAL | 6.00 | 36.00 |
| | | | | | VISION | 2.00 | 12.00 |
| | | | | | DC 401K Pct | 187.98 | 2638.31 |
| | | | | | HPP | 70.00 | 420.00 |
| | | | | | Accident Ins | 6.19 | 6.19 |
| | | | | | STD | 14.33 | 85.98 |
| | | | | | LTD | 8.54 | 51.24 |
| | | | | | Illness Ins | 14.35 | 14.35 |

| Summaries | Current | Year To Date |
|---|---|---|
| GROSS EARNINGS | 1253.21 | 19535.87 |
| PRE-TAX DEDUCTIONS | 265.98 | 3106.31 |
| TAX DEDUCTIONS | 200.03 | 3338.64 |
| OTHER DEDUCTIONS | 43.41 | 157.76 |
| NET EARNINGS | 743.79 | 12933.16 |

**Your NET EARNINGS were deposited per your instructions in:**

| Deposit To | Type of Account | Account Number | Amount |
|---|---|---|---|
| Union Bank | Checking Account | | $743.79 |

Albert Johnson II

**THIS IS NOT A CHECK**
**NON-NEGOTIABLE**

# R+L CARRIERS SHARED SERVICES, LLC
## 600 GILLAM RD. WILMINGTON, OH 45177

| Employee Name | | | | | | | |
|---|---|---|---|---|---|---|---|
| Albert Johnson II | | | | | | | |

| Period Start | Period End | Social Security Number | | (800) 543-5589 | | | |
|---|---|---|---|---|---|---|---|
| 11/29/20 | 12/05/20 | XXX-XX | | | Employee Number | | Organization |
| COVID Hours | | Deposit Date | | | 72145 | | Fontana OTR Drivers |
| 80 | | 12/11/20 | | Pay Rate | Overtime Rate | | |
| | | Total Hours Worked | 26.43/hr | | Driving = N/A  Dock work = 39.65/hr | | |
| | | 50.00 | | | Available CA Paid Sick Leave | | Used CA Paid Sick Leave |
| California | | Filing Status | | | 17 Hours | | 16 Hours |
| Federal | | Head of Household | | | Allowances | | Add. W/H |
| | | Head of household | | | | 0.00 | 7.00 |
| | | | | | | 0.00 | 7.00 |

| Description | Earnings | | | | Deductions | | |
|---|---|---|---|---|---|---|---|
| Regular | Hours | Rate | Current | YTD | Description | Current Amount | YTD |
| Regular Linehaul | 0.00 | | 0.00 | 598.03 | Federal Tax | 88.05 | 1646.88 |
| Paid Time Off | 50.00 | 26.43 | 1321.50 | 22434.92 | Social Security | 79.20 | 1488.60 |
| Regular City | 0.00 | | 0.00 | 457.89 | Medicare | 18.52 | 348.14 |
| Regular Dock | 0.00 | | 0.00 | 170.73 | CA State Tax | 25.41 | 477.81 |
| Holiday | 0.00 | | 0.00 | 576.68 | CA Disability | 12.78 | 240.10 |
| | 0.00 | | 0.00 | 211.44 | DENTAL | 3.00 | 30.00 |
| | | | | | VISION | 1.00 | 10.00 |
| | | | | | DC 401K Pct | 198.23 | 3375.39 |
| | | | | | HPP | 40.00 | 400.00 |
| | | | | | Accident Ins | 6.19 | 30.95 |
| | | | | | STD | 14.33 | 143.30 |
| | | | | | LTD | 8.54 | 85.40 |
| | | | | | Illness Ins | 14.35 | 71.75 |

| Summaries | Current | Year To Date |
|---|---|---|
| GROSS EARNINGS | 1321.50 | 24449.69 |
| PRE-TAX DEDUCTIONS | 242.23 | 3815.39 |
| TAX DEDUCTIONS | 223.96 | 4201.53 |
| OTHER DEDUCTIONS | 43.41 | 331.40 |
| NET EARNINGS | 811.90 | 16101.37 |

## Your NET EARNINGS were deposited per your instructions in:

| Deposit To | Type of Account | Account Number | Amount |
|---|---|---|---|
| | Checking Account | | $811.90 |
| Union Bank | | | |

Albert Johnson II

**THIS IS NOT A CHECK**
**NON-NEGOTIABLE**

**R+L CARRIERS SHARED SERVICES, LLC**
**600 GILLAM RD. WILMINGTON, OH 45177**    (800) 543-5589

| Employee Name | | Social Security Number | | | Employee Number | | Organization |
|---|---|---|---|---|---|---|---|
| Albert Johnson II | | XXX-XX- | | | 72145 | | Fontana OTR Drivers |
| Period Start | Period End | Deposit Date | | Pay Rate | Overtime Rate | | |
| 01/03/21 | 01/09/21 | 01/15/21 | | 26.43/hr | Driving = N/A   Dock work = 39.65/hr | | |
| COVID Hours | | Total Hours Worked | | | Available CA Paid Sick Leave | | Used CA Paid Sick Leave |
| 8 | | 43.96 | | | 21 Hours | | 10 Hours |
| | | Filing Status | | | Allowances | | Add. W/H |
| California | | Head of Household | | | | 0.00 | |
| Federal | | Head of household | | | | 0.00 | 7.00 |
| | | | | | | | 7.00 |

| Description | Earnings | | | | Description | Deductions | |
|---|---|---|---|---|---|---|---|
| | Hours | Rate | Current | YTD | | Current Amount | YTD |
| MISSED LUNCH PREMIUM | 1.00 | 26.43 | 26.43 | 26.43 | Federal Tax | 106.32 | 186.25 |
| Regular Linehaul | 43.96 | 26.43 | 1161.87 | 1889.49 | Social Security | 90.06 | 163.85 |
| Paid Time Off | 10.00 | 26.43 | 264.30 | 264.30 | Medicare | 21.06 | 38.32 |
| Holiday | 0.00 | | 0.00 | 211.44 | CA State Tax | 32.01 | 54.04 |
| Vacation | 0.00 | | 0.00 | 251.09 | CA Disability | 19.81 | 31.71 |
| | | | | | DC 401K Pct | 217.89 | 396.41 |
| | | | | | Accident Ins | 6.19 | 12.38 |
| | | | | | Illness Ins | 14.35 | 28.70 |

| Summaries | Current | Year To Date |
|---|---|---|
| GROSS EARNINGS | 1452.60 | 2642.75 |
| PRE-TAX DEDUCTIONS | 217.89 | 396.41 |
| TAX DEDUCTIONS | 269.26 | 474.17 |
| OTHER DEDUCTIONS | 20.54 | 41.08 |
| NET EARNINGS | 944.91 | 1731.09 |

**Your NET EARNINGS were deposited per your instructions in:**

| Deposit To | Type of Account | Account Number | Amount |
|---|---|---|---|
| Union Bank | Checking Account | | $944.91 |

Albert Johnson II

**THIS IS NOT A CHECK**
**NON-NEGOTIABLE**

# R+L CARRIERS SHARED SERVICES, LLC
## 600 GILLAM RD. WILMINGTON, OH 45177   (800) 543-5589

| Employee Name | | Social Security Number | | Employee Number | Organization |
|---|---|---|---|---|---|
| Albert Johnson II | | XXX-XX | | 72145 | Fontana OTR Drivers |
| Period Start | Period End | Deposit Date | Pay Rate | Overtime Rate | |
| 02/14/21 | 02/20/21 | 02/26/21 | 26.43/hr | Driving = N/A    Dock work = 39.65/hr | |
| COVID Hours | | Total Hours Worked | | Available CA Paid Sick Leave | Used CA Paid Sick Leave |
| 8 | | 43.64 | | 0 Hours | 31 Hours |
| | | Filing Status | | Allowances | Add. W/H |
| California | | Head of Household | | 0.00 | 7.00 |
| Federal | | Head of household | | 0.00 | 7.00 |

| Earnings | | | | | Deductions | | |
|---|---|---|---|---|---|---|---|
| Description | Hours | Rate | Current | YTD | Description | Current Amount | YTD |
| MISSED LUNCH PREMIUM | 0.00 | | 0.00 | 26.43 | Federal Tax | 75.80 | 685.86 |
| Regular Linehaul | 43.64 | 26.43 | 1153.41 | 8694.18 | Social Security | 71.51 | 620.15 |
| Holiday | 0.00 | | 0.00 | 211.44 | Medicare | 16.73 | 145.04 |
| Vacation | 0.00 | | 0.00 | 251.09 | CA State Tax | 20.89 | 200.16 |
| Paid Time Off | 0.00 | | 0.00 | 819.33 | CA Disability | 13.84 | 120.03 |
| | | | | | DC 401K Pct | 173.01 | 1500.36 |
| | | | | | Accident Ins | 6.19 | 49.52 |
| | | | | | Illness Ins | 14.35 | 114.80 |

| Summaries | Current | Year To Date |
|---|---|---|
| GROSS EARNINGS | 1153.41 | 10002.47 |
| PRE-TAX DEDUCTIONS | 173.01 | 1500.36 |
| TAX DEDUCTIONS | 198.77 | 1771.24 |
| OTHER DEDUCTIONS | 20.54 | 164.32 |
| NET EARNINGS | 761.09 | 6566.55 |

## Your NET EARNINGS were deposited per your instructions in:

| Deposit To | Type of Account | Account Number | Amo |
|---|---|---|---|
| Union Bank | Checking Account | | $761.0 |

Albert Johnson II

**THIS IS NOT A CHECK**
**NON-NEGOTIABLE**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT C

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS, REPRESENTATIVE AND COLLECTIVE ACTION COMPLAINT

# MOON & YANG, APC

ATTORNEYS AT LAW
WWW.MOONYANGLAW.COM

1055 W. SEVENTH ST., SUITE 1880
LOS ANGELES, CALIFORNIA 90017
TELEPHONE: (213) 232-3128
FACSIMILE: (213) 232-3125

Kane Moon, Esq.
*Kane.Moon@moonyanglaw.com*

January 11, 2022

**VIA ONLINE SUBMISSION**
Labor & Workforce Development Agency
Attn. PAGA Administrator
1515 Clay Street, Ste. 801
Oakland, CA 94612

**VIA CERTIFIED MAIL**
R&L Carriers Shared Services, LLC
c/o CT Corporation System
4400 Easton Commons Way, Suite 125
Columbus, OH 43219

**VIA CERTIFIED MAIL**
R&L Carriers, Inc.
c/o CT Corporation System
4400 Easton Commons Way, Suite 125
Columbus, OH 43219

**Notice of Labor Code Violations and PAGA Penalties**

Re:    ***Albert Johnson v. R&L Carriers Shared Services, LLC; and R&L Carriers, Inc.***

To Whom It May Concern:

Please be advised that my office has been retained by Albert Johnson ("Plaintiff") to pursue a Labor Code Private Attorney General Act (PAGA) representative action (Cal. Lab. Code §§ 2699, *et seq.*) against his former employer, R&L Carriers Shared Services, LLC, and R&L Carriers, Inc. (collectively referred herein as "Defendant"). The purpose of this letter is to comply with PAGA and set forth the facts and theories of California Labor Code violations which we allege Defendant engaged in with respect to Plaintiff and all of Defendant's aggrieved employees.

Plaintiff wishes to pursue a PAGA representative action on behalf of Plaintiff as an aggrieved employee, on behalf of the State of California, and on behalf of all other current and former aggrieved employees who worked for Defendant in California as an hourly paid, non-exempt employee at any time within the applicable statutory period (hereafter, the "Aggrieved Employees").

LWDA
*Notice of Labor Code Violations and PAGA*
January 11, 2022
Page 2 of 9

Plaintiff and the Aggrieved Employees of Defendant suffered the Labor Code violations described below.

## Factual Background Regarding Plaintiff's Employment with Defendant

Defendant owns and operates an industry, business, and establishment within the State of California, including Los Angeles County. As such, Defendant is subject to the California Labor Code and the Wage Orders issued by the Industrial Welfare Commission ("IWC").

Plaintiff worked for Defendant as a driver from approximately July 2020 to May 2021, primarily in Los Angeles County. Defendant classified Plaintiff as non-exempt from overtime. During the time period that Plaintiff was employed by Defendant, Plaintiff typically worked 5 days per week, and in excess of 8 hours each workday.

Throughout Plaintiff's employment, Defendant committed numerous labor code violations under state law. As discussed below, Plaintiff's experience working for Defendant was typical and illustrative.

## Failure to Pay for All Hours Worked, Including Overtime

Under California law, an employer must pay for all hours worked by an employee. "Hours worked" is the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so.

In addition, Labor Code § 510 provides that employees in California shall not be employed more than eight (8) hours in any workday or forty (40) hours in a workweek unless they receive additional compensation beyond their regular wages in amounts specified by law.

Labor Code §§ 1194 and 1198 also provide that employees in California shall not be employed more than eight hours in any workday unless they receive additional compensation beyond their regular wages in amounts specified by law. Additionally, Labor Code § 1198 states that the employment of an employee for longer hours than those fixed by the Industrial Welfare Commission is unlawful.

Throughout the statutory period, Defendants maintained a policy and practice of not paying Plaintiff and the Aggrieved Employees for all hours worked, including all overtime wages. Plaintiff and the Aggrieved Employees were required to "work off the clock" and uncompensated. For example, Plaintiff and the Aggrieved Employees were required to arrive at work early in order to perform pre-trip inspections of the truck, including safety checks, off the clock and uncompensated. Further, Plaintiff and the Aggrieved Employees were required to use their own personal cellular telephones for work-related purposes while off the clock and

LWDA
*Notice of Labor Code Violations and PAGA*
January 11, 2022
Page 3 of 9

uncompensated.  In maintaining a practice of not paying all wages owed, Defendants failed to maintain accurate records of the hours Plaintiff and the Aggrieved Employees worked.

As a result, Defendant is liable to Plaintiff and the Aggrieved Employees for the civil penalties provided for in Labor Code §§ 210, 558, 1197.1, and 2699(f)(2) for failing to pay for all hours worked, including overtime.

**<u>Failure to Provide Meal Periods</u>**

Under California law, employers have an affirmative obligation to relieve employees of all duty in order to take their first 30-minute, duty-free meal periods no later than the start of sixth hour of work in a workday, and to allow employees to take their second 30-minute, duty-free meal period no later than the start of the eleventh hour of work in the workday.  Further, employees are entitled to be paid one hour of additional wages for each workday they were not provided with all required meal period(s).

Despite these legal requirements, Defendant wrongfully failed to provide Plaintiff and the Aggrieved Employees with legally compliant meal periods.  Defendant regularly required Plaintiff and the Aggrieved Employees to work in excess of five consecutive hours a day without providing a 30-minute, continuous and uninterrupted, duty-free meal period for every five hours of work, or without compensating Plaintiff and the Aggrieved Employees for meal periods that were not provided by the end of the fifth hour of work or tenth hour of work.  Defendant did not adequately inform Plaintiff and the Aggrieved Employees of their right to take a meal period by the end of the fifth hour of work, or, for shifts greater than 10 hours, by the end of the tenth hour of work.  Moreover, Defendant did not have adequate written policies or practices providing meal periods for Plaintiff and the Aggrieved Employees, nor did Defendant have adequate policies or practices regarding the timing of meal periods.  Defendant also did not have adequate policies or practices to verify whether Plaintiff and the Aggrieved Employees were taking their required meal periods.  Accordingly, Defendant's policy and practice was to not provide meal periods to Plaintiff and the Aggrieved Employees in compliance with California law.

Plaintiff and the Aggrieved Employees are thus entitled to be paid one hour of additional wages for each workday he or she was not provided with all required meal period(s).  Defendant, however, regularly failed to pay Plaintiff and the Aggrieved Employees the additional wages to which they were entitled for meal periods and that were not provided.

As a result, Defendant is liable to Plaintiff and the Aggrieved Employees for the civil penalties provided for in Labor Code §§ 210, 558, and 2699(f)(2) for failing to provide meal periods and pay meal period premium wages.

LWDA
*Notice of Labor Code Violations and PAGA*
January 11, 2022
Page 4 of 9

## Failure to Authorize and Permit Rest Periods

Employers are required by California law to authorize and permit breaks of 10 uninterrupted minutes for each four hours of work or major fraction of four hours (i.e. more than two hours). Thus, for example, if an employee's work time is 6 hours and ten minutes, the employee is entitled to two rest breaks. Each failure to authorize rest breaks as so required is itself a violation of California's rest break laws.

Defendant, however, wrongfully failed to authorize and permit Plaintiff and the Aggrieved Employees to take timely and duty-free rest periods. Defendant regularly required Plaintiff and the Aggrieved Employees to work in excess of four consecutive hours a day without Defendant authorizing and permitting them to take a 10 minute, continuous and uninterrupted, rest period for every four hours of work (or major fraction of four hours), or without compensating Plaintiff and the Aggrieved Employees for rest periods that were not authorized or permitted. Defendant did not adequately inform Plaintiff and the Aggrieved Employees of their right to take a rest period. Moreover, Defendant did not have adequate policies or practices permitting or authorizing rest periods for Plaintiff and the Aggrieved Employees, nor did Defendant have adequate policies or practices regarding the timing of rest periods. Defendant also did not have adequate policies or practices to verify whether Plaintiff and the Aggrieved Employees were taking their required rest periods. Further, Defendant did not maintain accurate records of employee work periods, and therefore Defendant cannot demonstrate that Plaintiff and the Aggrieved Employees took rest periods during the middle of each work period. Accordingly, Defendant's policy and practice was for Plaintiff and the Aggrieved Employees to work through rest periods and to not authorize or permit them to take any rest periods.

Plaintiff and the Aggrieved Employees are thus entitled to be paid one hour of additional wages for each workday he or she was not authorized and permitted to take all required rest period(s). Defendant, however, regularly failed to pay Plaintiff and the Aggrieved Employees the additional wages to which they were entitled for rest periods and that they were not authorized and permitted to take.

As a result, Defendant are liable to Plaintiff and the Aggrieved Employees for the civil penalties provided for in Labor Code §§ 210, 558, and 2699(f)(2) for failing to authorize and permit rest periods and pay rest period premium wages.

## Failure to Maintain Accurate Records of Hours Worked and Meal Periods

Plaintiff seeks penalties under Labor Code § 1174(d). Pursuant to Labor Code § 1174.5, any person, including any entity, employing labor who willfully fails to maintain accurate and complete records required by Labor Code § 1174 is subject to a penalty under § 1174.5. Pursuant to the applicable IWC Order § 7(A)(3), every employer shall keep time records

MOON & YANG, APC        1055 W. Seventh St., Ste. 1880, Los Angeles, CA 90017        www.moonyanglaw.com

LWDA
*Notice of Labor Code Violations and PAGA*
January 11, 2022
Page 5 of 9

showing when the employee begins and ends each work period.  Meal periods and total hours worked daily shall also be recorded.

Defendant, however, failed to maintain accurate records of hours worked and all meal periods taken or missed by Plaintiff and the Aggrieved Employees.

Defendant's failure to provide and maintain records required by the Labor Code IWC Wage Orders deprived Plaintiff and the Aggrieved Employees the ability to know, understand and question the accuracy and frequency of meal periods, and the accuracy of their hours worked stated in Defendant's records. Therefore, Plaintiff and the Aggrieved Employees had no way to dispute the resulting failure to pay wages, all of which resulted in an unjustified economic enrichment to Defendant.  As a direct result, Plaintiff and the Aggrieved Employees have suffered and continue to suffer, substantial losses related to the use and enjoyment of such wages, lost interest on such wages and expenses and attorney's fees in seeking to compel Defendant to fully perform its obligation under state law, all to their respective damage in amounts according to proof at trial.  As a result of Defendant's knowing failure to comply with the Labor Code and applicable IWC Wage Orders, Plaintiff and the Aggrieved Employees have also suffered an injury in that they were prevented from knowing, understanding, and disputing the wage payments paid to them.

As a result, Defendant is liable to Plaintiff and the Aggrieved Employees for the civil penalties provided for in Labor Code § 1174.5 for failing to maintain accurate records of hours worked and meal periods.

**Failure to Reimburse and Indemnify Expenses**

California Labor Code § 2802 requires employers to reimburse employees for their necessary expenditures and losses incurred in direct consequence of the discharge of their duties or of their obedience to directions of the employer.

Throughout the statutory period, Defendants wrongfully required Plaintiff and the Aggrieved Employees to pay expenses that they incurred in direct discharge of their duties for Defendants without reimbursement, such as the purchase of safety protective equipment.  Also, Plaintiff and the Aggrieved Employees were required to use their own personal cellular telephones for work-related purposes, without reimbursement.

**Failure to Pay All Accrued Vacation Wages at Termination**

Labor Code § 227.3 requires employers to pay employees for all unused vested vacation time at their final rate of pay upon termination of their employment.

LWDA
*Notice of Labor Code Violations and PAGA*
January 11, 2022
Page 6 of 9

During the statutory period, Defendant maintained a policy and practice of failing to pay Plaintiff and the Aggrieved Employees the correct amount of vacation pay owed at the termination of employment.  For instance, when Plaintiff's employment with Defendant terminated, he was owed vacation wages at his true final wage rate on his final pay check from Defendant even though he had accrued unused vacation time.  On information and belief, Defendant's failure to pay Plaintiff the correct amount of vacation pay was not a single, isolated incident, but was instead part of Defendant's policy and practice that applied to the Aggrieved Employees.

As a result, Defendant is liable to Plaintiff and the Aggrieved Employees for the civil penalties provided for in Labor Code § 2699(f)(2) for failing to pay all accrued vacation wages at termination.

**<u>Failure to Timely Pay All Wages at Termination</u>**

Labor Code §§ 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

Within the applicable statute of limitations, the employment of Plaintiff and many other Aggrieved Employees ended, i.e. was terminated by quitting or discharge, and the employment of others will be.  However, during the relevant time period, Defendant failed, and continues to fail to pay Plaintiff and terminated Aggrieved Employees, without abatement, all wages required to be paid by Labor Code sections 201 and 202 either at the time of discharge, or within seventy-two (72) hours of their leaving Defendant's employ.  These unpaid wages include wages for unpaid work time (including minimum and straight time wages), missed meal periods, and missed rest periods.

Defendant'sconduct violates Labor Code §§ 201 and 202.Labor Code § 203 provides that if an employer willfully fails to pay wages owed, in accordance with sections 201 and 202, then the wages of the employee shall continue as a penalty wage from the due date, and at the same rate until paid or until an action is commenced; but the wages shall not continue for more than thirty (30) days.

Accordingly, Plaintiff and the Aggrieved Employees are entitled to recover from Defendant their additionally accruing wages for each day they were not paid, at their regular hourly rate of pay, up to 30 days maximum pursuant to Labor Code § 203.

LWDA
*Notice of Labor Code Violations and PAGA*
January 11, 2022
Page 7 of 9

Moreover, Defendant is liable to Plaintiff and the Aggrieved Employees for the civil penalties provided for in Labor Code § 2699(f)(2) for failing to timely pay all wages at termination.

**<u>Failure to Furnish Accurate Itemized Wage Statements</u>**

Labor Code § 226(a) provides that every employer shall furnish each of his or her employees an accurate itemized wage statement in writing showing nine pieces of information, including: (1) gross wages earned, (2) total hours worked by the employee, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.  An employee is presumed to suffer an injury if this information is missing.  (Lab. Code § 226(e)(2)(B)(iii).)

The statute further provides: "An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees."  (Lab. Code § 226(e)(1).)

Defendant intentionally and willfully failed to provide employees with complete and accurate wage statements.  The deficiencies include, among other things, the failure to correctly identify hourly rates, the failure to correctly list gross wages earned, and the failure to list the true net wages earned, including wages for meal periods that were not provided in accordance with California law, wages for rest periods that were not authorized and permitted to take in accordance with California law, and correct wages earned for all hours worked.

As a result of Defendant violating Labor Code § 226, Plaintiff and similarly Aggrieved Employees suffered injury and damage to their statutorily protected rights.

Accordingly, Plaintiff and similarly Aggrieved Employees are entitled to recover from Defendantthe greater of their actual damages caused by Defendant's failure to comply with Labor Code § 226(a), or an aggregate penalty not exceeding $4,000 dollars per employee.

Moreover, Defendant is liable to Plaintiff and the Aggrieved Employees for the civil penalties provided for in Labor Code § 226.3 for failing to furnish accurate itemized wage statements.

Moon & Yang, APC      1055 W. Seventh St., Ste. 1880, Los Angeles, CA 90017      www.moonyanglaw.com

LWDA
*Notice of Labor Code Violations and PAGA*
January 11, 2022
Page 8 of 9

**Failure to Pay All Earned Wages Twice Per Month**

Based on its failure to pay Plaintiff and the Aggrieved Employees for all wages as discussed above, Defendant also violated Labor Code § 204.

Labor Code § 204 requires employers to pay employees all earned wages two times per month. Throughout the statute of limitations period applicable to this cause of action, employees were entitled to be paid twice a month at their regular rates, including all meal period premium wages owed, rest period premium wages owed, and wages owed for hours worked.  However, during all such times, Defendant systematically failed and refused to pay the employees all wages due, and failed to pay those wages twice a month, in that employees were not paid all wages for all meal periods not provided by Defendant, all wages for all rest periods not authorized and permitted by Defendant, and all wages for all hours worked.  As a result, Defendant owes employees the legally required wages for unpaid wages, and Plaintiff and the Aggrieved Employees suffered damages in those amounts.

Moreover, Defendant is liable to Plaintiff and the Aggrieved Employees for the civil penalties provided for in Labor Code § 210 for failing to pay all earned wages twice per month.

**Action for Civil Penalties Under PAGA**

In light of the above, Plaintiff alleges that Defendant violated the following provisions of the Labor Code with respect to the Aggrieved Employees:

1. Labor Code § 204, 510, 1194, 1197, and 1198 by failing to pay for all hours worked, including minimum wages, straight time wages and overtime wages;

2. Labor Code § 226.7, 512 and applicable Wage Orders by failing to provide meal periods;

3. Labor Code § 226.7 and applicable Wage Orders by failing to authorize and permit rest periods;

4. Labor Code § 1174.5 and applicable Wage Orders by failing to maintain accurate records of hours worked and meal periods taken or missed;

5. Labor Code § 2802 by failing to reimburse and indemnify employees for expenses and losses in the direct consequence and discharge of their duties;

6. Labor Code § 227.3 by failing to pay all vacation wages at termination;

7. Labor Code §§ 201 to 203 by willfully failing to pay all wages owed at termination;

8. Labor Code § 226 by failing to provide accurate itemized wage statements; and

LWDA
*Notice of Labor Code Violations and PAGA*
January 11, 2022
Page 9 of 9

9.  Labor Code § 204 by failing to pay all earned wages two times per month.

Therefore, on behalf of all Aggrieved Employees, Plaintiff seeks applicable penalties related to the violations alleged above pursuant to the PAGA.  These include, but are not limited to, penalties under Labor Code §§ 210, 226.3, 558, 1174.5, 1197.1, 2802, and 2699(f)(2).

Plaintiff has placed Defendant on notice by mailing a certified copy of this correspondence to its corporate address, as indicated on the first page.

Thank you for your attention to this matter.  If you have any questions, please do not hesitate to contact me.

Sincerely,

MOON & YANG, APC

Kane Moon, Esq.
*Attorney at Law*

# MOON & YANG, APC
ATTORNEYS AT LAW
WWW.MOONYANGLAW.COM

1055 WEST SEVENTH STREET, SUITE 1880
LOS ANGELES, CALIFORNIA 90017
TELEPHONE: (213) 232-3128
FACSIMILE: (213) 232-3125
Roy K. Suh, Esq.
roy.suh@moonyanglaw.com

August 29, 2022

*Via Online Submission @ https://dir.tfaforms.net/310*
**Labor Workforce Development Agency, Department of Industrial Relations**
Attn: PAGA Administrator
455 Golden Gate Avenue, 10th Floor
San Francisco, California 94102

| *Via E-Mail and Certified Mail to Attorneys for:* | *Via E-Mail Only to Attorneys for:* |
|---|---|
| **R+L Carriers Shared Services, LLC** | **R+L Carriers Shared Services, LLC** |
| **R&L Carriers, Inc.** | **R&L Carriers, Inc.** |
| *In the Care of:* | *In the Care of:* |
| Anthony C. White (Pro Hac Vice) | Cheryl L. Schreck (Cal. SBN 130083) |
| tony.white@thompsonhine.com | cschreck@fisherphillips.com |
| J. Timothy McDonald (Pro Hac Vice) | Anet Drapalski (Cal. SBN 282086) |
| tim.mcdonald@thompsonhine.com | adrapalski@fisherphillips.com |
| **THOMPSON HINE, LLP** | **FISHER & PHILLIPS LLP** |
| 41 South High Street, Suite 1700 | 444 South Flower Street, Suite 1500 |
| Columbus, Ohio 43215 | Los Angeles, California 90071 |
| Telephone:     (614) 469-3200 | Telephone:     (213) 330-4500 |
| Facsimile:     (614) 469-3361 | Facsimile:     (213) 330-4501 |
| Attorneys for Defendants R&L CARRIERS SHARED SERVICES, L.L.C. and R&L CARRIERS, INC. | Attorneys for Defendants R&L CARRIERS SHARED SERVICES, L.L.C. and R&L CARRIERS, INC. |

Re:   **Amended Notice Pursuant to Labor Code § 2699.3 Case No. LWDA-CM-862197-22**
     **Employee:**   Albert Johnson
     **Employer(s):** R+L Carriers Shared Services, LLC and R&L Carriers, Inc.

To the LWDA & Employers:

The Moon & Yang, APC ("M&Y") represents Plaintiff Albert Johnson ("Employee" or sometimes "Plaintiff"), against named Defendants R+L Carriers Shared Services, LLC and R&L Carriers, Inc. ("Employer(s)" or sometimes "Defendants"), who are named as defendants in a pending action in the United States District Court, Central District California, Case No. 2:22-cv-01619-MCS-JPR (the "Action").

This is an amended notice to Employee's January 22, 2022 notice to Employer pursuant to California Labor Code Private Attorneys General Act of 2004 (Labor Code §§ 2698, *et seq.* "PAGA"]), which is incorporated by reference, that adds facts and theories of Employer's liability for violations of the California Labor Code including those Employee, by and through M&Y, ascertained during the pendency of the Action, which was discovered as a result of a reasonable and diligent investigation made pursuant to Employee's prior notice(s). Employee also incorporates all allegations in Employee has made in the Action, which include all publicly available filings in the Action.

This notice, any attachments hereto and any other documents incorporated by reference, constitute written notice required by Labor Code § 2699.3, subdivisions (a)(1)(A) and (c)(1)(A) and may lead to immediate or further action against Employer in a court of law and/or administrative proceedings, as well as the imposition of substantial penalties and other remedies against Employer and extends without limitation to any past, present, future, or continuing violations of the California Labor Code, the California Industrial Wage Commission Wage Order No. 9 or other applicable Wage Order ("IWC Wage Order"), or any other applicable law or regulation which may be discovered as a result of a reasonable and diligent investigation made pursuant to this notice.

This notice constitutes notice to Employer on behalf of Employee and all persons who are, were, or will be non-exempt employees of Employer, or any related or alter-ego company, corporation, partnership, and/or business entity at any time during the relevant statutory periods the State of California.

**MOON & YANG, APC**
Amended Notice to LWDA; Employers in LWDA Case No. LWDA-CM-822384-21; & Anthony C. White, *et al.* Counsel for Defendants in USDC C.D.Cal. Case No. 2:22-cv-01619-MCS-JPR
August 29, 2022
Page 2 of 10

Correspondingly, Employee serves this notice to Employer and any and all related and/or alter ego companies, corporations, partnerships, and/or business entities, as well as against any and all officers, owners, directors, managers, managing agents, entities or other persons who are or may be liable under California law for any of the violations alleged herein including at any location where non-exempt employees worked for Employer in the State of California, who may be held liable for the violations of California law as alleged herein during the relevant statutory periods.[1]

    This notice constitutes notice to Employer of Employee's demand for preservation and non-spoliation of evidence pursuant to which Employee requests that Employer take all reasonable steps to promptly save and preserve all relevant documents and data including all electronic files and hard-copy documents that are related to Employee's employment and potential claims including those of similarly-situated and aggrieved employees, even without a court order. Spoliation of evidence may result in legal claims for damages and monetary and evidentiary sanctions, including "adverse inference" jury instructions. Furthermore, intentional spoliation of evidence may carry criminal consequences pursuant to California Penal Code § 135.

    Employee, individually, and on behalf of all others similarly situated current and former non-exempt employees of Employer in the State of California during the relevant statutory periods, alleges the following facts and theories in furtherance of Employee's January 22, 2022 notice to Employer.

**(1)**    **Failure to Pay Minimum and Regular Rate Wages**

    Pursuant to California Labor Code §§ 1182.12, 1197, 1198 and IWC Wage Order, § 4, California has fixed minimum wage rates, has required employers in California to pay their employees no less than the minimum for all hours worked in the payroll period, has provided that minimum wages for employees fixed by the IWC or by state law, is the minimum wage to be paid to employees, and that payment of a lower wage than the minimum so fixed is unlawful.

    Employee and/or other similarly situated and aggrieved employees are current and former non-exempt employees and are entitled to the protections of Labor Code §§ 1182.12, 1197, 1198 and IWC Wage Order, § 4. Employer failed to pay Employee and/or other similarly situated and aggrieved employees minimum wages for all hours worked by, among other things: requiring, suffering or permitting Employee and/or other similarly situated and aggrieved to work off-the-clock; requiring, suffering or permitting Employee and/or other similarly situated and aggrieved employees to work during their purportedly duty-free meal periods but not compensating them for this time; illegally and inaccurately recording time worked by Employee and/or other similarly situated and aggrieved employees; failing to properly maintain Employee and/or other similarly situated and aggrieved employees' records; failing to provide accurate itemized wage statements to Employee and/or other similarly situated and aggrieved employees for each pay period; and other methods to be discovered.

    Under California law, an employer must pay for all hours worked by an employee. "Hours worked" is the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so. In addition, Labor Code § 510 provides that employees in California shall not be employed more than eight (8) hours in any workday or forty (40) hours in a workweek unless they receive additional compensation beyond their regular wages in amounts specified by law. Labor Code §§ 1194 and 1198 also provide that employees in California shall not be employed more than eight hours in any workday unless they receive additional compensation beyond their regular wages in amounts specified by law. Additionally, Labor Code § 1198 states that the employment of an employee for longer hours than those fixed by the Industrial Welfare Commission is unlawful.

    Throughout the statutory period, Employer maintained a policy and practice of not paying Plaintiff and the aggrieved employees for all hours worked, including all overtime wages. Plaintiff and the

---

[1] *Atempa v. Pedrazzani* (2018) 27 Cal.App.5th 811 holds an individual owner of a business or other person may be held liable for PAGA penalties for violations of Labor Code § 558(a) (overtime wage payment violations) and section 1197.1(a) (minimum wage payment violations). (824; 828-829.) *Atempa* also holds that it was not reversible error for plaintiffs to recover attorney fees and costs and interest from an individual under PAGA. (829-831.)

**MOON & YANG, APC**
Amended Notice to LWDA; Employers in LWDA Case No. LWDA-CM-822384-21; & Anthony C. White, *et al.* Counsel for Defendants in USDC C.D.Cal. Case No. 2:22-cv-01619-MCS-JPR
August 29, 2022
Page 3 of 10

aggrieved employees were required to "work off the clock" and uncompensated. For example, Plaintiff and the aggrieved employees were required to arrive at work early in order to perform pre-trip inspections of the truck, including safety checks, off the clock and uncompensated. Further, Plaintiff and the aggrieved employees were required to use their own personal cellular telephones for work-related purposes while off the clock and uncompensated. In maintaining a practice of not paying all wages owed, Defendants failed to maintain accurate records of the hours Plaintiff and the aggrieved employees worked.

Additionally, Employer told Plaintiff and the aggrieved employees that Employer would provide Plaintiff and the aggrieved employees for every work period of more than five (5) hours an unpaid meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work, the meal period could be waived by mutual consent of the Employer and the Plaintiff and the aggrieved employees, and for a work period of more than ten (10) hours per day, an unpaid second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the Plaintiff and the aggrieved employees only if the first meal period was not waived. California provides that unless an employee is relieved of all duty during a 30-minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked.

Throughout the statutory period, Employer maintained a policy and practice of not paying Plaintiff and the aggrieved employees for all hours worked during their so-called 30-minute meal periods because Plaintiff and the aggrieved employees were not relieved of all duties during those unpaid periods, which resulted in the failure to pay all minimum wages due.

Employers' conduct violates §§ 1182.12, 1197, 1198 and IWC Wage Order, § 4 because Employer has knowingly and willfully refused to perform their obligations to compensate Employee and/or other similarly situated and aggrieved employees for all wages earned and all hours worked and because Employer has employed Employee and/or other similarly situated and aggrieved employees under conditions of labor prohibited by an IWC Wage Order.

As a result, Employers are liable to Plaintiff and aggrieved employees for the civil penalties provided for in Labor Code §§ 210, 558, 1197.1, and 2699(f)(2) for failing to pay for all hours worked, including overtime.

**(2)    Failure to Pay Overtime Wages**

Pursuant to California Labor Code §§ 510, 1198 and IWC Wage Order, § 3, California has required employers to pay their employees at one and one-half (1 ½) times the regular rate of pay for all hours worked in excess of eight (8) hours per day and/or forty (40) hours per week, and for the first eight (8) hours on the seventh consecutive workday, with double time for all hours worked in excess of twelve (12) hours in any workday and for all hours worked in excess of eight (8) hours on the seventh consecutive day of work in any workweek.

Employee and/or other similarly situated and aggrieved employees are current and former non-exempt employees and are entitled to the protections of Labor Code §§ 510, 1198 and IWC Wage Order, § 3. Employer failed to compensate Employee and/or other similarly situated and aggrieved employees for all overtime hours worked as required under the foregoing provisions of the Labor Code and IWC Wage Order by, among other things: failing to pay overtime at one and one-half (1 ½) times or double the regular rate of pay when required; requiring, suffering or permitting Employee and/or other similarly situated and aggrieved employees to work off-the-clock; requiring, suffering or permitting Employee and/or other similarly situated and aggrieved employees to work during their purportedly duty-free meal periods but not compensating them for this time; illegally and inaccurately recording time worked by Employee and/or other similarly situated and aggrieved employees; failing to properly maintain Employee and/or other similarly situated and aggrieved employees' employment records through falsifying hours worked; failing to provide accurate itemized statements to Employee and/or other similarly situated and aggrieved employees for each pay period; and other methods to be discovered.

Under California law, an employer must pay for all hours worked by an employee. "Hours worked" is the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so. In addition, Labor Code § 510 provides that employees in California shall not be employed more than eight (8) hours in any workday or forty (40) hours in a workweek unless they receive additional compensation beyond their

MOON & YANG, APC
Amended Notice to LWDA; Employers in LWDA Case No. LWDA-CM-822384-21; & Anthony C. White, *et al.* Counsel for Defendants in USDC C.D.Cal. Case No. 2:22-cv-01619-MCS-JPR
August 29, 2022
Page 4 of 10

regular wages in amounts specified by law. Labor Code §§ 1194 and 1198 also provide that employees in California shall not be employed more than eight hours in any workday unless they receive additional compensation beyond their regular wages in amounts specified by law. Additionally, Labor Code § 1198 states that the employment of an employee for longer hours than those fixed by the Industrial Welfare Commission is unlawful.

California exempts categories of employees from its overtime requirements as provided in IWC Wage Order 9-2001, § 3(L)(1) & (2), which states: "(L) The provisions of this section are not applicable to employees whose hours of service are regulated by: (1) The United States Department of Transportation Code of Federal Regulations, Title 49, Sections 395.1 to 395.13, Hours of Service of Drivers; or (2) Title 13 of the California Code of Regulations, subchapter 6.5, Section 1200 and the following sections, regulating hours of drivers." However, during the Action, Employers has admitted or failed to rebut Employee's contention that they are business entities, who at all relevant times, did not possess federal motor carrier authority issued under the Federal Motor Carrier Safety Act and who, despite being provided opportunities during the Action including during motion practice wherein in Plaintiff alleged Defendants failed to meet its burden to prove it possessed federal motor carrier authority has offered no proof to the contrary.

According to the Federal Motor Carrier Safety Administration's public website of the "[c]ompanies that operate commercial vehicles transporting passengers or hauling cargo in interstate commerce must be registered with the FMCSA and must have a USDOT Number. Also, commercial intrastate hazardous materials carriers who haul types and quantities requiring a safety permit must register for a USDOT Number." *What is a USDOT Number?,* FMCSA, U.S. DEP'T TRANSPORTATION, https://www.fmcsa.dot.gov/registration/do-i-need-usdot-number (last visited June 2, 2022). "The USDOT Number serves as a unique identifier when collecting and monitoring a company's safety information acquired during audits, compliance reviews, crash investigations, and inspections." *Ibid.* Additionally, California and other states, require "require their *intrastate* commercial motor vehicle registrants to obtain a USDOT Number." *Id.* (emphasis added). *See D'Arpa v. Runway Towing Corp.*, No. 12-CV-1120, 2013 WL 3010810, at *10-11 (E.D.N.Y. June 18, 2013) (denying a defendant's motion for summary judgment because a defendant represented it engaged in intrastate operations and "never obtained a Motor Carrier Number").

In *Boutell v. Walling*, the United States Supreme Court affirmed denials of employer-petitioners' FLSA exemption claim because "the record here shows that the men in question are employees of the Service Company, which is not a carrier, rather than of the Drive-Away Company, which is a carrier. This is true although the work these employees do is all supplied to the Drive-Away Company through the Service Company." (*Boutell v. Walling* (1946) 327 U.S. 463, 467–68.)

The Supreme Court *concluded as fact and law* that the employees' involvement in interstate commerce was established by noting: "[n]o claim is made that these employees are not engaged in interstate commerce within the meaning of s 7 of the Fair Labor Standards Act." *Boutell* 327 U.S. at 466, and went on to **analyze the relevant and *completely distinct question*** about the *employer's* obligations as follows:

> In this view of this case, it is not necessary to determine what kind of a carrier the Drive-Away Company is or even whether it is a carrier within the meaning of the Motor Carrier Act because the employees involved in this case are not its employees. Similarly, it is not necessary to determine which of the employees of the Service Company do work which affects the safety of the operation of motor vehicles because that classification applies to employees whose hours are regulated by the Interstate Commerce Commission, and not to those whose hours are regulated by the Fair Labor Standards Act.

*Id.* at 471-72. (See also *Wirtz v. Dependable Trucking Co.* (D.N.J. 1966) 260 F. Supp. 240, 242 (denying FLSA exemption, analyzing and following *Boutell* twenty-years post).

*Boutell* is crystal clear on the following point: whether Employee and/or Aggrieved Employees are involved in interstate commerce is completely irrelevant to whether the Employer qualifies for federal exemption where the employer is not a motor carrier.

In *Hodgson*, the Ninth Circuit found '[n]o meaningful difference" to distinguish Boutell and affirmed a denial of an employer's FLSA exemption claim where the employer similarly (and

**MOON & YANG, APC**
Amended Notice to LWDA; Employers in LWDA Case No. LWDA-CM-822384-21; & Anthony C.
White, *et al.* Counsel for Defendants in USDC C.D.Cal. Case No. 2:22-cv-01619-MCS-JPR
August 29, 2022
Page 5 of 10

unsuccessfully) relied on a separate entity's motor carrier authority. (*Hodgson v. Ellis Transp. Co.* (9th Cir.1972) 456 F.2d 937, 939.) Describing Mr. Wade Ellis and his two businesses, the Ninth Circuit wrote:

> Ellis Transportation leases and maintains rolling stock, its principal customer being Ellis Interstate Corporation, which holds an I.C.C. license for interstate trucking. Ellis Transportation is a California corporation and Wade Ellis is its sole shareholder. Prior to 1962 Ellis Transportation held an I.C.C. interstate trucking license. In 1962 Mr. Ellis formed Ellis Interstate as a wholly owned corporate subsidiary of Ellis Transportation, and transferred the I.C.C. license to the new corporate entity. The parties to this suit have stipulated that Ellis divided his business in this manner to simplify his compliance with the record keeping and reporting requirements of the Interstate Commerce Commission and the California Public Utilities Commission.

> The two companies share one physical facility in Indio, California. They share one telephone number, and the trucking industry customarily refers to the whole operation as Ellis Transportation. In a real economic sense, these two companies are integrated into one business.

> Appellants contend that the court, by looking to substance instead of corporate form, should hold that Mr. Ellis' entire trucking business falls within the Motor Carrier Act exemption.

> The argument is plausible, but we cannot accept it. The Supreme Court decisively rejected this approach to the § 13(b) exemption in Boutell v. Walling, 327 U.S. 463, 66 S.Ct. 631, 90 L.Ed. 786 (1946). In Boutell a partnership, the F. J. Boutell Service Company, leased vehicles exclusively to a transportation company, F. J. Boutell Drive-Away Company, a corporation wholly owned by the partners in the Service Company. The Court held that the two companies were legally independent, so the partnership's employees did not come within the Motor Carrier Act exclusion. Three Justices dissented on the ground that, despite the legal forms chosen, the two companies in reality constituted a single business.

> No meaningful difference distinguishes Ellis' situation from that presented in Boutell, as appellants' counsel virtually conceded at oral argument. We hold that the employees of Ellis Transportation Company are not employees of a common carrier by motor vehicle.

(*Id.* at 938-39; see also *D'Arpa v. Runway Towing Corp.*, No. 12-CV-1120, (E.D.N.Y. June 18, 2013) 2013 WL 3010810, at *10-11 [denying a defendant's summary judgment motion because it represented it engaged in intrastate operations and "never obtained a Motor Carrier Number"]).

Here, Employee has learned during litigation in the Action that Employers or at least one of them has represented it is a so-called "driver staffing" employer. Employers have also failed to show that they qualify for federal or California exemptions the payment of overtime in the Action.

Throughout the statutory period, Employer maintained a policy and practice of not paying Plaintiff and the aggrieved employees for all hours worked, including all overtime wages. Plaintiff and the aggrieved employees were required to "work off the clock" and uncompensated. For example, Plaintiff and the aggrieved employees were required to arrive at work early in order to perform pre-trip inspections of the truck, including safety checks, off the clock and uncompensated. Further, Plaintiff and the aggrieved employees were required to use their own personal cellular telephones for work-related purposes while off the clock and uncompensated. In maintaining a practice of not paying all wages owed, Defendants failed to maintain accurate records of the hours Plaintiff and the aggrieved employees worked.

Additionally, Employer told Plaintiff and the aggrieved employees that Employer would provide Plaintiff and the aggrieved employees for every work period of more than five (5) hours an unpaid meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work, the meal period could be waived by mutual consent of the Employer and the Plaintiff and the aggrieved employees, and for a work period of more than ten (10) hours per day, an unpaid second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the Plaintiff and the aggrieved employees only if the first meal period was not waived. California provides that unless an employee is

MOON & YANG, APC
Amended Notice to LWDA; Employers in LWDA Case No. LWDA-CM-822384-21; & Anthony C. White, *et al.* Counsel for Defendants in USDC C.D.Cal. Case No. 2:22-cv-01619-MCS-JPR
August 29, 2022
Page 6 of 10

relieved of all duty during a 30-minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked.

Throughout the statutory period, Employer maintained a policy and practice of not paying Plaintiff and the aggrieved employees for all hours worked during their so-called 30-minute meal periods because Plaintiff and the aggrieved employees were not relieved of all duties during those unpaid periods, which resulted in the failure to pay all overtime wages due.

Employer's conduct violates Labor Code §§ 510 and 1194 and IWC Wage Order, § 3 because Employer has refused to perform its obligations to compensate Employee and/or other similarly situated and aggrieved employees for all wages earned and all hours worked and because Employer has employed Employee and/or other similarly situated and aggrieved employees under conditions of labor prohibited by an IWC Wage Order.

As a result, Employers are liable to Plaintiff and aggrieved employees for the civil penalties provided for in Labor Code §§ 210, 558, 1197.1, and 2699(f)(2) for failing to pay for all hours worked, including overtime.

**(3)    Failure to Timely Pay all Wages due as a Temporary Services Employer**

California Labor Code § 201.3(a) provides: "(1) "Temporary services employer" means an employing unit that contracts with clients or customers to supply workers to perform services for the clients or customers and that performs all of the following functions: [¶] (A) Negotiates with clients and customers for matters such as the time and place where the services are to be provided, the type of work, the working conditions, and the quality and price of the services. [¶] (B) Determines assignments or reassignments of workers, even if workers retain the right to refuse specific assignments. [¶] (C) Retains the authority to assign or reassign a worker to another client or customer when the worker is determined unacceptable by a specific client or customer. [¶] (D) Assigns or reassigns workers to perform services for clients or customers. [¶] (E) Sets the rate of pay of workers, whether or not through negotiation. (F) Pays workers from its own account or accounts. [¶] (G) Retains the right to hire and terminate workers."

With certain exceptions, Labor Code § 201.3(b)(1)(A) provides: "Except as provided in paragraphs (2) to (5), inclusive, if an employee of a temporary services employer is assigned to work for a client, that employee's wages are due and payable no less frequently than weekly, regardless of when the assignment ends, and wages for work performed during any calendar week shall be due and payable not later than the regular payday of the following calendar week. A temporary services employer shall be deemed to have timely paid wages upon completion of an assignment if wages are paid in compliance with this subdivision."

Labor Code § 201.3(b)(1)(B) provides: "Except as provided in paragraphs (2) to (5), inclusive, if an employee of a temporary services employer is assigned to work for a client, that employee's wages are due and payable no less frequently than weekly, regardless of when the assignment ends, and wages for work performed during any calendar week shall be due and payable not later than the regular payday of the following calendar week. A temporary services employer shall be deemed to have timely paid wages upon completion of an assignment if wages are paid in compliance with this subdivision."

Labor Code § 201.3(b)(1)(B)(A)-(C) provides: "(2) If an employee of a temporary services employer is assigned to work for a client on a day-to-day basis, that employee's wages are due and payable at the end of each day, regardless of when the assignment ends, if each of the following occurs: [¶] (A) The employee reports to or assembles at the office of the temporary services employer or other location. [¶] (B) The employee is dispatched to a client's worksite each day and returns to or reports to the office of the temporary services employer or other location upon completion of the assignment. [¶] (C) The employee's work is not executive, administrative, or professional, as defined in the wage orders of the Industrial Welfare Commission, and is not clerical."

As an exception to a temporary services employer's obligation to pay wages daily, Labor Code § 201.3(b)(6) provides: "(6) If an employee of a temporary services employer is assigned to work for a client

**MOON & YANG, APC**
Amended Notice to LWDA; Employers in LWDA Case No. LWDA-CM-822384-21; & Anthony C. White, *et al.* Counsel for Defendants in USDC C.D.Cal. Case No. 2:22-cv-01619-MCS-JPR
August 29, 2022
Page 7 of 10

for over 90 consecutive calendar days, this section does not apply unless the temporary services employer pays the employee weekly in compliance with paragraph (1) of subdivision (b)."

Labor Code § 201.3(b)(4) & (5) provide: "(b) If an employee of a temporary services employer is assigned to work for a client and is discharged by the temporary services employer or leasing employer, wages are due and payable as provided in Section 201. [¶] (5) If an employee of a temporary services employer is assigned to work for a client and quits his or her employment with the temporary services employer, wages are due and payable as provided in Section 202."[2]

Employee and/or other aggrieved employees are current and former non-exempt employees and are entitled to the protections of Labor Code § 201.3. Employee has learned during litigation that Employers or at least one of them has represented it is a so-called "driver staffing" employer in the Action and believes Employer is an employing unit that contracts with clients or customers to supply Employee and/or other aggrieved employees as workers to perform services for Employer's clients or customers and that Employer performs all of the following functions: [¶] (A) Negotiates with clients and customers for matters such as the time and place where the services are to be provided, the type of work, the working conditions, and the quality and price of the services. [¶] (B) Determines assignments or reassignments of workers, even if workers retain the right to refuse specific assignments. [¶] (C) Retains the authority to assign or reassign a worker to another client or customer when the worker is determined unacceptable by a specific client or customer. [¶] (D) Assigns or reassigns workers to perform services for clients or customers. [¶] (E) Sets the rate of pay of workers, whether or not through negotiation. (F) Pays workers from its own account or accounts. [¶] (G) Retains the right to hire and terminate workers." As such, Employers or at least one of them is an "temporary services employer" within the meaning of Labor Code § 201.3(a).

Employee contends Employer required Employee and/or other aggrieved employees reported to reported to or assembled at the Employers' offices or other locations and that Employer dispatched to Employee and/or other aggrieved employees to a client's worksite each day and that Employee and/or other aggrieved employees returned to or reported to Employers' offices or other locations upon completion of the assignment, but Employer failed to pay Employee and/or other aggrieved employees up to ninety (90) days before Employer was or could be relieved of its obligation to pay wages daily. Alternatively, even if Employee and/or other aggrieved employees were assigned to work for Employers' clients for over ninety (90) days, the Labor Code § 201.3(b)(6) exception to daily wages provides: "(6) If an employee of a temporary services employer is assigned to work for a client for over 90 consecutive calendar days, this section does not apply unless the temporary services employer pays the employee weekly in compliance with paragraph (1) of subdivision (b)." Because Employer failed to pay Employee and/or other aggrieved employees "in compliance with paragraph (1) of subdivision (b)[,]" including by failing to pay all wages due, including minimum and overtime wages, the exception does not apply.

As stated above, and for the reasons set forth above, Employer failed to timely pay Employee and/or other aggrieved employees all wages, including unpaid minimum and overtime wages, due during their respective periods of employment and within the times all wages were due when they quit or when Employer discharged them.

Employers' conduct violates Labor Code § 201.3 because Employer has knowingly and willfully refused to perform its obligations to provide Employee and/or other aggrieved employees with timely and full payment of all wages earned and unpaid during their respective periods of employment and all wages earned and unpaid at the time of quitting or at discharge, which entitle the State of California, Employee and other aggrieved employees to PAGA civil penalties.

Employer's conduct violates §§ 2802(a), 1198, and IWC Wage Order, § 9 because Employer has knowingly and willfully refused to perform its obligations to indemnify Employee and/or other similarly situated and aggrieved for all monies they expended in necessary expenditures or losses incurred and

---

[2]  Labor Code § 201.3(c) and (d) provides: "(c) A temporary services employer who violates this section is subject to the civil penalties provided for in Section 203 and to any other penalties available at law. [¶] (d) This section shall not be interpreted to limit any rights or remedies otherwise available under state or federal law."

**MOON & YANG, APC**
Amended Notice to LWDA; Employers in LWDA Case No. LWDA-CM-822384-21; & Anthony C.
White, *et al.* Counsel for Defendants in USDC C.D.Cal. Case No. 2:22-cv-01619-MCS-JPR
August 29, 2022
Page 8 of 10

because Employer has employed Employee and/or other similarly situated and aggrieved employees under
conditions of labor prohibited by an IWC Wage Order.

**(4)      Failure to Timely Pay All Wages Due to Discharged and Quitting Employees**

Pursuant to California Labor Code §§ 201(a), 201.3(b)(4) & (5), 202, and 203, California has
required that employers (including temporary services employers) pay their employees all wages earned
and unpaid at the time of discharge, or if an employee quits, not later than 72 hours thereafter, unless the
employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is
entitled to his or her wages at the time of quitting, and that if an employer willfully fails to timely pay any
wages of an employee who is discharged or who quits, the wages of the employee shall continue as a
penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but
those penalty wages shall not continue for more than 30 days.

Employee and/or other similarly situated and aggrieved employees are current and former non-
exempt employees and are entitled to the protections of Labor Code §§ 201(a) 201.3(b)(4) & (5),  202,
and 203. Employer failed to timely pay Employee and/or other similarly situated and aggrieved employees
all wages due at the times they were discharged or at the times they quit under the foregoing provisions
of the Labor Code and IWC Wage Order by, among other things: failing to pay all earned wages to
Employee and/or other similarly situated and aggrieved employees in full; failing to pay all earned wages
to Employee and/or other similarly situated and aggrieved employees at the time Employer discharged
them or within 72 hours of the times they quit; and by failing to pay Employee and/or other similarly
situated and aggrieved employees wages as penalties from the due dates thereof at the same rate until paid;
and by other methods to be discovered.

Labor Code §§ 201 and 202 provide that if an employer discharges an employee, the wages earned
and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily
leaves his or her employment, his or her wages shall become due and payable not later than seventy-two
(72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her
intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

Within the applicable statute of limitations, the employment of Plaintiff and many other aggrieved
employees ended, i.e. was terminated by quitting or discharge, and the employment of others will be.
However, during the relevant time period, Employers failed, and continues to fail to pay Plaintiff and
terminated aggrieved employees, without abatement, all wages required to be paid by Labor Code sections
201 and 202 either at the time of discharge, or within seventy-two (72) hours of their leaving Employers'
employ. These unpaid wages include wages for unpaid work time (including minimum and straight time
wages), missed meal periods, and missed rest periods.

Employers' conduct violates §§ 201, 202 and 203 because Employer has knowingly and willfully
refused to perform its obligations to provide Employee and/or other similarly situated and aggrieved
employees with timely and full payment of all wages earned and unpaid at the time of discharge or
quitting.

Accordingly, Plaintiff and aggrieved employees are entitled to recover from Employers their
additionally accruing wages for each day they were not paid, at their regular hourly rate of pay, up to 30
days maximum pursuant to Labor Code § 203. Moreover, Employers are liable to Plaintiff and aggrieved
employees for the civil penalties provided for in Labor Code § 2699(f)(2) for failing to timely pay all
wages at termination.

**(5)      Failure to Furnish Accurate Itemized Wage Statements**

Pursuant to California Labor Code §§ 226(a), 226(e)(2)(B), 1198, and IWC Wage Order, § 7,
California has required that employers semimonthly or at the time of each payment of wages furnish each
of its employees an accurate itemized wage statement in writing showing: (1) gross wages earned, (2) total
hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units
earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions,
provided that all deductions made on written orders of the employee may be aggregated and shown as one
item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the
name of the employee and only the last four digits of his or her social security number or an employee
identification number other than a social security number, (8) the name and address of the legal entity that
is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section

**MOON & YANG, APC**
Amended Notice to LWDA; Employers in LWDA Case No. LWDA-CM-822384-21; & Anthony C. White, *et al.* Counsel for Defendants in USDC C.D.Cal. Case No. 2:22-cv-01619-MCS-JPR
August 29, 2022
Page 9 of 10

1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and, beginning July 1, 2013, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total hours worked for each temporary services assignment. The deductions made from payment of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement and the record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California. For purposes of this subdivision, "copy" includes a duplicate of the itemized statement provided to an employee or a computer-generated record that accurately shows all of the information required by this subdivision.

California law has stated that an employee is deemed to suffer injury for purposes of Labor Code § 226(a) if the employer fails to provide accurate and complete information as required by any one or more items of the foregoing nine (9) enumerated items and the employee cannot promptly and easily determine from the wage statement alone, *inter alia*, the amount of the gross wages or net wages paid to the employee during the pay period or any of the other information required to be provided on the itemized wage statement pursuant to enumerated items (2) to (4), inclusive, (6), and (9).

Employee and/or other similarly situated and aggrieved employees are current and former non-exempt employees and are entitled to the protections of Labor Code §§ 226(a), 226(e)(2)(B), 1198, and IWC Wage Order, § 7. Employer failed to provide Employee and/or other similarly situated and aggrieved employees accurate itemized wage statements as required under the foregoing provisions of the California Labor Code and IWC Wage Order by, among other things: failing to provide *accurate* writings showing each and every one of the nine (9) enumerated items required by Labor Code § 226(a) including as a result of the unrecorded and uncompensated off-the-clock minimum wage and overtime wage payments earned and due as alleged herein, failing to provide accurate writings enabling Employee and/or other similarly situated and aggrieved employees to promptly and easily determine from the wage statement alone their total hours worked, all deductions, the inclusive dates for which they were paid, and/or all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the Employee, by failing to, as a temporary services employer as defined in Section 201.3, to identify the Employer's client and the rate of pay and the total hours worked for each temporary services assignment, and by other methods to be discovered.

Employers' conduct violates §§ 226(a), 226(e)(2)(B), 1198, and IWC Wage Order, § 7 because Employer has knowingly and willfully refused to perform its obligations to provide Employee and/or other similarly situated and aggrieved with timely, accurate, and itemized wage statements and because Employer has employed Employee and/or other similarly situated and aggrieved employees under conditions of labor prohibited by an IWC Wage Order.

The statute further provides: "An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees." (Lab. Code § 226(e)(1).)

Employers intentionally and willfully failed to provide employees with complete and accurate wage statements. The deficiencies include, among other things, the failure to correctly identify hourly rates, the failure to correctly list gross wages earned, and the failure to list the true net wages earned, including unpaid minimum and overtime wages for so-called unpaid meal periods and correct wages earned for all hours worked.

As a result of Employers violating Labor Code § 226, Plaintiff and similarly aggrieved employees suffered injury and damage to their statutorily protected rights. Accordingly, Plaintiff and similarly aggrieved employees are entitled to recover from Employers the greater of their actual damages caused by Employers' failure to comply with Labor Code § 226(a), or an aggregate penalty not exceeding $4,000 dollars per employee. Moreover, Employers are liable to Plaintiff and aggrieved employees for the civil penalties provided for in Labor Code § 226.3 for failing to furnish accurate itemized wage statements.

\* \* \*

**MOON & YANG, APC**
Amended Notice to LWDA; Employers in LWDA Case No. LWDA-CM-822384-21; & Anthony C. White, *et al.* Counsel for Defendants in USDC C.D.Cal. Case No. 2:22-cv-01619-MCS-JPR
August 29, 2022
Page 10 of 10

     **This notice shall further represent Employee's reasonable attempt to settle her dispute with Employer prior to litigation. Pursuant to *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, this notice serves to apprise Employer of Employee's aforementioned grievances and the proposed remedies as detailed below, while affording Employer reasonable opportunity to meet Employee's demands.**

     Thank you for your prompt attention to this matter.

                         **MOON & YANG, APC**

                         ROY K. SUH

                         Attorneys for Plaintiff ALBERT JOHNSON, individually, and on behalf of all others similarly situated

**Roy Suh**

---

**From:**       DIR PAGA Unit <lwdadonotreply@dir.ca.gov>
**Sent:**        Monday, August 29, 2022 4:39 PM
**To:**          Roy Suh
**Subject:**     Thank you for your Amended PAGA Claim Notice Submission.


08/29/2022 04:39:01 PM

Thank you for your submission to the Labor and Workforce Development Agency.

Item submitted: Amended PAGA Claim Notice

If you have questions or concerns regarding this submission or your case, please send an email to pagainfo@dir.ca.gov.

DIR PAGA Unit on behalf of
Labor and Workforce Development Agency

Website: http://labor.ca.gov/Private_Attorneys_General_Act.htm

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT D

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS, REPRESENTATIVE AND COLLECTIVE ACTION COMPLAINT

TAXABLE YEAR

CALIFORNIA SCHEDULE

## 2020     **Wage and Tax Statement**     W-2

**Important: Attach this schedule to the back of your original or amended Form 540, 540 2EZ, or 540NR.**

**Caution:** If this schedule is filled out, **do not** send your federal Form(s) W-2 to the Franchise Tax Board. If your federal Form(s) W-2 are from multiple states, **attach** copies showing California tax withheld to this schedule. If this schedule is blank, attach your federal Form(s) W-2 to the lower front of your tax return. **DO NOT ATTACH PAYMENT TO THIS SCHEDULE.**

*Employee's social security number, name, and address must be the same as the information on federal Form(s) W-2 .

### W-2 Information

**a.** Employee's social security number*

XXXXXXXXX

**b.** Employer identification number (EIN)

XXXXXXXXX

**c.** Employer's name

RL CARRIERS SHARED SERVICES LLC

Employer's address

600 GILLIAM RD

City     State     ZIP code

WILMINGTON     OH     45177

**e.** Employee's first name*    Initial*    Last name*    Suffix*

ALBERT         JOHNSON     II

**f.** Employee's address*

City*     State*     ZIP code*

1. Wages, tips, other compensation
2. Federal income tax withheld
3. Social security wages
4. Social security tax withheld
6. Medicare tax withheld
7. Social security tips
8. Allocated tips (not included in box 1)
10. Dependent care benefits
11. Nonqualified plans

**12. Codes and amounts**

| | Code | Amount | | Code | Amount |
|---|---|---|---|---|---|
| 12a. | | | 12c. | | |
| 12b. | | | 12d. | | |

**13.** Check the appropriate box for: Statutory employee, Retirement plan, or Third-party sick pay

☐ Statutory employee    ☒ X Retirement plan    ☐ Third-party sick pay

**14.** SDI, VPDI, or CA SDI (from box 14 or 19)

Type    Amount

CASDI

**16.** State wages, tips, etc.

**15.** State and employer's state ID number

State    Employer's state ID number

CA    26961292

**17.** State income tax

CLIENT COPY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

# EXHIBIT E

20
21
22
23
24
25
26
27
28

MOON & YANG, APC
1055 SEVENTH STREET,
SUITE 1880
LOS ANGELES,
CALIFORNIA 90017

THIRD AMENDED CLASS, REPRESENTATIVE AND COLLECTIVE ACTION COMPLAINT



**SMS** Safety Measurement System

## GREENWOOD MOTOR LINES INC

### DBA: R L CARRIERS

U.S. DOT#: 63391
Address: 600 GILLAM ROAD
WILMINGTON, OH 45177
Number of Vehicles: 5,632
Number of Drivers: 5,799
Number of Inspections: 5,458

## Safety Rating & OOS Rates

(As of 01/27/2019 updated daily from SAFER )

**SATISFACTORY**
(Rating Date: 05/02/1990)

### Out of Service Rates

| Type | OOS % | National Avg % |
|------|-------|----------------|
| Vehicle | 13.3 | 20.7 |
| Driver | 0.7 | 5.5 |
| Hazmat | 3.9 | 4.5 |

## Licensing and Insurance

(As of 01/27/2019 updated hourly from L&I )

### Active For-Hire Authority

| Type | Yes/No | MC#/MX# |
|------|--------|---------|
| Property | Yes | MC-99074 |
| Passenger | No | |
| Household Goods | No | |
| Broker | No | |

## BASIC Status (Public Property Carrier View)  ?

Behavior Analysis & Safety Improvement Categories (BASICs)    Based on a 24-month record ending December 28, 2018





Not Public









Not Public



| Unsafe Driving | Crash Indicator | Hours-of-Service Compliance | Vehicle Maintenance | Controlled Substances and Alcohol | Hazardous Materials Compliance | Driver Fitness |

Select a BASIC icon above to get details, or view your Complete SMS Profile.

## Summary of Activities

The summary includes information on the 5 most recent investigations and 24 months of inspections and crash history.

Most Recent Investigation:
4/26/2018 (Non-Ratable Review)

## Carrier Registration

Subject to Hazmat Threshold

## Penalties History

(Six years as of 01/27/2019 updated daily from FMCSA )

No penalties found

Total Inspections: 5,458
Total Inspections without Violations used in SMS: 3,676
Total Inspections with Violations used in SMS: 1,782
Total Crashes* : 483

*Crashes listed represent a motor carrier's involvement in <u>reportable crashes</u>, regardless of the carrier's or driver's role in the crash. <u>Continue for details</u>.

## USE OF SMS DATA/INFORMATION

### FAST Act of 2015:

Readers should not draw conclusions about a carrier's overall safety condition simply based on the data displayed in this system. Unless a motor carrier has received an UNSATISFACTORY safety rating under part 385 of title 49, Code of Federal Regulations, or has otherwise been ordered to discontinue operations by the Federal Motor Carrier Safety Administration, it is authorized to operate on the Nation's roadways.

### Safety Measurement System:

The data in the Safety Measurement System (SMS) is performance data used by the Agency and Enforcement Community. A ⚠ symbol, based on that data, indicates that FMCSA may prioritize a motor carrier for further monitoring.

The ⚠ symbol is not intended to imply any federal safety rating of the carrier pursuant to 49 USC 31144. Readers should not draw conclusions about a carrier's overall safety condition simply based on the data displayed in this system. Unless a motor carrier in the SMS has received an UNSATISFACTORY safety rating pursuant to 49 CFR Part 385, or has otherwise been ordered to discontinue operations by the FMCSA, it is authorized to operate on the nation's roadways.

Motor carrier safety ratings are available at <u>http://safer.fmcsa.dot.gov</u> and motor carrier licensing and insurance status are available at <u>http://li-public.fmcsa.dot.gov/</u>.