CHERYL L. SCHRECK, SBN 130083
cschreck@fisherphillips.com
ANET DRAPALSKI, SBN 282086
adrapalski@fisherphillips.com
**FISHER & PHILLIPS LLP**
444 South Flower Street, Suite 1500
Los Angeles, California 90071
Telephone: (213) 330-4500
Facsimile: (213) 330-4501

Anthony C. White (SBN 0062146)
*Admitted Pro Hac Vice*
Tony.White@ThompsonHine.com
J. Timothy McDonald (SBN 489420)
*Admitted Pro Hac Vice*
Tim.McDonald@ThompsonHine.com
**THOMPSON HINE, LLP**
41 South High Street, Suite 1700
Columbus, Ohio 43215
Telephone: (614) 469-3200
Facsimile: (614) 469-3361

Attorneys For Defendants
R&L CARRIERS SHARED SERVICES, L.L.C. & R&L CARRIERS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT JOHNSON, individually, and on behalf of all others similarly situated;<br><br>Plaintiff,<br><br>vs.<br><br>R&L CARRIERS SHARED SERVICES, LLC, a limited liability company; R&L CARRIERS, INC., an Ohio corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.:  2:22-cv-01619-MCS-JPR<br><br>**DEFENDANTS R&L CARRIERS SHARED SERVICES, LLC'S AND R&L CARRIERS, INC.'S NOTICE OF MOTION AND MOTION TO DENY CLASS CERTIFICATION AND STRIKE REPRESENTATIVE ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*[Filed Concurrently with Request for Judicial Notice; Declarations of Anthony C. White and James Fishpaw; and Proposed Order]*<br><br>**DATE: March 13, 2023**<br>**TIME:  9:00 a.m.**<br>**COURTROOM: 7C** |

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on March 13, 2023, at 9:00 a.m. or as soon thereafter as the matter may be heard, in Courtroom 7C of the above-captioned Court, located at 350 W. 1st Street, Suite 4311, Los Angeles, California 90012, Defendants R&L Carriers Shared Services, L.L.C. and R&L Carriers, Inc. (collectively, "Defendants") will and hereby do move the Court for an order denying class certification to the putative class action of Plaintiff Albert Johnson, and striking Plaintiff's representative allegations under the California Private Attorneys General Act of 2004 ("PAGA").

Defendants' motion is made on the grounds that Plaintiff will be unable to establish commonality under Rule 23(a), or relatedly, that common issues predominate over individual issues for purposes of Rule 23(b)(3). There is no overarching R&L policy, uniformly applied, at issue in any claim. Determining any of these claims requires individualized consideration of specific facts relating to each and every occurrence for each and every employee.

Moreover, R&L has submitted 113 declarations from putative class members. These employee declarations confirm that each of these employees have *none* of the claims that Plaintiff seeks to assert on their behalf.

Defendants' motion is made on the additional ground that Plaintiff cannot establish a class action is the superior method of adjudication under Rule 23(a)(3). The proposed class improperly seeks to include members who previously released asserted wage and hour claims against Defendants. It includes those who have not been injured by the alleged practices. Overall, class certification fails the superiority requirement because each class member would have to litigate numerous and substantial separate issues to establish his or her right to recover individually. Defendants' motion is made on the further ground that Plaintiff cannot establish typicality under Rule 23(a) as the putative class includes employees who did not have the same position or job functions as Plaintiff and who were employees during a time period when Plaintiff was not.

Defendants' motion is made on the additional ground that Plaintiff cannot establish the

i

adequacy of representation prong of Rule 23(a)(4) as Plaintiff's counsel has shown time and time again throughout the litigation that he is unfit to protect the interests of the putative class fairly and adequately. Finally, Defendants' motion is made on ground that the Private Attorney General Act claim is unmanageable as "the allegations would require the fact-finder to make numerous individualized assessments.

Defendants' Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of James Fishpaw and exhibits thereto, the Declaration of Anthony C. White, attaching a Compendium of Putative Class Member Declarations, submitted herewith; the Request for Judicial Notice and exhibits thereto; the pleadings and records on file; and such other and further oral or documentary evidence and arguments as may be presented to the Court at or before the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place from February 6, 2023, through February 9, 2023. Despite a good faith effort, the parties were unable to resolve the substantive issues. (*See* Declaration of Anthony C. White, attached hereto as Exhibit "A").

Dated: February 13, 2023.

Respectfully submitted,

**FISHER & PHILLIPS LLP**

By: */s/ Cheryl L. Schreck*
    Cheryl Schreck
    Anet Drapalski

**THOMPSON HINE LLP**

By: */s/ Anthony C. White*
    Anthony C. White
    J. Timothy McDonald

*Attorneys for R&L Carriers Shared Services, LLC and R&L Carriers, Inc.*

# **TABLE OF CONTENTS**

I.      INTRODUCTION...................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ...........................2

    A.      The Parties …………………………………………………… 2

    B.      Procedural History …………………………………………….3

    C.      Plaintiff's Allegations …………………………………………… 4

    D.      R&L Shared Services' Written Policies and Adherence to Them …………6

III.    LEGAL ARGUMENT ........................................................................9

    A.      Plaintiff has the Burden of Establishing Rule 23 Class Certification..............9

    B.      Plaintiff Cannot Satisfy His Burden Under Fed. R. Civ. P. 23......................10

        1.      The Proposed Class Fails Under Fed. R. Civ. P. 23(a)(2) and 23(b)(3) As It Lacks Commonality and Individualized Issues Predominate…11

        2.      Plaintiff Cannot Establish Superiority under Rule 23(a)(3)………....14

        3.      Plaintiff's Proposed Class Fails Under Fed. R. Civ. P. 23(a)(3) Because Typicality Does Not Exist ………………………………………...18

        4.      Plaintiff Cannot Meet the "Adequacy of Representation" Requirement of Fed. R. Civ. P. 23(a) …………………………………………...19

        5.      Plaintiff's PAGA Claim Should Be Stricken for the Same Reasons the Class Cannot Be Certified …………………………………………..24

IV.     CONCLUSION...................................................................................25

FP 46013214.2

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Antemate v. Estenson Logistics, LLC*, No. CV 14-5255 DSF (RAOx), 2017 U.S. Dist.
  LEXIS 184502, at *10 (C.D. Cal. Nov. 7, 2017)..................................................13

4

*Archie v. Pop Warner Little Scholars, Inc.,* No. CV 16-66-3 PSG (PLAx), 2019 U.S. Dist.
LEXIS 160230, at *7 (C.D. Cal. Sept. 11, 2019) ……………………………………..12

5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................3

6

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007).....................................................3

*Bishop v. Petro-Chemical Transp., LLC*, 582 F. Supp. 2d 1290, 1308 (E.D. Cal. 2008)......18

7

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1127 (9th Cir. 2017) .................................14

8

*Bryant v. Serv. Corp. Int'l,* No. C-08-01190, 2011 U.S. Dist. LEXIS 29106, *39 (N.D. Cal.
  Mar. 9, 2011) ......................................................................................................16

9

*Burnell v. Swift Transp. Co. of Arizona, LLC,* EDCV-10-809-VAP-(SPx), 2016 U.S. Dist.
  LEXIS 181372, at *7 (C.D. Cal. May 4, 2016) .................................................13

10

*Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)...........................................9

11

*Class Plaintiffs v. City of Seattle,* 955 F. 2d 1268, 1287 (9th Cir. 1992) ................................17

12

*Collins v. ITT Educ. Servs., Inc.*, 12-cv-1395 DMS BGS, 2013 U.S. Dist. LEXIS 183410, at
  *29 (S.D. Cal. July 30, 2013)...........................................................................14

13

*Comcast Corp. v. Behrend,* 569 U.S. 27, 35 (2013) ........................................................9, 12

14

*Dueker v. Csrt Expedited,* No. 2:18-cv-08751-MCS-FFM, 2020 U.S. Dist. LEXIS 231233,
  at *26-27 (C.D. Cal. Dec. 7, 2020)...................................................................14

15

*Dugan v. Ashley Furniture Industries, Inc.,* No. SA CV 16-1125 PA (FFMx), 2016 U.S.
  Dist. LEXIS 189011, at *14 (C.D. Cal. Nov. 29, 2016) ..................................15

16

*Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 983 (9th Cir. 2011)......................................13

17

*Ellsworth v. Leclair Fitness II LLC*, No. 34-2021-00295114-CU-OE-GDs, 2022 Cal. Super.
  LEXIS 27625, at *1 (Cal. Super. Ct. Apr. 28, 2022)........................................19

18

*Garcia v. Sun Pac. Farming Coop.*, No. CV F 06-0871 LJO TAG, 2008 U.S. Dist. LEXIS
  111969, at *37-38 (E.D. Cal. May 14, 2008) ...................................................18

19

*Gartin v. S&M Nutec LLC,* CV-06-2747-SVW-(PLAx), 2007 U.S. Dist. LEXIS 38050, at
  *10-11 (C.D. Cal. Apr. 4, 2007)........................................................................18

20

*Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 161 (1982) .......................................9

21

*Halliburton Co. v. Erica P. John Fund, Inc.,* 573 U.S. 258, 275-76 (2014) .............................9

22

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998)...........................................19

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir. 1998)...........................................12

23

*Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992)..........................................18

24

*Hardwick v. Hoovestol, Inc.,* No. CV 20-7505-DMG (MAAx), 2022 U.S. Dist. LEXIS
  183557, at *22 (C.D. Cal. Sept. 12. 2022).......................................................13

25

*Hernandez v. Centro De Salud De La Comunidad De San Ysidro*, No. 37-2021-00017369-
  CU-OE-CTL, 2021 Cal. Super. LEXIS 86625, at *1 (Cal. Super. Ct. Nov. 5, 2021) .......19

26

27

28

*Imber-Gluck v. Google, Inc.,* No. 5:14-cv-01070-RMW, 2015 U.S. Dist. LEXIS 44839, at *6 (N.D. Cal. Apr. 3, 2015) ............................................................................. 17

*Jimenez v. Allstate, Inc., Co.,* 765 F.3d 1161, 1165 (9th Cir. 2014) ........................... 11

*Key v. Gillette Co.,* 782 F.2d 5, 7 (1st Cir. 1986) ...................................................... 19

*Kouchi v. Am. Airlines,* CV 18-7802 PSG (AGRx), 2021 U.S. Dist. LEXIS 245784, at *17-18 (C.D. Cal. Oct. 27, 2021) ............................................................................. 20

*Lanzarone v. Guardsmark,* No. CV06-1136 R (PLAx), 2006 U.S. Dist. LEXIS 95785, at *12-13 (C.D. Cal. 2006) ............................................................................. 13

*Lawson v. Grubhub, Inc.,* 13 F.4th 908, 913 (9th Cir. 2021) .................................... 11

*Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2012) ............................. 10

*Lierboe v. State Farm Mut. Aut. Ins. Co.,* 350 F.3d 1018, 1022 (9th Cir. 2003) ........... 13

*Mad Rhino, Inc. v. Best Buy Co., Inc.*, No. CV 03-5604 GPS (AJWx), 2008 U.S. Dist. LEXIS 8619, at *12 (C.D. Cal. Jan. 14, 2008) ......................................................... 15

*Madrigal v. Tommy Bahama Grp., Inc.*, No. CV 09-08924 SJO (CWx), 2011 U.S. Dist. LEXIS 157098, at *23-24 (C.D. Cal. June 27, 2011) ................................................ 16

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) ......................... 17

*Miranda v. R&L Carriers Shared Services,* Case No. 2:18-cv-10063-SVW-(JCx) (C.D. Cal) ................................................................................................................. 16

*Molski v. Gleich*, 318 F.3d 937, 947 (9th Cir. 2003) ............................................... 10

*Motty v. First Student, Inc.*, No. 2:15-CV-7463-ODW (E), 2016 U.S. Dist. LEXIS 114948, at *7 ....................................................................................................... 19, 20

*Nikmanesh v. Wal-Mart Stores, Inc.*, No. SACV 15-00202 AG (JCGx), 2017 U.S. Dist. LEXIS 236284, at *7 (C.D. Cal. March 22, 2017) ...................................................... 24

*Ogiamien v. Nordstrom, Inc*, 2:13-CV-05639-ODW-JCG, 2015 U.S. Dist. LEXIS 22128, at *9 (C.D. Cal. Feb. 24, 2015) ............................................................................. 12

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, LLC,* 31 F.4th 651, 664 (9th Cir. 2022) ............................................................................................................ 9

*Ortiz v. CVS Caremark Corp.,* No. C-12-05859-EDL, 2014 U.S. Dist. LEXIS 36833, * 13-14 (N.D. Cal. Mar. 19, 2014) ............................................................................. 24

*Paniagua v. Med. Mgmt. Int'l, Inc.,* No. CV 09-7399 GAF (CTx), 2012 U.S. Dist. LEXIS 201295, at *9 (C.D. Cal. Aug. 8, 2012) ......................................................... 11

*Pryor v. Aerotek Sci., LLC*, 278 F.R.D. 516, 537 (C.D. Cal. 2011) ........................... 16

*Purnell v. Sunrise Senior Living Mgmt.*, No. SA CV10-00897 JAK (MLGx), 2012 U.S. Dist. LEXIS 27430, at *20 (C.D. Cal. Feb. 27, 2012) ............................................... 16

*Rodriguez v. Gates*, NO. CV 99-13190 GAF (AJWx), 2002 U.S. Dist. LEXIS 10654, at *43 (C.D. Cal. May 30, 2002) ............................................................................. 15

*Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1137 n.6 (9th Cir. 2016) (citing *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) ................................... 17

*Ruiz v. Affinity Logistics Corp.,* 05CV2125-JLS-(CAB), 2009 U.S. Dist. LEXIS 130728, at *24 (S.D. Cal. Jan 28, 2009) ............................................................................. 14

*Salazar v. McDonald's Corp.*, No. 14-cv-02096-RS, 2017 U.S. Dist. LEXIS 9641, at *29-30 (N.D. Cal. Jan. 5, 2017) ........................................................................................24, 25

*Sepulveda v. Wal-Mart Stores, Inc.*, 237 F.R.D. 229, 245 (C.D. Cal. 2006).......................... 10

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) ........................................ 18

*Stern v. Cingular Wireless Corp.*, No. CV 05-8842 CAS (CTx), 2009 U.S. Dist. LEXIS 17944, at *14 (C.D. Cal. Feb. 23, 2009) ....................................................... 16

*Stockinger v. Toyota Motor Sales, U.S.A., Inc.*, 2:17-cv-00035-VAP-KSx, 2020 U.S. Dist. LEXIS 49943 (C.D. Cal. Mar. 3, 2020).............................................................12, 15

*Uschold v. Carriage Servs.*, No. 17-cv-04424-JSW, 2020 U.S. Dist. LEXIS 62140 (N.D. Cal. Mar. 6, 2020) ................................................................................................... 15

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996) .....................14, 15

*Varela v. Indus. Prof'l & Tech. Workers*, No. CV 08-1012 SVW (RZx), 2009 U.S. Dist. LEXIS 134813, at *7 (C.D. Cal. Oct. 28, 2009) .....................................................20

*Vinole v. Countrywide Home Loans, Inc.*, 246 F.R.D. 637, 639 (S.D. Cal. 2007)................. 11

*Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 348 (2011) ...................................................... 9

*Wang v. Chinese Daily Newspaper,* 737 F.3d 538, 544 (9th Cir. 2013) ................................. 10

*Wesson v. Staples The Office Superstore,* 68 Cal. App. 5th 746, 763 (Sept. 9, 2021) ...........24

*Wren v. RGIS Inventory Specialists,* 256 F.R.D. 180, 208-09 (N.D. Cal. 2009)................... 13

*Wrighten v. Metro. Hosps., Inc.,* 726 F.2d 1346, 1352 (9th Cir. 1984) .................................20

*Zinser v. Accufix Research Inst.,* 253 F.3d 1180, 1186 (9th Cir. 2001)............9, 10, 11, 15, 16

**Statutes**

Federal Rule of Civil Procedure 23(b)(3) ...........................................................1, 10, 14

Federal Rule of Civil Procedure 23(c)(1)(A)............................................................. 11

Federal Rule of Civil Procedure 23 ............................................................................. 1

Federal Rule of Civil Procedure 23(a) ........................................................................ 2

Federal Rule of Civil Procedure 23(a)(2)................................................................... 11

Federal Rule of Civil Procedure 23(b)(1) and (b)(2) ................................................ 10

Federal Rule of Civil Procedure 23(b)(1) or (2) ....................................................... 10

Federal Rule of Civil Procedure 23(b)(1)(A) ........................................................... 10

Federal Rule of Civil Procedure 23(b)(1)(B)............................................................ 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

If there was ever a class that cannot be certified, it is the one asserted by Plaintiff Albert Johnson's Fourth Amended Complaint ("FAC") against Defendants R&L Carrier Shared Services ("R&L Shared Services" or "R&L") and R&L Carriers, Inc. (collectively, "Defendants").   Plaintiff purports to bring California wage and hour claims against Defendants on behalf of every non-exempt[1] California worker of *any type* who was employed by R&L Shared Services from 2018 to 2022.  Yet, Plaintiff's alleged claims are individualized in nature and fail numerous requirements of Federal Rule of Civil Procedure ("Rule") 23.

Most fundamentally, Plaintiff will be unable to establish commonality under Rule 23(a), or relatedly, that common issues predominate over individual issues for purposes of Rule 23(b)(3).  Plaintiff asserts minimum wage and overtime claims, as well as claims based on his own, unique, claimed personal experiences.  They include allegations of failure to reimburse expenses, pay final wages at termination, and provide accurate wage statements, primarily asserting he was forced to work "off-the-clock," made to use his personal cell phone, and required to purchase personal protective equipment ("PPE") (gloves) at his own expense without reimbursement.  There is no overarching R&L policy, uniformly applied, at issue in any claim.  Determining any of these claims requires individualized consideration of specific facts relating to each and every occurrence for each and every employee.  Plaintiff cannot supplant the need for individualized proof, causing these individual issues to swamp any common ones and defeat predominance.

Moreover, R&L has submitted 113 declarations from putative class members.  (*See* Declaration of Anthony White ("White Decl."), Exhibit "A" hereto, attaching a Compendium of Employee Declarations).   These employee declarations confirm that each of these

---

[1] This brief uses the term "non-exempt" because Plaintiff uses that term in his class definition. Defendants believe Plaintiff is exempt under California law just as he is under federal law (*see* ECF No. 67, dismissing Plaintiff's Fair Labor Standards Act ("FLSA") claims; and *infra,* fn. 16, explaining that Plaintiff's California overtime claim must be dismissed under the Motor Carrier Exemption of § 3(L) of Wage Order 9 of the California IWC).  But Defendants use the "non-exempt" terminology to avoid confusion with the proposed class definition.

FP 46013214.2

employees have *none* of the claims that Plaintiff seeks to assert on their behalf. They also affirm that there is no evidence that Defendants at any time engaged in any of the acts alleged, or that Defendants adopted any corporate-wide policy that would have required their managers to force employees to work "off-the-clock," refuse to provide PPE (gloves), or refuse to provide access to company cell phones. To the contrary, the corporate policies expressly prohibit these practices, and those policies were followed. Plaintiff's claims cannot be adjudicated on a class-wide basis because the validity of each putative class member's claim cannot be ascertained through the policies themselves.

While this failure to satisfy the commonality and predominance requirements of Rule 23 would by itself preclude class certification, Plaintiff's proffered class also fails because it is not superior. The proposed class improperly seeks to include members who previously released asserted wage and hour claims against Defendants.[2] It includes those who have not been injured by the alleged practices. Overall, class certification fails the superiority requirement because each class member would have to litigate numerous and substantial separate issues to establish his or her right to recover individually. Additionally, the putative class includes employees who did not have the same position or job functions as Plaintiff and who were employees during a time period when Plaintiff was not—thus also failing to establish typicality under Rule 23(a).

Another insuperable hurdle to Plaintiff's claims—which itself alone also is sufficient reason to deny class certification—is proving the adequacy prong under Rule 23(a)(4). Plaintiff's counsel has shown time and time again throughout the litigation that he is unfit to protect the interests of the putative class fairly and adequately. For all of these reasons, any effort to certify the class fails and Defendants' motion should be granted.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Parties

**Defendants.**   Plaintiff asserts claims against his former employer, R&L Shared

---

[2] The inclusion of members who have released claims also causes predominance to fail because a release in a prior class action removes a large portion of the class. *See, infra,* fn. 24.

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DENY CLASS CERTIFICATION AND STRIKE REPRESENTATIVE ALLEGATIONS

FP 46013214.2

Services, which is a national provider of transportation services to the public, operating at numerous service centers ("terminals") nationwide.  (*See* Declaration of James Fishpaw ("Fishpaw Decl."), ¶ 3, attached hereto as Exhibit "B").  In California, R&L Shared Services employs drivers, mechanics, freight loaders, and administrative personnel, totaling over approximately 1800 employees,[3] and employs or employed all of the employees at issue in this case.  (*Id.* ¶¶ 3, 5).  R&L Shared Services specifically leases drivers—like Plaintiff—to Greenwood Motor Lines ("Greenwood"), a Department of Transportation-registered motor carrier regulated by the Federal Motor Carrier Safety Administration ("FMCSA").[4]  (*Id.* ¶ 6).  Plaintiff also asserts claims against R&L Carriers, Inc., an Ohio corporation operating solely as a holding company, which never employed Plaintiff or any of the other purported class members.  (*Id.* ¶ 5; ECF No. 1-3, ¶ 3, Page ID #164-65).

**Plaintiff.**  Plaintiff is a California resident who R&L Shared Services formerly employed as a full-time commercial motor vehicle driver, and paid an hourly wage.  (FAC, ¶¶ 27, 34; Fishpaw Decl., ¶ 6).  Plaintiff alleges he began employment on July 13, 2020, and "tendered his immediate resignation" "during a meeting" on May 6, 2021.  (FAC, ¶ 27(f)(2)).  For the entire time that R&L Shared Services employed Plaintiff, he was assigned to Greenwood only, and did not provide driver services (as an employee of R&L Shared Services) to any other entity.  (*Id.* ¶ 6).

**B.    Procedural History**

To date, Plaintiff has filed five iterations of a complaint.  This Court dismissed the original Complaint, with leave to amend, pursuant to *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (ECF No. 37).  Plaintiff's First Amended Complaint (ECF No. 38) pursued the same claims, along with a newly added PAGA claim.  As to it, the Court dismissed the PAGA claim with leave to amend, and dismissed Plaintiff's meal and rest period claims and any derivative claims, as they were preempted by the Hours

---

[3] From January 18, 2018 to March 9, 2022, R&L Shared Services employed 1,839 non-exempt, hourly employees in California.  (*See* ECF No. 1-3, ¶ 8, Page ID #:167).

[4] For discussion of the FMCSA, *see* ECF No. 61, Page ID #:1488-1494.

3

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DENY CLASS CERTIFICATION AND STRIKE REPRESENTATIVE ALLEGATIONS

FP 46013214.2

of Service ("HOS") Regulations issued under the FMCSA.  (ECF No. 52).[5]  The Court then issued Orders dismissing Plaintiff's FLSA claims with prejudice, and his Temporary Services Employer claim (with leave to amend) in his Second Amended Complaint ("SAC") (ECF No. 67), and striking Plaintiff's Third Amended Complaint ("TAC") as untimely.  (ECF No. 70).  Defendants filed a partial motion to dismiss and strike the FAC on January 6, 2023, which is still pending.  (ECF No. 76).

**C.    Plaintiff's Allegations**

Although Plaintiff's FAC alleges eight claims against R&L for alleged wage and hour violations, the Temporary Services Employer claim (Count Seven) already has been dismissed.  (*See* ECF No. 67).  The remaining claims include "failure to pay minimum wages"; "failure to pay overtime compensation"; "failure to indemnify necessary business expenses"; "failure to timely pay final wages at termination; "failure to provide accurate itemized wage statements"; "unfair business practices"; and civil penalties under PAGA. (ECF No. 72).

While Plaintiff alleges he was a former driver, he has sued on behalf of himself and a proposed California class *beyond* drivers, including "[a]ll persons who worked for any Defendant in California as an hourly, non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the Class is sent."  (*Id.* ¶ 44).  The initial Complaint was filed on January 18, 2022, and thus, Plaintiff seeks to represent a class for the period beginning in January 2018, but alleges he did not commence employment until July 2020.  (FAC, ¶ 27).

Plaintiff accuses Defendants of (1) not paying employees for all hours worked, including overtime wages, requiring "Plaintiff and the Class to arrive at work early … to perform pre-trip inspections of their trucks, including safety checks, off the clock and uncompensated" (FAC ¶¶ 6(a), 36, 47(b)); (2) not indemnifying employees for necessary

---

[5]  The Court concluded that "Plaintiff's operative pleading and concessions at oral argument"—specifically, that "Plaintiff carried property interstate as a commercial motor vehicle operator"—"make clear that [Plaintiff] … was subject to FMCSA regulations and that his claims are preempted."  (ECF No. 52, p. 4).

FP 46013214.2

business expenses incurred, as "Plaintiff and the Class were required to use their own personal cellular telephones for work-related purposes while off the clock and uncompensated" and had to "purchase … safety protective equipment" (FAC ¶¶ (6)(b), 36, 39, 47(b)(5)); (3) not paying employees all minimum and overtime wages, "and other remunerations due within the time period specified by California law when employment terminates" (FAC ¶¶ 6(c), 40, 47(b)(3)); (4) not maintaining accurate records of the hours that employees worked (FAC ¶¶ 6(d), 36); and (5) not providing employees with accurate, itemized wage statements containing all information required by the California Labor Code and Industrial Wage Commission ("IWC") Wage Orders (FAC ¶ 6(f), ¶ 41).[6]

Other than these conclusory allegations, Plaintiff thereafter primarily asserts allegations about his individual experience working as a driver.  (*See* FAC ¶ 27(c)(1), (2), (3)).  Plaintiff alleges that he worked under the supervision of four supervisors ("Frank," "Richard," "Wally," and "Chris") (FAC ¶¶ 27(c), 27(d), 27(f)), and, further, that (i) one or more of his supervisors provided directives, including "instruct[ing] Plaintiff and other truck drivers to arrive 30 minutes prior to the start time of their paid shifts to conduct pre-trip inspections and other tasks while off the clock and unpaid" and to clock-in after "conduct[ing] pre-trip inspections and other tasks" (FAC ¶ 27(c)(1), (2)); (ii) clocking in after Plaintiff's pre-trip truck inspections and other tasks resulted in Plaintiff not getting compensated for "approximately one and a half hours of work on average during a workweek, resulting in unpaid minimum or overtime wages" (FAC ¶ 27(c)(3), (4)); (iii) Defendants' supervisors called Plaintiff on his personal cellphone to provide work instructions, declined to allow Plaintiff to use a company-issued cellphone telling him they were "only for 'pick up and delivery' … drivers," and Defendants did not reimburse Plaintiff for the cell phone costs incurred (FAC ¶ 27(e)(1), (2), 3)); (iv) one of his supervisors "knew that Plaintiff spent personal funds to purchase gloves … several times" and that "on various occasions" the

---

[6] Plaintiff also continues to assert allegations related to meal and rest breaks, but those claims have been dismissed based on federal preemption, and are not addressed in this motion.  (*See* ECF Nos. 52, 70).

FP 46013214.2

supervisor "provided Plaintiff gloves … but on other occasions" "told Plaintiff that … Plaintiff would have to purchase gloves," causing Plaintiff to "spend[] approximately $100" for which he was not reimbursed (FAC ¶ 27(e)(4), (5), (6)); and (v) Defendants "failed to process Plaintiff's final wages within 72 hours" after his "tender of his written notice of immediate resignation." (FAC, ¶ 27(f)(2), (3), (4), (5)). Notably, Plaintiff alleges no facts related to employees holding positions other than drivers.

**D.   R&L Shared Services' Written Policies and Adherence to Them**

The 113 Declarations provided by R&L Shared Services employees tell a vastly different story. Multiple drivers for R&L Shared Services who would be members in Plaintiff's purported class have provided declarations directly refuting Plaintiff's claims, and make clear that Plaintiff's effort to craft a non-existent "common" experience fails. Those drivers collectively confirm, among other things, that:

(i)   "No one at Shared Services ever instructed [them] to conduct pre-trip inspections or other tasks while off the clock and unpaid" or "delay clocking-in to the electronic timekeeping system";

(ii)   "Instead … [they were] instructed at Shared Services that [they] were required to conduct … pre-trip inspections and any other work-related tasks while … on the clock and for which [they] would get paid," and did get paid;

(iii)   Drivers "have never heard of any driver at Shared Services receiving an instruction to arrive prior to the start time of his/her paid shift to conduct pre-trip inspections or other tasks while off the clock and unpaid";

(iv)   R&L makes it clear that any belief as to errors in pay or hours could be corrected by contacting Human Resources and that the Kronos timekeeping system allows drivers to "view … timekeeping records, ensure their accuracy, and raise any issues with the Human Resources Department";

(v)   R&L provided them in the past with company-issued cell phones, and they could use those cell phones or the R&L MDT[7] unit to communicate with the terminal;

---

[7] A Mobile Data Terminal ("MDT") unit is a portable computerized device used in a vehicle to exchange information between a driver and a communications center—here, R&L.

FP 46013214.2

(vi)    If a driver on occasion chose to use their own personal cell phone to communicate with the terminal instead of the company issued cell phone or the MDT unit, it was the driver's choice and done only for their own, personal convenience;

(vii)    R&L has not told them or any other driver to their knowledge that company-issued cell phones were only for pickup and delivery/city drivers (or refused company cell phone use on this basis) and;

(viii)    R&L provides free protective gloves if needed or requested and the drivers have never heard of drivers being required to purchase their own gloves with their own money to perform work duties, or being unable to get company-provided gloves on request; and

(ix)    R&L provides an accurate wage statement each pay day and drivers understand them.[8]

Other, non-driver, R&L employees also provided Declarations which likewise dismiss Plaintiff's "off-the-clock" allegations, confirm the accuracy of their timekeeping records and wage statements, and confirm the availability of gloves if needed to perform work duties.[9]

Moreover, as multiple Declarations establish, R&L has express policies and procedures that flatly contradict Plaintiff's claims. The non-derivative claims asserted in Plaintiff's FAC arise from three general categories of alleged conduct: (1) requiring employees to work "off-the-clock"; (2) declining Plaintiff's request for a company-issued cell phone and for use of protective gloves; and (3) denying reimbursement for expenses (personal cell phone use and gloves). (*See* FAC). As its California Employee Handbook makes clear, and as multiple employee Declarations attest, R&L expressly and unequivocally sets forth strict timekeeping requirements, explicitly forbids employees from working "off-the-clock," requires that employees *only* work when clocked into the R&L timekeeping system, demands that employees be compensated for all work performed (even if it is "unapproved" overtime),

---

[8] *See, e.g,* Compendium of Employee Declarations, attached as Exhibit "1" to White Decl. as Exhibit "A" hereto.

[9] *See, e.g.,* Declarations of Alejandra Aquilar (customer service/OS&D clerk); Jose Aguiniga (freight loader); Erasmo Alvarez (freight loader); Jorge Alvear (freight loader); Kimberly Arroyo (dispatch clerk); and Raymond Bernal (mechanic) (attached as Exhibit "1" to White Decl. (Exhibit "A" hereto)).

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DENY CLASS CERTIFICATION AND STRIKE REPRESENTATIVE ALLEGATIONS

FP 46013214.2

and provides for disciplinary action to address any violations of these policies. (*See* Fishpaw Decl., ¶¶ 10-16).[10]  Further, numerous putative class members attested that they have never worked off the clock at all, do not know anyone who has done so, and are not aware that anyone at R&L ever instructed employees to violate the Employee Handbook rules.[11]

In addition to contradicting R&L's detailed written policies, Plaintiff's "off-the-clock" allegations are directly belied by R&L's electronic timekeeping software system—"Kronos"—which every employee uses. (Fishpaw Decl. ¶ 15).  Drivers like Plaintiff are 100% responsible for all time entered into Kronos because they manage it themselves; employees are provided personal login credentials which they use to "clock-in" and "clock-out" on a daily basis. (*Id.* ¶ 15).  Wages paid are derived from and based on the information employees *themselves* enter into the Kronos system, and employees are expected to review their time record for each shift and certify that the record accurately and completely reflects all time worked. (*Id.* ¶ 15).  Employees have the responsibility to alert their supervisor immediately as to any issues; and, importantly, no supervisor or manager is permitted to alter an employee's time records unless the employee is notified of the proposed change, and then approves it. (*Id.* ¶¶ 14-15).  Thus, any claim by Plaintiff as to inaccurate wages simply is not plausible based on the system R&L has implemented to track an employee's work hours, over which each individual employee has control. (*Id.* ¶¶ 11-16).

Plaintiff's other allegations likewise have no credibility.  R&L's express policies prohibit personal cell phone use for business purposes (only permitting deviations in approved circumstances). (*Id.* ¶¶ 18-19).  Importantly, R&L has built-in MDT communication systems installed in each and every truck which would obviate the need for any driver to use a personal cell phone for business purposes. (*Id.* ¶ 20).  During Plaintiff's employment period, in the event a driver—like Plaintiff—requested a cell phone for business use, drivers were able to "check out" a cell phone at the beginning of each shift for daily use. (*Id.* ¶ 21).  There would

---

[10] *See, e.g.,* Declaration of Alejandra Aguilar, ¶ 3 (Exhibit "1" to White Decl.).

[11] *See, e.g.,* Declarations of Alejandra Aguilar (customer service/OS&D clerk), Jose Aguiniga (freight loader), Jorge Alcazar (driver), Enrique Alvarez (driver); Erasmo Alvarez (freight loader); Jorge Alvear (freight loader); and Kimberly Arroyo (dispatch clerk).

FP 46013214.2

thus be no viable basis for Plaintiff to claim that he needed to use his personal cell phone for business purposes; rather, the more likely situation is that Plaintiff preferred to use his own cell phone for personal reasons, unrelated to any necessity, and certainly without R&L's formal approval.  Moreover, R&L has no record of Plaintiff ever having requested use of a company-issued cell phone or of any reimbursement request for business-related cell phone use.  (*Id.* ¶¶ 19, 21).

Finally, as to any claim that protective gloves were not available for Plaintiff's use, it is false.  As set forth in the R&L Employee Handbook, and to which the employees submitting Declarations attest, R&L supplies all necessary PPE at no cost (with limited exceptions). (Fishpaw Decl., ¶ 17).  And R&L has no record (nor has Plaintiff provided any) that Plaintiff ever was denied necessary PPE, or either submitted or was denied a reimbursement request for necessary PPE.  (*Id.*).

## III.   LEGAL ARGUMENT

### A.   Plaintiff has the Burden of Establishing Rule 23 Class Certification.

Class treatment is "'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki,* 442 U.S. 682, 700-01 (1979)).  Plaintiff must "affirmatively demonstrate" that his proposed class "in fact" meets all requirements of Rule 23(a) and one of the requirements of Rule 23(b) after a "rigorous analysis."  *Id.* at 350-51 (quoting *Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 161 (1982)); *Comcast Corp. v. Behrend,* 569 U.S. 27, 35 (2013) (rigorous analysis also applies to Rule 23(b)); *Zinser v. Accufix Research Inst.,* 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (2001).  Plaintiffs "must actually prove—not simply plead—that their proposed class satisfies each requirement of Rule 23," and "must carry their burden of proof 'before class certification.'"  *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, LLC,* 31 F.4th 651, 664 (9th Cir. 2022) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.,* 573 U.S. 258, 275-76 (2014)).

Under Rule 23(a), Plaintiff must establish that: "(1) the class is so numerous that joinder

of all members is impracticable ["numerosity"]; (2) there are questions of law or fact common to the class ["commonality"]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["typicality"]; and (4) the representative parties will fairly and adequately protect the interests of the class ["adequacy"]." Fed. R. Civ. P. 23(a).

Even if the Rule 23(a) prerequisites are satisfied, Plaintiff also must show that the class satisfies one of the prongs of Rule 23(b). However, classes may not be certified under Rule 23(b)(1) or (2) if they seek anything more than incidental money relief. *Zinser*, 253 F.3d at 1193 (Rule 23(b)(1)(A) certification not appropriate in action for damages; Rule 23(b)(1)(B) certification appropriate only if the case involves a "fund" with a definitely ascertained limit; and Rule 23(b)(2) certification only appropriate where primary relief sought is declaratory or injunctive).[12]   Here, because Plaintiff primarily seeks money damages in the form of "off-the-clock," minimum, and overtime wages, and penalties and restitution for alleged failure to pay such compensation (*see* FAC, pp. 48—52),[13] certification under Rule 23(b)(1) and (b)(2) is not proper.  Accordingly, Plaintiff will be required to satisfy Rule 23(b)(3) to proceed, and must establish that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2012).

## B.   Plaintiff Cannot Satisfy His Burden Under Fed. R. Civ. P. 23.

Rule 23 requires the Court to determine whether to certify a class "at an early practicable time after a person sues or is sued as a class representative."  Fed. R. Civ. P.

---

[12] Plaintiff, as a former employee, also lacks standing to seek injunctive relief.  Certification is inappropriate under Rule 23(b)(2) for this reason as well.  *Wang v. Chinese Daily Newspaper*, 737 F.3d 538, 544 (9th Cir. 2013) (plaintiff, not a current employee, lacked standing to pursue injunctive relief on behalf of class).

[13] Damages for wages and related penalties are considered monetary in nature.  *See, e.g.*, *Sepulveda v. Wal-Mart Stores, Inc.*, 237 F.R.D. 229, 245 (C.D. Cal. 2006) (identifying "unpaid overtime wages and wages for missed breaks, as well as penalties" as "money damages"); *see also Molski v. Gleich*, 318 F.3d 937, 947 (9th Cir. 2003) ("to permit certification under this rule, the claim for monetary damages must be secondary to the primary claim for injunctive or declaratory relief.") (citations omitted).

10

23(c)(1)(A).  The Ninth Circuit has recognized that denial of class certification on the early motion of a defendant is appropriate when the complaint shows that the requirements for maintaining a class action cannot be met.  *Lawson v. Grubhub, Inc.,* 13 F.4th 908, 913 (9th Cir. 2021).  An early defense motion to deny class certification should be ruled upon "when awaiting further discovery will only cause needless delay and expense."  *Paniagua v. Med. Mgmt. Int'l, Inc.,* No. CV 09-7399 GAF (CTx), 2012 U.S. Dist. LEXIS 201295, at *9 (C.D. Cal. Aug. 8, 2012) (quoting *Vinole v. Countrywide Home Loans, Inc.,* 246 F.R.D. 637, 639 (S.D. Cal. 2007)).  The Court can and should enter an order denying class certification without delay.[14]

### 1.      The Proposed Class Fails Under Fed. R. Civ. P. 23(a)(2) and 23(b)(3) As It Lacks Commonality and Individualized Issues Predominate.

There is substantial overlap between the Rule 23(a)(2) commonality test and the 23(b)(3) predominance test.  *Zinser,* 253 F.3d at 1189.  Defendants, for the sake of brevity, address the questions of Rule 23(b)(3) predominance and that of commonality under Rule 23(a)(2), together.  Plaintiff cannot establish either.

To show commonality, Plaintiff must demonstrate "that the class members have suffered the same injury" and "their claims 'depend upon a common contention'" that is "capable of class-wide resolution"—which means that "determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke."  *Jimenez v. Allstate, Inc., Co.,* 765 F.3d 1161, 1165 (9th Cir. 2014) (quoting *Dukes,* 564 U.S. at 350).  Plaintiff must present "significant proof" that common questions will generate answers on a class-wide basis.  *Dukes,* 564 U.S. at 353.

"[T]he mere claim by employees of the same company that they have suffered [an] injury … gives no cause to believe that all their claims can productively be litigated at once."  *Dukes,* 564 U.S. at 350.  Although the amount of damages may vary among class members

---

[14] As this Court previously noted, "Defendants have raised strong arguments calling into question the propriety of class proceedings in this case.  Nothing in this Order prevents Defendants from filing a preemptive motion to deny class certification early in the discovery phase."  (ECF No. 52, Page ID #:1163).

FP 46013214.2

without destroying commonality, *the fact* of damages must be subject to class-wide proof and established for all class members.  *See, e.g., Ogiamien v. Nordstrom, Inc*, 2:13-CV-05639-ODW-JCG, 2015 U.S. Dist. LEXIS 22128, at *9 (C.D. Cal. Feb. 24, 2015).

The predominance analysis of Rule 23(b)(3) overlaps with Rule 23(a)(2)'s commonality requirement, but it is far more "demanding."  *Comcast,* 569 U.S. at 34.  To establish predominance, Plaintiff must establish that "common questions present a significant aspect of the case and … can be resolved for all members of the class in a single adjudication." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir. 1998).  The district court thus must determine whether there is "*significant* proof that [defendant] operated under a *general policy....*"  *Dukes,* 564 U.S. at 355 (emphasis supplied).  Unless "common evidence" can be used "to prove the elements of the underlying cause of action," "class treatment under Rule 23 is inappropriate. *Stockinger v. Toyota Motor Sales, U.S.A., Inc.,* 2:17-cv-00035-VAP-KSx, 2020 U.S. Dist. LEXIS 49943 (C.D. Cal. Mar. 3, 2020); *see Archie v. Pop Warner Little Scholars, Inc.,* No. CV 16-66-3 PSG (PLAx), 2019 U.S. Dist. LEXIS 160230, at *7 (C.D. Cal. Sept. 11, 2019) (citations omitted) (predominance "ultimately prevents the class from degenerating into a series of individual trials.").

Here, Plaintiff cannot possibly meet the commonality or predominance test.  Plaintiff's allegations generally assert three basic categories of claims ("off-the-clock" work, refusal to provide PPE (gloves) or cell phones, and refusal to reimburse employee expenditures related to gloves or personal cell phone use).  R&L has express written policies that unequivocally negate Plaintiff's claims.  Plaintiff will be unable to contest the existence of these written policies which are facially compliant with the law.  Thus, the only way to adjudicate Plaintiff's claims will be to examine alleged particular instances of non-compliance with the written policies, a stark contrast to the purpose of the class action mechanism.  That is, Plaintiff would have to establish that R&L operated in violation of such polices (i.e., a pattern and practice of requiring that employees work "off-the-clock" or refusing to provide an employee with protective gloves).  "If there is no evidence that the entire class was subject to the same alleged[] … practice, there is no question common to the class." *Ellis v. Costco Wholesale*

*Corp.,* 657 F.3d 970, 983 (9th Cir. 2011).

Since the only way to determine Plaintiff's alleged class claims is to engage in individualized determinations, seeking answers, as to each and every employee, the class claims fail the predominance test.[15]  *See Wren v. RGIS Inventory Specialists,* 256 F.R.D. 180, 208-09 (N.D. Cal. 2009) (Predominance cannot be established "in the absence of any explicit policy" "to which the [issue] can be attributed, and in light of the individualized inquiries necessary to evaluate the practices" of the employer); *Lanzarone v. Guardsmark,* No. CV06-1136 R (PLAx), 2006 U.S. Dist. LEXIS 95785, at *12-13 (C.D. Cal. 2006) (same).

For example, as to Plaintiff's minimum and overtime wage claims (Counts One and Two), and even related to drivers only (although the class is defined to include *all* employees *beyond* drivers), Plaintiff cannot demonstrate commonality or predominance because there is a "wide variation as to if, when, and for how long any particular driver performed any … allegedly uncompensated tasks (e.g., waiting, conducting pre- and post-trip vehicle inspections, filling out and submitting paperwork, refueling, and communicating with dispatchers)," necessitating individualized inquiries.  *See Burnell v. Swift Transp. Co. of Arizona, LLC,* EDCV-10-809-VAP-(SPx), 2016 U.S. Dist. LEXIS 181372, at *7 (C.D. Cal. May 4, 2016).[16]

---

[15] Questions would include, what are/were the actual job duties of each employee; was each employee forced to work "off-the-clock" and, if so, when, and by whom; did employees need PPE to perform their job duties, and if so, when, and, if needed, was it provided; what form of communication did each employee use (cell phone, MDT, etc.), did employees seek reimbursement for expenses and if so, when, and were they paid. *See, e.g., Hardwick v. Hoovestol, Inc.,* No. CV 20-7505-DMG (MAAx), 2022 U.S. Dist. LEXIS 183557, at *22 (C.D. Cal. Sept. 12. 2022) ("employer's duty to reimburse only triggered if the employer 'either know[s] or ha[s] reason to know that the employee has incurred an expense'") (citation omitted).

[16] Plaintiff's overtime claim in Count 2 is not viable, which the Court should also consider in addressing this motion. *See Lierboe v. State Farm Mut. Aut. Ins. Co.,* 350 F.3d 1018, 1022 (9th Cir. 2003) (a named plaintiff who did not have a viable claim could not serve as a class representative as to that claim).  The Motor Carrier Exemption under IWC Wage Order No. 9, subdivision 3(L) provides grounds for the Court to dismiss in its entirety Plaintiff's overtime claim asserted under California law. *See, e.g., Antemate v. Estenson Logistics, LLC,* No. CV 14-5255 DSF (RAOx), 2017 U.S. Dist. LEXIS 184502, at *10 (C.D. Cal. Nov. 7, 2017) ("California's overtime laws do not apply, however, to employees who are subject to DOT regulations governing the hours of service of drivers, 49 C.F.R. § 395.1 to § 395.13 (the 'motor carrier exemption').").  This Court already concluded that Plaintiff is subject to the HOS Regulations as a commercial motor vehicle operator carrying property interstate. (ECF No.

The same problem exists with Plaintiff's expense reimbursement claim (Count Three). That claim requires the Court individually to evaluate whether claimed expenditures even were incurred, the reasonableness and necessity of each employee's expense, whether any expenses were submitted for reimbursement, and the adequacy of compensation employees received related to that alleged expense, such that "common questions do not predominate over individual questions." *See Ruiz v. Affinity Logistics Corp.,* 05CV2125-JLS-(CAB), 2009 U.S. Dist. LEXIS 130728, at *24 (S.D. Cal. Jan 28, 2009).[17]  All of these questions are individual ones, so certification of such a class would contravene the purposes underlying Federal Rule 23—efficiency, economy, and justice.

## 2.    Plaintiff Cannot Establish Superiority under Rule 23(a)(3)[18]

Plaintiff also cannot prove—as he must—that a class action is the superior method for adjudication.  *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234-35 (9th Cir. 1996) (citations omitted).  Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1127 (9th Cir. 2017).  Rule 23(b)(3) provides

---

52, Page ID #:1160-61); ECF No. 67, Page ID #:1553-54).  These holdings unequivocally require dismissal of Plaintiff's California overtime claim under the Motor Carrier Exemption of § 3(L) of Wage Order 9 of the California IWC.

[17] As to Plaintiff's claims under Cal. Lab. Code § 203, "failure to timely pay final wages at termination" (Count Four) and § 226, "failure to provide accurate itemized wage statements" (Count Five), they should not even be considered in the certification question because they are derivative.  If the Court denies certification of Plaintiff's minimum wage, overtime wage, and expenses reimbursement claims, it should also deny certification for Plaintiff's § 203 and § 226 claims.  *See, e.g., Collins v. ITT Educ. Servs., Inc.,* 12-cv-1395 DMS BGS, 2013 U.S. Dist. LEXIS 183410, at *29 (S.D. Cal. July 30, 2013) (plaintiffs' class claims fail as to accurate wage statements as derivative of overtime, "off-the-clock," and meal period claims.).  Likewise, the Unfair Business Practices claim is derivative as well, and will fail for the same reasons.  *See Dueker v. Csrt Expedited,* No. 2:18-cv-08751-MCS-FFM, 2020 U.S. Dist. LEXIS 231233, at *26-27 (C.D. Cal. Dec. 7, 2020).  Further, Plaintiff lacks standing to pursue the § 226 claim, which requires that an employee suffered an "injury" as a result of an employer's "knowing and intentional failure to comply with subdivision (a)."  Plaintiff does not and cannot establish such injury and thus lacks standing to pursue this claim, and on this basis, cannot act as a class representative. *Hodgers-Durgin v. De La Vina,* 199 F.3d 1037, 1045 (9th Cir. 1999).

[18] Here, predominance is not satisfied, so the Court need not even reach the superiority analysis. *Brinkley v. Monterey Fin. Servs., LLC.,* No. 16-CV-01103(RSH-WVG), 2022 U.S. Dist. LEXIS 162574, at *18 (S.D. Cal. Sep. 8, 2022).

---

14

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DENY CLASS CERTIFICATION AND STRIKE REPRESENTATIVE ALLEGATIONS

FP 46013214.2

a non-exhaustive list of factors relevant to the superiority analysis that includes "any litigation concerning the controversy already commenced by or against members of the class" and "the difficulties likely encountered in the management of a class action." *Stockinger v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:17-cv-00035-VAP-KSx, 2020 U.S. Dist. LEXIS 49943, at *32-33 (C.D. Cal. Mar. 3, 2020) (citing *Zinser*, 253 F.3d at 1190-1193).

As explained above related to predominance, Plaintiff's claims would be too difficult to manage as a class action, because determining liability would require the Court to resolve a series of individualized factual disputes. *See Dugan v. Ashley Furniture Industries, Inc.,* No. SA CV 16-1125 PA (FFMx), 2016 U.S. Dist. LEXIS 189011, at *14 (C.D. Cal. Nov. 29, 2016) ("superiority of class action inquiry is closely tied to the predominance inquiry").[19] "[W]hen the complexities of class action treatment outweigh the benefits of considering common issues in one trial, class action treatment is not the "superior" method of adjudication and class certification must be denied.[20] *Zinser*, 253 F.3d at 1192 (citing *Valentino*, 97 F.3d at 1234-35); *In re N. Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 856 (9th Cir. 1982)). In particular, "[i]f each class member has to litigate numerous and substantial separate issues to establish is or her right to recover individually, a class action is not superior."

---

[19] Again, Plaintiff would have to establish how to present testimony as to any employees who worked "off-the-clock," the amount of time employees worked for which they allege they were not paid, each employee's cell phone usage, each employee's alleged incurred expenses, necessity of such expenses, reimbursement requests, and so on. *Comcast*, 569 U.S. at 34. *See also Uschold v. Carriage Servs.*, No. 17-cv-04424-JSW, 2020 U.S. Dist. LEXIS 62140 (N.D. Cal. Mar. 6, 2020) (individualized proof requirement as to whether class members were owed reimbursements for cell phone use precluded class certification). Because these issues would demand "mini-trials" on these individualized inquiries, the proposed class action is unmanageable and class adjudication is not superior.

[20] Courts also have found that when it is impossible to tell who is in the class without individualized inquiries, class treatment is not the superior method of adjudication. *See, e.g., Mad Rhino, Inc. v. Best Buy Co., Inc.*, No. CV 03-5604 GPS (AJWx), 2008 U.S. Dist. LEXIS 8619, at *12 (C.D. Cal. Jan. 14, 2008) (denying class certification when "individual issues of competition prevent the Court from determining who is or is not in the class without evaluating the merits); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 652 (C.D. Cal. 1996) ("[E]ven if seventy-five percent of the issues are common questions … if the other twenty-five percent that are individual in nature are significant enough, class action treatment might not be 'superior' after all."); *Rodriguez v. Gates*, NO. CV 99-13190 GAF (AJWx), 2002 U.S. Dist. LEXIS 10654, at *43 (C.D. Cal. May 30, 2002) (class treatment not superior when proposed class members would have to individually establish their own injuries).

FP 46013214.2

*Zinser*, 253 F.3d at 1192.[21]  That is exactly the situation here.

This action also fails superiority because of a "controversy already commenced by or against members of the class."  *See* Rule 23(b).  Specifically, Plaintiff's proposed California-wide class of *all* R&L Shared Services non-exempt employees, from January 18, 2018 to January 18, 2022, improperly includes individuals who already have released claims against Defendants in a wage and hour class action suit brought against R&L Shared Services that settled claims by Order dated January 21, 2020.  *See Miranda v. R&L Carriers Shared Services,* Case No. 2:18-cv-10063-SVW-(JCx) (C.D. Cal) ("*Miranda*").[22]  The *Miranda* class was defined to include "all individuals who were employed by [R&L] Shared Services as non-exempt employees referred to as drivers or combo workers within the state of California at any time during the period from August 14, 2014 through October 15, 2019."  (*Id.*).  The operative release in *Miranda* bars all wage and hour-type claims brought by *Miranda* class members or representatives, against R&L Shared Services and its "affiliated entities"—which

---

[21] *See Purnell v. Sunrise Senior Living Mgmt.*, No. SA CV10-00897 JAK (MLGx), 2012 U.S. Dist. LEXIS 27430, at *20 (C.D. Cal. Feb. 27, 2012) ("Because there is such variety in the rates of meal breaks missed between job type and location, and because there are numerous factors that cause this variation, adjudication would ultimately require numerous mini-trials. Thus, the class action method is not superior."); *Pryor v. Aerotek Sci., LLC*, 278 F.R.D. 516, 537 (C.D. Cal. 2011) (class treatment not superior when "[t]he overwhelming bulk of the issues in the case cannot be resolved on a classwide basis, and will instead require individual comparison of the time each employee reported and actually worked"); *Madrigal v. Tommy Bahama Grp., Inc.*, No. CV 09-08924 SJO (CWx), 2011 U.S. Dist. LEXIS 157098, at *23-24 (C.D. Cal. June 27, 2011) ("where liability and damages are 'dependent on the resolution of factual questions employee-by-employee, office-by-office,' class action is not superior to other methods of adjudication because a jury trial will 'devolve into an endless series of mini-trials.'") (quoting *Bryant v. Serv. Corp. Int'l*, No. C-08-01190, 2011 U.S. Dist. LEXIS 29106, *39 (N.D. Cal. Mar. 9, 2011)); *Mendoza v. Home Depot, U.S.A., Inc.*, No. CV-09-05843 SJO (JCx), 2010 U.S. Dist. LEXIS 13025, at *31 (C.D. Cal. Jan. 21, 2010) (finding class action not superior because liability issues necessitated individualized inquiries); *Stern v. Cingular Wireless Corp.*, No. CV 05-8842 CAS (CTx), 2009 U.S. Dist. LEXIS 17944, at *14 (C.D. Cal. Feb. 23, 2009) ("If the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate.") (citation omitted).

[22] *See Miranda* Order Granting Final Approval of Class Settlement Class Action, ¶ 2 (attached as Exhibit "1" to Request for Judicial Notice ("RJN")) and Joint Stipulation of Class Action Settlement (attached to RJN as Exhibit "2").  The *Miranda* Lawsuit alleged failure to provide overtime wages, meal and rest periods, and accurate wage statements, and to pay due wages at termination, violations of Business and Professions Code § 17200, *et. seq.*, and a PAGA claim.  This Court may take judicial notice of the pleadings and orders in the *Miranda* litigation.  *See Holder v. Holder,* 305 F.3d 854, 866 (9th Cir. 2002).

16

FP 46013214.2

1   includes R&L Carriers, Inc.  (*See* RJN, Exhibits "1" and "2").  Accordingly, based on the

2   filing date of the initial complaint here—January 18, 2022—members of Plaintiff's purported

3   class were parties to the *Miranda* matter by virtue of their membership in the *Miranda*

4   Settlement Class.  Plaintiff thus includes in his putative class here R&L Shared Services'

5   "drivers or combo workers" employed through and including October 15, 2019, *who already*

6   *have released* claims *in Miranda through and including that date.*  (*Id.*).[23]

7          Superiority thus cannot be established because the putative class includes members

8   who have released claims against Defendants.[24]  *See Imber-Gluck v. Google, Inc.,* No. 5:14-

9   cv-01070-RMW, 2015 U.S. Dist. LEXIS 44839, at *6 (N.D. Cal. Apr. 3, 2015) (denying class

10  certification on superiority based on FTC Settlement preceding class action alleging same

11  issues) (citing *Kamm v. California City Development Co.,* 509 F.2d 205 (9th Cir. 1975)

12  (same).  *See also Hovesepian v. Apple, Inc.*, No. 08-5788 JF (PVT), 2009 U.S. Dist. LEXIS

13  117562, at *18-19 (N.D. Cal. Dec. 17, 2009) (class certification denied when it included

14  members who had not experienced the problems identified in plaintiff's complaint).[25]

15

16

_____

17  [23] *See, e.g., Class Plaintiffs v. City of Seattle,* 955 F. 2d 1268, 1287 (9th Cir. 1992) ("a federal
18  court may release not only those claims alleged in the complaint, but also a claim based on the
    identical factual predicate as that underlying the claims in the settled class action even though
19  the claim was not presented....") (quotation marks omitted).

20  [24] Moreover, Plaintiff has known of the *Miranda* settlement for at least the last three versions
    of his complaint, and refused to change his class definition to exclude released members.
21  "[T]he existence of the [*Miranda*] settlement is an overarching inquiry that would require
    individualized inquiries into whether each person in Plaintiff's proposed class definition has
22  waived her claims or not." *Hardwick,* 2022 U.S. DIST. LEXIS 183558, at *21.  The *Miranda*
    settlement thus also defeats the predominance factor in light of Plaintiff's decision to continue
    to include those class members in his class definition.

23  [25] For this same reason, Plaintiff's proposed class also does not have standing under Article
    III.  *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) ("No class may
24  be certified that contains members lacking Article III standing.").  For standing to exist, it must
    be *possible* that class members have suffered injury.  *See Ruiz Torres v. Mercer Canyons Inc.*,
25  835 F.3d 1125, 1137 n.6 (9th Cir. 2016) (citing *Denney v. Deutsche Bank AG,* 443 F.3d 253,
    264 (2d Cir. 2006) ("To avoid a dismissal based on a lack of standing, the court must be able
26  to find that both the class and the representatives have suffered some injury requiring court
    intervention.  The class must therefore be defined in such a way that anyone within it would
27  have standing.")).  Here, there is no possibility that the putative class members who have
    previously settled with and released Defendants have suffered injury or can show harm, so
28  Article III standing is missing.

FP 46013214.2

3. **Plaintiff's Proposed Class Fails Under Fed. R. Civ. P. 23(a)(3) Because Typicality Does Not Exist.**

The test of typicality under Rule 23(a)(3), requiring that the "claims or defenses of the class representatives must be typical of the claims or defenses of the class," "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named Plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992). Thus, a "class representative must … 'possess the same interest and suffer the same injury' as the class members." *Gen. Tel. Co. of the Southwest,* 457 U.S. at 156. "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 399 (6th Cir. 1998).

Here, Plaintiff's circumstances demonstrate that his claims are atypical of those he purports to represent. The Declarations submitted by R&L Shared Services indicate—across the board—that Plaintiff's claims are not typical of the class, because they overwhelmingly indicate that no similar "violations" occurred. *See Garcia v. Sun Pac. Farming Coop.*, No. CV F 06-0871 LJO TAG, 2008 U.S. Dist. LEXIS 111969, at *37-38 (E.D. Cal. May 14, 2008) (finding a class representative was not typical when there was conflicting evidence as to the merits of whether or not violations occurred); *Bishop v. Petro-Chemical Transp., LLC*, 582 F. Supp. 2d 1290, 1308 (E.D. Cal. 2008) (same).

Though Plaintiff complains generally of "off-the-clock" work, the claim of each putative class member necessarily depends on "individual permutations" given that the policies in place are lawful, and it is the alleged deviations from these policies that form the crux of these actions. "Where the substantive claims depend on individual permutations … the claims of the named plaintiffs who have the same general complaint against the defendant as the class are not typical." *Gartin v. S&M Nutec LLC,* CV-06-2747-SVW-(PLAx), 2007 U.S. Dist. LEXIS 38050, at *10-11 (C.D. Cal. Apr. 4, 2007) (citation omitted).

Further, the situation is exacerbated because Plaintiff seeks to represent a putative class of *all* employees of R&L, including drivers, freight loaders, mechanics, and office and

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DENY CLASS CERTIFICATION AND STRIKE REPRESENTATIVE ALLEGATIONS

FP 46013214.2

administrative personnel, but Plaintiff solely was employed as a *driver*.  Obviously, the job duties and experiences of these putative class members vary significantly based on their positions and other factors.  Similarly, Plaintiff improperly seeks to represent a putative class of all employees beginning in 2018, yet he did not even become an employee of R&L until July 2020, so he cannot satisfy typicality for putative class members employed prior to that date.  *See, e.g., Hernandez v. Centro De Salud De La Comunidad De San Ysidro*, No. 37-2021-00017369-CU-OE-CTL, 2021 Cal. Super. LEXIS 86625, at *1 (Cal. Super. Ct. Nov. 5, 2021) (a named plaintiff cannot serve as a representative to bring claims prior to her employment period); *Ellsworth v. Leclair Fitness II LLC*, No. 34-2021-00295114-CU-OE-GDs, 2022 Cal. Super. LEXIS 27625, at *1 (Cal. Super. Ct. Apr. 28, 2022) ("there is a portion of the Class Period … where Plaintiff was no longer employed with Defendants and is not a suitable class representative for that class period.").  For all of these reasons, Plaintiff cannot establish the typicality necessary for class treatment of his claims.

### 4. Plaintiff Cannot Meet the "Adequacy of Representation" Requirement of Fed. R. Civ. P. 23(a).

Rule 23(a)(4)'s adequacy requirement demands that Plaintiff demonstrate that he and his counsel will "adequately protect the interests of those absent class members [he] purports to represent."  *Motty v. First Student, Inc.*, No. 2:15-CV-7463-ODW (E), 2016 U.S. Dist. LEXIS 114948, at *7 (citation omitted).  This element of Rule 23 is "one of the most important," *Key v. Gillette Co.*, 782 F.2d 5, 7 (1st Cir. 1986), because to "satisfy constitutional due process rights, absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998).  One of the questions to be addressed is whether the "named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Motty,* 2016 U.S. Dist. LEXIS 114948, at *7 (citing *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir. 1978).

Rule 23(g) provides specific guidelines related to adequacy of class counsel.  Fed. R. Civ. P. 23(g)(1)(A).  Further, Rule 23(g) provides that the Court "may consider any other

FP 46013214.2

matter pertinent to counsel's ability to fairly and adequately represent the interests of the class…." Fed. R. Civ. P. 23(g)(1)(B).  If counsel is not adequate, that is "a valid and relevant basis for denying a motion for class certification." *Varela v. Indus. Prof'l & Tech. Workers,* No. CV 08-1012 SVW (RZx), 2009 U.S. Dist. LEXIS 134813, at *7 (C.D. Cal. Oct. 28, 2009) (citing *Wrighten v. Metro. Hosps., Inc.,* 726 F.2d 1346, 1352 (9th Cir. 1984)).  As explained in *Varela,* "[c]ourts in this [Ninth] Circuit have essentially mapped the Rule 23(g) requirements for adequacy of counsel on the Rule 23(a)(4) requirements for adequacy of class representatives" and "***Plaintiffs are required to establish adequacy of counsel as a threshold requirement … to have the class certified***." *Varela,* 2009 U.S. Dist. LEXIS 134713, at *7 (emphasis supplied).

Here, Rule 23(a)(4) is not satisfied.  While "there are no fixed standards by which 'vigor[orous] [prosecution] can be assayed, considerations include competency of counsel." *Motty,* 2016 U.S. Dist. LEXIS 114948, at *8-9 (quoting *Hanlon,* 150 F.3d at 1021).  "Courts should … consider the quality of counsel's work up to that point in the litigation." *Motty,* 2016 U.S. Dist. LEXIS 114, at *9 (citing *Sweet v. Pfizer,* 232 F.R.D. 360, 371 (C.D. Cal. 2005)).

A case in point is *Kouchi v. Am. Airlines,* CV 18-7802 PSG (AGRx), 2021 U.S. Dist. LEXIS 245784, at *17-18 (C.D. Cal. Oct. 27, 2021), in which the court concluded that class counsel was inadequate based on "other matter[s] pertinent to counsel's ability to fairly and adequately represent the interests of the class."  *Id.* at *20.[26]  The *Kouchi* court highlighted certain behaviors—the same behaviors exhibited by Plaintiff's counsel in this case: (1) preparation of "declarations that effectively 'copied and pasted' numerous paragraphs…."; (2) taking inconsistent factual positions related to defendant's timekeeping system (stating that

---

[26]The *Kouchi* court stated that plaintiff's counsel had satisfied Rule 23(g)(1)(A)(i) by spending significant time and effort identifying class claims (filing four versions of the complaint, defending multiple motions to dismiss, and pursuing discovery), and that counsels' experience in handling wage and hour class actions and their ability to commit resources was "neutral" under Rule 23(g)(1)(A)(ii), (iii).  As to the latter issue, the court said one of the three counsel was well qualified, but the other two's credentials were "somewhat lacking" or not clear, and that the court was not aware of evidence related to the counsels' ability to commit resources. *Kouchi,* 2021 U.S. Dist. LEXIS 245784, at *19.

FP 46013214.2

defendant did not use a timekeeping system to record shifts, and then asserting that defendant required employees to clock in and out and using a timekeeping system); (3) "shoddy briefing"; and (4) flouting the Local Rules and the Court's standing order (stating that "[t]his litany of missteps . . . calls into question whether Plaintiff's Counsel possesses the requisite experience and competence to litigate on behalf of an absent class of hundreds of employees." *Id.* at \*23-25 (citing *Sweet,* 232 F.R.D. at 371)).   The court denied class certification, concluding that, "notwithstanding the substantial time and money spent on this case, Plaintiff's Counsel has reliably demonstrated that they are unfit to fairly and adequately protect the interests of the putative class." *Id.* at \*25.

Similarly, here, as demonstrated by the conduct to date in this litigation, Plaintiff's Counsel overwhelmingly has demonstrated his lack of experience and qualifications to represent the putative class and properly manage Plaintiff's claims.   Repeatedly, he has exhibited the inability to abide by deadlines and to adhere to the Court's Orders.   As early as April 2022, Plaintiff's Counsel elected to file a reply in support of Plaintiff's motion to remand exceeding the allowable page length, prompting this Court to strike it.   (ECF No. 37, Page ID #:732).   Then, despite the Court's Order stating in no uncertain terms that "[l]eave to add new defendants or claims must be sought by a separate, properly noticed motion" (ECF No. 37, Page ID #:741), Plaintiff's Counsel "added to the First Amended Complaint a new claim under PAGA in violation of the Court's order" (ECF No. 52, Page ID #:1163).   Thereafter, when the Court dismissed claims in the SAC without leave to amend, Plaintiff's Counsel included the same allegations, causes of action, and prayers for relief the Court had dismissed in his (untimely and stricken) TAC.   (*See* ECF Nos. 69, 70).   Next, upon ordering the filing of a FAC after striking Plaintiff's TAC, the Court directed that the new iteration "must delete all impertinent, stricken, or dismissed claims and allegations and must not add any new allegations, claims, or parties."   (ECF No. 70, Page ID #:1778-79).   As addressed in Defendants' partial motion to dismiss and strike the FAC, Plaintiff's Counsel ignored that admonition and included improper claims and new allegations in violation of the Court's order.   (ECF No. 76, Page ID #:2083-84).

FP 46013214.2

Plaintiff's Counsel also has shown disregard for deadlines:  (i) Plaintiff filed his opposition to Defendants' second motion to dismiss four days late and sought relief "on behalf of Plaintiff who was not responsible for Plaintiff's Counsel's mistake" (ECF No. 43, Page ID #:1090); (ii) despite the Court's Order requiring an amended complaint to be filed within fourteen days (ECF No. 52, Page ID #:1164), Plaintiff failed to seek an extension of time to file after the deadline (ECF No. 54, Page ID #:1171); and (iii) despite the Court's Order granting leave to file a TAC within fourteen days (ECF No. 67, Page ID #:1558), Plaintiff filed a TAC *a day after* that 14-day-deadline expired, prompting the Court to strike it as untimely (ECF No. 70, Page ID #:1777).

Moreover, Plaintiff's Counsel has engaged in repeated instances of "shoddy briefing," evidenced not only by the fact that presently before this Court is a motion to dismiss Plaintiff's *fifth iteration of the complaint*, but also by this Court's own remonstrations.  Long ago, the Court "acknowledge[d] that Plaintiff might have avoided [preemption as to its original Complaint] simply because his Complaint is *severely underpleaded*[.]" (ECF No. 37, Page ID #:738 (emphasis added)).  Plaintiff's Counsel also has engaged in the kind of copying-and-pasting that courts in the Central District have deemed insufficient, as a simple review of briefs and declarations filed by Plaintiff will illustrate.  (*See, e.g.,* ECF Nos. 25, 41, 62, 63, 79). Plaintiff's Counsel also has asserted the inconsistent factual positions criticized in *Kouchi* where, in an early iteration of the complaint, he argued that Defendants refused to allow Plaintiff to take any breaks (ECF No. 38), but later completely reversed course, asserting that Defendants required him to take breaks.  (ECF No. 79, Page ID #:2310-23111; ECF No. 81, Page ID #:2352-52).

Insurmountably, Plaintiff's Counsel *himself* has admitted his own inadequacy.  This Court ordered Plaintiff's Counsel to show cause why sanctions should not be imposed for his failure to abide by timelines and instructions as to the TAC.  (ECF No. 70, Page ID #:1779). In his 44-page response, Counsel admitted that he missed the deadline due to his "inability to timely decide whether and how to appropriately revise the TAC within the constraints of the Honorable Court's Orders" and that he "genuinely struggled with the appropriate manner to

amend the Plaintiff's [SAC]."  (ECF No. 71, Page ID #:1787).  Throughout that response, Plaintiff's Counsel conceded repeatedly that he lacked an understanding of this Court's clear Orders (ECF No. 71, Page ID #:1794-95), and did not even decide to prepare a TAC until December 12, 2022—the date on which it was due.  (ECF No. 71, Page ID #:1802-03) ("given various issues *that Plaintiff's Counsel had not thought of before*, Plaintiff's Counsel decided to *hurriedly attempt* to meet the midnight deadline to file the TAC") (emphasis supplied). Plaintiff's Counsel states that he "admittedly did not do an ideal job" in preparing his pleading and that, after mentioning his "decade-long career," acknowledges that his efforts "have been imperfect or amateurish…."  (ECF No. 71, Page ID #:1812, Page ID #1821).  This is merely a small sampling of Plaintiff's Counsel's admissions of incompetency with which his response to the Court's Order to Show Cause is replete.  In its Order Discharging Order to Show Cause, this Court recognized that Plaintiff's Counsel's failures to meet deadlines and follow instructions was "a crisis of counsel's own making."  (ECF No. 73, Page ID #:1986).

As stated in *Motty,* in which the court denied class certification solely on the basis of the adequacy requirement, "[j]ust because Plaintiff's counsel has a history pursuing class actions does not mean the work currently before the Court is of sufficient quality to ensure that the class members' rights and interests will be properly protected." *Motty,* 2016 U.S. Dist. LEXIS 114948, at *12.  The work currently before *this* Court evinces Counsel's inability to protect the class members' rights and interests as his continued representation would only serve to further vex this Court, stymie class members' desired progress, and continue to inject inefficiencies and delays into this year-old case that has *still* not left the pleading stage. Plaintiff's Counsel should be found an inadequate representative and class certification should be denied.  *See Diaz v. Target Corp.*, No. 10-cv-1103-AG-MLG, 2010 U.S. Dist. LEXIS 152361, at *25-26 (C.D. Cal. Dec. 13, 2010) (stating, "[c]ases are sometimes lost for reasons other than the merits, such as the late filing of crucial documents, sanctions, or failure to prosecute" and concluding class counsel inadequate where he missed deadlines, failed to follow court rules, and submitted inappropriate exhibits to filings).

///

5.      **Plaintiff's PAGA Claim Should Be Stricken for the Same Reasons the Class Cannot Be Certified.**

PAGA claims should be stricken when they are unmanageable. *Wesson v. Staples The Office Superstore*, 68 Cal. App. 5th 746, 763 (Sept. 9, 2021). A PAGA claim is unmanageable if "the allegations would require the fact-finder to make numerous individualized assessments." *Nikmanesh v. Wal-Mart Stores, Inc.*, No. SACV 15-00202 AG (JCGx), 2017 U.S. Dist. LEXIS 236284, at *7 (C.D. Cal. March 22, 2017).

As discussed above related to class certification, the alleged Labor Code violations in the FAC necessarily rely upon individualized assessments of each and every employee's experience, regarding time worked, payroll, directives from supervisors, and the like, that would be essential to prove these claims. These are the exact sort of individualized inquiries that are not the proper subject matter for PAGA claims, and as such, should be stricken. *See Ortiz v. CVS Caremark Corp.,* No. C-12-05859-EDL, 2014 U.S. Dist. LEXIS 36833, * 13-14 (N.D. Cal. Mar. 19, 2014) (striking PAGA claim as unmanageable after also denying certification "because a multitude of individualize assessments would be necessary").

For another basis to strike the PAGA claim, it is not adequately specific. Where a plaintiff brings suit on behalf of "hourly, non-exempt, non-managerial workers" at certain locations, the court should find that the Aggrieved Employees are not defined with sufficient particularity, and the PAGA claims should be stricken. *Salazar v. McDonald's Corp.*, No. 14-cv-02096-RS, 2017 U.S. Dist. LEXIS 9641, at *29-30 (N.D. Cal. Jan. 5, 2017).

Here, the Complaint simply tracks the language of the PAGA statute, and is far too conclusory to properly put R&L on notice of the claims asserted. Further, the FAC fails to identify the aggrieved employees with sufficient specificity, as it describes the "Aggrieved Employees" as "past and present non-exempt, hourly-paid employees of Defendants who worked in California during the applicable statute of limitations period," devoid of names, titles, or job duties. (ECF No. 72, ¶ 4). This "Aggrieved Employee" description is identical to the description given in *Salazar*, where the court struck the PAGA claim for lacking particularity. As in *Salazar*, Plaintiff here offered "no easy way to identify those who may

24

FP 46013214.2

1  actually be aggrieved." *Salazar*, 2017 U.S. Dist. LEXIS 9641, at *29.  The PAGA class here

2  would likely contain thousands of employees, rendering this proposed PAGA class

3  completely unmanageable.  As such, Plaintiff's PAGA claim should be stricken on this basis

4  as well.

5  **IV.    CONCLUSION**

6          Defendants' Motion seeking denial of class certification and to strike Plaintiff's

7  representative allegations under PAGA should be granted.

8          Dated: February 13, 2023.

9  Respectfully submitted,

10

11  **FISHER & PHILLIPS LLP**              **THOMPSON HINE LLP**

12  By: */s/ Cheryl Schreck*                By: */s/ Anthony C. White*

13  Cheryl Schreck                          Anthony C. White
    Anet Drapalski                          J. Timothy McDonald

14                                          *Attorneys for R&L Carriers Shared*
                                            *Services, LLC and R&L Carriers, Inc.*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DENY CLASS CERTIFICATION
AND STRIKE REPRESENTATIVE ALLEGATIONS
FP 46013214.2

**CERTIFICATE OF SERVICE**

I, the undersigned, am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; am employed with the law offices of Fisher & Phillips LLP and my business address is 444 South Flower Street, Suite 1500, Los Angeles, California 90071.

On February 13, 2023 I served the foregoing document entitled **DEFENDANTS R&L CARRIERS SHARED SERVICES, LLC'S AND R&L CARRIERS, INC.'S NOTICE OF MOTION AND MOTION TO DENY CLASS CERTIFICATION AND STRIKE REPRESENTATIVE ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** on all the appearing and/or interested parties in this action by placing ☐ *the original* ☒ *a true copy* thereof enclosed in sealed envelope(s) addressed as follows:

| | |
|---|---|
| Kane Moon | Attorney for Plaintiff |
| Roy K. Suh | ALBERT JOHNSON |
| Moon & Yang, APC | |
| 1055 W. Seventh Street, Suite 1880 | Tel: (213) 232-3128 |
| Los Angeles, CA 90017 | Email: kane.moon@moonyanglaw.com; |
| | roy.suh@moonyanglaw.com |
| | |
| Anthony C. White | Attorneys for Defendants |
| Application for Pro Hac Vice | R&L CARRIERS SHARED SERVICES, |
| J. Timothy McDonald | L.L.C. and R&L CARRIERS, INC. |
| THOMPSON HINE, LLP | |
| 41 South High Street, Suite 1700 | Telephone: (614) 469-3200 |
| Columbus, Ohio 43215 | Facsimile: (614) 469-3361 |
| | E-mail: Tony.White@ThompsonHine.com |

☒ **[by ELECTRONIC SUBMISSION]** - I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed February 13, 2023at Los Angeles, California.

Amy Stark        By: */s/ Amy Stark*
_____       _____
Print Name                    Signature

1

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DENY CLASS CERTIFICATION AND REPRESENTATIVE ALLEGATIONS

FP 46013214.2