UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT JOHNSON, individually, and on behalf of all others similarly situated;<br><br>Plaintiff,<br><br>vs.<br><br>R&L CARRIERS SHARED SERVICES, LLC, a limited liability company; R&L CARRIERS, INC., an Ohio corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 2:22-cv-01619-MCS-JPR<br><br>**ORDER RE: DEFENDANTS R&L CARRIERS SHARED SERVICES, LLC AND R&L CARRIERS, INC.'S MOTION TO DENY CLASS CERTIFICATION AND STRIKE REPRESENTATIVE ALLEGATIONS (ECF No. 82)** |

Defendants R&L Carriers Shared Services, LLC and R&L Carriers, Inc. move to deny class certification and strike Plaintiff Albert Johnson's representative claims. (Mot., ECF No. 82.) Plaintiff opposed the motion, (Opp'n, ECF No. 85), and Defendants replied, (Reply, ECF No. 86). The Court heard argument on March 13, 2023.

///

///

///

1

## I. BACKGROUND

Plaintiff filed a number of defective pleadings in this case. As a result, the Court's Order in response to Defendants' motion to dismiss the Fourth Amended Complaint stated,

> [t]he Third Amended Complaint has been stricken, as have any allegations raised for the first time in the Fourth Amended Complaint. Consequently, the only live issues in this case are those contained in the Fourth Amended Complaint that also were presented in the Second Amended Complaint and were not dismissed or stricken by a subsequent order of this Court.

(Order 5–6, ECF No. 84.) At the hearing on this motion, the parties confirmed that the following causes of action are the only ones remaining: 1) Defendants' alleged failure to pay minimum wages under California law; 2) Defendants' alleged failure to pay overtime wages under California law; 3) Defendants' alleged failure to indemnify necessary business expenses under California law; 4) Defendants' alleged failure to timely pay final wages at termination and provide accurate itemized wage statements under California law ("wage statement claims"); 5) Defendants' alleged unfair business practices under Cal. Bus. & Prof. Code § 17200 *et seq.*; and 6) Plaintiff's claim for civil penalties under California's Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2698 *et seq.*

## II. LEGAL STANDARDS

### A. Class Certification

Federal Rule of Civil Procedure 23 requires a party seeking class certification to "affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). This requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 351 (internal quotation marks

omitted). A plaintiff must demonstrate that the four requirements of Rule 23(a) are met: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a). These requirements effectively "limit the class claims to those fairly encompassed by the named plaintiff's claims." *Id*. at 349 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982)).

The party also must prove the class meets one of the three alternative provisions in Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Where, as here, the plaintiff seeks certification under Rule 23(b)(3), the plaintiff must show "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In evaluating predominance and superiority, courts consider four factors: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id*.

"A defendant may move to deny class certification before a plaintiff files a motion to certify a class." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 941 (9th Cir. 2009). "District courts have broad discretion to control the class certification process, and whether or not discovery will be permitted lies within the sound discretion of the trial court." *Id.* at 942 (cleaned up). When "[t]he propriety of a class action cannot be determined . . . without discovery . . . the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable." *Id.* (alteration in original) (internal quotation marks omitted). On the other hand, when a plaintiff fails "to make even a prima facie showing of Rule 23's prerequisites," a court may deny class certification without allowing discovery if it concludes discovery is not "likely to produce persuasive

3

information substantiating the class action allegations." *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977).

### B. Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The function of a motion to strike is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (internal quotation marks omitted). Motions to strike "are generally regarded with disfavor because of the limited importance of pleading in federal practice," and they "are generally not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation." *Gaines v. AT&T Mobility Servs., LLC*, 424 F. Supp. 3d 1004, 1014 (S.D. Cal. 2019) (internal quotation marks omitted).

Several district courts sitting in California have employed Rule 12(f) to strike representative PAGA claims on the basis of their unmanageability, *e.g.*, *Nikmanesh v. Wal-Mart Stores, Inc.*, No. SACV 15-00202 AG (JCGx), 2017 U.S. Dist. LEXIS 236284, at *7 (C.D. Cal. Mar. 22, 2017) (collecting cases); *Salazar v. McDonald's Corp.*, No. 14-cv-02096-RS, 2017 U.S. Dist. LEXIS 9641, at *24 (N.D. Cal. Jan. 5, 2017) (collecting cases), which aligns with California courts' recognition of the state judicial system's inherent authority "to preclude representative claims where a trial of those claims would be unmanageable," *Wesson v. Staples Off. Superstore, LLC*, 68 Cal. App. 5th 746, 764 (2021). However, the Ninth Circuit has disapproved of this practice, as "imposing an affirmative manageability requirement bears no resemblance to 'striking' part of a pleading" under Rule 12(f). *Hamilton v. Wal-Mart Stores, Inc.*, 39 F. 4th 575, 587 n.5 (9th Cir. 2022).

///

///

## III. ANALYSIS

### A. Class Certification

Defendants argue the Court should deny class certification because the proposed class lacks commonality and that individualized issues predominate in conflict with Rule 23(a)(2) and 23(b)(3), (Mot. 11–14), Plaintiff cannot establish that a class action is a superior method of resolving the issues as required by Rule 23(b)(3), (*id.* at 14–17), Plaintiff cannot establish that his claims are typical of the claims of the class as required by Rule 23(a)(3), (*id.* at 18–19), and that putative class counsel is inadequate under Rule 23(a)(4), (*id.* at 19–23).

#### 1. *Plaintiff Cannot Establish Commonality or Predominance*

"Because the Rule 23(b)(3) predominance inquiry subsumes the Rule 23(a)(2) commonality inquiry, and for the sake of efficiency, a court may analyze commonality and predominance together in the context of each proposed class and subclass." *Wilson v. Pactiv LLC*, No. 5:20-cv-01691-SB-KK, 2021 WL 5818492, at *6 (C.D. Cal. Dec. 3, 2021) (cleaned up). Rule 23(a)(2) requires a plaintiff to demonstrate the presence of "questions of law or fact common to the class." This "requires the plaintiff to demonstrate that the class members have suffered the same injury." *Dukes*, 564 U.S. at 350 (internal quotation marks omitted). Claims arising from this injury "must depend upon a common contention," which "must be of such a nature that it is capable of classwide resolution." *Id.* Stated differently, the "determination of [the common question's] truth or falsity [must] resolve an issue that is central to the validity of each of the claims in one stroke." *Id.* As a result, certification under Rule 23(a)(2) does not turn upon "the raising of common 'questions'—even in droves—but rather, the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (internal quotation marks omitted).

To qualify for certification under Rule 23(b)(3), a plaintiff must show that common questions "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance requirement of Rule 23(b)(3)

overlaps with Rule 23(a)(2)'s commonality requirement but "is even more demanding." *Comcast*, 569 U.S.at 34. "Implicit in" this requirement "is the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (internal quotation marks omitted).

        a.    <u>Minimum Wage, Overtime, and Wage Statement Claims</u>

With respect to Plaintiff's minimum wage, overtime, and wage statement claims,[1] Defendants' employees' wages were calculated on "the information employees *themselves* enter into the Kronos [timekeeping] system." (Mot. 8 (citing Fishpaw Decl. ¶ 15, ECF No. 82-13).) Plaintiff alleges that the Kronos information is not accurate because he "and the Class were required to 'work off the clock' and uncompensated. For example, Plaintiff and the Class were required to arrive at work early in order to perform pre-trip inspections of their trucks, including safety checks, off the clock and uncompensated." (4AC ¶ 36, ECF No. 72.) Because class members were forced to work hours for which they were never paid and that are not reflected in the Kronos system, Plaintiff alleges Defendants failed to pay their employees the required minimum wage and overtime. (*See id.* ¶¶ 36–38, 61–65.)

Plaintiff has not offered any reasonable means to adjudicate these claims on a classwide basis. Because there is no common timekeeping system for "off the clock" labor, liability can only be assessed by a highly individualized determination as to the hours actually worked by each employee. Essentially, the Court would need to evaluate individualized proof that the Kronos records did not accurately reflect the number of hours the employee actually worked. As a result, Plaintiff's contentions are not "of

---

[1] At the hearing, Plaintiff's counsel acknowledged that the wage statement claims are derivative of the minimum wage and overtime claims. Plaintiff's unfair business practices claim is also derivative of his minimum wage, overtime, and wage statement claims. (*See* 4AC ¶¶ 94–98.) As a result, the unfair business practices claim is subject to the same class certification analysis. *See Dueker v. CSRT Expedited Inc.*, No. 2:18-cv-08751-MCS-FFM, 2020 WL 7222095, at *8 (C.D. Cal. Dec. 7, 2020).

such a nature that [they are] capable of classwide resolution," *Dukes*, 564 U.S. at 350, nor would the adjudication of these individual "issues help achieve judicial economy," *Zinser*, 253 F.3d at 1189 (internal quotation marks omitted).

Plaintiff claims that common resolution could be possible because "[e]lectronic driver logs and hazmat record evidence" might be used "as common proof of unpaid work." (Opp'n 1.) At the hearing, Plaintiff's counsel suggested that where an employee's Kronos record and electronic driver log started virtually simultaneously, it would be possible to conclude that any pre-trip inspection or safety check must have been completed before the employee clocked in. Defendants' counsel explained, however, that many drivers conduct inspections away from the loading dock to avoid injury from heavy equipment or other vehicles that may be operating nearby. These drivers clock in upon arrival and then immediately drive their truck to a nearby location, away from the loading dock to conduct their pre-trip inspections. As a result, even if the driver logs were available, the Court would still have to evaluate individualized evidence to determine whether each driver actually worked off the clock.

Plaintiff also contends that driver logs and hazmat records "may tend to prove Plaintiff and class member drivers were not completely relieved of their duties if they were required to keep watch over their vehicles at various times, which may have resulted in unpaid minimum or overtime wages and derivative claims." (Opp'n 11.) As defense counsel pointed out at the hearing, these records would not indicate what the driver was doing during this period. For example, a driver might be clocked out in Kronos while he or she was eating lunch either in the cab of his or her truck or someplace nearby. As a result, even if driver logs or hazmat records did not accord with the information in Defendants' Kronos system, additional factual questions would need to be resolved before liability could be determined. In essence, without individualized evidence from each driver, the Court would have no way of determining whether the drivers were "completely relieved of their duties." (Opp'n 11.)

Finally, Plaintiff makes no attempt to explain how these records could possibly

7

provide "common proof of unpaid work" for Defendants' non-driver employees. (Opp'n 1.) Plaintiff's proposed class includes *all* R&L Shared Services non-exempt employees from January 18, 2018 to January 18, 2022, not just drivers. (4AC ¶ 44.) How driver logs or hazmat records could be relevant evidence of "off the clock" work by freight loaders, mechanics, or other administrative personnel employed by Defendants is a mystery.

### b. Business Expense Claims

California Labor Code section 2802 states that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." Cal. Lab. Code § 2802(a). "In calculating the reimbursement amount due under section 2802, the employer may consider not only the actual expenses that the employee incurred, but also whether each of those expenses was 'necessary,' which in turn depends on the reasonableness of the employee's choices." *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 568 (2007).

Plaintiff's allegations regarding Defendants' alleged failure to reimburse employees for personal cell phone usage exemplifies Plaintiff's fundamental problem establishing commonality. Plaintiff claims Defendants' policy of prohibiting employees from using their personal cell phones for business purposes "supports a conclusion of a common Shared Services policy regarding cellphones . . . , i.e., that Shared Services provided all drivers cell phones when requested and that the only exceptions to Shared Services' personal cellphone use policy are granted in a 'case-by-case basis' review." (Opp'n 10.) Plaintiff contends "if Shared Services called employees on their personnel cell phones for work related purposes," then "[a] reasonable sampling of such evidence" could lead to classwide resolution of these claims. (Opp'n 12.) How the purpose of the phone call could be divined is left unexplained. Even if it *were* possible to make reasonable inferences about the purpose of any phone call between Defendants and their employees, such a determination would

8

only be possible by examining highly individualized factors (e.g., individual testimony or the time the phone call was made and the duration and frequencies of the calls.)

The issue here is not whether Defendants' "reimbursement policy complies with Cal. Labor Code § 2802," but rather whether failure to reimburse employees for their *individual* requests violated the law. *Lindell v. Synthes USA*, No. 11-cv-02053-LJO-BAM, 2014 WL 841738, at *7 (E.D. Cal. Mar. 4, 2014), *R. & R. adopted*, 2014 WL 1794467 (E.D. Cal. May 6, 2014). As a result, whether these "expenses" were "reasonably and necessarily incurred" would "require case-by-case analysis where common questions do not predominate over individual questions." *Ruiz v. Affinity Logistics Corp.*, No. 05CV2125 JLS (CAB), 2009 WL 648973, at *8 (S.D. Cal. Jan. 28, 2009) (internal quotation marks omitted).

\*\*\*

Plaintiff has put forward no claims that are "capable of classwide resolution." *Dukes*, 564 U.S. at 350. Allowing discovery to proceed would not resolve the situation because even if Plaintiff obtained the evidence he claims he needs, Defendants' liability would still turn on individualized questions of "if, when, and for how long any particular" employee worked off the clock, *Burnell v. Swift Transp. Co. of Ariz., LLC*, EDCV 10-809-VAP (SPx), 2016 U.S. Dist. LEXIS 181372, at *7 (C.D. Cal. May 4, 2016), and whether employees' "expenses" were "reasonably and necessarily incurred," *Ruiz*, 2009 WL 648973, at *8 (internal quotation marks omitted). As a result, individual questions necessarily predominate over common questions and class certification is not proper under Rule 23(a)(2) or Rule 23(b)(3).

    2. *Plaintiff Cannot Satisfy the Superiority Requirement*

"Rule 23(b)(3) also requires that class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(b)(3)). Courts should consider "the class members' interests in individually controlling the prosecution or defense of separate actions," "the extent and nature of any litigation

9

concerning the controversy already begun by or against class members," "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," and "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)–(D).

"If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" *Zinser*, 253 F.3d at 1192. As discussed above, virtually every single class member would have to litigate separate factual issues in order to establish Defendants' liability. Thus, Plaintiff has not established that a class action is a superior means of adjudicating these claims.

### 3. *Plaintiff Cannot Satisfy the Typicality Requirement*

Plaintiff must satisfy Rule 23(a)(3) by showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (internal quotation marks omitted). Courts must determine "whether other members [of the class] have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (internal quotation marks omitted).

Plaintiff's claims are atypical for many of the reasons outlined above. Plaintiff's allegations that employees were forced to work "off the clock" requires individualized inquiries to determine liability. A plaintiff's claims are not typical where "adjudication of each putative class member's claim would reduce the trial on the merits to a series of individualized mini-trials." *Bund v. Safeguard Props., LLC*, No. C15-1773 MJP, 2016 WL 11530734, at *4 (W.D. Wash. Mar. 2, 2016). Additionally, Defendants correctly point out that "Plaintiff seeks to represent a putative class of *all* employees of R&L, including drivers, freight loaders, mechanics, and office and administrative

personnel, but Plaintiff solely was employed as a *driver*." (Mot. 18–19.) Plaintiff has not shown these "other class members have been injured by the same course of conduct," rendering his claims atypical. *Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 595 (E.D. Cal. 2008) (internal quotation marks omitted) (holding the typicality requirement not satisfied as to employees with jobs substantively different from that of lead plaintiff).

    4. *Other Bases to Deny Class Certification*

  Although Defendants spend almost five pages of their brief arguing that Plaintiff's counsel is inadequate, the Court has concluded that Plaintiff's claims cannot satisfy the commonality, predominance, superiority, and typicality requirements. Despite Defendants' ample, persuasive arguments, the Court does address whether Plaintiff's counsel's performance throughout the course of this litigation satisfies the requirements of Rule 23(a)(4).

  **B.** **Plaintiff's PAGA Claim**

  "The California Legislature enacted [PAGA] to address a perceived deficit in the enforcement of the State's Labor Code." *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1913 (2022). Recognizing that the State itself "did not have sufficient resources to" adequately enforce labor laws, the Legislature "decided to enlist employees as private attorneys general." *Id.* at 1913–14. Accordingly, "PAGA authorizes any 'aggrieved employee' to initiate an action against a former employer 'on behalf of himself or herself and other current or former employees' to obtain civil penalties that previously could have been recovered only by the State." *Id.* at 1914 (quoting Cal. Lab. Code § 2699(a)). An "aggrieved employee" is "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." Cal. Lab. Code § 2699(c). Once an "aggrieved employee" exhausts the necessary administrative procedures, the employee is entitled to bring suit. *Id.* § 2699.3(a).

  "In any successful PAGA action, [California's Labor and Workforce

Development Agency] is entitled to 75 percent of the award," and "[t]he remaining 25 percent is distributed among the employees affected by the violations at issue." *Viking River*, 142 S. Ct. at 1914 (citing Cal. Lab. Code § 2699(*i*)). Importantly, "the State 'is always the real party in interest'" to any PAGA action. *Id.* (quoting *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 382 (2014)). "The primary function of PAGA is to delegate a power to employees to assert 'the same legal right and interest as state [labor] law enforcement agencies.'" *Id.* at 1914–15 (quoting *Arias v. Superior Ct.*, 46 Cal. 4th 969, 986 (2009)).

Of particular relevance for this motion, PAGA claims are substantively and procedurally distinct from class actions. *Kim v. Reins Int'l Cal., Inc.*, 9 Cal. 5th 73, 87 (2020). Class actions are nothing more than "procedural device[s] for aggregating claims when the parties are numerous, and it is impracticable to bring them all before the court." *Id.* at 86 (internal quotation marks omitted); *see Hamilton*, 39 F.4th at 585. Put another way, PAGA claims are administrative law enforcement actions that "are different from conventional civil suits." *Estrada v. Royalty Carpet Mills, Inc.*, 76 Cal. App. 5th 685, 711 (2022) (quoting *Kim*, 9 Cal. 5th at 86). The purpose of PAGA is to empower "employees to enforce the Labor Code as representatives of the" State of California. *Kim*, 9 Cal. 5th at 86 (internal quotation marks omitted). As a result, "the civil penalties recovered in a PAGA action are recovered on the state's behalf and are intended to remediate present violations and deter future ones, not to redress employees' injuries." *Estrada*, 76 Cal. App. 5th at 711 (cleaned up).

It is well settled that "PAGA plaintiffs need not meet class action certification requirements when pursuing PAGA penalties." *Id*. at 711–12 (citing *Arias*, 46 Cal. 4th at 975); *see also Hamilton*, 39 F.4th at 585. There is a split in authority among California courts, however, as to whether PAGA claims may be stricken when they would be "unmanageable." *Estrada*, 76 Cal. App. 5th at 697; *Wesson*, 68 Cal. App. 5th at 763. As far as federal courts in California are concerned, however, the Ninth Circuit has definitively resolved this issue. Considering "the structure and purpose" of the law,

"imposing a manageability requirement in PAGA cases akin to that imposed under Rule 23(b)(3) would not constitute a reasonable response to a specific problem and would contradict California law by running afoul of the key features of PAGA actions." *Hamilton*, 39 F.4th at 587.[2] The Ninth Circuit was clear that the manageability "requirement cannot be imposed in PAGA actions under the guise of a court's inherent powers" or under the Federal Rules of Civil Procedure. *Id.* at 590.

Defendants also argue that the PAGA claim should be dismissed because it "is not adequately specific." (Mot. 24.) As an initial matter, the Court has already concluded Plaintiff's PAGA claims were sufficient to state a claim. (*See* Order Re: SAC 11, ECF No. 67 (denying Defendants' motion to dismiss PAGA claim "to the extent Plaintiff's claims are premised upon 'violations of other laws' not addressed in this order.").) The Court sees no reason to change this conclusion. The state law violations alleged in the Fourth Amended Complaint provide sufficient notice as the basis for the claim. (*See* 4AC ¶¶ 50–89.) Additionally, the Court does not agree that the claim should be stricken because "Aggrieved Employees are not defined with sufficient particularity." (Mot. 24.) Defendants rest their argument on district court decisions largely abrogated by the Ninth Circuit's decision in *Hamilton*. *See Hamilton*, 39 F.4th at 587 n.5.

///
///
///

---

[2] In their motion, Defendants did not acknowledge the clear and highly relevant split in authority. Additionally, Defendants cite *Hamilton* only once, halfway through a dense footnote in their reply. (Reply 4 n.5.) Although the Court does not resolve whether Defendants' avoidance of the issue violates the requirements of California Rule of Professional Conduct 3.3(a)(2), the Court reminds parties that attempts to "hide the ball" will not be viewed favorably.

## IV. CONCLUSION

Defendants' motion is GRANTED in part and DENIED in part. Defendants' motion to deny class certification is GRANTED. Defendants' motion to strike Plaintiff's PAGA claim is DENIED.

Given this disposition, the Court vacates its scheduling order (ECF No. 92) and orders the parties to meet and confer and file within 14 days a proposed schedule of pretrial and trial dates for Plaintiff's individual and PAGA claims. The parties must propose a trial date no later than November 2023.

**IT IS SO ORDERED.**

Dated: April 10, 2023

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE